## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| NANCY R., pseudonymously, | ) | |
| | ) | |
|     Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| PLAZA HOTELS, LLC; STEVE | ) | |
| KETTER; MICHAEL WILEY; OKC | ) | |
| AIRPORT ES, LLC; ESH | ) | |
| STRATEGIES FRANCHISE, LLC; | ) | |
| KAJAL HOSPITALITY, LLC; | ) | |
| JALIYAN HOSPITALITY, INC.; | ) | |
| SUPER 8 WORLDWIDE, INC.; RAJ | ) | No. 5:25-cv-00462-G |
| KRUPA HOTEL, LLC; DAYS INNS | ) | |
| WORLDWIDE, INC.; CHAND & | ) | |
| SAAJ HOSPITALITY, INC.; | ) | |
| RAMADA WORLDWIDE, INC.; | ) | |
| YASH ENTERPRISES, INC.; | ) | |
| HOWARD JOHNSON | ) | |
| INTERNATIONAL, INC.; NOOR | ) | |
| HOTEL, LLC; AMBICA, LLC; OM, | ) | |
| LLC; INDRA, LLC; AND G6 | ) | |
| HOSPITALITY FRANCHISING, | ) | |
| LLC, | ) | |
| | ) | |
|     Defendants. | ) | |

## ESH STRATEGIES FRANCHISE, LLC'S BRIEF IN SUPPORT OF MOTION TO DISMISS PLAINTIFF'S PETITION

## INTRODUCTION

This lawsuit is a continuation of a recent trend to attempt to hold the entire

hospitality industry liable under 18 U.S.C. §1595, the Trafficking Victims Protection

Reauthorization Act ("TVPRA"), for allegedly participating in a "sex trafficking venture." While ESH acknowledges that sex trafficking is a serious crime, which it unequivocally condemns, Plaintiff's Complaint alleges, through sweeping assertions, vague accusations, and conclusory statements, that ESH—a franchisor that did not own, operate, or manage any of the hotels referenced in the lawsuit—participated in a venture which it knew or should have known engaged in criminal acts of sex trafficking. In Plaintiff's Complaint, she also attempts to assert state law claims against ESH under Oklahoma's sex trafficking statute, 21 O.S. § 21-748 ("OKTA"), and under theories of common law negligence and intentional inflection of emotional distress ("IIED").

Plaintiff's Complaint is broken down into two sections: The first 70 paragraphs of the 239-paragraph Complaint focus entirely on sex trafficking in the hotel industry, generally, and aside from standard language identifying the names and addresses of the parties, the first 70 paragraphs of the Complaint include no specific reference to ESH, the other eighteen named Defendants, or any conceivable connection between ESH and Plaintiff.[1] In the remaining 169 paragraphs of the Complaint, Plaintiff attempts to assert purported TVPRA and state law claims against ESH based on the alleged conduct of one named individual, "Domino," and

---

[1] ECF No. 1, at ¶¶ 1-70.

for the alleged actions or inactions of the franchisee and its employees.[2] In its entirety, the Complaint fails to set forth a single fact to support an inference that ESH, a franchisor, participated in a venture that it knew or should have known engaged in criminal acts of sex trafficking against her.

The Complaint fails to state a claim against ESH for several reasons: (1) Plaintiff's Complaint is an improper "shotgun" pleading under the federal rules of civil procedure; (2) the Complaint fails to allege that ESH participated in a commercial sex trafficking venture; (3) the Complaint fails to allege that ESH knew or should have known of Plaintiff's alleged trafficking; and (4) Plaintiff's claims for negligence or premises liability and intentional infliction of emotional distress are time-barred as a matter of law.

## LEGAL STANDARD

To survive a motion to dismiss under Rule 12(b)(6), a complaint must allege enough factual matter that, taken as true, makes the plaintiff's "claim to relief...plausible on its face." *Khalik v. United Air Lines*, 671 F.3d 1188, 1190 (10th Cir. 2012) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible when a plaintiff pleads factual content that permits a court to reasonably infer that the defendant is liable for the alleged misconduct. *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009). If a complaint's allegations are "so general that they

---

[2] ECF No. 1, at ¶¶ 71-239.

encompass a wide swath of conduct, much of it innocent, then the plaintiffs have not nudged their claims across the line from conceivable to plausible." *Khalik*, 671 F.3d at 1191 (quotations omitted). That is, "[t]he allegations must be enough that, if assumed to be true, the plaintiff plausibly (not just speculatively) has a claim for relief." *Robbins v. Oklahoma ex rel. Okla. Dep't of Human Serv.*, 519 F.3d 1242, 1247 (10th Cir. 2008).

