# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| NANCY R., pseudonymously | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. 5:25-cv-00462-G |
| | ) | |
| PLAZA HOTELS, LLC; STEVE | ) | |
| KETTER; MICHAEL WILEY; OKC | ) | |
| AIRPORT ES, LLC; ESH STRATEGIES | ) | |
| FRANCHISE, LLC; KAJAL | ) | |
| HOSPITALITY, INC; JALIYAN | ) | |
| HOSPITALITY, INC; SUPER 8 | ) | |
| WORLDWDE, INC; RAJ KRUPA | ) | |
| HOTEL, LLC; DAYS INNS | ) | |
| WORLDWIDE, INC; CHAND & SAAJ | ) | |
| HOSPITALITY, INC; RAMADA | ) | |
| WORLDWIDE, INC; YASH | ) | |
| ENTERPRISES, INC; HOWARD | ) | |
| JOHNSON INTERNATIONAL, INC; | ) | |
| NOOR HOTEL, LLC; AMBICA, LLC; | ) | |
| OM, LLC; INDRA, LLC; AND G6 | ) | |
| HOSPITALITY FRANCHISING, LLC, | ) | |
| | ) | |
| Defendants. | ) | |

## MOTION TO DISMISS AND BRIEF IN SUPPORT

# <u>TABLE OF CONTENTS</u>

*Page*

PRELIMINARY STATEMENT ........................................................................... 1

SUMMARY OF THE ALLEGATIONS............................................................. 2

LEGAL STANDARD ......................................................................................... 4

LEGAL ARGUMENT ........................................................................................ 5

    I.      Count I Should be Dismissed. ......................................................... 6

           A.      Plaintiff Does Not Plausibly Allege Any Wyndham
                   Franchisor Defendant Participated in a TVPRA Venture. ................. 6

           B.      Plaintiff Does Not Plausibly Allege Any Wyndham
                   Franchisor Defendant Knew or Should Have Known of Any
                   Venture That Trafficked Her............................................................. 12

    II.     The Petition Fails to State a Claim for Indirect Agency Liability. ............. 13

    III.    Count II Should be Dismissed....................................................... 19

    IV.    Counts III and IV Should be Dismissed....................................... 19

           A.      Counts III and IV are Time-Barred. ............................................... 19

           B.      Alternatively, Plaintiff Fails to Sufficiently Allege the
                   Wyndham Franchisor Defendants Owed Her any Duty of
                   Care. ................................................................................................ 211

           C.      Alternatively, Plaintiff Fails to Sufficiently Allege the
                     Wyndham Franchisor Defendants Engaged in Extreme and
                   Outrageous Conduct. ...................................................................... 22

CONCLUSION ................................................................................................. 23

# TABLE OF CONTENTS

*Page(s)*

*Cases*

*A.B. v. Hilton Worldwide Holdings Inc.*,
   484 F. Supp. 3d 921 (D. Or. 2020) ............................................................... 14

*A.B. v. Marriott Int'l, Inc.*,
   455 F. Supp. 3d 171 (E.D. Pa. 2020) ...................................................... 9, 18

*A.B. v. Wyndham Hotels & Resorts, Inc.*,
   532 F. Supp. 3d 1018 (D. Or. 2021) ........................................................... 10

*A.D. v. Holistic Health Healing Inc.*,
   No. 2:22-cv-641, 2023 WL 3004546 (M.D. Fla. Apr. 19, 2023) .................. 9

*A.D. v. Marriott Int'l, Inc.*,
   No. 2:22-cv-645, 2023 WL 5510268 (M.D. Fla. Aug. 25, 2023) ................. 9

*A.F. v. G6 Hosp., LLC*,
   No. 23-cv-879, 2024 WL 4564426 (D.N.M. Oct. 24, 2024) .................. 6, 12

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) ..................................................................................... 5

*B.M. v. Wyndham Hotels & Resorts, Inc.*,
   No. 20-cv-656, 2020 WL 4368214 (N.D. Cal. July 30, 2020) ................ 8, 10

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007) ................................................................................ 4, 15

*Bray v. St. John Health Sys., Inc.*,
   2008 OK 51, 187 P.3d 721 ........................................................................ 21

*Burge v. Wal-Mart Stores East, LP*,
   859 F. App'x 280 (10th Cir. 2021) ............................................................. 21

*C.J. v. Santosa & Brother Inc.*,
   No. 24-cv-1548, 2025 WL 933800 (D. Colo. Mar. 27, 2025) ..................... 7

*Computer Publ'ns, Inc. v. Welton*,
   2002 OK 50, 49 P.3d 732 ........................................................................... 22

*Copeland v. C.A.A.I.R., Inc.*,
   No. 17-CV-564, 2019 WL 4307125 (N.D. Okla. Sept. 11, 2019) ............... 19

*Cory v. Allstate Ins.*,
   583 F.3d 1240 (10th Cir. 2009) .......................................................... 5, 13, 15

*Doe #1 v. Red Roof Inns, Inc.*,
   21 F.4th 714 (11th Cir. 2021) ................................................... 6, 7, 8, 12, 18

*Doe (P.B.) v. Wyndham Hotels & Resorts, Inc.*,
   No. 23-1493, 2023 WL 8890229 (D.N.J. Dec. 26, 2023) ....................... 8, 9

*Doe (S.C.) v. Sheraton, LLC*,
   No. 23CV451, 2024 WL 1329422 (D.N.M. Mar. 28, 2024) ............ 6, 7, 8, 12

*Drexel v. Union Prescription Ctrs., Inc.*,
   582 F.2d 781 (3d Cir. 1978) ........................................................................ 9

