## IN THE UNITED STATES DISTRICT COURT FOR THE
## WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| NANCY R., pseudonymously, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. CIV-25-462-G |
| | ) | |
| PLAZA HOTELS, LLC; STEVE KETTER | ) | |
| MICHAEL WILEY; OKC AIRPORT ES, LLC; | ) | |
| ESH STRATEGIES FRANCHISE, LLC; | ) | |
| KAJAL HOSPITALITY, INC; JALIYAN | ) | |
| HOSPITALITY, INC; SUPER 8 WORLDWIDE | ) | |
| INC; RAJ KRUPA HOTEL, LLC; DAYS INNS | ) | |
| WORLDWIDE, INC; CHAND & SAAJ | ) | |
| HOSPITALITY, INC; RAMADA | ) | |
| WORLDWIDE, INC; YASH ENTERPRISES, | ) | |
| INC; HOWARD JOHNSON | ) | |
| INTERNATIONAL, INC; NOOR HOTEL, LLC; | ) | |
| AMBICA, LLC; OM, LLC; INDRA, LLC; AND | ) | |
| G6 HOSPITALITY FRANCHISING, LLC, | ) | |
| | ) | |
| Defendants. | ) | |

## MOTION TO DISMISS OF DEFENDANT STEVE KETTER

Jessica L. Dark, OBA #31236
W. Riley Nester, OBA #36222
PIERCE COUCH HENDRICKSON
  BAYSINGER & GREEN, L.L.P.
1109 N. Francis Ave.
Oklahoma City, OK 73106
PH:    (405) 235-1611
FX:    (405) 235-2904
jdark@piercecouch.com
rnester@piercecouch.com
*Attorneys for Defendant Steve Ketter*

July 30, 2025

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ...................................................................................ii

INTRODUCTION ............................................................................................... 1

STANDARD OF REVIEW ................................................................................... 2

ARGUMENTS AND AUTHORITIES ................................................................... 3

    **I.**    **PLAINTIFF FAILED TO PROPERLY EFFECT SERVICE OF PROCESS** ................................................................................................ 3

    **II.**    **PLAINTIFF'S FAILURE TO DISCLOSE HER IDENTITY THREATENS THIS COURT'S JURISDICTION** ..................................... 4

    **III.**    **PLAINTIFF'S CLAIMS UNDER OKLAHOMA'S HUMAN TRAFFICKING STATUTES HAVE EXPIRED** ......................................... 6

    **IV.**    **PLAINTIFF'S TRAFFICKER'S CRIMINAL PROSECUTION, IF ONGOING, MANDATES A STAY OF THE PROCEEDINGS** .............. 8

    **V.**    **PLAINTIFF FAILS TO STATE A CLAIM UPON WHICH RELIEF MAY BE GRANTED** ............................................................................... 9

        **A. Plaintiff's Complaint fails to provide Defendants fair notice of the claims against them** ............................................................................... 9

        **B. Plaintiff's Complaint fails to state a claim against Defendant Ketter under 18 U.S.C. § 1591(a)(1)** ................................................................ 11

        **C. Plaintiff's Complaint fails to state a claim against Defendant Ketter under 18 U.S.C. § 1591(a)(2)** ................................................................ 13

        **D. Oklahoma's human trafficking statutes provide civil relief against perpetrators only** ................................................................................. 19

CONCLUSION .................................................................................................. 20

CERTIFICATE OF SERVICE ........................................................................... 22

# TABLE OF AUTHORITIES

**Cases** **Page(s)**

*A.B. v. Hilton Worldwide Holdings, Inc.*,
  484 F.Supp.3d 921 (D. Or. 2020)....................................................................................11
*Ashcroft v. Iqbal*,
  556 U.S. 662, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009) ..........................................2, 9
*Bell Atlantic Corp. v. Twombly*,
  550 U.S. 544 (2007) ................................................................................................2, 9, 10
*Bistline v. Parker*,
  918 F.3d 849 (10th Cir. 2019)..................................................................................14, 15
*Bucco v. W. Iowa Tech Cmty. Coll.*,
  555 F.Supp.3d 628 (N.D. Iowa 2021) ...........................................................................11
*Cory v. Allstate Ins.*,
  583 F.3d 1240 (10th Cir. 2009).......................................................................................2
*Doe v. Kansas State. Univ.*,
  2:20-CV-02258-HLT-TJJ, 2021 WL 84170 (D. Kan. Jan. 11, 2021)..........................5, 6
*Escobar v. Mora*,
  496 Fed. App'x. 806 (10th Cir. 2012)..........................................................................2, 9
*Fed. Deposit Ins. Corp. v. Oaklawn Apartments*,
  959 F.2d 170 (10th Cir. 1992).........................................................................................3
*Frey v. Town of Jackson, Wyoming*,
  41 F.4th 1223 (10th Cir. 2022)......................................................................................19
*G.W. v. Northbrook Indus., Inc.*,
  739 F.Supp.3d 1243 (N.D. Ga. 2024) ...........................................................................11
*Habyarimana v. Kagame*,
  821 F.Supp.2d 1244 (W.D. Okla. 2011) ..........................................................................3
*Jenkins v. City of Topeka*,
  136 F.3d 1274 (10th Cir. 1998).......................................................................................3
*Lusk v. Midland Credit Mgmt., Inc.*,
  2024 WL 4171355 (W.D. Okla. Sept. 12, 2024)...........................................................10
*M.M. v. Zavaras*,
  139 F.3d 798 (10th Cir. 1998).........................................................................................4
*Nat'l Commodity & Barter Ass'n, Nat'l Commodity Exch. v. Gibbs*,
  886 F.2d 1240 (10th Cir. 1989)....................................................................................4, 5
*Omni Cap. Int'l, Ltd. v. Rudolf Wolff & Co., Ltd.*,
  484 U.S. 97, 108 S.Ct. 404 (1987) ..................................................................................3
*Pyatt v. Secure Live Media, LLC*,
  2022 WL 22883099 (S.D. Fla. 2022)............................................................................11
*Ricchio v. McLean*,
  853 F.3d 553 (1st Cir. 2017) ...................................................................................14, 15

