**IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA**

| | | |
|---|---|---|
| NANCY R., pseudonymously, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Case No. CIV-25-462-G |
| v. | ) | |
| | ) | |
| PLAZA HOTELS, LLC; STEVE KETTER | ) | |
| MICHAEL WILEY; OKC AIRPORT ES, LLC; | ) | |
| ESH STRATEGIES FRANCHISE, LLC; | ) | |
| KAJAL HOSPITALITY, INC; JALIYAN | ) | |
| HOSPITALITY, INC; SUPER 8 WORLDWIDE | ) | |
| INC; RAJ KRUPA HOTEL, LLC; DAYS INNS | ) | |
| WORLDWIDE, INC; CHAND & SAAJ | ) | |
| HOSPITALITY, INC; RAMADA | ) | |
| WORLDWIDE, INC; YASH ENTERPRISES, | ) | |
| INC; HOWARD JOHNSON | ) | |
| INTERNATIONAL, INC; NOOR HOTEL, LLC; | ) | |
| AMBICA, LLC; OM, LLC; INDRA, LLC; AND | ) | |
| G6 HOSPITALITY FRANCHISING, LLC, | ) | |
| | ) | |
| Defendants. | ) | |

**MOTION TO DISMISS OF PLAZA HOTELS, LLC**

Defendant, Plaza Hotels, LLC ("Defendant"; "the Plaza"), hereby respectfully

submits this Motion to Dismiss Plaintiff's Complaint (Doc. 1-2[1]) pursuant to Rules

12(b)(2), 12(b)(4) and 12(b)(6) of the Federal Rules of Civil Procedure. In support hereof,

Defendant submits the following:

---

[1] Plaintiff filed her Petition in the District Court of Oklahoma County on March 19, 2025, which was subsequently removed to this Court. (Doc. 1). To be consistent with this Court's nomenclature, Defendant refers to the operative pleading as the "Complaint."

**INTRODUCTION**

Plaintiff filed her Complaint on March 19, 2025, asserting claims against many Defendants under the Trafficking Victims Protection Reauthorization Act ("TVPRA"), 18 U.S.C. § 1595, and Oklahoma human trafficking statutes, 21 O.S. § 748 et seq. Included among the defendants are the Plaza and its two owners, Michael Wiley and Steve Ketter. The case was removed to this Court on April 23, 2025. (Doc. No. 1).

Plaintiff's Complaint is both marred by procedural defects and fails to allege facts sufficient to support a claim for relief. First, Plaintiff failed to properly effect service of process. Further, though asserting severe allegations, Plaintiff has filed under a pseudonym without seeking leave of Court or offering any justification for doing so, contrary to controlling Tenth Circuit precedent and the plain language of Rule 10(A) of the Federal Rules of Civil Procedure. Plaintiff also alleges time-barred state law claims and, critically, her allegations are vague, conclusory, and devoid of the basic identifying information necessary to permit a meaningful defense. Plaintiff does not identify herself, her alleged trafficker, or narrowed timeframes in which Defendant's alleged conduct occurred. As a result, Defendant is left to guess what conduct is at issue and when it supposedly took place, placing Defendant at a disadvantage in attempting to respond or otherwise address these claims. Notwithstanding all of the foregoing, Plaintiff also fails to allege facts sufficient to state a plausible claim for relief under the TVPRA or Oklahoma human trafficking statutes.

## STANDARD OF REVIEW

The *Twombly/Iqbal* pleading standard is well-known by this Court. A complaint must present a facially plausible claim for relief. *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 555 (2007). The quality of these factual allegations must create more than speculation about the plaintiff's chances of recovery. *Id.* The United States Supreme Court has further held that, while the pleading standard of Fed. R. Civ. P. 8 does not require detailed factual allegations, "it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal,* 556 U.S. 662, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009). If the complaint contains only boilerplate labels and conclusory allegations, dismissal is proper because "conclusory allegations without supporting factual averments are insufficient to state a claim upon which relief can be based." *Escobar v. Mora,* 496 Fed. App'x. 806, 816 (10th Cir. 2012) (citing *Cory v. Allstate Ins.,* 583 F.3d 1240, 1244 (10th Cir. 2009)).

## ARGUMENTS AND AUTHORITIES

**I.    PLAINTIFF FAILED TO PROPERLY EFFECT SERVICE OF PROCESS.**

The Plaza respectfully adopts and incorporates by reference the argument section of Defendant Ketter's Motion to Dismiss related to Plaintiff's failure to properly effect service of process. (Doc. No. 97, pp. 3-4).