In addition, "[C]onclusory allegations without supporting factual averments are insufficient to state a claim on which relief can be based." *Cory v. Allstate Ins.*, 583 F.3d 1240, 1244 (10th Cir. 2009). Thus, a plaintiff must provide "more than labels and conclusions," or "a formulaic recitation of the elements of a cause of action" to survive a motion to dismiss. *Twombly*, 550 U.S. at 555. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678.

Rule 8 requires a complaint to "explain what each defendant did to [the plaintiff]; when the defendant did it; how the defendant's action harmed him or her; and what specific legal right the plaintiff believes the defendant violated." *Nasious v. Two Unknown B.I.C.E. Agents*, 492 F.3d 1158, 1163 (10th Cir. 2007). "If a complaint fails to meet these basic pleading requirements, a district court may dismiss the action … for failure to comply with Rule 8." *Rodriguez v. Nationwide Homes, Inc.*, 756 App's 782, 785 (10th Cir. 2018). Moreover, the 10th Circuit has

consistently found that pleadings that lump defendants together in a variety of vague, conclusory allegations cannot withstand a motion to dismiss, particularly where the grouped defendants are comprised of distinct entities that are entirely different in character. *See e.g.*, *Robbins* 519 F.3d at 1250 ("Given the complaint's use of either the collective term 'Defendants' or a list of the defendants named individually but with no distinction as to what acts are attributable to whom, it is impossible for any of these individuals to ascertain what particular … acts they are alleged to have committed."); *Baker v. City of Loveland*, 686 Fed.Appx. 619, 621 (10th Cir. 2017).

## ARGUMENT

I.    **Plaintiff's TAC is an impermissible "shotgun pleading" that fails to comply with Rule 8(a)(2) of the Federal Rules of Civil Procedure.**

As a threshold matter, before the substance of Plaintiff's claims can be addressed, it is necessary to point out her failure to adhere to the federal rules governing the form of her pleading. As noted above, the federal rules require plaintiffs to include in their complaints "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). When assessing the sufficiency of a complaint's factual allegations, the Tenth Circuit has noted that the "plausibility" standard in *Twombly* and *Iqbal* applies. *Khalik v. United Air Lines,* 671 F.3d 1188 (6th Cir. 2012).

A complaint is an impermissible "shotgun pleading" if it groups multiple defendants together and makes allegations against them collectively "without

specifying which of the defendants are responsible for which acts or omissions."
*Weiland v. Palm Beach Cnty. Sheriff's Off.*, 792 F.3d 1313, 1323 (11th Cir. 2015).
Here, Plaintiff's Complaint avoids providing any of the Defendants with fair notice
of the claims actually asserted against them by asserting a litany of vague,
unsubstantiated allegations against the Defendants, collectively, with no distinction
among the roles in which each played. It is nothing more than a recitation of statutory
language supported by identical, conclusory statements against all the Defendants,
the Franchisee Defendants, and/or the Franchisor Defendants.

In fact, the 239 paragraphs of factual allegations are made up entirely of (1)
vague, conclusory allegations against "Defendants" collectively[3]; (2) vague,
conclusory allegations against the "Franchisee Defendants" or the "Franchisor
Defendants" collectively[4]; (3) identical, conclusory allegations against each
Defendant consecutively[5]; (4) a summary of the applicable sex trafficking law[6]; (5)
generalized facts about the hospitality industry as a whole[7]; (6) a background of
Plaintiff's relationship with her traffickers unrelated to the named Defendants[8]; and

---

[3] ECF No. 1, at ¶¶ 18, 19, 83, 88, 189, 202, 203, 204, 230, 231, 232, 238, 239.
[4] ECF No. 1, at ¶¶ 18, 202, 205, 206, 209, 210, 211, 212-216, 219, 220, 221, 224-226, 234-236.
[5] ECF No. 1, at ¶¶ 84, 94, 95, 204, 206, 208, 210-220.
[6] ECF No. 1, at ¶¶ 42-44.
[7] ECF No. 1, at ¶¶ 51-70.
[8] ECF No. 1, at ¶¶ 71-83.

(7) a general identification of all the named parties.[9] All Defendants are able to gather from the Complaint is that Plaintiff believes they have, at some unspecified point in time, participated in an alleged sex-trafficking venture committed by one name individual, Domino. Accordingly, Defendants are left to speculate as to which, if any, of the alleged transactions were ones in which they participated and are left without any indication of what particular wrongdoing they allegedly committed as opposed to the actions allegedly committed by Co-Defendants.