*E.S. v. Best W. Int'l, Inc.*,
  510 F. Supp. 3d 420 (N.D. Tex. 2021) ...................................................................... 7
*G.G. v. Salesforce.com, Inc.*,
  76 F.4th 544 (7th Cir. 2023) ........................................................................... 10, 11
*H.H. v. G6 Hosp., Inc.*,
  No. 2:19-CV-755, 2019 WL 6682152 (S.D. Ohio Dec. 6, 2019) ................................. 18
*In re Volkswagen*,
  28 F.4th 1203 (Fed. Cir. 2022) ............................................................................ 14
*J.K. v. Ramada Worldwide, Inc.*,
  No. 1:23-CV-108, 2023 WL 5621913 (N.D. Ga. Aug. 30, 2023) ............................... 16
*J.L. v. Best Western Int'l, Inc.*,
  521 F. Supp. 3d 1048 (D. Colo. 2021) ......................................................... 6, 12, 14, 18
*J.M. v. Choice Hotels Int'l, Inc.*,
  No. 2:22-cv-672, 2022 WL 10626493 (E.D. Cal. Oct. 18, 2022) .................................. 7
*Johnson v. Dunkin' Donuts Franchising L.L.C.*,
  No. 11-1117, 2012 WL 1828028 (W.D. Pa. May 18, 2012) ........................................ 15
*K.B. v. Inter-Cont'l Hotels Corp.*,
  No. 19-cv-1213, 2020 WL 8674188 (D.N.H. Sept. 28, 2020) ...................................... 8
*K.H. v. Riti, Inc.*,
  No. 23-11682, 2024 WL 505063 (11th Cir. Feb. 9, 2024) ..................................... 11, 18
*K.M. v. CPA Hotels of Atlanta, LLC*,
  No. 1:23-CV-190, 2023 WL 5747490 (N.D. Ga. Aug. 30, 2023) ............................... 16
*Kerl v. Dennis Rasmussen, Inc.*,
  682 N.W.2d 328 (Wis. 2004) .............................................................................. 15
*Kester v. Janssen Pharms., Inc.*,
  No. 22-7026, 2023 WL 4677031 (10th Cir. July 21, 2023) ....................................... 19
*Khalik v. United Air Lines*,
  671 F.3d 1188 (10th Cir. 2012) ............................................................................. 5
*L.H. v. Marriott Int'l, Inc.*,
  604 F. Supp. 3d 1346 (S.D. Fla. 2022) ................................................................ 9, 10
*Lockard v. Pizza Hut, Inc.*,
  162 F.3d 1062 (10th Cir. 1998) ............................................................................ 14
*Lundstrom v. Choice Hotels Int'l, Inc.*,
  No. 21-cv-619, 2021 WL 5579117 (D. Colo. Nov. 30, 2021) ............. 6, 9, 12, 13, 14, 17
*Miller v. Miller*,
  1998 OK 24, 956 P.2d 887 ............................................................................. 20, 22
*Mini Maid Servs. Co. v. Maid Brigade Sys., Inc.*,
  967 F.2d 1516 (11th Cir. 1992) ............................................................................ 14
*Moffett v. Haliburton Energy Servs., Inc.*,
  291 F.3d 1227 (10th Cir. 2002) ............................................................................. 5
*Norton v. Spring Oper. Co.*,
  2020 OK CIV APP 18, 466 P.3d 598 .................................................................... 21

*Oberlin v. Marlin Am. Corp.*,
   596 F.2d 1322 (7th Cir. 1979) ................................................................... 14

*S.C. v. Wyndham Hotels & Resorts, Inc.*,
   728 F. Supp. 3d 771 (N.D. Ohio Apr. 2, 2024) ......................................... 11

*S.J. v. Choice Hotels Int'l, Inc.*,
   473 F. Supp. 3d 147 (E.D.N.Y. 2020) ....................................... 12, 16, 17

*Scott v. Archon Grp., L.P.*,
   2008 OK 45, 191 P.3d 1207 ....................................................................... 21

*Solomon v. HSBC Mortgage Corp.*,
   395 F. App'x 494 (10th Cir. 2010) ........................................................... 20

*Spence v. Wal-Mart Stores, Inc.*,
   203 F. App'x 193 (10th Cir. 2006) ........................................................... 21

*Sullivan v. Wyndham Hotels & Resorts, Inc.*,
   No. 21-7003, 2021 WL 5822690 (10th Cir. Dec. 8, 2021) ........................ 21

*Taylor v. Hynson*,
   1993 OK 93, 856 P.2d 278 ......................................................................... 21

*Tilghman v. Kirby*,
   No. 13-CV-73, 2013 WL 6092529 (W.D. Okla. Nov. 19, 2013) ................ 20

## Statutes

18 U.S.C. § 1591(a) .................................................................... 6, 9, 10
18 U.S.C. § 1595(a) ............................................... 1, 5, 6, 10, 11, 19
21 Okl. St. § 748(A)(6)(c) ................................................................ 5, 6
21 Okl. St. § 748(B) ............................................................................. 5
21 Okl. St. § 21-748.2(B) ................................................................. 1, 5

## Rules

Federal Rule of Civil Procedure 12(b)(6) ............................................... 23

## PRELIMINARY STATEMENT

Defendants Super 8 Worldwide, Inc., Days Inns Worldwide, Inc., Ramada Worldwide, Inc., and Howard Johnson International, Inc. (collectively the "Wyndham Franchisor Defendants") respectfully move to dismiss the Petition ("Pet.," ECF No. 1-2) because Plaintiff has failed to state a claim for beneficiary liability under Section 1595(a) of the Trafficking Victims Protection Reauthorization Act ("TVPRA") (Count I) and its Oklahoma counterpart, 21 Okl. St. § 21-748.2(B) (Count II). The other state law claims (Counts III and IV) should be dismissed because they are time-barred, and Plaintiff has not sufficiently pled that the Wyndham Franchisor Defendants owed her any duty or engaged in extreme and outrageous conduct. The Petition should be dismissed in its entirety.

Plaintiff alleges she was trafficked by "Domino" and other unidentified traffickers and handlers from 2021 to 2022 in a dozen or more hotels in Oklahoma and that, for limited but unspecified times in that period, she was trafficked at two Super 8® franchised hotels, a Days Inns® franchised hotel, a Ramada® franchised hotel, and a Howard Johnson® franchised hotel in Oklahoma City. Plaintiff acknowledges each of these hotels was independently owned and operated by franchisees who managed the hotels and employed the hotels' staff. The Petition does not address any of the franchisor defendants until paragraph 204 and, even then, Plaintiff does not plausibly allege that the Wyndham Franchisor Defendants participated in or had constructive knowledge of Plaintiff, Plaintiff's alleged traffickers, or any venture that is alleged to have trafficked Plaintiff. Rather, Plaintiff seeks to hold the Wyndham Franchisor Defendants liable for the alleged use of the franchised hotel facilities as an instrumentality for sex trafficking based on

general awareness that sex trafficking sometimes occurs at hotels. Moreover, contrary to the plain language of the TVPRA, Plaintiff seeks to impose a duty on the Wyndham Franchisor Defendants to have identified and prevented Plaintiff's alleged trafficking. In short, Plaintiff's theory of liability is that franchisors are liable for all sex trafficking that occurs at franchised hotels, but that is not what the TVPRA or Oklahoma law provide.

## **SUMMARY OF THE ALLEGATIONS**

Plaintiff alleges she first came under the control of "Domino" in 2021 and remained under his control until 2022. Pet. ¶¶ 73, 81-82. Plaintiff further alleges she was trafficked at "a dozen or more hotels in Oklahoma from 2021 through 2022" and identifies seven of these hotels (*id.* ¶ 84), including the following independently owned and operated franchised properties in Oklahoma City: a Super 8® facility located at 311 S Meridian Avenue; a Super 8® facility located at 3852 S Prospect Avenue; a Days Inns® facility located at 8217 S I-35 Service Road; a Ramada® facility located at 2200 S. Meridian Avenue; and a Howard Johnson® facility located at 400 S Meridian Avenue (collectively, the "Wyndham Franchised Facilities"). *Id.* ¶¶ 7, 8, 10, 12, 14. The Wyndham Franchisor Defendants are indirect subsidiaries of Wyndham Hotels & Resorts, Inc. *Id.*, ¶ 60 (acknowledging that "Wyndham" is the parent company). The Petition alleges that the Wyndham Franchisor Defendants franchised the Wyndham Franchised Facilities to the individual franchisee defendants, specifically, Kajal Hospitality, LLC, Jaliyan Hospitality, Inc., Raj Krupa Hotel, LLC, Chand & Saaj Hospitality, Inc., and Yash Enterprises, Inc. (collectively, the "Wyndham Franchisee Defendants"). *Id.* ¶¶ 7-15. Plaintiff does not allege that the Wyndham Franchisor Defendants managed operations and/or employed staff at the