*U.S. v. Jungers*,
  702 F.3d 1066 (8th Cir. 2013) ........................................................................................... 12
*United States ex rel. Little v. Triumph Gear Sys., Inc.*,
  870 F.3d 1242 (10th Cir. 2017) ........................................................................................... 5
*W.N.J. v. Yocom*,
  257 F.3d 1171 (10th Cir. 2001) ........................................................................................... 5

## Statutes

18 U.S.C. § 1595 ....................................................................................................... 1, 8
18 U.S.C. § 1595(a) ..................................................................................................... 12
18 U.S.C. § 1591(a)(1) ......................................................................................... 11, 12, 13
18 U.S.C. § 1591(a)(2) ......................................................................................... 12, 13, 14
18 U.S.C. § 1595(b)(1) ................................................................................................ 8, 9

## Rules

Fed. R. Civ. P. 4(2)(C) ................................................................................................ 3, 4
Fed. R. Civ. P. 4(e)(2) .................................................................................................. 3
Fed. R. Civ. P. 8 ......................................................................................................... 2
Fed. R. Civ. P. 10(A) ................................................................................................. 1, 4

## MOTION TO DISMISS OF DEFENDANT STEVE KETTER

Defendant, Steve Ketter ("Defendant"), hereby respectfully submits this Motion to Dismiss Plaintiff's Complaint (Doc. 1-2[1]) pursuant to Rules 12(b)(2), 12(b)(4) and 12(b)(6) of the Federal Rules of Civil Procedure. In support hereof, Defendant submits the following:

## INTRODUCTION

Plaintiff filed her Complaint on March 19, 2025, asserting claims against many Defendants under the Trafficking Victims Protection Reauthorization Act ("TVPRA"), 18 U.S.C. § 1595, and Oklahoma human trafficking statutes, 21 O.S. § 748 et seq. Included among the defendants are Plaza Hotels, LLC ("the Plaza") and its two owners, Michael Wiley and Steve Ketter. The case was removed to this Court on April 23, 2025. (Doc. No. 1).

Plaintiff's Complaint is both marred by procedural defects and fails to allege facts sufficient to support a claim for relief. Firstly, Plaintiff failed to properly effect service of process. Further, though asserting severe allegations, Plaintiff has filed under a pseudonym without seeking leave of Court or offering any justification for doing so, contrary to controlling Tenth Circuit precedent and the plain language of Rule 10(A) of the Federal Rules of Civil Procedure. Plaintiff also alleges time-barred state law claims and, critically, her allegations are vague, conclusory, and devoid of the basic identifying information

---

[1] Plaintiff filed her Petition in the District Court of Oklahoma County on March 19, 2025, which was subsequently removed to this Court. (Doc. 1). To be consistent with this Court's nomenclature, Defendant refers to the operative pleading as the "Complaint."

1

necessary to permit a meaningful defense. Plaintiff does not identify herself, her alleged trafficker, or narrowed timeframes in which Defendant's alleged conduct occurred. As a result, Defendant is left to guess what conduct is at issue and when it supposedly took place, placing Defendant at a disadvantage in attempting to respond or otherwise address these claims. Notwithstanding all of the foregoing, Plaintiff also fails to allege facts sufficient to state a plausible claim for relief under the TVPRA or Oklahoma human trafficking statutes.

## STANDARD OF REVIEW

The *Twombly/Iqbal* pleading standard is well-known by this Court. A complaint must present a facially plausible claim for relief. *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 555 (2007). The quality of these factual allegations must create more than speculation about the plaintiff's chances of recovery. *Id.* The United States Supreme Court has further held that, while the pleading standard of Fed. R. Civ. P. 8 does not require detailed factual allegations, "it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal,* 556 U.S. 662, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009). If the complaint contains only boilerplate labels and conclusory allegations, dismissal is proper because "conclusory allegations without supporting factual averments are insufficient to state a claim upon which relief can be based." *Escobar v. Mora,* 496 Fed. App'x. 806, 816 (10th Cir. 2012) (citing *Cory v. Allstate Ins.,* 583 F.3d 1240, 1244 (10th Cir. 2009)).

2

## ARGUMENTS AND AUTHORITIES

### I. PLAINTIFF FAILED TO PROPERLY EFFECT SERVICE OF PROCESS.

Plaintiff has the burden of establishing the validity of the service of process. *See Fed. Deposit Ins. Corp. v. Oaklawn Apartments*, 959 F.2d 170, 174 (10th Cir. 1992); *Jenkins v. City of Topeka*, 136 F.3d 1274, 1275 (10th Cir. 1998) (recognizing that effective service is a "precondition to suit). "Before a federal court may exercise personal jurisdiction over a defendant, the procedural requirement of service of summons must be satisfied." *Habyarimana v. Kagame*, 821 F.Supp.2d 1244, 1251 (W.D. Okla. 2011) (quoting *Omni Cap. Int'l, Ltd. v. Rudolf Wolff & Co., Ltd.,* 484 U.S. 97, 104, 108 S.Ct. 404, 409 (1987)). Neither actual knowledge of the plaintiff's complaint nor simply naming the person in the caption of the complaint will subject a defendant to personal jurisdiction if service was not made in substantial compliance with Rule 4. *Id.* at 1255. Fed. R. Civ. P. 4(e)(2) provides that service of a summons and complaint may be effected by:

> (A) delivering a copy of the summons and of the complaint to the individual personally; (B) leaving a copy of each at the individual's dwelling or usual place of abode with someone of suitable age and discretion who resides there; or (C) delivering a copy of each to an agent authorized by appointment or by law to receive service of process.