**II.   PLAINTIFF'S FAILURE TO DISCLOSE HER IDENTITY THREATENS THIS COURT'S JURISDICTION.**

3

The Plaza respectfully adopts and incorporates by reference the argument section of Defendant Ketter's Motion to Dismiss related to Plaintiff's failure to disclose her identity. (Doc. No. 97, pp. 4-6).

### III. PLAINTIFF'S CLAIMS UNDER OKLAHOMA'S HUMAN TRAFFICKING STATUTES HAVE EXPIRED.

The Plaza respectfully adopts and incorporates by reference the argument section of Defendant Ketter's Motion to Dismiss related to the expiration of Plaintiff's state law trafficking claims. (Doc. No. 97, pp. 6-8). To be thorough, the Plaza further notes that the date of Plaintiff's check-out from the Plaza *also* marks the latest plausible emancipation with respect to the Plaza.

### IV. PLAINTIFF'S TRAFFICKER'S CRIMINAL PROSECUTION, IF ONGOING, MANDATES A STAY OF THE PROCEEDINGS.

The Plaza respectfully adopts and incorporates by reference the argument section of Defendant Ketter's Motion to Dismiss related to Plaintiff's trafficker's criminal prosecution. (Doc. No. 97, pp. 8-9).

### V. PLAINTIFF FAILS TO STATE A CLAIM UPON WHICH RELIEF MAY BE GRANTED.

Notwithstanding the procedural defects relayed above, Plaintiff's Complaint fails to allege facts sufficient to state a plausible claim for relief.

**A. Plaintiff's Complaint fails to provide Defendants fair notice of the claims against them.**

The Plaza respectfully adopts and incorporates by reference the argument section of Defendant Ketter's Motion to Dismiss related to the Complaint's failure to provide fair notice of the claims against the defendants. (Doc. No. 97, pp. 9-11).

**B. Plaintiff's Complaint fails to state a claim against the Plaza under 18 U.S.C. § 1591(a)(1).**

Plaintiff brings a claim against the Plaza for perpetrator liability under 18 U.S.C. § 1591(a)(1). (Doc. No. 1-2, ¶ 224). A perpetrator for the purposes of § 1591(a)(1) is defined as:

> (a) Whoever knowingly—
>
> (1) in or affecting interstate or foreign commerce, or within the special maritime and territorial jurisdiction of the United States, recruits, entices, harbors, transports, provides, obtains, advertises, maintains, patronizes, or solicits by any means a person;
>
> knowing, or, … in reckless disregard of the fact, that means of force, threats of force, fraud, coercion …, or any combination of such means will be used to cause the person to engage in a commercial sex act, … shall be punished as provided in subsection (b).

Thus, in order to state a claim against the Plaza under § 1591(a)(1), Plaintiff must plausibly allege that the Plaza knew or recklessly disregarded that force, threats of force, fraud, or coercion were being used to cause Plaintiff to engage in commercial sex acts. District courts apply general agency principles to assess whether knowledge of individual actors should be imputed to hotel entities. *See J.L. v. Best Western Int'l, Inc.*, 521 F.Supp.3d 1048, 1064 (D. Colo. 2021). As such, if Plaintiff seeks to hold the Plaza liable based on knowledge allegedly held by its co-owner, Defendant Wiley, she must plausibly allege that Wiley was acting as an agent of the Plaza *within the scope of his employment and for the Plaza's benefit*. *Id.*

Plaintiff presumably seeks to impute the alleged knowledge of Defendant Wiley onto the Plaza.[2] However, Defendant's Wiley's individual knowledge cannot be imputed to the Plaza absent allegations that he was acting within the scope of his duties and for the Plaza's benefit, rather than for his own personal gratification. *Id.* Here, Plaintiff's allegations related to the Plaza suggest that any benefit flowing from the alleged trafficking was received solely by Defendant Wiley, and not the Plaza. Plaintiff alleges she had sex with Defendant Wiley in exchange for a room, that other girls also had sex with Wiley in exchange for rooms, and that it was well known *among the sex workers who frequented the plaza* (not staff) that Wiley liked to trade rooms for sex. (Doc. No. 1-2, ¶¶ 98-100). These allegations implicate Defendant Wiley personally, not the Plaza. Indeed, the *only* allegation even remotely suggesting that the Plaza profited from these activities is that Defendant Wiley would, on some occasions, allow Plaintiff to pay for her room after seeing a client. (Doc. No. 1-2, ¶ 101). Even then, this allegation pertains only to Plaintiff and does not assert that Defendant Wiley extended similar arrangements to the "many" other sex workers who allegedly frequented the Plaza and were mentioned in the immediately preceding allegations, implying that this alleged arrangement was personal in nature— likely tied to his alleged sexual relationship with Plaintiff—and not one from which the Plaza benefitted. To this end, Plaintiff also acknowledges that the Plaza has since closed down, apparently unenriched by any trafficking venture. (Doc. No. 1-2, 105).