More specifically, the collective term "Defendants" used throughout the Complaint, which includes ESH, is comprised of individuals, the owners of entirely distinct hotels, and separate national hotel franchises, all lumped together.[10] Plaintiff's use of the ambiguous term "Defendants" makes it impossible for any one of the nineteen named Defendants to understand which factual allegations relate specifically to it, especially considering that Plaintiff's alleged trafficking occurred at different times, at different locations, and under different circumstances. By directing her TVPRA allegations against "Defendants" generally, Plaintiff has implicated ESH, who—based on her own narrative—could not plausibly have committed all the acts that are alleged. As the Eleventh Circuit explained in dismissing a similarly deficient complaint, a pleading is improper when it is replete

---

[9] ECF No. 1, at ¶¶ 1-19.
[10] ECF No. 1, at ¶¶ 2-19.

with allegations about "the defendants," yet makes "no distinction" among them, even "though geographic and temporal realities make plain that all of the defendants could not have participated in every act complained of." *Magluta v. Samples*, 256 F.3d 1282, 1284 (11th Cir. 2001).

Moreover, even the Complaint's use of the slightly more narrow terms of "Franchisee Defendants" and "Franchisor Defendants" does not satisfy Rule 8 scrutiny. Both such utilized groupings of the Defendants contain entirely distinct and unaffiliated entities, that are engaged in separate business, with separate rules, policies, and procedures, that operate in different states, regions, and countries.[11] *See Robbins*, 519 F.3d at 1250. Importantly, aside from Paragraph 6 of the Complaint, which only identifies the name and address of ESH, not a single of the 239 numbered paragraphs make an allegation against ESH alone—every allegation against ESH relating to alleged sex trafficking includes reference to other franchisees or franchisors.[12] Accordingly, this Court cannot intelligibly analyze Plaintiff's claims as to all nineteen Defendants, or even as to all six Franchisor Defendants, which is fatal. *See Wheeler v. Board of County Commissioners of the County of Leflore County*, 2022 WL 20099257, *7 (E.D. Okla, Dec. 30, 2022) ("[T]he Individual Defendants are not to be lumped together as a group, but should be treated as

---

[11] ECF No. 1, at ¶¶ 2-19.
[12] ECF No. 1, at ¶¶ 18, 60, 204, 206, 208, 210-215, 217-219.

individuals, each with Plaintiff's own claims against each Individual Defendant, based on each Individual Defendant's own behavior.").

Similarly, courts in the Tenth Circuit have "strongly criticized the use of a 'shotgun pleading,' by which a party pleads several counts or causes of action, each of which incorporates by reference the entirety of its predecessors." *Greenway Nutrients, Inc. v. Blackburn*, 33 F.Supp.3d 1224, 1242-43 (D. Colo. 2014). Such method of pleading "places an inordinate burden on the party responding to that pleading, and the Court interpreting it, requiring them to parse the narrative repeatedly and attempt to independently extract the particular factual averments that are relevant to each individual claim." *Id.*

Here, Plaintiff's Complaint runs thirty-seven (37) pages long, featuring 239 numbered paragraphs. *See*, *generally*, ECF No. 1. After asserting 221 paragraphs (many of which include numerous sub-paragraphs) of conclusory allegations, Plaintiff uses the remaining thirty-eight (38) paragraphs to assert four counts, each against all "Defendants," collectively. *Id.* However, the first paragraph of each Count I, Count II, Count III, and Count IV, incorporates by reference all 221 preceding and all subsequent paragraphs, stating that "Plaintiff incorporates each foregoing and subsequent allegation."[13] By rolling every factual allegation into each of the four succeeding counts, Counts I, II, III and IV of the Complaint, Plaintiff has

---

[13] ECF No. 1, at ¶¶ 222, 228, 233, 237.

placed an extraordinary burden on both the Defendants and the Court to distil "a mountain of facts down to a handful of those that are relevant to a given claim." *Greenway Nutrients, Inc.,* 33 F.Supp.3d at 1243. Plaintiff's decision to (1) tack the TVPRA, OKTA, Negligence or Premises Liability, and IIED claims to the end of her Complaint, (2) include only statutory or conclusory language under each count, and then (3) incorporate by reference the hundreds of preceding paragraphs and subparagraphs "makes it impossible [for ESH] to tell which facts connect with which claims," and therefore Counts I-IV are improperly pled under Rule 8 and should all be dismissed. *Id.* at 1235.