Wyndham Franchised Facilities. To the contrary, Plaintiff affirmatively alleges that the Wyndham Franchisee Defendants "owned and operated" the Wyndham Franchised Facilities. *Id.*

Plaintiff alleges that, during the roughly two-year trafficking period, she was trafficked at the various Wyndham Franchised Facilities for approximately one month. *Id.* ¶¶ 138 ("one week"), 148 (unidentified time period), 162 ("at least a week"), 171 ("3 days and . . . a single evening"), 182 ("2 weeks"). Moreover, Plaintiff acknowledges throughout the Petition that unidentified "hotel employees" and "hotel staff" – not the Wyndham Franchisor Defendants – were present at the Wyndham Franchised Facilities. *See, e.g.*, *id.* ¶¶ 80, 95, 120, 161, 170, 175, 179. The Petition does not include *a single allegation* that any of the Wyndham Franchisor Defendants were present at the Wyndham Franchised Facilities during Plaintiff's alleged trafficking, witnessed any conduct or "red flags," interacted with Plaintiff, Domino, or other alleged traffickers, or otherwise participated in any alleged trafficking. Instead, Plaintiff relies solely on conclusory allegations that the Wyndham Franchisor Defendants "knew or should have known their businesses would be likely venues for sex trafficking" (*id.* ¶ 88) or were generally aware that sex trafficking was occurring at their hotels. *Id.* ¶¶ 203, 221.

Plaintiff also alleges that the Wyndham Franchisor Defendants monitored anonymous online reviews of the Wyndham franchised properties. *Id.* ¶¶ 194-202. Yet, none of the reviews mentions Plaintiff, her alleged traffickers, or alleged sex trafficking. Plaintiff acknowledges the Wyndham Franchisor Defendants mandated that franchisees and their employees complete anti-human trafficking training. *Id.* ¶ 216. The Petition,

however, does not allege that any employee of the Wyndham Franchisee Defendants reported anything at all about Plaintiff or her trafficker(s) to the Wyndham Franchisor Defendants. Rather, the Petition relies on general allegations that the hotel staff would have seen Plaintiff dressed in "revealing clothes" in the hotel lobby (Pet. ¶¶ 141, 165), sold Plaintiff condoms or would have noticed condoms in the toilet or trash can, or responded to requests for more towels (*id.* ¶¶ 146, 152, 155, 167-69). Then, in conclusory fashion, Plaintiff alleges that because unidentified employees of the Wyndham Franchisee Defendants should have known she was engaged in sex work, they knew or should have known she was being trafficked. *Id.* ¶¶ 147, 161, 170, 181, 188.

Finally, Plaintiff attempts to connect what hotel staff should have observed to the Wyndham Franchisor Defendants because franchisors, generally, have brand standards, use trade names, require certain technology and training, and have the right to inspect. *Id.* ¶¶ 204-221. In other words, Plaintiff argues that the hallmarks of franchising – e.g., system standards – means that every franchisor should be liable for all conduct occurring at franchised facilities.

## LEGAL STANDARD

To survive a motion to dismiss, a complaint must offer more than "labels and conclusions," "a formulaic recitation of the elements of a cause of action," or "naked assertion[s]" devoid of "further factual enhancement." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 557 (2007). Rather, Plaintiff must allege enough "facts to state a claim to relief that is plausible on its face." *Id.* at 570. "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable

for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009). The "well-pleaded facts" must "permit the court to infer more than the mere possibility of misconduct." *Id.* at 679. If a complaint's allegations are "so general that they encompass a wide swath of conduct, much of it innocent," then a motion to dismiss should be granted. *Khalik v. United Air Lines*, 671 F.3d 1188, 1191 (10th Cir. 2012) (quotations omitted). Importantly, this Court need not accept conclusory allegations. *Moffett v. Haliburton Energy Servs., Inc.*, 291 F.3d 1227, 1232 (10th Cir. 2002). Indeed, it is settled law that "conclusory allegations without supporting factual averments are insufficient to state a claim on which relief can be based." *Cory v. Allstate Ins.*, 583 F.3d 1240, 1244 (10th Cir. 2009) (citation omitted). Because Plaintiff's conclusory allegations against the Wyndham Franchisor Defendants are not sufficient to establish her claims, the Wyndham Franchisor Defendants' motion to dismiss should be granted in its entirety.

## LEGAL ARGUMENT

Section 1595(a) of the TVPRA permits a victim of trafficking to "bring a civil action against the perpetrator [] or whoever knowingly benefits, or attempts or conspires to benefit, financially or by receiving anything of value from participation in a venture which that person knew or should have known has engaged in an act in violation of [the TVPRA]." 18 U.S.C. § 1595(a).[1] Plaintiff's Petition fails to plausibly state claims for direct or vicarious liability under Section 1595(a) or the corresponding Oklahoma statute.

---

[1] As discussed below, 21 Okl. St. §§748.2(B), 748(B), and 748(A)(6)(c) permit a victim of sex trafficking to bring a civil action against someone "benefitting, financially or by receiving anything of value, from participating in a venture that has engaged in an act of trafficking for commercial sex."

## I.    Count I Should be Dismissed.

The Petition fails to state a claim for beneficiary liability against the Wyndham Franchisor Defendants. To state such a claim, a plaintiff must plausibly allege she was criminally sex trafficked under the TVPRA, and that a defendant "(1) knowingly benefitted financially or by receiving anything of value, (2) from participation in a venture that, (3) they knew or should have known has engaged in an act in violation of the TVPRA." *Doe (S.C.) v. Sheraton, LLC*, No. 23CV451, 2024 WL 1329422, at *3 (D.N.M. Mar. 28, 2024) (citations omitted). *See also J.L. v. Best Western Int'l, Inc.*, 521 F. Supp. 3d 1048, 1060 (D. Colo. 2021); *Lundstrom v. Choice Hotels Int'l, Inc.*, No. 21-cv-619, 2021 WL 5579117, at *3 (D. Colo. Nov. 30, 2021); *A.F. v. G6 Hosp., LLC*, No. 23-cv-879, 2024 WL 4564426, at *1 (D.N.M. Oct. 24, 2024). At a minimum, the Petition fails to satisfy the second and third elements because it does not include well-pled allegations demonstrating that any Wyndham Franchisor Defendant participated in any venture it knew or should have known was trafficking Plaintiff. [2]

### A.    Plaintiff Does Not Plausibly Allege Any Wyndham Franchisor Defendant Participated in a TVPRA Venture.

Plaintiff must plead facts that plausibly show each defendant's "participation in a venture" that trafficked her in violation of 18 U.S.C. § 1591(a). *See* 18 U.S.C. § 1595(a). *See also* 21 Okl. St. § 748(A)(6)(c). "The ordinary meaning of participate or participation is to take part in or share with others in common or in an association." *Doe #1 v. Red Roof*

---

[2] Although the Wyndham Franchisor Defendants are not challenging the sufficiency of the Petition insofar as it relates to the first element at this stage in the proceedings, they do not concede that Plaintiff's allegations, even taken as true, satisfy this element of her TVPRA or state law claims.