Here, Plaintiff attempted to serve Defendant Ketter by leaving a copy of the summons and complaint at his residence with his adult son, while Ketter was out of town. As Defendant Ketter is the registered agent for the Plaza, Plaintiff's attempt to serve Ketter's son was likewise an attempt to serve Defendant Plaza Hotels. Fed. R. Civ. P. 4(2)(C). Although Defendant Ketter's son is of suitable age and discretion, he does not

reside at Ketter's home; he was merely visiting as he resides in Piedmont, Oklahoma. Defendant Ketter's son is not authorized to accept service on his father's behalf, and Plaintiff has not alleged that he is so authorized, nor that he resides with Ketter.

Accordingly, Plaintiff has failed to effect service on Defendant Ketter in accordance with Rule 4, and he should therefore be dismissed from this suit for lack of personal jurisdiction.

## II.    PLAINTIFF'S FAILURE TO DISCLOSE HER IDENTITY THREATENS THIS COURT'S JURISDICTION.

The Tenth Circuit Court of Appeals has analyzed the threat to jurisdiction posed by anonymous filings. *Nat'l Commodity & Barter Ass'n, Nat'l Commodity Exch. v. Gibbs,* 886 F.2d 1240, 1245 (10th Cir. 1989). There, the Tenth Circuit ruled *sua sponte* that because the plaintiffs brought suit anonymously without first seeking the court's permission, the district court lacked subject matter jurisdiction. *Id.* The court based its ruling on Rule 10(a) of the Federal Rules of Civil Procedure, noting that the Rules "make no provision for suits by persons using fictitious names or anonymous plaintiffs." *Id.* Failure to adhere to Rule 10 meant that, with respect to the anonymous plaintiffs, no case had been commenced. *Id.* Lack of jurisdiction therefore presented an additional justification for upholding the lower court's dismissal of the case. "In this case, the unnamed plaintiffs have made no request to the district court for permission to proceed anonymously, nor have they otherwise disclosed their identities to the court or to the defendants […]. We therefore dismiss the complaint as to the unnamed members of the NCBA […]." *Id.* This precedent has been reaffirmed repeatedly in the Circuit. *See, e.g., M.M. v. Zavaras,* 139 F.3d 798, 804 (10th Cir. 1998);

4

*W.N.J. v. Yocom,* 257 F.3d 1171, 1172-73 (10th Cir. 2001); *United States ex rel. Little v. Triumph Gear Sys., Inc.,* 870 F.3d 1242, 1250 (10th Cir. 2017).

Moreover, subsequent Tenth Circuit precedent has held that the jurisdictional defect presented by filing anonymously, without permission, may not be cured *post factum.* In *Doe v. Kansas State Univ.,* the plaintiff filed under the name "John Doe" without first seeking leave of the district court. No. 2:20-CV-02258-HLT-TJJ, 2021 WL 84170, at *2 (D. Kan. Jan. 11, 2021). In response to the anonymous filing, the magistrate judge issued a Notice and Order to Show Cause requiring the plaintiff to demonstrate why he should be allowed to proceed anonymously. *Id.* at *1. The plaintiff then belatedly argued that he would face stigma and harm to his reputation should he be required to proceed under his own name. The district court dismissed the case, holding that "Plaintiff's failure to seek permission at the outset of this case cannot now be rectified or cured by his subsequent request to do so after the fact." *Id.* at *2. Based on *National Commodity,* the failure of the plaintiff to name himself in his original filing meant that "[e]ffectively, no case has properly been commenced […]." *Id.*

Here, Plaintiff's conduct mirrors (and in some respects, exceeds) the procedural missteps described in *National Commodity* and its progeny. Plaintiff has not sought leave of Court to proceed pseudonymously, nor has she offered any justification for doing so. Though the Complaint passingly references the stigma associated with prostitution throughout its "Pimpology" section, it offers no argument that disclosure of Plaintiff's identity would result in stigma or reputational harm. Fleeting references cannot substitute for a formal motion seeking leave to proceed under a pseudonym, supported by the

5

requisite factual showing. As the Court recognized in *Doe v. Kansas State Univ.*, the failure to seek permission at the outset of the case to proceed anonymously "cannot now be rectified or cured by [a] subsequent request to do so after the fact." 2021 WL 84170, at *2.

Because Plaintiff has failed to seek or obtain leave to proceed anonymously, this Court lacks subject matter jurisdiction over her claims, and dismissal is therefore required.

### III. PLAINTIFF'S CLAIMS UNDER OKLAHOMA'S HUMAN TRAFFICKING STATUTES HAVE EXPIRED.

Oklahoma's human trafficking statutes provide a civil remedy for the recovery of damages by a private citizen based upon certain criminal conduct. 21 O.S. § 748 et seq. In Oklahoma, an action upon a "liability created by statute other than forfeiture or penalty" must be brought within three (3) years of the underlying event. 12 O.S. § 95(A)(2). The statute of limitations for claims brought pursuant to 21 O.S. § 748 does not begin to run until the latest of three distinct events: (1) "the victim's emancipation from the defendant," (2) "the victim's twenty-first birthday;" or, (3) "the plaintiff discovers or reasonably should have discovered that he or she was a victim of human trafficking and that the defendant caused, was responsible for, or profited from the human trafficking." 21 O.S. § 748.2(B).