---

[2] For purposes of this Motion to Dismiss, the Plaza addresses Plaintiff's allegations as pled. The Plaza does not argue whether Defendant Wiley was or was not acting within the scope of his employment at any relevant time.

Moreover, Plaintiff does not allege that Plaza staff knew Domino, were aware of his purpose for visiting the Plaza, or witnessed any conduct that would suggest he was trafficking Plaintiff. Nor does she allege that Domino engaged in any overtly coercive conduct at the Plaza that would have alerted staff or management to his role, as she does for many other named hotel defendants herein. As such, the Complaint's allegations do not satisfy the "knowledge or reckless disregard" standard required to establish liability against the Plaza under § 1591(a)(1). *See, e.g., United States v. Todd*, 627 F.3d 329, 334 (9th Cir. 2010) ("The knowledge required of the defendant [for § 1591 liability] is such that if things go as he has planned, force, fraud or coercion will be employed to cause his victim to engage in a commercial sex transaction."); *United States v. Roy*, 630 F. App'x 169, 170–71 (4th Cir. 2015); *Ricchio v. McLean*, 853 F.3d 553, 558 (1st Cir. 2017).

### C. Plaintiff's Complaint fails to state a claim against the Plaza under 18 U.S.C. § 1591(a)(2).

Plaintiff also brings a claim against the Plaza for venture liability under 18 U.S.C. § 1591(a)(2). (Doc. No. 1-2, ¶ 225). Those subject to venture liability under § 1591(a)(2) are:

(a) Whoever knowingly—

(2) benefits, financially or by receiving anything of value, from participation in a venture which has engaged in an act described in violation of paragraph (1),

knowing, or, … in reckless disregard of the fact, that means of force, threats of force, fraud, coercion …, or any combination of such means will be used to cause the person to engage in a commercial sex act, … shall be punished as provided in subsection (b).

7

Thus, in order to state a claim against the Plaza under § 1591(a)(2), Plaintiff must plausibly allege that it knowingly benefitted from participation in a venture that engaged in sex trafficking, and that it knew or recklessly disregarded that force, threats, fraud, or coercion were being used to cause her to engage in commercial sex acts. *Id.*

As an initial matter, the Plaza denies having benefitted in any way from the events alleged in Plaintiff's Complaint. However, solely for the purpose of this Motion to Dismiss, the Plaza does not challenge whether Plaintiff adequately pled the "benefit" element for purposes of venture liability analysis under § 1591(a)(2). Instead, the Plaza moves directly to addressing the Complaint's insufficient allegations regarding the requisite mens rea.

To plausibly establish venture liability under the TVPRA, a plaintiff must allege facts demonstrating active participation or at least an ongoing, knowing relationship between the defendant and the trafficker. Merely providing basic hotel services or renting a room to someone engaged in sex trafficking does not constitute "participation in a venture." The Tenth Circuit has adopted reasoning from the First Circuit to clarify that a "venture" under the TVPRA requires facts showing a common undertaking or collaborative involvement between the plaintiff's trafficker and the defendant. *See Bistline v. Parker*, 918 F.3d 849, 874-75 (10th Cir. 2019) (applying *Ricchio v. McLean*, 853 F.3d 553 (1st Cir. 2017)).

As relayed above, Plaintiff's allegations are insufficient to impute Defendant Wiley's knowledge onto the Plaza, as there is no allegation of active participation *for the benefit of the Plaza. See supra.* Instead, Plaintiff alleges only that she had sex with Defendant Wiley in exchange for a room, that other girls also had sex with Wiley in

exchange for rooms, and that it was well known *among the sex workers who frequented the plaza* that Wiley liked to trade rooms for sex. (Doc. No. 1-2, ¶¶ 98-100). There are no allegations that the Plaza or any of its staff escorted johns to Plaintiff's rooms, advertised to or for Plaintiff, sold excessive condoms to her, found excessive condoms in her room, noted excessive towel usage, witnessed any physical abuse, witnessed Plaintiff loitering and/or waiting for johns, witnessed any bruises on Plaintiff, etc.—as are present for many other hotel defendants named in the instant suit.