As such, Plaintiff's Complaint reflects the type of shotgun pleading explicitly rejected by courts in the Tenth Circuit and fails to meet the basic pleading requirements imposed by this Court and the Federal Rules of Civil Procedure. Fed. R. Civ. P. 8(a)(2).  Even a mere cursory reading of the Complaint reveals that Plaintiff has not alleged any specific facts that would warrant more than a mere suspicion of wrongdoing on behalf of a particular defendant and, therefore, does not give Defendants the "fair notice" to which they are entitled. *Twombly*, 550 U.S. at 555. Having failed to sufficiently plead her allegations, Plaintiff's claims against Defendants should be dismissed under *Twombly* and *Iqbal.*

## II.    Plaintiff fails to state a plausible claim against ESH for allegedly violating the TVPRA, 18 U.S.C. § 1595.

In addition to the criminal prohibitions against sex trafficking under 18 U.S.C. § 1591 of the TVPRA, Congress also created a civil remedy for sex trafficking victims, which is commonly referred to as a "beneficiary claim" under Section 1595(a) of the TVPRA. In the present action, Plaintiff is attempting allege a "beneficiary claim" against the Defendants, including ESH.[14] In the only appellate court decision analyzing civil liability under the TVPRA in the context of the hospitality industry, the Eleventh Circuit construed the four elements of establishing a Section 1595(a) beneficiary claim as follows:

> [T]o state a … claim under Section 1595(a), a plaintiff must plausibly allege that the defendant (1) knowingly benefited, (2) from taking part in a common undertaking or enterprise involving risk and potential profit, (3) that undertaking or enterprise violated the TVPRA as to the plaintiff, and (4) the defendant had constructive or actual knowledge that the undertaking or enterprise violated the TVPRA *as to the plaintiff.*

*Doe #1 v. Red Roof Inns, Inc.*, 21 F.4th 714, 726 (11th Cir. 2021) (*Red Roof*) (emphasis added). Since *Red Roof* was decided, several District Courts have already applied its focus on *plaintiff-specific* allegations to dismiss TVPRA claims similar to the one brought Nancy R. here. *See, e.g., A.D. v. Best Western International, Inc.*, 2023 WL 2955711 (M.D. Fla. April 14, 2023) (applying *Red Roof* and dismissing TVPRA claim against franchisor); *B.J. v. G6 Hospitality, LLC*, 2023 WL 6120682 (N.D. Cal. 2023) (same); *L.H. v. Marriott Int'l., Inc.*, No. 21-22894-Civ-Scola, 2022

---

[14] ECF No. 1, at ¶ 224-227.

WL 1619637 (S.D. Fla. May 23, 2022) (same); *J.k v. Ramada Woldwide, Inc.*, 2023
WL 5621913 (N.D. Ga. 2023) (same); *see also C.K. v. Wyndham Hotels & Resorts,
Inc., et al.*, No. 3:19-CV-1412-J-34MCR, 2020 WL 5523849, at *1 (M.D. Fla. July
7, 2020); *J.B. v. G6 Hosp. LLC, et al.*, No. 19-cv-07848-HSG, 2020 WL 4901196,
at *1041 (N.D. Cal. Aug. 20, 2020); *J.C. v. Choice Hotels Int'l Inc., et al.*, 20-cv-
00155-WHO, 2020 WL 3035794, at *1 (N.D. Cal. June 5, 2020).

In this case, Plaintiff does not allege that ESH was the "perpetrator" of her
trafficking. The Complaint identifies only one individual, "Domino," associated
with the venture that allegedly trafficked Plaintiff. In fact, the Complaint is devoid
of any allegation linking ESH, in any way, to Plaintiff's alleged trafficker or to the
alleged venture that trafficked Plaintiff. In addition, the plain language of the
Complaint appears to only allege a direct liability beneficiary claim against ESH.
As explained by another District Court in the Tenth Circuit, a plaintiff may satisfy
the elements of a beneficiary claim under the TVPRA in one of two ways:

> She may show that the defendant's own acts, omissions, and state of mind
> establish each element. Alternatively, she may impute to the defendant the
> acts, omissions, and state of mind of an agent of the defendant. The former is
> referred to as 'direct liability' and the latter as 'indirect liability.'

*Lundstrom v. Choice Hotels International, Inc.*, 2021 WL 5579117, *3 (D. Colo.
Nov. 20, 2021). Here, Plaintiff has specifically alleged that the "Franchisor

12

Defendants … are … directly liable under 18 U.S.C. § 1595."[15] Plaintiff has not claimed that any other actor or named Defendant, including OKC AIRPORT ES, LLC ("OKC ES"), the owner of the Extended Stay America Oklahoma City Airport (the "Extended Stay"), was an agent of ESH or that ESH was vicariously liable for the actions of ESH.[16] Thus, for purposes of dismissal under Fed. R. Civ. P. 12(b)(6), ESH must only establish that Plaintiff has failed to plausibly state a direct beneficiary claim under the TVPRA.