*Inns, Inc.*, 21 F.4th 714, 725 (11th Cir. 2021) (hereinafter "*Red Roof*"). Under this element, Plaintiff is required "to 'allege that the franchisors took part in a common undertaking or enterprise involving risk and potential profit' which violates the TVPRA." *S.C.*, 2024 WL 1329422, at *5 (quoting *Red Roof*, 21 F.4th at 724–25). Plaintiff must plausibly allege that the Wyndham Franchisor Defendants had a "direct association" with her trafficker or plead sufficient facts "to connect the dots between Plaintiff's alleged sex trafficking and the [Franchisor] Defendants." *C.J. v. Santosa & Brother Inc.*, No. 24-cv-1548, 2025 WL 933800, at *4 (D. Colo. Mar. 27, 2025) (citation omitted); *S.C.*, 2024 WL 1329422, at *6. Plaintiff's Petition does neither.

The Petition does not allege that any Wyndham Franchisor Defendant had actual or constructive knowledge of Plaintiff's alleged trafficking or that any Wyndham Franchisor Defendant knew of or interacted with her alleged trafficker. The Petition does not allege any fact to suggest the Wyndham Franchisor Defendants participated in a venture that trafficked Plaintiff. Courts have dismissed complaints with more specificity than Plaintiff has alleged against the Wyndham Franchisor Defendants. *See, e.g.*, *Red Roof*, 21 F.4th at 727 ("None of these allegations suggest that the franchisors participated in an alleged common undertaking or enterprise with the [plaintiffs'] sex traffickers . . . ."); *J.M. v. Choice Hotels Int'l, Inc.*, No. 2:22-cv-672, 2022 WL 10626493, at *4 (E.D. Cal. Oct. 18, 2022) ("J.M. has not sufficiently alleged defendants, who are franchisors, 'participated in a venture' that trafficked J.M."); *E.S. v. Best W. Int'l, Inc.*, 510 F. Supp. 3d 420, 428 (N.D. Tex. 2021) ("The Court finds that these allegations are not sufficient to plead that [franchisor defendants] directly participated in a specific venture that trafficked Plaintiff

on specific occasions at the specific hotels mentioned in the [complaint].”); *K.B. v. Inter-Cont'l Hotels Corp.*, No. 19-cv-1213, 2020 WL 8674188, at *5 (D.N.H. Sept. 28, 2020) (plaintiff “failed to plead sufficient facts to support the ‘participation in venture’ element because the complaint fail[ed] to connect the dots between [Defendants and] Plaintiff's alleged sex trafficking”); *B.M. v. Wyndham Hotels & Resorts, Inc.*, No. 20-cv-656, 2020 WL 4368214, at *5 (N.D. Cal. July 30, 2020) (same).

In this case, the Petition does not include any factual allegations to suggest that any Wyndham Franchisor Defendant observed the “indicators” of Plaintiff's alleged trafficking. Pet. ¶ 89. But even if the Petition had included such allegations (as unfounded as they would be), observation alone does not constitute participation in a sex trafficking venture under the TVPRA. *Red Roof*, 21 F.4th at 727 (“observing something is not the same as participating in it”); *see also Doe (P.B.) v. Wyndham Hotels & Resorts, Inc.*, No. 23-1493, 2023 WL 8890229, at *4 (D.N.J. Dec. 26, 2023) (dismissing beneficiary claim against franchisors despite allegation that hotel “guests opin[ed] that prostitution was taking place onsite”).

To the extent Plaintiff argues the Wyndham Franchisor Defendants engaged in a venture with the Wyndham Franchisee Defendants, that is not enough to “connect the dots.” *See S.C.*, 2024 WL 1329422, at *6 (“Plaintiff's allegations appear to describe a general franchisor-franchisee relationship, not a venture the [Franchisor] Defendants knew or should have known trafficked [Plaintiff]”). The Petition alleges that the Wyndham Franchisor Defendants “controlled” the Wyndham Franchisee Defendants and somehow had “knowledge” of their franchisees' conduct. Pet. ¶¶ 204-220. Plaintiff does *not* allege

that the Wyndham Franchisor Defendants entered into these franchise relationships for the purpose of promoting or facilitating sex trafficking at the Wyndham Franchised Facilities. As a result, this alleged venture "fails to tie whatever that common undertaking or enterprise might be to any particular criminal violation of the TVPRA under § 1591(a)." *L.H. v. Marriott Int'l, Inc.*, 604 F. Supp. 3d 1346, 1360 (S.D. Fla. 2022). Plaintiff's theory that signing a franchise agreement is participation would make every franchisor liable for any third-party's illicit activity occurring at a franchised site merely from the franchise relationship. That is not the law. *P.B.,* 2023 WL 8890229, at *5 (dismissing beneficiary liability claim against franchisor defendants and acknowledging "the mere existence of a franchise relationship does not necessarily trigger a master-servant relationship") (quoting *Drexel v. Union Prescription Ctrs., Inc.*, 582 F.2d 781, 786 (3d Cir. 1978)).

The Petition does not contain any well-pleaded facts to support a theory that, if the Wyndham Franchisor Defendants had exercised "reasonable diligence," they could have identified and prevented Plaintiff's alleged trafficking. Regardless, there is no requirement under the TVPRA that franchisors affirmatively take steps to prevent trafficking from occurring in their hotels. *Lundstrom*, 2021 WL 5579117, at *5 (citing *A.B. v. Marriott Int'l, Inc.*, 455 F. Supp. 3d 171, 182 (E.D. Pa. 2020)). As the *Lundstrom* court noted: "the 'mere failure to prevent sex trafficking is not sufficient' to show that defendant knowingly benefitted from its participation in a venture." *Id.*[3]

---

[3]*See also A.D. v. Holistic Health Healing Inc.*, No. 2:22-cv-641, 2023 WL 3004546, at *4 (M.D. Fla. Apr. 19, 2023) (defendant's "failure to affirmatively prevent or inhibit sex trafficking does not constitute participation."); *A.D. v. Marriott Int'l, Inc.*, No. 2:22-cv-645, 2023 WL 5510268, at *4 (M.D. Fla. Aug. 25, 2023) (allegations that "the [alleged]

The case of *G.G. v. Salesforce.com, Inc.*, 76 F.4th 544 (7th Cir. 2023), is instructive on the issue of participation. In that case, the Seventh Circuit Court of Appeals found the allegations to be sufficient to establish a continuous relationship between Salesforce (the defendant) and Backpage (an alleged trafficker) because Backpage was credibly alleged to be a website, which almost exclusively focused upon maximizing profit from participation in sex trafficking by posting trafficking victims' profiles and advertisements on its website. *G.G.*, 76 F.4th at 564. The plaintiff alleged Salesforce and Backpage entered into a series of deals through which Salesforce delivered "targeted solutions addressed to the needs of Backpage's business, repeatedly assessed Backpage's operational needs, and provided active, ongoing support that was tailored to those needs." *Id.* at 560 (internal quotations omitted). Based on Salesforce's efforts and support, "Backpage was able to build relationships with more street-level traffickers, to increase the scale of its operations, and to increase the trafficking conducted through its site." *Id.* (internal quotations omitted). Significantly, "Salesforce facilitated the growth of Backpage's business, a business that was almost exclusively a sex-trafficking business and . . . whose business model was built upon systematic and widespread violations of Section 1591." *Id.* at 560-61.