 Based upon the facts alleged in the Complaint, a reasonable inference may be drawn that Plaintiff's claims against Defendant expired, at the very latest, sometime in 2024, prior to the Complaint's filing.

Plaintiff alleges that, before meeting Domino, she endured an abusive relationship "as a teenager," was "briefly incarcerated," and had rebuilt her life—finding a "fiancé, a job, a home for her children, and her sobriety"—all prior to her fiancé's death in 2020.

6

(Doc. No. 1-2, ¶¶ 71-72). The year is now 2025. These facts make clear that Plaintiff was well into adulthood by 2020. It is reasonable to infer that Plaintiff's twenty-*fourth* (24th) birthday passed prior to the filing of her Complaint, eliminating any possibility that the statute of limitations was tolled under her twenty-first birthday.

Further, the Complaint establishes that Plaintiff knew or should have known that she was a victim of human trafficking by "early 2021," when she met Domino and began performing commercial sex work. (Doc. No. 1-2, ¶¶ 73-75). Should this event mark the commencement of the limitations period under 21 O.S. § 748.2(B), then—even under the most generous reading of the facts—Plaintiff's claims would have expired by early 2024, well before this action was filed.

Finally, the Complaint alleges that Plaintiff's trafficking continued until the "beginning of 2022," when Domino was arrested. (Doc. No. 1-2, ¶ 81). With respect to Defendant Ketter, it is unclear from the Complaint when exactly Plaintiff alleges she was subject to his alleged trafficking violations, as her allegations of his involvement are vague and temporally undefined. Plaintiff alleges that she met Domino at the Plaza in "early 2021," and that Domino resided there at that time. (Doc. No. 1-2, ¶¶ 73, 96-97). As for Defendant Ketter, Plaintiff alleges only that he "was aware of" the situation, either because he was told by Defendant Wiley or happened to encounter Domino during visits to the Plaza. (Doc. No. 1-2, ¶ 102). Moreover, there is no allegation that Defendant Ketter was aware of any trafficking conduct occurring after 2021. To the contrary, the Complaint identifies a sequence of hotel locations where Plaintiff claims to have been trafficked throughout 2021, and 2022—beginning with the Plaza, before noting trafficking at Motel

7

6 in "early 2022;" at Super 8 OKC Airport in "August 2022;" and, at the Extended Stay, Days Inn, Ramada, and Howard Johnson hotels for varying periods thereafter. (Doc No. 1-2, ¶¶ 107, 126, 138, 148, 162, 171, 182). The Plaza is listed first in this progression and is tied only to alleged trafficking that began in early 2021. Taken together, these allegations support the inference that any trafficking which Defendant Ketter was purportedly aware of concluded well before 2022. The date of Plaintiff's check-out from the Plaza therefore marks the latest plausible emancipation with respect to Defendant Ketter. On that basis, the statute of limitations under 21 O.S. § 748.2(B) would have expired well before Plaintiff filed her Complaint on March 19, 2025.

## IV.    PLAINTIFF'S    TRAFFICKER'S    CRIMINAL    PROSECUTION,    IF ONGOING, MANDATES A STAY OF THE PROCEEDINGS.

Though Plaintiff brings claims against the defendants pursuant to the Trafficking Victims Protection and Reauthorization Act ("TVPRA"), codified at 18 U.S.C. § 1595, the TVPRA expressly mandates a stay of any civil action filed under it while a related criminal prosecution is pending. Specifically, § 1595(b)(1) provides: "Any civil action filed under subsection (a) shall be stayed during the pendency of any criminal action arising out of the same occurrence in which the claimant is the victim."

Here, Plaintiff alleges that "even after his arrest in 2022," Domino continued to exert control over her through members of his affiliated gang. (Doc. No. 1-2, ¶ 81). This allegation suggests that Plaintiff's claims arise from the same occurrence or course of conduct that is the subject of any ongoing criminal prosecution involving Domino.

If such a criminal proceeding is currently pending, the plain terms of § 1595(b)(1) require that this civil action be stayed in its entirety. Plaintiff's exclusive use of a pseudonym for Domino renders the defendants' determination of whether a related criminal prosecution is currently pending impossible. As such, Defendant requests that the Complaint be dismissed as it fails to state sufficient facts or information from which one can discern whether a stay is appropriate.

## V.    PLAINTIFF FAILS TO STATE A CLAIM UPON WHICH RELIEF MAY BE GRANTED.

Notwithstanding the procedural defects relayed above, Plaintiff's Complaint fails to allege facts sufficient to state a plausible claim for relief.

### A. Plaintiff's Complaint fails to provide Defendants fair notice of the claims against them.

Even if Plaintiff's Complaint nominally alleges claims under the TVPRA or Oklahoma's human trafficking statutes, it nevertheless fails to satisfy the baseline pleading requirements of Rule 8. The Federal Rules demand that a complaint contain enough factual matter to give defendants fair notice of the nature of the claims and the grounds upon which they rest. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Dismissal is appropriate where a complaint consists only of "boilerplate labels and conclusory allegations," *Escobar v. Mora*, 496 F. App'x 806, 816 (10th Cir. 2012), or where the factual content fails to nudge the claims "across the line from conceivable to plausible." *Twombly*, 550 U.S. at 570. "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The burden is on the plaintiff to "frame a

complaint with enough factual matter (taken as true) to suggest that he or she is entitled to relief." *Lusk v. Midland Credit Mgmt., Inc.*, CIV-24-381-R, 2024 WL 4171355, at *1 (W.D. Okla. Sept. 12, 2024).