Indeed, traffickers do not typically advertise their illegal activities, especially to individuals who control or manage hotel premises. Plaintiff's own allegations only buttress this point, acknowledging that "many" victims of sex trafficking "are not obviously victims." (Doc. 1-2, ¶ 23). She further recognizes that hotels, by their very nature, offer anonymous and temporary accommodations that make it challenging to detect illegal activities. (Doc. 1-2, ¶¶ 51-52).

Moreover, courts have emphasized that the focus under the TVPRA is not on whether the defendant had knowledge of the specific plaintiff's experience but rather on whether the defendant had constructive knowledge that the venture violated the TVPRA; constructive knowledge can be established through evidence of obvious signs of trafficking or circumstances that would lead a reasonable person to conclude that trafficking was occurring. *See C.J. v. Santosa and Brother Inc.*, No. 24-CV-01548-PAB-MDB, 2025 WL 933800, at *6 (D. Colo. 2025). Additionally, courts have rejected arguments that general knowledge of trafficking in an industry, alone, is sufficient to impute knowledge. *See F.C.*

*v. Jacobs Solutions, Inc.*, No. 23-CV-02660-CYC, 2025 WL 1766069, at \*21 (D. Colo. 2025).

Unlike other Defendant hotels, Plaintiff acknowledges that johns did not need to pass through the Plaza's lobby or front desk area to access rooms, significantly decreasing the likelihood of incidental encounters by hotel ownership or staff. (Doc. 1-2, ¶ 94). Further, Plaintiff does not allege any facts that would alert Plaza employees to the presence of trafficking, such as acts of force against Plaintiff, visible signs of abuse, or behaviors that would reasonably indicate trafficking. In contrast, Plaintiff makes numerous detailed allegations describing specific conduct at other Defendant hotels, which provided clear notice of sex trafficking activities:

- Extended Stay America – Plaintiff alleges that: pimps and prostitutes frequently loitered in the lobby, either waiting to collect money or waiting for johns to arrive; staff allowed johns to get keys to Plaintiff's room when she was not present and their names were not on the reservation; Plaintiff waited by the elevator or in the lobby while another girl was seeing a client in the room; Plaintiff once chased a john through the lobby wearing nothing but a slip dress shouting "give me my money," which Extended Stay employees witnessed; Domino would count the number of condoms in the hotel room to ensure that enough clients were being seen; during an altercation at the Extended Stay, Domino punched Plaintiff in the face, and the resulting bruise was clearly visible to employees; Plaintiff told an employee, while dressed in "unusually revealing attire," that she had a date coming. (Doc. No. 1-2, ¶¶ 111-114, 117, 119, 120)

- Motel 6 Bricktown – Plaintiff alleges that: she stayed at the Motel 6 on at least six occasions and saw at least 60 johns; front desk staff would notify her when people wanted sex or when a bus full of people arrived at the nearby bus stop; Plaintiff and other sex workers would advertise commercial sex to bus passengers directly outside the hotel office; Plaintiff's room rate would change based on the number of johns that employees thought she had seen on a given day; Domino's "homeboy" frequently monitored the premises and/or her visits. (Doc. No. 1-2, ¶¶ 126, 129-131, 137).

10

- Super 8 OKC Airport – Plaintiff alleges that: she reserved a room with a prepaid card and extended it with cash multiple times; she frequently escorted clients directly from the lobby to the room because they were wary of police stings; she would meet johns in the lobby in unusually revealing clothes that clearly indicated she engaged in sex work; some clients would enter the lobby, purchase sex from Plaintiff, and exit the lobby in a matter of seven minutes; condoms from those johns were left in the trash can of her room. (Doc. No. 1-2, ¶¶ 139-141, 145, 146).

- Days Inns – Plaintiff alleges that: she communicated with front desk employees about her sex work and would explicitly notify them that she had a client or "trick" coming; on multiple occasions, clients told front desk staff that Plaintiff would be back from her room to pay soon; Plaintiff had to ask front desk staff for more towels; Plaintiff and three other sex workers would frequently move back and forth between rooms when it was their turn to engage in commercial sex with a client; maintenance was called to the room because Plaintiff and other sex workers had clogged the toilet with used condoms; on one occasion, a client physically assaulted Plaintiff and dangled her from a balcony; traffickers were permitted to stand outside of hotel rooms to scare off clients and intimidate/starve sex workers into working for them. (Doc. No. 1-2, ¶¶ 149, 150, 152-155, 157, 159).