### A. Plaintiff fails to allege that ESH participated in a sex-trafficking venture.

Plaintiff's Complaint does not allege a single act on ESH's part in furtherance of the alleged venture and, therefore, fails to state a claim against ESH for any alleged participation in a sex-trafficking venture. In *Red Roof*, the Eleventh Circuit held that "participation in a venture" in the civil context requires that plaintiff allege that the franchisor "took part in a common undertaking or enterprise involving risk and potential profit." *Red Roof Inns, Inc.*, 21 F.4th at 725. However, Congress defined "participation in a venture" as "knowingly assisting, supporting, or facilitating [sex trafficking]."[17] § 1591(e)(4). To that end, "liability[] cannot be

---

[15] ECF No. 1, at ¶¶ 224-226.

[16] ECF No. 1, at ¶¶ 5-6.

[17] It is worth noting that Congress' definition of "participation in a venture" under Section 1591 employs the type of active terms used to describe criminal aiding and abetting. *See e.g., United States v. Diaz*, 941 F.3d 729 (5th Cir. 2019) ("To be convicted under an aiding and abetting theory, the defendant must share in the

established by association alone, [and] Plaintiff must allege specific conduct that furthered the sex trafficking venture." *Noble v. Weinstein*, 335 F. Supp. 3d 504, 524 (S.D.N.Y. 2018). In other words, "some participation *in the sex trafficking act itself* must be shown." *Doe 2 v. Red Roof Inns, Inc.*, 2020 WL 1872337, *3 (N.D. Ga., 2020) (citing *Noble*, 335 F. Supp. 3d at 524 and *United States v. Afyare*, 632 F. App'x 272, 286 (6th Cir. 2016)) (emphasis added). Furthermore, the District Courts have universally rejected the notion that "participation" can be established by showing that "the franchisor or hotel operator did not fight hard enough to keep … traffickers from using their hotel." *A.D.,* 2023 WL at *7. "This is particularly true of a franchisor, which has no direct contact with its alleged venture partners." *Id.* [18]

---

principal's criminal intent and take some affirmative steps 'to aid the venture or assist the perpetrator of the crime … he must have aided and abetted each material element of the alleged offense[s]." (citations and quotations omitted).

[18] *See Red Roof Inns, Inc.*, 21 F.4th at 726-27 (allegations that the franchisors received royalty fees based on total room revenue, and supervised, oversaw, or controlled the operation of the renting of rooms at the hotels, showed a financial benefit but not participation in a venture); *C.C. v. H.K. Grp. of Co., Inc.*, 2022 WL 467813, at *5, 2022 U.S. Dist. LEXIS 29213 (N.D. Ga. Feb. 9, 2022) (same); *G.G. v. Salesforce.com, Inc.*, 603 F. Supp. 3d 626, 645 (N.D. Ill. 2022) ("In cases involving hotel franchisors, … claims that branded hotels rented rooms to people they knew or should have known were engaged in sex trafficking may be 'sufficient to state a plausible claim against the specific hotels where the plaintiff was trafficked, but they do not make a plausible claim that the franchisors directly participated in a venture that *trafficked the plaintiff.*' ") (citation omitted) (emphasis in original); *J.M. v. Choice Hotels Int'l, Inc.*, 2022 WL 10626493, at *4, 2022 U.S. Dist. LEXIS 190054 (E.D. Cal. Oct. 18, 2022) (finding no franchisor participation in a venture where only the franchisee, not the franchisor, directly rented rooms to the sex trafficker). *See also Red Roof Inns, Inc.*, 21 F.4th at 727 ("[O]bserving something is not the same as participating in it."); *L.H. v. Marriott Int'l, Inc.*, 604 F.

Specifically, in *Red Roof*, the plaintiff alleged that the defendant franchisors "owned, managed supervised, operated, oversaw, controlled the operation of, and/or were inextricably connected to the renting of rooms at the hotels." *Red Roof Inns, Inc.*, 21 F.4th at 726. The plaintiffs also alleged that the defendant franchisors "investigated the individual hotels, took remedial action when revenue was down, read online reviews mentioning prostitution and crime occurring generally at the hotels, and controlled the training of managers and employees who were allegedly involved in facilitating sex trafficking at the hotels." *Id.* at 727. Despite such allegations of the defendant franchisor's control and oversight of the franchisee hotels, the Eleventh Circuit ultimately determined that, "[n]one of these allegations suggest that the franchisors participated in an alleged common undertaking or enterprise with the Does' sex traffickers or others at the hotel who violated the statute." *Id.*

In the instant action, other than the vague and conclusory allegation in Paragraph 226 and 231 of the Complaint that "through their acts and omissions described above," all nineteen named Defendants "benefit[ed] financially from

---

Supp. 3d 1346, 1361 (S.D. Fla. 2022) (finding that "any local business venture that simply *allowed* the trafficking by 'failing to combat sex trafficking through ineffective policies, procedures, and training for the purpose of maximizing their profit'" was "not enough to trigger TVPRA liability." (emphasis in original)); *A.D. v. Wyndham Hotels & Resorts, Inc.*, 4:19CV120, 2020 U.S. Dist. LEXIS 250759, 2020 WL 8674205, at *3 (E.D. Va. July 22, 2020) ("[A] failure to affirmatively prevent or inhibit sex trafficking does not constitute participation.").