---

franchisor and the hotel operator did not fight hard enough to keep these traffickers from using their hotel" and took "ineffective steps to curtail the traffickers" were insufficient to plead the "participating in a venture" element); *L.H.*, 604 F. Supp. 3d at 1361 (allegations that a "local business venture simply allowed the trafficking by 'fail[ing] to combat sex trafficking through ineffective policies, procedures, and training for the purpose of maximizing their profit'" are "not enough to trigger TVPRA liability"); *A.B. v. Wyndham Hotels & Resorts, Inc.*, 532 F. Supp. 3d 1018, 1027 (D. Or. 2021) ("[T]he TVPRA does not impose an affirmative duty to police and prevent sex trafficking."); *B.M.*, 2020 WL 4368214, at *7 ("To be clear, the Court does not read [18 U.S.C. § 1595(a)] [as] requiring hotels or their franchisors to affirmatively stop sex trafficking.").

In this case, by contrast, the Wyndham Franchisor Defendants are alleged to have been franchisors. Pet. ¶¶ 9, 11, 13, 15. Plaintiff acknowledges the Wyndham Franchisee Defendants owned and operated these properties and employed the staff. Pet. ¶¶ 7, 8, 10, 12, 14. As the court of appeals recognized in *G.G.*, franchisors do not own or operate franchised hotels; they license the use of their brands and proprietary business models to third-party hotel owners and operators (*i.e.*, franchisees) pursuant to arm's-length franchise agreements. 76 F.4th at 562; *see also S.C. v. Wyndham Hotels & Resorts, Inc.*, 728 F. Supp. 3d 771, 778 (N.D. Ohio Apr. 2, 2024) (granting summary judgment for franchisors and stating: "[a]s franchisors and corporate parent companies, Defendants are several steps removed from daily hotel operations. Independent franchisees, not Defendants, operated all the hotels in this case."). Thus, reasoned the Seventh Circuit, hotel franchisors are "one step removed from the sex traffickers (i.e., street-level trafficker → hotel → hotel franchisor)." *G.G.*, 76 F.4th at 562. Even a hotel franchisee, who runs the day-to-day operations of a hotel facility, must do more than rent rooms and possess general knowledge about misuse of hotel property to survive a motion to dismiss a TVPRA participation claim. *See, e.g.*, *K.H. v. Riti, Inc.*, No. 23-11682, 2024 WL 505063, at *4 (11th Cir. Feb. 9, 2024) (affirming dismissal of claim against hotel owner because allegations that hotel owner financially benefited from renting hotel rooms to plaintiff's trafficker and observed signs of sex trafficking are insufficient to state TVPRA claim). Plaintiff's attempt to create a duty to prevent sex trafficking at hotels by imposing a "reasonable diligence" standard on franchisors has no support in the text of the TVPRA and should be rejected. *See* 18 U.S.C. § 1595(a).

### B. Plaintiff Does Not Plausibly Allege Any Wyndham Franchisor Defendant Knew or Should Have Known of Any Venture That Trafficked Her.

A claim for beneficiary liability also requires well-pled allegations supporting a plausible inference that the defendant "knew or should have known" the venture in which it participated was the venture that trafficked the plaintiff. *Red Roof*, 21 F.4th at 725. With respect to TVPRA claims against a franchisor, the courts in this Circuit have uniformly held that a plaintiff must allege facts showing that the franchisor knew or should have known about the specific plaintiff's trafficking at its franchised hotel. *See, e.g.*, *S.C.*, 2024 WL 1329422, at *6 (plaintiff must allege franchisor's "knowledge or constructive knowledge of S.C.'s trafficking"); *J.L.*, 521 F. Supp. 3d at 1064 (allegations must "plausibly establish that Wyndham, the parent company or franchisor, should have known about plaintiff's sex trafficking at one of its hotels"); *Lundstrom*, 2021 WL 5579117, at *8. These same courts, and others, have also uniformly "held that general knowledge of sex trafficking at other hotels owned by a corporate defendant is insufficient to state a claim under the TVPRA." *A.F.*, 2024 WL 4564426, at *1; *see also S.C.,* 2024 WL 1329422, at *6 ("actual knowledge of industry wide trafficking . . . does not establish constructive knowledge" of plaintiff's trafficking); *J.L.*, 521 F. Supp. 3d at 1064 (allegations "that Wyndham was on notice about the prevalence of sex trafficking generally at its hotels . . . is not sufficient to show that Wyndham should have known about what happened to this plaintiff"); *S.J. v. Choice Hotels Int'l, Inc.*, 473 F. Supp. 3d 147, 154 (E.D.N.Y. 2020) ("[T]o conclude that franchisors like Wyndham . . . are liable under the TVPRA simply because they were generally aware that sex trafficking sometimes occurred on their

12

franchisees' properties unjustifiably bridges the scienter gap between 'should have known' and 'might have been able to guess.'"); *Lundstrom*, 2021 WL 5579117, at *8.

The Petition does not plausibly allege the Wyndham Franchisor Defendants had any knowledge of a venture that is alleged to have trafficked Plaintiff at any of the Wyndham Franchised Facilities. Certainly, there are no well-pled allegations that Plaintiff's alleged trafficking (or any trafficking activity at the Wyndham franchised properties) was reported to the Wyndham Franchisor Defendants. Instead, Plaintiff relies on general and conclusory allegations about sex trafficking in the hotel industry or at franchised hotels. Pet. ¶¶ 88, 203, 221.[4] These general allegations fall far short of what is required to survive a motion to dismiss.

## II.    The Petition Fails to State a Claim for Indirect Agency Liability.

The Petition unambiguously asserts a "direct liability" claim against each of the Defendants, including the Wyndham Franchisor Defendants. Pet. ¶¶ 224, 225. Insofar as Plaintiff contends the Petition also alleges an indirect liability theory against the Wyndham Franchisor Defendants based on alleged control over the Wyndham Franchisee Defendants, the Petition makes no effort to tie the allegations of control to any legal theory under the TVPRA.

---

[4] Even if knowledge of sex trafficking at other hotels was somehow enough, the Petition does not even do that effectively. As just one legally insufficient example, Paragraph 221 baldly states, with not even one supporting fact: "Each of the Franchisor Defendants knew, throughout the relevant period, that their franchise locations played host to at least thousands and likely many tens of thousands of instances of sex trafficking each year." This Court should not credit such conclusory allegations devoid of supporting factual averments. *Cory*, 583 F.3d at 1244.