Although Plaintiff separates her allegations by defendant and attributes specific conduct to each, the Complaint fails to allege who was involved or when any of the alleged events supposedly occurred—omissions so fundamental that they prevent Defendant from even beginning to mount a defense. Most notably, the Complaint does not identify the Plaintiff, her trafficker, or any specific dates of her interactions with Defendant Wiley that Defendant Ketter was purportedly "aware of." Instead, it relies on vague and expansive timeframes, such as "early 2021[,]" or "the beginning of 2022[,]" without identifying when Plaintiff allegedly stayed at the Plaza, how long she was there, or the specific period during which Defendant's alleged conduct occurred. These omissions are not a mere technical deficiency; they directly impede Defendant's ability to properly prepare a defense. Defendant cannot meaningfully investigate or respond to allegations when it is unclear who is making them or when they allegedly occurred. Defendant cannot determine whether the allegations correspond to any actual guest stays, staff interactions, or other events within this Defendant's knowledge or records. Though *Twombly* directs that Plaintiff's factual allegations "must create more than speculation about the plaintiff's chances of recovery[,]" Plaintiff leaves Defendant and this Court no choice but to speculate. *Twombly* at 555 (2007).

By refusing to disclose the identity of either the Plaintiff or her alleged trafficker, and by failing to provide any concrete dates or timelines, Plaintiff has effectively insulated

her claims from scrutiny and left Defendant guessing as to what conduct he must defend against. These omissions deprive Defendant of the fair notice to which he is entitled under Rule 8. See *G.W. v. Northbrook Indus., Inc.*,739 F.Supp.3d 1243, 1251 (N.D. Ga. 2024) ("[T]he plaintiff must connect the dots between the defendant's and the trafficker's actions and show how the defendant participated in the venture with the traffickers."); *see also Pyatt v. Secure Live Media, LLC,* 2022 WL 22883099, at \*5 (S.D. Fla. 2022) (Plaintiff's "allegations are impermissibly vague and conclusory[,]" including the "general and vague statements that (1) at unspecified dates; (2) unidentified individuals 'coerced' him into having sex with unnamed women[.]"); *A.B. v. Hilton Worldwide Holdings, Inc.*, 484 F.Supp.3d 921, 940-41 (D. Or. 2020) (Victim's vague allegations were insufficient to state a claim under the TVPRA); *Bucco v. W. Iowa Tech Cmty. Coll.*, 555 F.Supp.3d 628, 642 (N.D. Iowa 2021) ("Without details as to who did what," the Court "cannot determine whether the allegations are sufficient to state a TVPRA claim against each defendant.").

Because Plaintiff's allegations lack the factual specificity necessary to render them plausible or actionable, her claims should be dismissed.

**B. Plaintiff's Complaint fails to state a claim against Defendant Ketter under 18 U.S.C. § 1591(a)(1).**

Plaintiff brings a claim against Defendant Ketter for perpetrator liability under 18 U.S.C. § 1591(a)(1). (Doc. No. 1-2, ¶ 224). A perpetrator for the purposes of § 1591(a)(1) is defined as:

(a) Whoever knowingly—

(1) in or affecting interstate or foreign commerce, or within the special maritime and territorial jurisdiction of the United States, recruits, entices,

11

> harbors, transports, provides, obtains, advertises, maintains, patronizes, or solicits by any means a person;
>
> knowing, or, … in reckless disregard of the fact, that means of force, threats of force, fraud, coercion …, or any combination of such means will be used to cause the person to engage in a commercial sex act, … shall be punished as provided in subsection (b).

Thus, in order to state a claim against Defendant Ketter under § 1591(a)(1), Plaintiff must plausibly allege that Ketter knowingly recruited, enticed, harbored, transported, provided, obtained, advertised, maintained, patronized, or solicited her—while knowing or recklessly disregarding that force, threats of force, fraud, or coercion were being used to cause her to engage in commercial sex acts. *Id.* Defendant Ketter's mens rea requirement under § 1591 is addressed in the following argument section related to § 1591(a)(2), as Plaintiff fails to allege that Ketter engaged in any of the specific trafficking verbs found in § 1591(a)(1).

Plaintiff's *sole* allegation of Defendant Ketter's involvement is that, "[o]n information and belief, Ketter … was aware" that Defendant Wiley met Domino, and that Defendant Wiley knew that Domino was Nancy's pimp and was forcing her to engage in commercial sex acts by threating physical abuse and drug withdrawal, "either because Wiley told [Ketter] or because [Ketter] encountered Domino during his visits to the Plaza." (Doc No. 1-2, ¶ 102).

The provisions of § 1591(a)(1) are aimed at direct traffickers, such as pimps, transporters, "johns," etc., while § 1591(a)(2) is better suited for indirect facilitators—like Defendant Ketter is alleged to have been—such as hotel owners, landlords, etc. *See U.S. v. Jungers*, 702 F.3d 1066, 1071 (8th Cir. 2013). This distinction is also supported by the plain language of 18 U.S.C. § 1595(a), which distinguishes between "perpetrator[s]" (§

12

1591(a)(1)) and "whoever knowingly benefits, or attempts or conspires to benefit, financially or by receiving anything of value from participation in a venture which that person knew or should have known has engaged in an act in violation of" the TVPRA (§ 1591(a)(2)). Again, Plaintiff's single allegation related to any conduct of Defendant Ketter does not allege that he recruited, enticed, harbored, transported, provided, obtained, advertised, maintained, patronized, or solicited her—only that he must have known that Defendant Wiley had allegedly done so, "either because" Wiley told him or he encountered Domino during his visits to the Plaza. This is clearly insufficient to support liability under § 1591(a)(1), and this claim against Defendant Ketter should therefore be dismissed.