- Ramada – Plaintiff alleges that: on one occasion, she had to walk past the front desk and through the front door wearing nothing but a negligee; clients entered through the front door of the hotel to get to Plaintiff's room; Plaintiff once ran out of condoms and bought more in the hotel's lobby store; Plaintiff returned to buy more condoms in the lobby multiple times throughout that night, and there was no self-checkout, meaning front desk staff sold her the many condoms. (Doc No. 1-2, ¶¶ 165-169).

- Howard Johnson – Plaintiff alleges that: Domino once assaulted her at the hotel when he came to collect money; she walked through the hotel with bruises on her arms that the hotel staff she interacted with would have seen; Plaintiff, with visible bruises, asked the front desk staff if she could wait until her next client came to pay her outstanding deposit. (Doc No. 1-2, ¶¶ 173, 175, 177).

- Super 8 Prospect Ave. – Plaintiff alleges that: she shared a room with other sex workers; she engaged in commercial sex with multiple men a night, leaving behind an abundance of used condoms and towels; if she used too many towels in one visit, the Super 8 would raise her deposit by $25 the next time she checked in. (Doc. No. 1-2, ¶¶ 185-187).

Such detailed allegations related to the Plaza are notably absent. Plaintiff has not identified any particular incident or behavior involving her that would have reasonably alerted Plaza staff to ongoing trafficking. "[A] plaintiff who merely alleges that the franchisor failed to intervene, alert authorities, improve awareness, or prevent sexual exploitation insufficiently alleges direct participation in a venture." *Doe (K.E.C.) v. G6 Hospitality, LLC*, 750 F.Supp.3d 719, 734 (E.D. Tex. 2024).

Finally, as discussed throughout Defendant Ketter's Motion to Dismiss, the sole allegation indicating that anyone other than Defendant Wiley knew of Domino—that Defendant Ketter "was aware" of trafficking "**either** because Wiley told [Ketter] or because [Ketter] encountered Domino[,]" (Doc. No. 1-2, ¶ 102)—is purely conclusory, lacks factual detail, and thus should not be afforded the presumption of truth. *Frey v. Town of Jackson, Wyoming*, 41 F.4th 1223, 1233 (10th Cir. 2022) ("An allegation is conclusory if it states an inference without underlying facts or if it lacks any factual enhancement. Conclusory allegations are not entitled to the assumption of truth."). (See Doc. No. 97). And, as relayed above, the allegations related to Defendant Wiley describe conduct far too self-serving to impute any knowledge of his onto the Plaza. As such, Plaintiff has not alleged sufficient facts demonstrating that the Plaza knew of Domino's violation of the TVPRA against Plaintiff. *See J.L.*, 521 F.Supp.3d at 1064:

> Plaintiff alleges that Wyndham was on notice about the prevalence of sex trafficking generally at its hotels. Docket No. 65 at 38–39, ¶ 103.j. But this is not sufficient to show that Wyndham should have known about what happened to this plaintiff. *S.J.*, 473 F.Supp.3d at 154–55 (noting that § 1595 "speaks in singular terms – 'participation in a venture which that person ... should have known has engaged in an act in violation of this chapter'" means knowledge of a general sex trafficking problem is not sufficient and thus

finding that hotel franchisor defendants could not be held directly liable under TVPRA). General knowledge of commercial sex activity occurring at hotels across the United States is insufficient on its own to demonstrate that Wyndham participated in the trafficking of plaintiff. See A.B., 484 F.Supp.3d at 939.

Accordingly, Plaintiff has failed to state sufficient facts in support of her claim against the Plaza under § 1591(a)(2), and it should therefore be dismissed.

### D. Oklahoma's human trafficking statutes provide civil relief against perpetrators only.

Oklahoma provides a civil claim for relief for human trafficking victims. However, the claim exists in the context of perpetrator liability only, and not venture liability. In relevant part:

> Any person aggrieved by a violation of subsection B of Section 748 of this title may bring a civil action against the **person or persons who committed the violation** to recover actual and punitive damages and reasonable attorney fees and costs. The civil action brought under this section may be instituted in the district court in this state in the county **in which the prospective defendant** resides or has committed any act which subjects him or her to liability under this section. A criminal case or prosecution is not a necessary precedent to the civil action. The statute of limitations for the cause of action shall not commence until the latter of the victim's emancipation from the defendant, the victim's twenty-first birthday, or the plaintiff discovers or reasonably should have discovered that he or she was a victim of human trafficking and that the defendant caused, was responsible for or profited from the human trafficking.