Plaintiff's sex trafficking due to their participation in a venture," there is no reference to or description of the "common undertaking or enterprise" or "venture" in which ESH allegedly participated.[19] Also, similar to the franchisor defendants in *Red Roof* and analogous to the cases cited in footnote 18, above, Nancy has failed to allege that ESH, a franchisor, plausibly participated in a sex trafficking venture. Plaintiff's general descriptions of a typical franchisor-franchisee business relationship and her repeated use of the phrase, "[i]t is standard practice in the hospitality industry" to describe all the franchisor defendants in the Complaint, lack the requisite specificity necessary to establish ESH's participation in a sex-trafficking venture.[20]

Moreover, Plaintiff does not assert that ESH had any awareness of her alleged trafficker, Domino, or that ESH had any interactions with Domino, such that ESH could have participated or formed a "venture" with him. *See, e.g., L.H. v. Mariott Int'l, Inc.,* No. 21-22894-CIV, 2022 WL 1619637, *7 (S.D. Fla. May 23, 2022) (dismissing TVPRA claims against hotel franchisors under a "business venture" theory, finding that the complaint failed "to allege that any aspect of a local business venture ... violated the TVPRA as to L.H."). Again, only one paragraph in the entire Complaint makes an allegation against ESH alone without lumping together several

---

[19] ECF No. 1, at ¶¶ 226, 231.
[20] ECF No. 1, at ¶¶ 202, 204-207, 209-212, 214, 219-220.

other entirely distinct and unrelated Defendant franchisors, and no allegation in the Complaint references both ESH and Domino.[21]

### B. Plaintiff fails to plead any facts demonstrating that ESH knew or should have known of sex trafficking by the particular venture in which it allegedly participated.

Plaintiff's TVPRA claim "fails because she has not sufficiently alleged the third element of that claim—the element that focuses on [ESH's] knowledge of alleged sex trafficking." *Lundstrom*, 2021 WL at *6 (citing *H.G. v. InterCont'l. Hotels Corp.*, 489 F.Supp.3d 697, 704 (E.D. Mich. 2020). "To satisfy that element, a plaintiff must plead facts showing that the defendant knew or should have known of sex trafficking by the particular venture in which the defendant allegedly participated." *H.G.*, 489 F.Supp.3d at 704. "Indeed, the plain language of the financial beneficiary prong clearly links the required knowledge to the venture in which the defendant purportedly participated." *Id.*

The *Red Roof* court was clear that: "[T]he defendant must have either actual or constructive knowledge that the venture—in which it voluntarily participated and from which it knowingly benefited—violated the TVPRA *as to the plaintiff*." *Red Roof Inns.*, 21 F.4th at 714 (emphasis added). In other words, "[g]eneral knowledge

---

[21] ECF No. 1, at ¶ 6.

of commercial sex activity occurring at hotels across the United States is insufficient on its own to demonstrate that that [the defendant] participated in sex trafficking of plaintiff." *J.L. v. Best Western International, Inc.*, 521 F.Supp.3d 1048, 1064 (D. Colo. Feb. 24, 2021).

Plaintiff's allegations in the Complaint are simply too general and too conclusory to plausibly establish that ESH had any knowledge, actual or constructive, of Plaintiff's alleged trafficking. In her Complaint, Plaintiff spends considerable time addressing sex trafficking in the hospitality industry, *generally*, as well as discussing the franchisor-franchisee relationship in the hospitality industry, *generally*.[22] However, Plaintiff fails to allege facts sufficient to show ESH's knowledge or constructive knowledge of her alleged trafficking, *specifically*.

As discussed above, Plaintiff alleges no connection whatsoever between either ESH and Domino or between ESH and Nancy. Plaintiff herself even admits that "many [sex trafficking victims] are not obviously victims."[23] In short, reference to a handful of online guest reviews, which Plaintiff does not even allege are referring to her, is insufficient to establish ESH's knowledge or constructive knowledge of Plaintiff's alleged trafficking. *See Doe (K.B.) v. G6 Hospitality, LLC*, 2023 WL 8650785, *6 (finding plaintiff's allegation that defendant franchisor was

---

[22] ECF No. 1, at ¶¶ 20-70, 190, 202, 204-207, 209-212, 214, 219-220.
[23] ECF No. 1, at ¶ 23.

aware of online reviews discussing trafficking at the subject motel, that it conducted regular inspections, and that illegal activity occurred in plain view was insufficient to plausibly allege the knowledge requirement).