To state a claim for indirect agency liability against a franchisor under the TVPRA (and under the Oklahoma statutory counterpart), "a plaintiff must plausibly allege that (1) defendants and their corresponding hotels were in an agency relationship, and (2) the hotels or hotel staff are plausibly liable under § 1595." *Lundstrom*, 2021 WL 5579117, at *8 (citing *J.L.*, 521 F. Supp. 3d at 1064-65 and *A.B. v. Hilton Worldwide Holdings Inc.*, 484 F. Supp. 3d 921, 939 (D. Or. 2020)). Indirect liability theories based on a franchise relationship must be evaluated in the context of the franchisor's obligations under the Lanham Act, which "requires supervision of trademark licensees at the expense of abandonment of the trademark," the purpose being "to ensure the integrity of registered trademarks, not to create a federal law of agency." *Oberlin v. Marlin Am. Corp.*, 596 F.2d 1322, 1327-28 (7th Cir. 1979); *see also, e.g.*, *Mini Maid Servs. Co. v. Maid Brigade Sys., Inc.*, 967 F.2d 1516, 1520 (11th Cir. 1992) (same). To that end, a franchisor's imposition of brand standards aimed at promoting uniformity and quality across a franchise system, as a matter of law, does not provide a basis for indirect liability. *In re Volkswagen,* 28 F.4th 1203, 1209 (Fed. Cir. 2022) (federal common law of agency "requires that the principal have the right throughout the duration of the relationship to control the agents' acts" and "setting standards in an agreement for acceptable service quality does not of itself create a right of control"); *Lockard v. Pizza Hut, Inc*., 162 F.3d 1062, 1070 (10th Cir. 1998) (franchisor not an employer even though it "may have stringently controlled the manner of its franchisee's operations, conducted frequent inspections, and provided training for franchise employees.").

Contrary to this standard, the Petition's conclusory allegations of "control" are prefaced with "[i]t is standard practice in the hospitality industry" without any supporting factual averments. *See, e.g.*, Pet. ¶¶ 204, 206, 207, 209, 210, 211, 212, 219, 220. The remainder of the allegations are simply efforts to recite legal elements of an agency relationship with conclusory allegations made "on information and belief." *Id.* ¶¶ 209, 210, 211, 213, 214, 215, 219, 220. The Court need not accept such conclusory allegations as true absent specific facts to support them. *Cory*, 583 F.3d at 1244. As the Supreme Court has clarified, a complaint must offer more than merely "labels and conclusions," "a formulaic recitation of the elements of a cause of action," or "naked assertion[s]" devoid of "further factual enhancement." *Twombly*, 550 U.S. at 555, 557.

The only non-conclusory allegations in the Petition are that the Wyndham Franchisor Defendants imposed brand standards such as signage, computer systems, inspection rights, and centralized online bookings. Pet. ¶¶ 205, 208, 217, 218. Such standards are typical of any franchise relationship and are not sufficient to demonstrate that a franchisee was a franchisor's agent. *See Johnson v. Dunkin' Donuts Franchising L.L.C.*, No. 11-1117, 2012 WL 1828028, at *23-24 (W.D. Pa. May 18, 2012) (dismissing indirect liability claim because allegations that defendant controlled the terms of its franchise agreements and required purchase of products from approved manufacturers were not enough to allege an agency relationship); *Kerl v. Dennis Rasmussen, Inc.*, 682 N.W.2d 328, 337-38 (Wis. 2004) (noting many franchise agreements include "detailed requirements on the franchisee's operations" that are "integral to the protection of the franchisor's trade or service mark under the Lanham Act," and finding "the existence of these contractual

15

requirements does not mean that franchisors have a role in managing the day-to-day operations of their franchisees."). In the TVPRA context, courts have consistently held that "control" of a trademark does not, on its own, engender the franchisor's control over the day-to-day functioning of the franchisee, let alone those specific operations allegedly responsible for the plaintiff's injury, as would be required to impute liability to the franchisor under a principal-agent theory. *See* ECF No. 94, in *D.D.J.*, 1:23-CV-269, at 21 (slip op.) (to create agency liability "the control exercised by a franchisor must exceed that of merely maintaining brand standards").

Courts construing similar control allegations in TVPRA claims have held them insufficient to establish a franchisor's liability based on an agency theory. Indeed, two federal courts dismissed claims based on allegations of agency largely similar to those alleged here, holding: "none of the facts alleged appear to exceed that of a typical franchise agreement arrangement." *J.K. v. Ramada Worldwide, Inc.*, No. 1:23-CV-108, 2023 WL 5621913, at *4 (N.D. Ga. Aug. 30, 2023); *see also K.M. v. CPA Hotels of Atlanta, LLC*, No. 1:23-CV-190, 2023 WL 5747490, at *2 (N.D. Ga. Aug. 30, 2023) (dismissing indirect liability claim against franchisor where allegations showed only that franchisor's involvement did not "exceed that of a typical franchise agreement arrangement"). Similarly, in *S.J. v. Choice Hotels Int'l, Inc.*, allegations that the franchisor defendant:

> (1) hosted the [franchisee's] online bookings on their domain; (2) required [franchisee] to use their customer rewards program; (3) set employee wages; (4) made employment decisions; (5) advertised for employment; (6) shared in the profits; (7) provided standardized training methods for [franchisee's] employees (8) specified how to build and maintain the facilities; (9) provided standardized rules of operation; (10) regularly inspected their [franchise]

facility; (11) fixed prices; and (12) deprived the [franchisee] of independence in business operation…

showed that the franchisor's involvement was "limited to uniformity and standardization of the brand" and were therefore insufficient to establish an agency relationship. 473 F. Supp. 3d 147, 156 (E.D.N.Y. 2020). The same result is warranted here.

The Petition also lacks well-pled allegations of any TVPRA violation that could be imputed to the Wyndham Franchisor Defendants under an agency theory. Plaintiff does not plausibly allege any of the Wyndham Franchisee Defendants participated in a TVPRA "venture"–*i.e.*, that any Wyndham Franchisee Defendant had a "direct connection" or even an "implicit understanding" with Domino, other unidentified traffickers, or one of their unidentified handlers. The only allegation in the Petition that comes close to establishing a sex trafficking venture with Domino involving Plaintiff relates to a non-Wyndham Franchisee Defendant, the Plaza Inn. Pet. ¶ 106 ("forming a business relationship with Nancy's trafficker"). Thus, despite knowing how to allege a venture relationship with supporting facts, Plaintiff fails to do so with respect to any of the Wyndham Franchisee Defendants.