### C. Plaintiff's Complaint fails to state a claim against Defendant Ketter under 18 U.S.C. § 1591(a)(2).

Plaintiff also brings a claim against Defendant Ketter for venture liability under 18 U.S.C. § 1591(a)(2). (Doc. No. 1-2, ¶ 225). Those subject to venture liability under § 1591(a)(2) are:

(a) Whoever knowingly—

(2) benefits, financially or by receiving anything of value, from participation in a venture which has engaged in an act described in violation of paragraph (1),

knowing, or, … in reckless disregard of the fact, that means of force, threats of force, fraud, coercion …, or any combination of such means will be used to cause the person to engage in a commercial sex act, … shall be punished as provided in subsection (b).

Thus, in order to state a claim against Defendant Ketter under § 1591(a)(2), Plaintiff must plausibly allege that Ketter knowingly benefitted from his participation in a venture that

engaged in sex trafficking, and that he knew or recklessly disregarded that force, threats, fraud, or coercion were being used to cause her to engage in commercial sex acts. *Id.*

As an initial matter, Defendant Ketter denies having benefitted in any way from the events alleged in Plaintiff's Complaint. However, solely for the purpose of this Motion to Dismiss, Defendant Ketter does not challenge whether Plaintiff adequately pled the "benefit" element under § 1591(a)(2). Instead, Defendant moves directly to addressing the Complaint's insufficient allegations regarding his requisite mens rea.

To plausibly establish venture liability under the TVPRA, a plaintiff must allege facts demonstrating active participation or at least an ongoing, knowing relationship between the defendant and the trafficker. Merely providing basic hotel services or renting a room to someone engaged in sex trafficking does not constitute "participation in a venture." The Tenth Circuit has adopted reasoning from the First Circuit to clarify that a "venture" under the TVPRA requires facts showing a common undertaking or collaborative involvement. *See Bistline v. Parker*, 918 F.3d 849, 874-75 (10th Cir. 2019) (applying *Ricchio v. McLean*, 853 F.3d 553 (1st Cir. 2017)).

In *Ricchio*, the hotel owners ("Husband and Wife"), had previously collaborated in unspecified "commercial dealings" with the plaintiff's trafficker. *Ricchio*, 853 F.3d at 555. The plaintiff alleged that her trafficker "physically and sexually abused [plaintiff], repeatedly raping her, starving her and drugging her, and leaving her visibly haggard and bruised" at the hotel. *Id.* While the plaintiff was captive at the hotel, the Husband and Wife "enthusiastically expressed [intent to reinstate their commercial dealings] by exchanging high-fives in the motel's parking lot while speaking about 'getting things going again'"

14

under circumstances where the abusive and coercive had already become apparent to the hotel owners. *Id.* Specifically, the Husband and Wife had ignored Plaintiff's plea for help and their employees watched passively as Plaintiff was drug across the parking lot and kicked by her trafficker during an attempted escape. *Id*. The Wife also visited Plaintiff's room for payment and saw her physical decline. *Id.* Where these facts were alleged, the First Circuit found Plaintiff plausibly stated a claim for venture liability against the Husband and Wife hotel owners. *Id*. at 556.

In *Bistline*, the Tenth Circuit applied the First Circuit's illustration of "venture" to a forced labor fact pattern where members of the Fundamentalist Church of Jesus Christ of Latter-Day Saints ("FLDS") alleged their trafficker's attorney had actual knowledge of the trafficker's practices with underage girls, was instructed to ignore legal actions and complaints against the trafficker, and made an active effort to evade complaints of trafficking by setting up a specific trust scheme designed expressly for the purpose of facilitating the trafficker's crimes and threatening victims. *Bistline*, 918 F.3d at 874-75. The Tenth Circuit found that the FLDS plaintiffs adequately stated a claim for venture liability because the defendant attorney, like the hotel owners in *Ricchio*, had knowledge "beyond the generic religious practices" of the Church including his receipt of graphic evidence of ceremonial rape of minors and forced manual labor and then continued to engage in dealings with the trafficker. *Id.* at 875.

In contrast, here, Plaintiff's *sole* allegation of Defendant Ketter's involvement is that, "[o]n information and belief, Ketter … was aware" that Defendant Wiley knew Plaintiff was being trafficked by Domino, "either because Wiley told [Ketter] or because

15

[Ketter] encountered Domino during his visits to the Plaza." (Doc No. 1-2, ¶ 102). Yet, Plaintiff provides no factual basis or context for how she came to this speculative conclusion. She does not allege what information Wiley supposedly conveyed to Defendant Ketter, when any such conversation occurred, or even if such a conversation actually happened. Plaintiff likewise fails to describe the circumstances of Defendant Ketter's supposed "encounters" with Domino, or how such casual encounters (if they even occurred) would inform Defendant Ketter that trafficking was occurring at the Plaza. Indeed, traffickers do not typically advertise their illegal activities, especially to individuals who control or manage hotel premises. Plaintiff's own allegations only buttress this point and highlight their speculative nature, acknowledging that "many" victims of sex trafficking "are not obviously victims." (Doc. 1-2, ¶ 23). She further recognizes that hotels, by their very nature, offer anonymous and temporary accommodations that make it challenging to detect illegal activities. (Doc. 1-2, ¶¶ 51-52). Unlike other Defendant hotels, where Plaintiff explicitly alleges conditions conducive to employee notice, Plaintiff does not claim that Defendant Ketter encountered guests regularly or that the layout of the Plaza facilitated such encounters. In fact, Plaintiff acknowledges that, unlike other locations, johns did not need to pass through the Plaza's lobby or front desk area to access rooms, significantly decreasing the likelihood of incidental encounters by hotel ownership or staff. (Doc. 1-2, ¶ 94).