21 O.S. § 748.2 (providing a claim against a person "who committed [a] violation" and referencing prospective criminal defendants); *compare to* 18 U.S.C. § 1595 (providing for claims against a perpetrator or "whoever" knowingly benefits from their participation in a sex trafficking venture which they knew or should have known violated the TVPRA as to the plaintiff).

13

Moreover, liability under Oklahoma human trafficking statutes requires **actual knowledge** per § 748(B), which is a higher standard than the "knowing or recklessly disregarding" standard under the TVPRA. As thoroughly relayed above, the Complaint does not contain any factual allegation which supports a plausible claim that the Plaza had actual knowledge that the Plaza was benefitting from Plaintiff being forced or coerced by Domino to engage in commercial sex work on its premises. *See supra.*

Accordingly, independent of Plaintiff's statute of limitations deficiencies (and failure to properly serve the Plaza), her claims against the Plaza under Oklahoma's human trafficking statutes fail as a matter of law and should be dismissed.

## CONCLUSION

Plaintiff's suit is procedurally flawed in a manner that precludes this Court from reaching the merits. She has failed to properly effect service of process. She has failed to disclose her identity or seek leave to proceed anonymously, as required by governing law, undermining the Court's jurisdiction from the outset. Her state law claims under Oklahoma's human trafficking statutes are facially untimely. And, her allegations suggest the possibility of an ongoing criminal prosecution involving her trafficker, Domino, which would require a mandatory stay of the proceedings under federal law. Even setting those threshold issues aside—Plaintiff's Complaint still falls short of the basic pleading standards established by Rule 8 and fails to state a claim upon which relief may be granted under the TVPRA or Oklahoma human trafficking statutes. Accordingly, Defendant Plaza Hotels, LLC, should be dismissed.

Respectfully Submitted,


s/ W. Riley Nester
Jessica L. Dark, OBA #31236
W. Riley Nester, OBA #36222
PIERCE COUCH HENDRICKSON
  BAYSINGER & GREEN, L.L.P.
1109 N. Francis Ave.
Oklahoma City, OK 73106
PH:    (405) 235-1611
FX:    (405) 235-2904
jdark@piercecouch.com
rnester@piercecouch.com
*Attorneys for Defendant*
*Plaza Hotels, LLC*


## CERTIFICATE OF SERVICE

I certify that on this 30th day of July, 2025, I electronically transmitted the foregoing document to the Clerk of Court using the ECF System for filing and a transmittal of a Notice of Electronic Filing to all ECF registrants who have entered an appearance in this case:

| | |
|---|---|
| Fletcher D. Handley, Jr. | fdh@handleylaw.com |
| Geoffrey Parker | gparker@hiltonparker.com |
| Michael P. Kane | service@the702firm.com |
| Abby Rae Herren | |
| Eric A. Moen | eamoen@chubbucklaw.com |
| Charles D. Neal, Jr. | cdn@steidley-neal.com |
| Christopher T. Byrd | cbyrd@wwhgd.com |
| Jamie A. Rogers | jar@steidley-neal.com |
| Patrick E. Moore | pmoore@wwhgd.com |
| Philard L. Rounds, Jr. | plr@steidley-neal.com |
| Shubhra Mashelkar | smashelkar@wwhgd.com |
| David C. Senger | david@cswlawgroup.com |
| Hunter M. Siex | hunter@cswlawgroup.com |
| Kaylee P. Davis-Maddy | kmaddy@dsda.com |
| Michael S. Linscott | mlinscott@dsda.com |
| David Sager | david.sager@us.dlapiper.com |
| Mallory T. Biblo | Mallory.biblo@us.dlapiper.com |

| | |
|---|---|
| Alexander Gebert | alex.gebert@fmglaw.com |
| Robert Glenn Chadwick, Jr. | Bob.Chadwick@fmglaw.com |
| Edward J. Main | emain@secresthill.com |
| James K. Secrest, III | JSecrest3@secresthill.com |
| Justin L. Hall | jhall@secresthill.com |
| Daniel J. Thompson | dthompson@wsolaw.net |
| Emily Noble Richard | erichard@wsolaw.net |

s/ W. Riley Nester
W. Riley Nester