### III.  Plaintiff fails to state a plausible claim against ESH for allegedly violating the Oklahoma Sex Trafficking Act, 21 O.S. §§ 748, 748.2.

Similar to the federal TVPRA, the Oklahoma State Legislature recently enacted § 748, which in conjunction with § 748.2, creates a civil cause of action for victims of sex trafficking. 21 O.S. §§ 748, 748.2. Specifically, the language of the OKTA mirrors that of the TVPRA. Section 848 states, "[i]t shall be unlawful to *knowingly engage* in human trafficking." 21 O.S. § 748(B) (emphasis added). "Human trafficking" is defined as "modern-day slavery that includes, but is not limited to, extreme exploitation and the denial of freedom or liberty of an individual for purposes of deriving benefit from that individual's commercial sex act or labor." 21 O.S. § 748(A)(4). In addition, "Human trafficking for commercial sex" includes "benefiting, financially or by receiving anything of value, from *participation in a venture* that has engaged in an act of trafficking for commercial sex." 21 O.S. § (A)(6)(c) (emphasis added).

Thus, for Plaintiff to establish a cause of action under the OKTA against ESH, Plaintiff's Complaint must plausibly allege that ESH knowingly participated in a venture that has engaged in an act of trafficking for commercial sex. And as discussed extensively above, Plaintiff has not plausibly pled either that ESH: (1)

participated in a venture of trafficking for commercial sex; or (2) had knowledge of Plaintiff's sex trafficking by the venture in which it allegedly participated.

In addition, like Plaintiff's other state law claims, which are addressed below, Plaintiff's OKTA claim against ESH is similarly time-barred pursuant to the applicable two-year statute of limitations under Oklahoma law. 12 O.S. § 95(3). Under § 748.2, the statute of limitations shall begin to run from the latter of the victim's emancipation from the defendant, the victim's twenty-first birthday, or when the plaintiff reasonably should have discovered she was a victim of trafficking. 21 O.S. § 748.2(B). As it relates to ESH, all of Plaintiff's alleged trafficking occurred in 2021 based on the face of the Complaint.[24]  There are no allegations in the Complaint to suggest that the statute of limitations was tolled or otherwise commenced at any time other than after her trafficking ended, which is more than two years before the Complaint was filed.  Thus, her OKTA claim is time-barred under Oklahoma law.

## IV.    Plaintiff's claims for "Negligence or Premises Liability" and "Intentional Infliction of Emotional Distress" are barred under Oklahoma's applicable statute of limitations.

Plaintiff's claims under the OKTA and for "Negligence or Premises Liability" and "Intentional Infliction of Emotional Distress" are brought pursuant to Oklahoma state law. Although this case was removed under federal question jurisdiction based

---

[24] ECF No. 1, at ¶¶ 81, 107-124.

on Plaintiff's federal TVPRA claim, this Court will consider Plaintiff's state-law claims—the OKTA claim, negligence or premises liability, and intentional infliction of emotional distress—pursuant to the Court's supplemental jurisdiction under 28 U.S.C. § 1367(a). As a result, Oklahoma law will control for substantive issues, including for applying the applicable statute of limitations to the state law claims. *See Glennon v. Dean Witter Reynolds, Inc.,* 83 F.3d 132, 136 (6th Cir.1996).

Under 12 O.S. § 95(3), the statute of limitations is two years for claims of negligence, premises liability, and intentional infliction of emotional distress, which begins to run from the date that the plaintiff suffers the injury or harm. 12 O.S. § 95(3); *see Marshall v. Fenton, Fenton, Smith, Reneau and Moon, P.C.*, 1995 P.2d 621, 624 (1995). In Plaintiff's Complaint, she alleges she suffered her injury or harm as it relates to ESH during the time she stayed at the Extended Stay in 2021.[25] Moreover, the entire span of time Plaintiff alleges she was trafficked at any of the Defendant hotels was from "early 2021 to the beginning of 2022."[26] Thus, the face of Plaintiff's Complaint plainly states timeframe of when her alleged injury occurred, and because Plaintiff did not bring her claims for negligence or premises liability and intentional infliction of emotional distress within two years after she

---

[25] ECF No. 1, at ¶¶ 81, 107-124.
[26] ECF No. 1, at ¶ 81.

alleged she was trafficked and suffered her injury, such claims are barred by the applicable two-year statute of limitations under Oklahoma law.

## CONCLUSION

For the foregoing reasons, this Court should grant ESH's Motion to Dismiss and dismiss all claims asserted against ESH with prejudice.