Two cases from this Circuit are instructive on this point. In *Lundstrom*, the court dismissed indirect liability claims against the franchisor with prejudice. 2021 WL 5579117, at *9. Based on allegations with more specificity than those in this case, the court found the plaintiff "failed to show that the hotels knew or should have known that plaintiff was being trafficked." *Id.* As support for the dismissal, the court analyzed cases where there were sufficient facts pleaded regarding objective trafficking signs of physical harm and

danger. *See id.* (citing *A.B.*, 455 F. Supp. 3d at 189-90 (plaintiff alleged staff were aware of "loud altercations" as well as "constant" attacks on the plaintiff) and *H.H. v. G6 Hosp., Inc.*, No. 2:19-CV-755, 2019 WL 6682152, at *1 (S.D. Ohio Dec. 6, 2019) (plaintiff alleged hotel staff discovered her chained up in the bathroom and ignored her plea for help)). Similarly, in *J.L.*, the court found the allegations (more specific than the allegations here) "even when taken as true and construed in plaintiff's favor, are not sufficient for the Court to conclude that [the hotel] had constructive knowledge of the trafficking of Plaintiff. 521 F. Supp. 3d at 1073, 1077.

Just as in those cases, Plaintiff here failed to allege any Wyndham Franchisee Defendant observed objective trafficking signs of physical harm, coercion, restraint, or force. Even if one of the Wyndham Franchisee Defendants *was* on notice of sex trafficking (as opposed to prostitution), according to Plaintiff, its alleged "participation" in her trafficking is limited to the Howard Johnson staff not "calling social services or law enforcement." Pet. ¶ 179.[5] But, as the Eleventh Circuit has twice confirmed, merely observing trafficking and failing to interrupt it or prevent it is not "participation" in it for purposes of the TVPRA. *See Red Roof Inns*, 21 F.4th at 728 (affirming dismissal of TVPRA claim because ***"observing something is not the same as participating in it."***) (emphasis added); *K.H.*, 2024 WL 505063, at *4 (same).

---

[5] Moreover, Plaintiff does not allege that she was trafficked at this hotel following this incident, making any alleged "knowledge" from it irrelevant.

### III.    Count II Should be Dismissed.

Plaintiff's claim under the Oklahoma Sex Trafficking statute (Count II) should be dismissed for the same reasons her TVPRA claim should be dismissed. Plaintiff makes no additional factual allegations related to Count II. As noted, the Oklahoma sex trafficking statute incorporates the same legal standards as § 1595 of the TVPRA. While research has not disclosed any cases interpreting the statute in connection with a civil liability sex trafficking claim, in a case under the TVPRA's forced labor provisions, an Oklahoma federal court acknowledged that the success of plaintiffs' Oklahoma statutory human trafficking claim depended on the success of their TVPRA claim. *Copeland v. C.A.A.I.R., Inc.*, No. 17-CV-564, 2019 WL 4307125, at *9 (N.D. Okla. Sept. 11, 2019). If Plaintiff's TVPRA claim is dismissed, as it should be, then Count II should also be dismissed.

### IV.    Counts III and IV Should be Dismissed.

Plaintiff's claims for negligence/premises liability and intentional infliction of emotional distress (Counts III and IV) should be dismissed against the Wyndham Franchisor Defendants for two independent reasons: (1) they are time-barred under Oklahoma's two-year statute of limitations; and (2) Plaintiff does not plausibly allege the Wyndham Franchisor Defendants owed her any duty or that the Wyndham Franchisor Defendants engaged in extreme and outrageous conduct.

#### A.    Counts III and IV are Time-Barred.

"Oklahoma imposes a two-year statute of limitations on negligence" claims. *Kester v. Janssen Pharms., Inc.*, No. 22-7026, 2023 WL 4677031, at *2 (10th Cir. July 21, 2023) (citations omitted). Similarly, "Oklahoma's intentional infliction of emotional distress tort

is governed by a two-year statute of limitations." *Tilghman v. Kirby*, No. 13-CV-73, 2013 WL 6092529, at *4 (W.D. Okla. Nov. 19, 2013) (citing *Miller v. Miller*, 1998 OK 24, 956 P.2d 887, 896 n.15). And as *Tilghman* held, a statute of limitations defense "may be resolved on a Rule 12(b)(6) motion to dismiss where the 'dates given in the complaint make clear that the right sued upon has been extinguished.'" *Id*. (quoting *Solomon v. HSBC Mortgage Corp.*, 395 F. App'x 494, 497 (10th Cir. 2010)).

Given the statute of limitations applicable to Counts III and IV, Plaintiff "may seek relief only for conduct occurring no more than two years prior to the date on which the lawsuit was filed." *Id. Tilghman* set forth the dismissal standard that should apply here: "This action was filed on January 23, 2013. Accordingly, conduct occurring more than two years prior to that date is barred by limitations." *Id.* The Petition was filed on March 19, 2025. Pet. at 1. Thus, conduct occurring prior to March 19, 2023 is barred by limitations. Plaintiff expressly acknowledges her alleged sex trafficking ended in 2022. Pet. ¶ 84 ("Nancy was sex trafficked . . . from 2021 through 2022."). Certainly, there is no alleged conduct by any Wyndham Franchisor Defendant (or any Wyndham Franchisee Defendant) beyond 2022. Given that the dates in the Petition "make clear that the right sued upon has been extinguished," a statute of limitations defense may be resolved on this Rule 12(b)(6) motion. *Tilghman*, 2013 WL 6092529, at *4; *Solomon*, 395 F. App'x at 497. This Court should dismiss Counts III and IV as time-barred and need not reach the other arguments.

### B.    Alternatively, Plaintiff Fails to Sufficiently Allege the Wyndham Franchisor Defendants Owed Her any Duty of Care.

As Count III sounds in tort, Oklahoma law is clear: "Whether an ordinary negligence or a premises liability claim, '[i]t is fundamental that three elements must be shown in order to establish actionable negligence': proof of a duty, a breach of that duty, and causation." *Norton v. Spring Oper. Co.*, 2020 OK CIV APP 18, 466 P.3d 598, 602 (quoting *Scott v. Archon Grp., L.P.*, 2008 OK 45, 191 P.3d 1207)). As "[d]uty is the threshold question in any negligence action," this Court should consider it first. *Sullivan v. Wyndham Hotels & Resorts, Inc.*, No. 21-7003, 2021 WL 5822690, at *2 (10th Cir. Dec. 8, 2021) (quoting *Bray v. St. John Health Sys., Inc.*, 2008 OK 51, 187 P.3d 721, 723). In *Sullivan*, the Tenth Circuit found that a franchisor-franchisee relationship, standing alone, does not place a duty on the franchisor with respect to an employee (or an invitee) of franchisee. *Id.*

Oklahoma law requires that Plaintiff plead sufficient facts to plausibly show the defendant "knew or had reason to know the specific criminal act that caused the plaintiff's injury was occurring or about to occur." *Spence v. Wal-Mart Stores, Inc.*, 203 F. App'x 193, 198 (10th Cir. 2006) (citations omitted). *See also Burge v. Wal-Mart Stores East, LP*, 859 F. App'x 280, 282 (10th Cir. 2021) (defendant "under no duty to exercise any care until he knows or has reason to know that the acts of the third person are occurring, or are about to occur.") (quoting *Bray*, 187 P.3d at 723-24 & n.2); *Taylor v. Hynson*, 1993 OK 93, 856 P.2d 278, 281. As shown above (at 12-13), the Petition contains no facts to plausibly show the Wyndham Franchisor Defendants had any knowledge whatsoever that

Plaintiff was allegedly trafficked at one of the Wyndham franchised properties. Thus, Plaintiff has not pled sufficient facts demonstrating the Wyndham Franchisor Defendants owed her any duty of care. For this independent reason, the Petition does not state a tort claim against the Wyndham Franchisor Defendants, and Count III should be dismissed.