Further, Plaintiff does not allege any facts that would alert Defendant Ketter or other Plaza employees to the presence of trafficking, such as acts of force against Plaintiff, visible signs of abuse, or behaviors that would reasonably indicate trafficking. Instead,

16

Plaintiff alleges that Defendant Wiley exchanged rooms for sex on certain occasions and that it was known *among sex workers frequenting the Plaza* that Wiley engaged in such conduct. (Doc. No. 1-2, ¶¶ 98-101). Plaintiff does not allege that Defendant Ketter had knowledge of these exchanges or that any overt indicators of trafficking activity occurred in his presence or were otherwise known to him or staff. In contrast, Plaintiff makes numerous detailed allegations describing specific conduct at other Defendant hotels, which provided clear notice of sex trafficking activities:

- Extended Stay America – Plaintiff alleges that: pimps and prostitutes frequently loitered in the lobby, either waiting to collect money or waiting for johns to arrive; staff allowed johns to get keys to Plaintiff's room when she was not present and their names were not on the reservation; Plaintiff waited by the elevator or in the lobby while another girl was seeing a client in the room; Plaintiff once chased a john through the lobby wearing nothing but a slip dress shouting "give me my money," and Extended Stay employees witnessed this; Domino would count the number of condoms in the hotel room to ensure that enough clients were being seen; during an altercation at the Extended Stay, Domino punched Plaintiff in the face, and the resulting bruise was clearly visible to employees; Plaintiff told an employee, while dressed in "unusually revealing attire," that she had a date coming. (Doc. No. 1-2, ¶¶ 111-114, 117, 119, 120)

- Motel 6 Bricktown – Plaintiff alleges that: she stayed at the Motel 6 on at least six occasions and saw at least 60 johns; front desk staff would notify her when people wanted sex or when a bus full of people arrived at the nearby bus stop; Plaintiff and other sex workers would advertise commercial sex to bus passengers directly outside the hotel office; Plaintiff's room rate would change based on the number of johns that employees thought she had seen on a given day; Domino's "homeboy" frequently monitored the premises and/or her visits. (Doc. No. 1-2, ¶¶ 126, 129-131, 137).

- Super 8 OKC Airport – Plaintiff alleges that: she reserved a room with a prepaid card and extended it with cash multiple times; she frequently escorted clients directly from the lobby to the room because they were wary of police stings; she would meet johns in the lobby in unusually revealing clothes that clearly indicated she engaged in sex work; some clients would enter the lobby, purchase sex from Plaintiff, and exit the lobby in a matter of seven minutes; condoms from those johns were left in the trash can of her room. (Doc. No. 1-2, ¶¶ 139-141, 145, 146).

17

- Days Inns – Plaintiff alleges that: she communicated with front desk employees about her sex work and would explicitly notify them that she had a client or "trick" coming; on multiple occasions, clients told front desk staff that Plaintiff would be back from her room to pay soon; Plaintiff had to ask front desk staff for more towels; Plaintiff and three other sex workers would frequently move back and forth between rooms when it was their turn to engage in commercial sex with a client; maintenance was called to the room because Plaintiff and other sex workers had clogged the toilet with used condoms; on one occasion, a client physically assaulted Plaintiff and dangled her from a balcony; traffickers were permitted to stand outside of hotel rooms to scare off clients and intimidate/starve sex workers into working for them. (Doc. No. 1-2, ¶¶ 149, 150, 152-155, 157, 159).

- Ramada – Plaintiff alleges that: on one occasion, she had to walk past the front desk and through the front door wearing nothing but a negligee; clients entered through the front door of the hotel to get to Plaintiff's room; Plaintiff once ran out of condoms and bought more in the hotel's lobby store; Plaintiff returned to buy more condoms in the lobby multiple times throughout that night, and there was no self-checkout, meaning front desk staff sold her the many condoms. (Doc No. 1-2, ¶¶ 165-169).

- Howard Johnson – Plaintiff alleges that: Domino once assaulted her at the hotel when he came to collect money; she walked through the hotel with bruises on her arms that the hotel staff she interacted with would have seen; Plaintiff, with visible bruises, asked the front desk staff if she could wait until her next client came to pay her outstanding deposit. (Doc No. 1-2, ¶¶ 173, 175, 177).

- Super 8 Prospect Ave. – Plaintiff alleges that: she shared a room with other sex workers; she engaged in commercial sex with multiple men a night, leaving behind an abundance of used condoms and towels; if she used too many towels in one visit, the Super 8 would raise her deposit by $25 the next time she checked in. (Doc. No. 1-2, ¶¶ 185-187).