Respectfully submitted this 14th day of May, 2025.

Respectfully submitted,

**STEIDLEY & NEAL, P.L.L.C.**

__s/ Charles D. Neal, Jr.__
Charles D. Neal, Jr., OBA #6591
cdn@steidley-neal.com
Philard L. Rounds, Jr., OBA #7780
plr@steidley-neal.com
Jamie A. Rogers, OBA #19927
jar@steidley-neal.com
CityPlex Towers, 53rd Floor
2448 East 81st Street
Tulsa, Oklahoma 74137
(918) 664-4612 telephone
(918) 664-4133 facsimile
        and

**WEINBERG, WHEELER, HUDGINS,**
 **GUNN & DIAL**
Patrick B. Moore
(*Pro Hac Vice forthcoming*)
Georgia Bar No. 520390
Shubhra R. Mashelkar
Georgia Bar No. 475388
(*Pro Hac Vice forthcoming*)
Michael W. Warner
Georgia Bar No. 751362

*(Pro Hac Vice forthcoming)*
3344 Peachtree Rd. NE, Suite 2400
Atlanta, Georgia 30326
404-876-2700 | 404-875-9433 (fax)
PMoore@wwhgd.com
SMashelkar@wwhgd.com
Cbyrd@wwhgd.com
Mwarner@wwhgd.com
*Counsel for ESH Strategies Franchise, LLC*

## CERTIFICATE OF SERVICE

I hereby certify that on May 14, 2025, I electronically transmitted the attached document to the Clerk of Court using the Electronic Case Filing System for filing.

Fletcher D. Handley, Jr.
THE HANDLEY LAW CENTER
fdh@handleylaw.com
*Counsel for Plaintiff*

Michael C. Kane
Joel Hengstler
Bradley J. Myers
service@the702firm.com
*Counsel for Plaintiff*

Geoffrey C. Parker
Jonathan Hilton
gparker@hiltonparker.com
jhilton@hiltonparker.com
*Counsel for Plaintiff*

David C. Senger
Hunter M. Siex
COFFEY, SENGER & WOODARD PLLC
david@cswlawgroup.com
hunter@cswlawgroup.com
*Counsel for Defendant Jaliyan Hospitality*

Bart Jay Robey
Eric A. Moen
Abby R. Herren
CHUBBUCK DUNCAN & ROBEY, P.C.
eamoen@chubbucklaw.com
*Counsel for Defendant OKC Airport ES*

Michael S. Linscott
DOERNER, SAUNDERS, DANIEL & ANDERSON
mlinscott@dsda.com

Kaylee Davis-Maddy
DOERNER, SAUNDERS, DANIEL & ANDERSON
kmaddy@dsda.com
*Counsel for Super 8 Worldwide, Days Inns Worldwide, Ramada Worldwide, & Howard Johnson International*

Robert Glenn Chadwick, Jr.
Alexander Gebert
FREEMAN MATHIS & GARY, LLP
bob.chadwick@fmglaw.com
alex.gebert@fmglaw.com
*Counsel for Raj Krupa Hotel, LLC*

I hereby certify that on May 14, 2025 I filed the attached document with the Clerk of the Court and served the attached document by on the following, who are not registered participants of the ECF System:

PLAZA HOTELS, LLC
3200 S 1-35 Service Road
Oklahoma City, OK 73129


INDRA, LLC
c/o Ramesh Patel
11935 N. 1-35 Service Rd.
Oklahoma City, OK 73131

KAJAL HOSPITALITY, LLC
c/o Jaydip Modi
1120 S 10th St.
Clinton, OK 73601

NOOR HOTEL, LLC
c/o Abdel Jawabreh
3213 Meadow Lane
Edmond, OK 73103

AMBICA, LLC
c/o Prakash Patel
5608 NW 107thSt.
Oklahoma City, OK 73162

Michael A. Wiley
1701 Wildhorse Dr.
Edmond, OK 73003

Jonathan Wilfong
OYO HOTELS, INC.
440 Louisiana Street, Suite 1050
Houston, TX 77002
*Attorney for G6 Hospitality Franchising*
CHAND & SAAJ HOSPITALITY, INC.
c/o Hitesh Patel
2200 S. Meridian
Oklahoma City, OK 73108

YASH ENTERPRISES, INC.
c/o Tushar Natha
400 S. Meridian
Oklahoma City, OK 73108

OM, LLC
c/o Ramesh V. Patel
12001 N I-35 Service Road
Oklahoma City, OK 73131


Steve Keller
5101 S. Choctaw Ave.
El Reno, OK 73036


*s/ Charles D. Neal, Jr.*
Charles D. Neal, Jr.
Of Steidley & Neal, P.L.L.C.