**C.    Alternatively, Plaintiff Fails to Sufficiently Allege the Wyndham Franchisor Defendants Engaged in Extreme and Outrageous Conduct.**

Plaintiff's claim for intentional infliction of emotional distress ("IIED") (Count IV) fails as a matter of law because she has not alleged the Wyndham Franchisor Defendants engaged in any direct conduct, let alone conduct that meets the stringent standard required under Oklahoma law. The tort of IIED, also known as the tort of outrage, requires a plaintiff to plead and prove that the defendant acted intentionally or recklessly, that the conduct was extreme and outrageous, that it caused emotional distress, and that the resulting distress was severe. *Computer Publ'ns, Inc. v. Welton*, 2002 OK 50, 49 P.3d 732, 735.

Crucially, the second element—extreme and outrageous conduct—is not a jury question unless the Court first finds it can reasonably be regarded as such. Under Oklahoma law, it is the court's threshold duty to determine whether the conduct alleged rises to the level of being "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency." *Miller*, 956 P.2d at 901 (citations omitted). If the conduct does not meet the standard, dismissal is appropriate. *Id*.

Plaintiff does not allege the Wyndham Franchisor Defendants acted in any way that could be deemed intentional, reckless, or extreme. At most, Plaintiff alleges they exercised certain contractual rights typical in franchise arrangements—such as brand standard

enforcement and training requirements—and that they generally "knew or should have known" that commercial sex occurs at franchised hotels. Such generalized indirect allegations fall far short of the conduct required to support an IIED claim. There is no assertion that any Wyndham Franchisor Defendant personally interacted with Plaintiff or her alleged trafficker, directed or encouraged any trafficking, or otherwise took affirmative steps to cause harm. Without such allegations, there is no basis to hold the Wyndham Franchisor Defendants liable for intentional emotional harm.

<u>**CONCLUSION**</u>

For the foregoing reasons, Plaintiff's Petition against the Wyndham Franchisor Defendants should be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6).

Dated: May 14, 2025

Respectfully submitted,

DOERNER, SAUNDERS, DANIEL
   & ANDERSON, L.L.P.

*s/ Kaylee P. Davis-Maddy*
Michael S. Linscott, OBA No. 17266
700 Williams Center Tower II
Two West Second Street
Tulsa, Oklahoma 74103-3522
Telephone 918-582-1211
Facsimile 918-591-5360
mlinscott@dsda.com

Kaylee Davis-Maddy, OBA No. 31534
210 Park Avenue, Suite 1200
Oklahoma City, OK 73102
Telephone (405) 319-3513
Facsimile (405) 319-3524
kmaddy@dsda.com

DLA PIPER LLP (US)

Mallory Biblo (*pro hac vice forthcoming*)
1900 N. Pearl St., Suite 2200
Dallas, Texas 75201
Telephone: (214) 743-4500
Facsimile: (214) 743-4545
mallory.biblo@us.dlapiper.com

David S. Sager (*pro hac vice forthcoming*)
51 John F. Kennedy Parkway, Suite 120
Short Hills, New Jersey 07078
Telephone: (973) 520-2570
Facsimile: (973) 520-2551
david.sager@us.dlapiper.com

*Attorneys for Super 8 Worldwide, Inc., Days Inns Worldwide, Inc., Ramada Worldwide, Inc., and Howard Johnson International, Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that, on May 14, 2025, a true and correct copy of the foregoing document was served upon the following via the Court's electronic notification system, electronic mail to:

Alexander Gebert alex.gebert@fmglaw.com
David C Senger david@cswlawgroup.com
Eric A Moen eamoen@chubbucklaw.com
Fletcher D Handley, Jr. fdh@handleylaw.com
Hunter M Siex hunter@cswlawgroup.com
Robert Glenn Chadwick, Jr. bob.chadwick@fmglaw.com
Charles D. Neal, Jr. cdn@steidley-neal.com
Philard L. Rounds, Jr. plr@steidley-neal.com
Jamie A. Rogers jar@steidley-neal.com

and by U.S. Mail, postage prepaid to:

| | |
|---|---|
| Michael C. Kane<br>THE702FIRM Injury Attorneys<br>400 South 7th Street, Suite 400<br>Las Vegas, Nevada 89101<br>*Attorney for Plaintiff* | Geoffrey C. Parker<br>Hilton Parker, LLC<br>7658 Slate Ridge Blvd.,<br>Reynoldsburg, OH 43068<br>*Attorney for Plaintiff* |
| Shubhra Mashelkar<br>Weinberg, Wheeler, Hudgins, Gunn &<br>Dial, LLC<br>999 Peachtree PI NE #2700<br>Atlanta, GA 30309<br>*Attorneys for Defendant ESH Strategies<br>Franchise, LLC* | Bart Jay Robey<br>Eric A. Moen<br>Abby R. Herren<br>CHUBBUCK DUNCAN & ROBEY, P.C.<br>1329 Classen Drive<br>Oklahoma City, OK 73103<br>*Attorneys for Defendant OKC Airport<br>ES, LLC* |
| Plaza Hotels, LLC<br>5101 South Choctaw<br>El Reno, OK 73036 | Steve Ketter<br>5101 S. Choctaw Ave.<br>El Reno, OK 73036 |
| Kajal Hospitality, LLC<br>c/o Jaydip Modi<br>1120 S 10th St.<br>Clinton, OK 73601 | Chand & Saaj Hospitality, Inc.<br>c/o Hitesh Patel<br>2200 S. Meridian<br>Oklahoma City, OK 73108 |

Noor Hotel, LLC
c/o Abdel Jawabreh
3213 Meadow Lane
Edmond, OK 73103
OM, LLC
c/o Ramesh V. Patel
12001 N I-35 Service Road
Oklahoma City, OK 73131

Jonathan Wilfong
Oyo Hotels, Inc.
440 Louisiana Street, Suite 1050
Houston, TX 77002
*Attorney for G6 Hospitality Franchising,*
*LLC*

Yash Enterprises, Inc.
c/o Tushar Natha
400 S. Meridian
Oklahoma City, OK 73108
Ambica, LLC
c/o Prakash Patel
5608 NW 107th St.
Oklahoma City, OK 73162

Michael A. Wiley
1701 Wildhorse Dr.
Edmond, OK 73003

Indra, LLC
c/o Ramesh Patel
11935 N. I-35 Service Rd.
Oklahoma City, OK 73131

*s/ Kaylee P. Davis-Maddy*

8729552.1

26