Such detailed allegations related to Defendant Ketter and/or the Plaza are notably absent. Plaintiff has not identified any particular incident or practice involving her that would have reasonably alerted Defendant Ketter to ongoing trafficking. The sole allegation, that Defendant Ketter "was aware" of trafficking "**either** because Wiley told [Ketter] or because [Ketter] encountered Domino[,]" is purely conclusory, lacks factual

18

detail, and thus should not be afforded the presumption of truth. *Frey v. Town of Jackson, Wyoming*, 41 F.4th 1223, 1233 (10th Cir. 2022) ("An allegation is conclusory if it states an inference without underlying facts or if it lacks any factual enhancement. Conclusory allegations are not entitled to the assumption of truth."). Likewise, the allegations that Defendant Wiley exchanged rooms for sex on certain occasions and that it was known *among sex workers frequenting the Plaza* that Wiley engaged in such conduct provide no indication that Defendant Ketter had knowledge of these activities or that they would reasonably alert him to the presence of trafficking.

Accordingly, these allegations do not satisfy the "knowledge or reckless disregard standard" required to state a claim under § 1591(a)(2), and this claim should therefore be dismissed.

### D. Oklahoma's human trafficking statutes provide civil relief against perpetrators only.

Oklahoma provides a civil claim for relief for human trafficking victims. However, the claim exists in the context of perpetrator liability only, and not venture liability. In relevant part, 21 O.S. § 748.2 provides that "[a]ny person aggrieved by a violation of subsection B of Section 748 of this title may bring a civil action against the person or persons who committed the violation[.]"

21 O.S. § 748(B) provides: "It shall be unlawful to knowingly engage in human trafficking." Under 21 O.S. § 748(A)(4), "human trafficking" is defined as "modern-day slavery that includes, but is not limited to, extreme exploitation and the denial of freedom or liberty of an individual for purposes of deriving benefit from that individual's

commercial sex act or labor." As thoroughly relayed above, Defendant Ketter, by Plaintiff's own allegations, is not a "perpetrator," and there are no allegations in the Complaint to show that he, in any way, engaged in the "extreme exploitation" of Plaintiff. *See supra.*

Moreover, liability under Oklahoma human trafficking statutes requires **actual knowledge** per § 748(B), which is a higher standard than the "knowing or recklessly disregarding" standard under the TVPRA. As thoroughly relayed above, the Complaint does not contain any factual allegation which supports a plausible claim that Defendant Ketter had actual knowledge of any trafficking occurring at the Plaza. *See supra.*

Accordingly, independent of Plaintiff's statute of limitations deficiencies (and failure to properly serve Defendant Ketter), her claims against Defendant Ketter under Oklahoma's human trafficking statutes fail as a matter of law and should be dismissed.

## CONCLUSION

Plaintiff's suit is procedurally flawed in a manner that precludes this Court from reaching the merits. She has failed to properly effect service of process. She has failed to disclose her identity or seek leave to proceed anonymously, as required by governing law, undermining the Court's jurisdiction from the outset. Her state law claims under Oklahoma's human trafficking statutes are facially untimely. And, her allegations suggest the possibility of an ongoing criminal prosecution involving her trafficker, Domino, which would require a mandatory stay of the proceedings under federal law. Even setting those threshold issues aside—Plaintiff's Complaint still falls short of the basic pleading standards established by Rule 8 and fails to state a claim upon which relief may be granted

under the TVPRA or Oklahoma human trafficking statutes. Accordingly, Defendant Ketter

should be dismissed.

Respectfully Submitted,

s/ W. Riley Nester

Jessica L. Dark, OBA #31236
W. Riley Nester, OBA #36222
PIERCE COUCH HENDRICKSON
  BAYSINGER & GREEN, L.L.P.
1109 N. Francis Ave.
Oklahoma City, OK 73106
PH:   (405) 235-1611
FX:   (405) 235-2904
jdark@piercecouch.com
rnester@piercecouch.com
*Attorneys for Defendant Steve Ketter*

## CERTIFICATE OF SERVICE

   I certify that on this 30th day of July, 2025, I electronically transmitted the foregoing document to the Clerk of Court using the ECF System for filing and a transmittal of a Notice of Electronic Filing to all ECF registrants who have entered an appearance in this case:

| | |
|---|---|
| Fletcher D. Handley, Jr. | fdh@handleylaw.com |
| Geoffrey Parker | gparker@hiltonparker.com |
| Michael P. Kane | service@the702firm.com |
| Abby Rae Herren | |
| Eric A. Moen | eamoen@chubbucklaw.com |
| Charles D. Neal, Jr. | cdn@steidley-neal.com |
| Christopher T. Byrd | cbyrd@wwhgd.com |
| Jamie A. Rogers | jar@steidley-neal.com |
| Patrick E. Moore | pmoore@wwhgd.com |
| Philard L. Rounds, Jr. | plr@steidley-neal.com |
| Shubhra Mashelkar | smashelkar@wwhgd.com |
| David C. Senger | david@cswlawgroup.com |
| Hunter M. Siex | hunter@cswlawgroup.com |
| Kaylee P. Davis-Maddy | kmaddy@dsda.com |
| Michael S. Linscott | mlinscott@dsda.com |
| David Sager | david.sager@us.dlapiper.com |
| Mallory T. Biblo | Mallory.biblo@us.dlapiper.com |
| Alexander Gebert | alex.gebert@fmglaw.com |
| Robert Glenn Chadwick, Jr. | Bob.Chadwick@fmglaw.com |
| Edward J. Main | emain@secresthill.com |
| James K. Secrest, III | JSecrest3@secresthill.com |
| Justin L. Hall | jhall@secresthill.com |
| Daniel J. Thompson | dthompson@wsolaw.net |
| Emily Noble Richard | erichard@wsolaw.net |

         s/ W. Riley Nester
         W. Riley Nester