**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF OKLAHOMA**

| | | |
|---|---|---|
| NANCY R., pseudonymously, | § | |
| | § | |
| *Plaintiff,* | § | |
| v. | § | Civil Action No. 5:25-cv-462 |
| | § | |
| Plaza Hotels, LLC, et al., | § | |
| | § | |
| *Defendants.* | § | |
| | § | |
| | § | |
| | § | |
| | § | |
| | § | |
| | § | |
| | § | |

**G6 HOSPITALITY FRANCHISING, LLC'S MOTION TO DISMISS**
**AND MEMORANDUM OF LAW IN SUPPORT**

## TABLE OF CONTENTS

TABLE OF CONTENTS ............................................................................................................. i

TABLE OF AUTHORITIES ..................................................................................................... ii

I.  STATEMENT OF ISSUES/REASONS FOR DISMISSAL ............................................ 1

II.  INTRODUCTION ........................................................................................................... 2

III.  STATEMENT OF RELEVANT FACTS ........................................................................ 4

    A.  The Parties ............................................................................................................ 4

    B.  Plaintiff's Allegations .......................................................................................... 5

IV.  LEGAL STANDARD ..................................................................................................... 6

V.  PLAINTIFF'S CLAIMS AGAINST G6 SHOULD BE DISMISSED. ............................ 7

    A.  Plaintiff fails to state a TVPRA beneficiary claim against G6. ................................. 7

        1.  Plaintiff fails to allege that G6 "participated" in a trafficking "venture" that violated the TVPRA as to Plaintiff. ................................................................ 7

        2.  Plaintiff also fails to allege that G6 had any knowledge of Plaintiff's alleged trafficking. ................................................................................................ 12

    B.  Plaintiff fails to state a TVPRA claim for perpetrator liability against G6. ............. 15

    C.  Plaintiff's indirect liability theory fails to overcome the lack of underlying TVPRA violations. ............................................................................................................ 16

        1.  Plaintiff fails to state a plausible claim against franchisees. .............................. 17

        2.  Plaintiff's agency theory fails. ........................................................................ 19

    D.  Plaintiff's claim under Oklahoma's human trafficking statutes fails. ...................... 21

        1.  Plaintiff's State law claim is time barred. ........................................................ 22

        2.  Plaintiff fails to state a claim against G6 under 21 O.S. § 748.2(B). .................. 23

VI.  CONCLUSION AND REQUEST FOR RELIEF .......................................................... 24

i

## TABLE OF AUTHORITIES

**Cases**

*A.B. v. H.K. Group of Co., Inc.*
2022 WL 467786 (N.D. Ga. Feb. 9, 2022) ................................................................. 9

*A.B. v. Hilton Worldwide Holdings Inc.*
484 F. Supp. 3d 921 (D. Or. 2020) ............................................................. 8, 12, 13

*A.B. v. Marriott Int'l, Inc.*
455 F. Supp. 3d 171 (E.D. Pa. 2020) ...................................................................... 18

*A.B. v. Wyndham Hotels & Resorts, Inc.*
532 F. Supp. 3d 1018 (D. Or. 2021) ............................................................ 11, 15, 18

*A.D. v. Best Western Int'l, Inc.*
2023 WL 2955711 (M.D. Fla. Apr. 14, 2023) .......................................................... 3

*A.D. v. Choice Hotels Int'l, Inc.*
2023 WL 5510267 (M.D. Fla. Aug. 25, 2023) ........................................................ 10

*A.D. v. Choice Hotels Intl, Inc.*
2023 WL 3004547 (M.D. Fla. Apr. 19, 2023) ........................................................ 11

*A.D. v. Wyndham Hotels and Resorts, Inc.*
2020 WL 8674205 (E.D. Va. July 22, 2020) .......................................................... 11

*A.S. v. Wyndham Hotels & Resorts*
No. 6:23-cv-00033 (N.D. Tex. June 10, 2024) ......................................................... 3

*Ashcroft v. Iqbal*
556 U.S. 662 (2009) ................................................................................... 7, 16

*B.M. v. Wyndham Hotels & Resorts, Inc.*
2020 WL 4368214 (N.D. Cal. July 30, 2020) .................................................. 8, 11, 14

*Bell Atl. Corp. v. Twombly*
550 U.S. 544 (2007) ...................................................................................... 6

*Chhim v. Univ. of Texas at Austin*
836 F.3d 467 (5th Cir. 2016) ............................................................................... 7

*Clark v. Cole*
2023 WL 11069970 (W.D. Okla. Nov. 3, 2023) ....................................................... 7

*Copeland v. C.A.A.I.R., Inc.*
2019 WL 4307125 (N.D. Okla. Sept. 11, 2019) ...................................................... 24

*D.D.J. v. G6 Hospitality, LLC*
  1:23-CV-269 (E.D. Tex. Sept. 20, 2024) ................................................................. 20

*Doe #1 v. Red Roof Inns, Inc.*
  2020 WL 1872335 (N.D. Ga. Apr. 13, 2020) ........................................................ 14

*Doe #1 v. Red Roof Inns, Inc.*
  21 F.4th 714 (11th Cir. 2021) ................................................................... passim

*Doe (C.A.A.) v. Hyatt Corp.*
  2025 WL 1953857 (N.D. Tex. July 15, 2025) ............................................... passim

*Doe (L.M.) v. 42 Hotel Raleigh, LLC*
  717 F. Supp. 3d 464 (E.D.N.C. 2024) .................................................................. 15

*H.G. v. Inter-Cont'l Hotels Corp.*
  489 F. Supp. 3d 697 (E.D. Mich. 2020) .......................................................... 12, 14

*H.H. v. G6 Hosp., Inc.*
  2019 WL 6682152 (S.D. Ohio Dec. 6, 2019) ......................................................... 19

*Hear-Wear Techs., LLC v. Oticon, Inc.*
  551 F. Supp. 2d 1272 (N.D. Okla. 2008) ................................................................ 6

*Hill v. McQueen*
  230 P.2d 483 (Okla. 1951) .................................................................................... 21

*Hockenberry v. United States*
  42 F.4th 1164 (10th Cir. 2022) ............................................................................ 21

*In re Volkswagen*
  28 F.4th 1203 (Fed. Cir. 2022) ............................................................................ 19

*J.B. v. G6 Hosp., LLC*
  2020 WL 4901196 (N.D. Cal. Aug. 20, 2020) ..................................................... 17

*J.G. v. Northbrook Indus., Inc.*
  619 F. Supp. 3d 1228 (N.D. Ga. 2022) .................................................................. 8

*J.K. v. Ramada Worldwide, Inc.*
  2023 WL 5621913 (N.D. Ga. Aug. 30, 2023) ...................................................... 20

*J.L. v. Best Western Int'l, Inc.*
  521 F. Supp. 3d 1048 (D. Col. 2021) .............................................................. passim

*J.M. v. Choice Hotels Int'l, Inc.*
  2022 WL 10626493 (E.D. Cal. Oct. 18, 2022) .................................................. 3, 11

*J.M. v. Choice Hotels Int'l, Inc.*
  2023 WL 3456619 (E.D. Cal. May 15, 2023) ....................................................... 16

*K.B. v. G6 Hosp., LLC*
  2023 WL 8650785 (N.D. Ga. Dec. 14, 2023) ...................................................... 10, 12

*K.B. v. Inter-Cont'l Hotels Corp.*
  2020 WL 8674188 (D.N.H. Sept. 28, 2020) ............................................................ 11

*K.H. v. Riti, Inc.*
  2023 WL 3644224 (N.D. Ga. Apr. 17, 2023) ............................................................ 8

*K.H. v. Riti, Inc.*
  2024 WL 505063 (11th Cir. Feb. 9, 2024)........................................................ passim

*K.M. v. CPA Hotels of Atlanta, LLC*
  2023 WL 5747490 (N.D. Ga. Aug 30, 2023) .......................................................... 20

*Khalik v. United Air Lines*
  671 F.3d 1188 (10th Cir. 2012) ............................................................................... 6

*L.H. v. Marriott Int'l, Inc.*
  604 F. Supp. 3d 1346 (S.D. Fla. 2022)................................................................... 11

*Lawson v. Rubin*
  2018 WL 2012869 (E.D.N.Y. Apr. 29, 2018) ........................................................ 13

*Lockard v. Pizza Hut, Inc.*
  162 F.3d 1062 (10th Cir. 1998) ............................................................................. 19

*Lundstrom v. Holiday Hosp. Franchising, LLC*
  2023 WL 4424725 (D.N.D. May 22, 2023) ............................................................ 18

*Mouloki v. Epee*
  262 F. Supp. 3d 684 (N.D. Ill. 2017) ..................................................................... 16

*Ricchio v. McLean*
  853 F.3d 553 (1st Cir. 2017)............................................................................ 13, 16

*Schriner v. Gerard*
  2024 WL 3802479 (W.D. Okla. Aug. 13, 2024)....................................................... 6

*Southland Sec. Corp. v. INSpire Ins. Solutions, Inc.*
  365 F.3d 353 (5th Cir. 2004) ................................................................................... 7

*Weir v. Cenlar FSB*
  2018 WL 3443173 (S.D.N.Y. July 17, 2018)........................................................... 8

*Wing v. Lorton*
  261 P.3d 1122 (Okla. 2011)................................................................................... 22

**Statutes**

12 O.S. § 2008 ........................................................................................................ 22

12 O.S. § 95 .......................................................................................................... 22

18 U.S.C. § 1591 .............................................................................................. 15, 24

18 U.S.C. § 1595 ........................................................................................... 1, 2, 24

21 O.S. § 748 .............................................................................................. 21, 23, 24

21 O.S. § 748.2 ...................................................................................... 21, 22, 23, 24

**Rules**

Fed. R. Civ. P. 12 ............................................................................................... 1, 6

Pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, Defendant G6 Hospitality Franchising, LLC ("G6"), moves to dismiss Plaintiff's Amended Complaint:

## I.    STATEMENT OF ISSUES/REASONS FOR DISMISSAL

G6 is a hotel franchisor. It does not own or operate the single Motel 6 brand hotel where Plaintiff was allegedly trafficked. Yet, Plaintiff seeks to hold G6 liable for injuries she allegedly sustained at the Motel 6 Oklahoma City Bricktown owned and operated by four independent franchisees (Defendants Noor Hotel, LLC; Ambica, LLC; Om, LLC; and Indra, LLC), by alleging that G6 "trafficked Plaintiff" and are "directly liable under 18 U.S.C. § 1595."

*First*, Plaintiff contends G6 is liable because it somehow participated in a venture with Plaintiff's alleged trafficker (despite allegations that her trafficker was in prison during the time she spent at Motel 6) or, through the mere operation of a franchised hotel. This attempt to expand the scope of liability under the Trafficking Victims Protection Reauthorization Act fails. Plaintiff fails to state a TVPRA claim for direct, beneficiary liability against G6 by failing to sufficiently allege that (a) G6 "directly participated" in any "venture" that violated the TVPRA as to Plaintiff; or that (b) G6, as the hotel franchisor, knew or should have known of Plaintiff's trafficking Motel 6.

As courts in the Eleventh, Fifth, and Tenth Circuits have recently ruled, dismissing claims in complaints with far more detailed allegations than Plaintiff's Amended Complaint,

> Their only allegations as to the franchisor's knowledge or participation in those sex trafficking ventures are that the franchisors sent inspectors to the hotels who would have seen signs of sex trafficking and that they received reviews mentioning sex work occurring at the hotels. But observing something is not the same as participating in it."

*Doe #1 v. Red Roof Inns, Inc.*, 21 F.4th 714, 727 (11th Cir. 2021) (hereinafter, "*Red Roof Inns*"); *see also Doe (C.A.A.) v. Hyatt Corp.*, 2025 WL 1953857, at *3–4 (N.D. Tex. July 15, 2025) ("The allegations about the franchisors are much closer to faulting them for 'taking ineffective steps to

curtail the traffickers' and not actual participation in Doe's trafficking venture."); *J.L. v. Best Western Int'l, Inc.*, 521 F. Supp. 3d 1048, 1064 (D. Col. 2021).

*Second*, Plaintiff claims that G6, the hotel franchisor, "trafficked Plaintiff" by harboring her "while knowing or in reckless disregard of the fact that she would be coerced into commercial sex." Plaintiff fails to state a TVPRA claim for perpetrator liability against G6 because the Amended Complaint fails to allege (a) G6's actual knowledge of Plaintiff's trafficking at the single Motel 6 and (b) G6's intent to further Plaintiff's trafficking at that hotel.

*Third*, Plaintiff claims contradictorily that all the Motel 6 Franchisees were G6's agent. Plaintiff fails to state a TVPRA claim for *indirect*, beneficiary liability against G6 because she fails to sufficiently allege (a) a plausible TVPRA claim against the Motel 6 Franchisees; and (b) an underlying agency relationship between G6 and the Motel 6 Franchisees. *Fourth*, Plaintiff's Oklahoma human trafficking claim is time barred and provides a claim only against a perpetrator.

## II.    INTRODUCTION

In enacting 18 U.S.C. § 1595 and creating a civil cause of action under the TVPRA, Congress balanced the need to address the insidious societal problem of human trafficking against the danger of unjustly punishing the myriad bystanders who unknowingly encounter it. The legislature was careful to limit civil liability under the TVPRA to those persons or entities who *actively participate in* a human trafficking "venture" with *actual or constructive knowledge* of the crime they are facilitating. According to the vast majority of federal courts to have addressed this issue, hotel brand franchisors like G6 do not fall within this category.  Indeed, the Eleventh Circuit Court of Appeals— the only Court of Appeals to have addressed this issue in the context of a hotel franchisor—affirmed dismissal of claims virtually identical to Plaintiff's here, explaining that a plaintiff must plead, "plausible allegations that the [defendant] took part in the common undertaking of sex trafficking."

*Red Roof Inns*, 21 F.4th at 727; *see also K.H. v. Riti, Inc.*, 2024 WL 505063, at *4 (11th Cir. Feb. 9,

2024) (affirming dismissal of claim against hotel operator under similar reasoning).

District courts across the country have applied this standard and dismissed TVPRA claims

against franchisors where, as here, the defendant did not interact with the victim or the trafficker.

*See, e.g.*, *C.A.A.*, 2025 WL 1953857, at *3 ("Doe fails to allege sufficiently that defendants

participated in a venture 'beyond what would reasonably be expected in an ordinary commercial

transaction"); *A.S. v. Wyndham Hotels & Resorts*, No. 6:23-cv-00033, Dkt. 71 (N.D. Tex. June 10,

2024) (applying *Red Roof Inns* and stating "[a]llegations that amount to contentions a hotel

financially benefitted from renting hotel rooms to a plaintiff's trafficker and that the hotel should

have also observed signs of sex trafficking fail to state a viable claim."); *A.D. v. Best Western Int'l,*

*Inc.*, 2023 WL 2955711 (M.D. Fla. Apr. 14, 2023) (applying *Red Roof Inns* and dismissing TVPRA

claim); *J.M. v. Choice Hotels Int'l, Inc.*, 2022 WL 10626493, at *4 (E.D. Cal. Oct. 18, 2022)

("Although J.M. alleges defendants monitored their franchisee hotels' activities, '[n]one of these

allegations suggest that the franchisors participated in an alleged common undertaking or enterprise

with [J.M.'s] traffickers or others at the hotel who violated the statute'") (quoting *Red Roof Inns*).

Despite this authority, Plaintiff seeks to impose liability on G6, which she admits had no

operational role or physical presence at Franchisees' Oklahoma City Motel 6 location, but merely

owns and licenses the Motel 6 brand from its Texas headquarters. Plaintiff first claims that G6, the

franchisor, actually trafficked her. Am. Compl. ¶¶ 230–32. Next, Plaintiff hedges her claim by

alleging G6 participated in one of two ventures: (1) a joint or commercial venture or (2) "venture

together with Domino." *Id.* ¶¶ 233, 236–37. Both fail. There is not a single allegation in the Amended

Complaint suggesting that G6 had any interaction with "Domino," let alone sufficient participation

in a venture with him. Indeed, Plaintiff does not allege that Domino ever set foot in the subject Motel

6. *See id.* ¶¶ 141–43. Her "commercial venture" theory likewise fails because no member of that "venture" (merely franchising and operating the Motel 6) violated the TVPRA as to the Plaintiff.

Like *Red Roof Inns*, Plaintiff does not and cannot allege facts remotely suggesting that G6, somehow "participated" in a "sex trafficking venture" with a trafficker with whom it never interacted. Nor does Plaintiff plead any facts indicating that G6 knew or plausibly could have known that Plaintiff was being trafficked on Franchisees' Motel 6 property. Instead, she describes renting rooms, providing commercial sex, and even leaving the hotel to go to an Oklahoma City casino. *Id.* ¶¶ 134–40. She also does not allege any shouting matches, physical confrontations, bruising or other physical manifestations of violence or that she ever made a plea for help. *See id.* ¶¶ 132–44 (factual allegations as to Plaintiff's time at Motel 6). Simply put, Plaintiff's Complaint falls far short of alleging any plausible TVPRA claim against G6.

Plaintiff's threadbare, conclusory allegations of "control" fail to demonstrate that G6 can be held vicariously liable for its Franchisees' employees' alleged misconduct, if any. G6 is a separate entity. G6 did not own or operate the hotel at issue in this case nor employ any individuals at this hotel. Moreover, the conduct Plaintiff cites as control reflects routine franchisor oversight and is legally insufficient to impute knowledge or vicarious liability to a franchisor as a matter of law. Plaintiff's efforts to treat G6 as a stand-in for Franchisees cannot and should not be sustained.

## III.    STATEMENT OF RELEVANT FACTS

### A.  The Parties

G6 is a Delaware hospitality company, headquartered in Carrollton, Texas, that owns and franchises the Motel 6 and Studio 6 brands. *See* Am. Compl. ¶ 17. It operates in the economy lodging sector, providing affordable accommodations used by millions of travelers and organizations offering temporary housing. Plaintiff alleges Franchisee Defendants Noor Hotel, LLC, Ambica, LLC, Om, LLC, and Indra, LLC (collectively, "the Motel 6 Franchisees") are Oklahoma limited

liability companies that each owned 25% of, operated, controlled, and/or managed the Motel 6 located at 1800 E Reno Avenue, Oklahoma, City, OK 73117, pursuant to franchise agreements with G6. *Id.* ¶¶ 16-17, 146. However, Plaintiff does not allege that G6 had any ownership of the Oklahoma City Motel 6. Plaintiff fails to provide her identity or her citizenship.

### B. Plaintiff's Allegations

Plaintiff alleges she was "trafficked" at various hotel properties by a trafficker, identified as "Domino," on undisclosed occasions from 2021 into 2022. Am. Compl. ¶¶ 73–78, 81, 84, 88. Plaintiff claims that G6, somehow knowingly participated in a venture that trafficked her for sex and knowingly benefitted from the same. *Id.* ¶¶ 233, 243. She also seemingly seeks to hold G6 liable for the alleged misconduct of the Motel 6 Franchisees under an agency (*id.* ¶ 18, 238).

Plaintiff makes clear that Domino was arrested in at "the beginning of 2022." *Id.* ¶ 81. Even still, he continued to exert control over Plaintiff while at Motel 6 "through members of his affiliated gang." *Id.* Then, she alleges staying at a single Motel 6 "[i]n early 2022" for approximately six days. *See id.* ¶¶ 132 (alleging 60 johns), 86 (providing Domino's "daily quota of 10 johns"). During that time, Plaintiff alleges "at least 2 front desk employees at the Motel 6" were "aware that Nancy was engaging in commercial sex" at the Motel 6. *Id.* ¶¶ 133, 92. She claims the staff helped facilitate her commercial sex work by notifying her when customers arrived. *See id.* ¶¶ 134–36. Indeed, one of the two employees allegedly purchased commercial sex from Plaintiff and, later, went with her to a nearby casino. *See id.* ¶¶ 139–40. Plaintiff does not allege that Domino ever came to Motel 6, likely because he was incarcerated at the time.[1] There are no allegations that she asked for help; that she could not leave (in fact, she went to casino without an escort); or that she was physically or verbally

---

[1] Contradictorily, Plaintiff says elsewhere that "Franchisor Defendants each participated in ventures together with Domino, in the forms [*sic*] of room rentals and WiFi sales to Domino." Am. Compl. ¶ 237. The Amended Complaint is clear that he was never present at the Oklahoma City Motel 6.

abused at the Motel 6. Plaintiff simply says Motel 6 employees "should have deduced" that she was being trafficked, should have "recognized . . . coercive control," or "likely . . . knew that the great majority of prostitutes [but not all] . . . are under coercive control." *Id.* ¶¶ 142–44.

Plaintiff does not allege that G6 knew any of the above. As Plaintiff acknowledges, the Oklahoma City Motel 6 was independently owned, operated, and controlled by the third-party, Franchisees to whom G6 merely licensed the Motel 6 brand. *Id.* ¶ 16. The only bases for Plaintiff's contention that G6, itself, somehow knew of these events as they allegedly unfolded are: (1) an allegation that Motel 6-affiliated investigators "likely" witnessed evidence of commercial sex at the Oklahoma City Motel 6 and "on information and belief" reported that to G6 (*id.* ¶ 145(i)(i–ii) ; and (2) unsubstantiated hotel reviews concerning suspicions of alleged prostitution at the Oklahoma City Motel 6—none of which concerned any incident involving Plaintiff (*id.* ¶¶ 216, 217). In the alternative, Plaintiff contends G6 should be held directly liable for the allegedly knowing and/or negligent misconduct of the Motel 6 Franchisees by virtue of G6's purported "control" over aspects of Franchisees' operations.

## IV.    LEGAL STANDARD

Considering a Rule 12(b)(6) motion, the Court construes the pleading in the non-movant's favor and accepts the allegations of facts therein as true. *See Hear-Wear Techs., LLC v. Oticon, Inc.*, 551 F. Supp. 2d 1272, 1276 (N.D. Okla. 2008) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). The Court is not, however, "bound to accept as true a legal conclusion couched as a factual allegation." *Schriner v. Gerard*, 2024 WL 3802479, at *2 (W.D. Okla. Aug. 13, 2024) (quoting *Twombly*, 550 U.S. at 555). Instead, "Courts may 'disregard conclusory statements and look only to whether the remaining, factual allegations plausibly suggest the defendant is liable.'" *Id.* (quoting *Khalik v. United Air Lines*, 671 F.3d 1188, 1191 (10th Cir. 2012)). "The allegations pleaded must show more than a sheer possibility that a defendant has acted unlawfully." *Doe #9 v. Wyndham*

*Hotels and Resorts, Inc.*, 2021 WL 118633, at *1 (S.D. Tex. Mar. 30, 2021) (quoting *Chhim v. Univ. of Texas at Austin*, 836 F.3d 467, 469 (5th Cir. 2016)). To survive dismissal, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). This Court should not "strain to find inferences favorable to the plaintiff[]." *Southland Sec. Corp. v. INSpire Ins. Solutions, Inc.*, 365 F.3d 353, 361 (5th Cir. 2004). "Whether a complaint contains sufficient facts to avoid dismissal is context-specific and is determined through a court's application of judicial experience and common sense." *Clark v. Cole*, 2023 WL 11069970, at *1 (W.D. Okla. Nov. 3, 2023).

## V.    PLAINTIFF'S CLAIMS AGAINST G6 SHOULD BE DISMISSED.

### A.  Plaintiff fails to state a TVPRA beneficiary claim against G6.

To plead a beneficiary claim for violation of the TVPRA, a plaintiff must plausibly allege that the defendant "(1) 'knowingly benefitted financially or by receiving anything of value,' (2) from participation in a venture, (3) they 'knew or should have known has engaged in' sex trafficking under" the TVPRA. *C.A.A.*, 2025 WL 1953857, at * 3 (quoting *E.S. v. Best Western, Int'l, Inc.*, 510 F. Supp. 3d 420, 426 (N.D. Tex. 2021)); *see also Doe #9*, 2021 WL 118633, at *1; *J.L.*, 521 F. Supp. 3d at 1060 . Here, Plaintiff's allegations fail to establish either that G6 participated in the venture that trafficked Plaintiff, or that G6 knew or should have known that she was being trafficked at all. For either or both of these reasons, the relevant case law requires dismissal of her TVPRA claims.

### 1.  Plaintiff fails to allege that G6 "participated" in a trafficking "venture" that violated the TVPRA as to Plaintiff.

The law is clear and settled that Plaintiff cannot state a claim under the TVPRA without alleging that G6 benefitted from "participation" in the "venture" that trafficked her. *See* 18 U.S.C. § 1595(a). To satisfy this element, federal courts have held that a plaintiff must state facts in her complaint demonstrating that the defendant not only ignored or failed to prevent sex trafficking on

7

hotel premises, but actually "took part in the common undertaking of sex trafficking." *Red Roof Inns*, 21 F.4th at 727; *see also K.H. v. Riti, Inc.*, 2023 WL 3644224, at *3 (N.D. Ga. Apr. 17, 2023) (Plaintiff must "connect the dots between plaintiff's experience as a victim of sex trafficking and the specific defendant in the lawsuit," either by alleging "a 'direct association' between the defendant hotel and the plaintiff's trafficker, or by showing a 'continuous business relationship between a defendant hotel and a sex trafficker' who trafficked the Plaintiff."), *aff'd K.H.*, 2024 WL 505063; *J.G. v. Northbrook Indus., Inc.*, 619 F. Supp. 3d 1228 (N.D. Ga. 2022).[2] As courts have held, this means Plaintiff must sufficiently plead that G6 "directly participated in a specific venture that trafficked Plaintiff on specific occasions at the specific hotel[]." *E.S.*, 510 F. Supp. 3d at 428; *see also B.M. v. Wyndham Hotels & Resorts, Inc.*, 2020 WL 4368214, at *5 (N.D. Cal. July 30, 2020); *J.L.*, 521 F. Supp. 3d at 1064 ("General knowledge of commercial sex activity occurring at hotels across the United States is insufficient on its own to demonstrate Defendants participated in the trafficking of Plaintiff.") (quoting *A.B. v. Hilton Worldwide Holdings Inc.*, 484 F. Supp. 3d 921, 938 (D. Or. 2020)). Just as in *Red Roof Inns*, *E.S.*, and numerous other district court cases around the country, Plaintiff here fails to plead either theory of participation as to G6.

Like Plaintiff here (*see* Am. Compl. ¶¶ 64, 79, 104), plaintiffs in *Red Roof Inns* alleged hotel franchisor defendants purportedly "investigated the individual hotels, took remedial action when revenue was down, read online reviews mentioning prostitution and crime occurring generally at [their branded] hotels, and controlled the training of managers and employees who were allegedly

---

[2] This is a difficult standard to meet even for hotel operators who directly rent rooms to an alleged trafficker, as lawful commercial transactions alone do not give rise to a reasonable inference that the transacting parties shared a common criminal purpose. *See, e.g.*, *Weir v. Cenlar FSB*, 2018 WL 3443173, at *6 (S.D.N.Y. July 17, 2018) ("[B]eing an 'instrumentality' does not thereby mean one shares a common purpose. Defendants allegedly used the mail in furtherance of the scheme, but that would not make the Postal Service [] a member of the enterprise."). Establishing a common undertaking between a trafficker and a hotel franchisor is even more difficult, given that hotel franchisors do not control the day-to-day operations of franchised hotels, nor employ anyone on the premises.

involved in facilitating sex trafficking at the hotels." *Red Roof Inns*, 21 F.4th at 727. Nevertheless, the Eleventh Circuit affirmed the dismissal of their claims with prejudice.  The court determined that none were sufficient to "suggest that the franchisors participated in an alleged common undertaking or enterprise with [plaintiff's] sex traffickers." *Id.* Moreover, even plaintiffs' allegations in *Red Roof Inns* that the franchisors "sent [their own] inspectors to the hotels who would have seen signs of sex trafficking" on the premises still failed to establish the franchisors' participation in any sex trafficking venture involving plaintiffs, because merely "observing something is not the same as participating in it." *Id.*; *see also K.H.,* 2024 WL 505063, at *4. Plaintiff does not allege G6 affirmatively participated in any "common undertaking" with Plaintiff's alleged trafficker. To the contrary, Plaintiff does not and cannot allege that any employee *of the Motel 6 Franchisees* interacted with her trafficker. He never appeared at the Oklahoma City Motel 6 the entire time Plaintiff stayed there (Am. Compl. ¶¶ 141). She makes no allegation of any verbal or physical abuse on the premises.

Rather, G6's only connection to the trafficker's alleged crimes is passive, hosting an online reservation system, requiring use of a third-party management system, requiring use of a proprietary revenue management system, and maintaining brand standards. Am. Compl. ¶ 145. This alleged conduct is even less of a connection than plaintiff alleged (unsuccessfully) in *Red Roof Inns*. *See also A.B. v. H.K. Group of Co., Inc.*, 2022 WL 467786, at *4 (N.D. Ga. Feb. 9, 2022) ("Plaintiff has not alleged any interactions between Defendants or their employees and the alleged traffickers sufficient to establish that Defendants 'took part in a common undertaking' with the alleged traffickers"). Without support, Plaintiff includes an allegation "on information and belief" that the Oklahoma City Motel 6 "changed the rate she was charged" "based on the number of johns the employees thought she'd seen on a given day." Am. Compl. ¶ 137. There is no allegation that G6, the hotel franchisor, charged different rates on that basis or knew that such alleged conduct occurred.

In her Amended Complaint, Plaintiff identifies two different "ventures" to support her claim: an alleged "sex trafficking venture" between G6 and the trafficker and a second "venture" between G6 and the Motel 6 Franchisees "in the form[] of the franchisee-franchisor relationships." Am. Compl. ¶¶ 236–37. Neither supports a plausible TVPRA claim in this case. *First*, as to the allegation that G6 engaged in a venture with Domino, the Amended Complaint is devoid of any allegations establishing any element of a venture between G6 and the alleged trafficker. There is no allegation that Domino ever set foot in the Oklahoma City Motel 6. This case is virtually identical to the allegations in *K.B. v. G6 Hospitality, LLC*, where plaintiff alleged G6's "ineffective enforcement of its anti-trafficking policies facilitated the trafficking" but failed to allege "any direct contact between the G6 Defendants and her trafficker." 2023 WL 8650785, at *5 (N.D. Ga. Dec. 14, 2023). The *K.B.* court found, just as this Court should, "that K.B.'s Complaint does not sufficiently allege that the G6 Defendants participated in a venture with K.B.'s trafficker." *Id.*

*Second,* while Plaintiff alleges G6 exerted control over brand standards, the property management system, and the revenue management system, Plaintiff does not allege any facts that G6 exerted specific control over the operations of the Oklahoma City Motel 6. Even Plaintiff's conclusory allegation that G6 "exercised its above-specified rights to access information and to direct operations at the Motel 6 Franchisees' hotel" (Am. Compl. ¶ 146) does not provide evidence of day-to-day operational control. District courts across the country have dismissed these types of vague assertions. *See, e.g.*, *C.A.A.*, 2025 WL 1953857, at *4 ("The allegations about the franchisors are much closer to faulting them for 'taking ineffective steps to curtail the traffickers' and not actual participation in Doe's trafficking venture."); *A.D. v. Choice Hotels Int'l, Inc.*, 2023 WL 5510267, at *4 (M.D. Fla. Aug. 25, 2023). In lieu of any allegations of direct participation, Plaintiff's allegations amount, *at most*, to an accusation that G6 negligently failed to ensure the Motel 6 Franchisees were

implementing policies on a day-to-day basis that may have prevented her alleged trafficking. *See* Am. Compl. ¶ 145(i), (k). But, the TVPRA does not impose any affirmative obligation on private businesses to police or prevent human trafficking, and an alleged failure to prevent human trafficking is not tantamount to "participation" in it. *See, e.g.*, *Red Roof Inns*, 21 F.4th at 728 (affirming dismissal of TVPRA claim against hotel franchisors because "***observing something is not the same as participating in it.***") (emphasis added); *E.S.*, 510 F. Supp. 3d at 428 ("these allegations are not sufficient to plead that Movant Defendants directly participated in a specific venture that trafficked Plaintiff on specific occasions at the specific hotel[]."); *A.D. v. Choice Hotels Intl, Inc.*, 2023 WL 3004547, at *4 (M.D. Fla. Apr. 19, 2023) (complaint faulted "Defendants for taking ineffective steps to curtail the traffickers. This hardly sounds like participating in a venture. This is particularly true of a franchisor like Choice, which has no direct contact with its alleged venture partners.").[3]

The same reasoning applies with equal force here. Because Plaintiff does not and cannot allege that G6, itself, ever agreed to take part in any sex trafficking "venture" with her alleged trafficker, or that it actively "directly participated" in "the common undertaking" of trafficking Plaintiff, her purported cause of action under the TVPRA must be dismissed. *See C.A.A.*, 2025 WL 1953857, at *4 ("Doe fails to allege sufficiently that these defendants participate in any venture 'beyond what would reasonably be expected in an ordinary commercial transaction.").

---

[3] *See also J.M.*, 2022 WL 10626493, at *4 (allegations that "defendants monitored their franchisee hotels' activities [did not] 'suggest that the franchisors participated in an alleged common undertaking or enterprise with [J.M.'s] traffickers or others at the hotel who violated the statute'") (quoting *Red Roof Inns*); *K.B. v. Inter-Cont'l Hotels Corp.*, 2020 WL 8674188, at *5 (D.N.H. Sept. 28, 2020) (allegation that franchisor "failed to take reasonable measures to stop trafficking from occurring in their hotels" insufficient to establish "participation" element of TVPRA claim); *A.D. v. Wyndham Hotels and Resorts, Inc.*, 2020 WL 8674205, at *3 (E.D. Va. July 22, 2020) ("A failure to affirmatively prevent or inhibit sex trafficking does not constitute participation"); *B.M.*, 2020 WL 4368214, at *7 (hotels not required by TVPRA to affirmatively stop sex trafficking); *A.B. v. Wyndham Hotels & Resorts, Inc.*, 532 F. Supp. 3d 1018, 1027 (D. Or. 2021) (same); *L.H. v. Marriott Int'l, Inc.*, 604 F. Supp. 3d 1346, 1361 (S.D. Fla. 2022) (same).

### 2. *Plaintiff also fails to allege that G6 had any knowledge of Plaintiff's alleged trafficking.*

The Complaint lacks a single, well-pleaded allegation establishing that franchisor G6 knew or should have known of *Plaintiff's* trafficking at the Oklahoma City Motel 6. Yet, "[g]eneral knowledge of commercial sex activity occurring at hotels across the United States, or even defendants' properties, is insufficient on its own to demonstrate that defendants participated in trafficking of plaintiff." *Lundstrom v. Choice Hotels Int'l, Inc.*, 2021 WL 5579117, at *8 (D. Col. Nov. 30, 2021). Rather, as explained by the Eleventh Circuit, a plaintiff suing under the TVPRA must establish that the defendant had the requisite degree of knowledge of a TVPRA violation "***as to the plaintiff***," specifically. *Red Roof Inns*, 21 F.4th at 726 (emphasis added); *K.H.*, 2024 WL 505063, at *4 (same). "In other words, there must be plaintiff-specific facts to support this element." *C.A.A.*, 2025 WL 1953857, at *5. Federal district courts around the country have held the same. *See, e.g.*, *Doe #9*, 2021 WL 1186333, at *1 (plaintiff must "establish that the defendant knew or should have known about the trafficking of the plaintiff in particular—not about trafficking occurring on the premises in general"); *E.S.*, 510 F. Supp. 3d at 428 (TVPRA plaintiff must allege that defendant had actual or constructive knowledge of, and participated in, "a specific venture that trafficked Plaintiff on specific occasions at the specific hotel[].."); *K.B.*, 2023 WL 8650785, at *6 ("K.B.'s claim against the G6 Defendants can only proceed if she sufficiently alleged facts showing that the G6 Defendants had actual or constructive knowledge of K.B.'s trafficking."); *H.G. v. Inter-Cont'l Hotels Corp.,* 489 F. Supp. 3d 697, 706 (E.D. Mich. 2020) ("allegations that Defendants were generally aware of sex trafficking in the hotel industry and at some properties operating under their brand names fall short of establishing that Defendants knew or should have known of sex trafficking."); *A.B.*, 484 F. Supp. 3d at 938 (finding allegations of general notice of sex trafficking at brand hotels insufficient without notice of sex trafficking as to plaintiff).

Here, Plaintiff fails to make any allegation that satisfied this constructive knowledge standard as to G6, or even as to the Motel 6 Franchisees. Plaintiff's allegations lack any allegations of coercion. She alleges that two Motel 6 Franchisee employees helped facilitate her commercial sex work. *See* Am. Compl. ¶¶ 133–36, and that one of those employees purchased commercial sex from her, *Id.* ¶ 139. She alleges that spoke with hotel staff "explicitly referenc[ing] Nancy engaging in acts of commercial sex on the premises." *Id.* ¶ 95. However, she does not allege any physical violence against her, any verbal altercations, any bruising, or any plea for help. In fact, she states that she rented her own rooms and left the premises voluntarily, without Domino or any other escort. *Id.* ¶¶ 137, 140. This at most establishes knowledge of commercial sex but not of sex trafficking, which is insufficient to state a claim under the TVPRA. *C.A.A.*, 2025 WL 1953857, at *5 ("TVPRA does not prohibit all commercial sex, only that which is procured through 'means of force, threats of force, fraud, coercion . . . or any combination of such means.'"); *see also A.B.*, 484 F. Supp. 3d at 939.

District courts in this circuit have placed such allegations on a spectrum. The allegations here are most similar to those in *Lundstrom* where the plaintiff "was in the hotel weekly, rather than everyday, and was not confined to her room all day" and where there was "no allegation that plaintiff's trafficker was ever present". 2021 WL 5579117, at *7 (discussing *Ricchio v. McLean*, 853 F.3d 553, 555 (1st Cir. 2017), *Lawson v. Rubin*, 2018 WL 2012869, at *13–14 (E.D.N.Y. Apr. 29, 2018), and *J.L.*, 521 F. Supp. 3d at 1057–62). As in *Lundstrom*, Plaintiff makes no allegation that she "made a member of the staff . . . aware that she was being forced to engage in commercial sex activity, as opposed to engaging in commercial sex by choice, which the TVPRA does not address." *Lundstrom*, 2021 WL 5579117, at *8.

Moreover, Plaintiff does not allege any connection between those employees and G6, the franchisor. G6 had no ostensible means of observing the activity that could have possibly alerted it

to Plaintiff's alleged status as a trafficking victim, and Plaintiff does not allege G6 did. Moreover, courts around the country have rightly held such allegations are insufficient to demonstrate constructive knowledge on the part of a hotel *franchisor*. *See, e.g., Lundstrom*, 2021 WL 5579117, at *8 ("none of these allegations . . . plausibly establish why defendant, rather than the specific hotels that plaintiff visited, should have been aware of plaintiff's trafficking"); *Doe #1 v. Red Roof Inns, Inc.*, 2020 WL 1872335, at *3 (N.D. Ga. Apr. 13, 2020) ("The fact a franchisor may conduct inspections of a franchised property by itself is insufficient to impart knowledge of trafficking activity upon a franchisor or that a franchisor should have known of such trafficking activity."), *aff'd* 21 F.4th 714 (11th Cir. 2021); *E.S.*, 510 F. Supp. 3d at 428 (allegations "that Plaintiff would use fake IDs to check into rooms in Movant Defendants' brand hotels; that the reservations would be under her trafficker's name; that while staying in the rooms, Plaintiff would often call for extra towels, refuse service, and leave trash cans full of items associated with sexual activity" were insufficient to hold franchisor liable); *Doe #9*, 2021 WL 1186333, at *2 (similar); *A.B. v. Wyndham Hotels & Resorts, Inc.*, 532 F. Supp. 3d 1018, 1027 (D. Or. 2021) (dismissing complaint with prejudice where plaintiff failed to allege facts sufficient to show that franchisors "knew or should have known about plaintiff's sex trafficking by fraud, force, or coercion at their branded hotel locations"); *H.G.*, 489 F. Supp. 3d at 705 (dismissing TVPRA claim against hotel franchisors because alleged knowledge "depends upon [the franchisors'] own states of mind"); *B.M.*, 2020 WL 4368214, at *6 (finding no direct liability claim against franchisors where "[t]he Complaint fail[ed] to allege facts as to *how* [the franchisors] knew or should have known Plaintiff was being trafficked").

Instead of allegations that G6 knew anything about Plaintiff or her trafficker's alleged activities, Plaintiff points to unverified customer reviews concerning suspected prostitution or other crimes at the location. Am. Compl. ¶¶ 216. But, critically, ***none of these articles or reviews relate***

*in any way to the alleged trafficking of this Plaintiff.* Only one of the reviews mentions anything that could be construed as coercive activity, as opposed to commercial sex activity. Therefore, these reviews have no bearing on G6's knowledge of *Plaintiff's* alleged trafficking at the Oklahoma City Motel 6. Plaintiff's allegations implying G6 should have known trafficking has affected the hospitality industry or Motel 6 hotels generally fall far short of demonstrating G6's real-time knowledge that Plaintiff was being trafficked at the single hotel at issue. Plaintiff's TVPRA claims should be dismissed on this basis, as well. *See, e.g.*, *A.B.*, 532 F. Supp. 3d at 1027 (customer reviews did not plausibly suggest hotel franchisors knew or should have known about plaintiff's trafficking, because, while "some of the reviews indicate that guests believed prostitution was happening at the hotels," "none reference forcible sex trafficking, and none are allegedly related to Plaintiff or her trafficker"); *C.A.A.*, 2025 WL 1953857, at *6 ("The inclusion of allegations about the hospitality industry generally, or even other suspicious conduct at the subject hotels, is not enough to establish constructive knowledge in the absence of sufficient plaintiff-specific facts.").

**B. Plaintiff fails to state a TVPRA claim for perpetrator liability against G6.**

Plaintiff's perpetrator liability claims (Am. Compl. ¶¶ 230–33) against G6 should also be dismissed. "A perpetrator liability claim incorporates the elements of a criminal TVPRA violation under section 1591." *C.A.A.*, 2025 WL 1953857, at *6. That section requires "knowingly" harboring or maintaining a person "*knowing* . . . that means of force, threats of force, fraud, [or] coercion" are being used to cause that person to engage in commercial sex. 18 U.S.C. § 1591(a) (emphasis added). "[A] perpetrator liability claim requires a higher level of knowledge as to the use of force, fraud, or coercion." *C.A.A.*, 2025 WL 1953857, at *6 (citing *Doe (L.M.) v. 42 Hotel Raleigh, LLC*, 717 F. Supp. 3d 464, 473 (E.D.N.C. 2024)). As noted above, the Amended Complaint fails to satisfy the more-lenient, constructive-knowledge requirement for beneficiary liability. By definition, then, she cannot have satisfied the more-stringent, actual-knowledge

requirement required for perpetrator liability. *See J.M. v. Choice Hotels Int'l, Inc.*, 2023 WL 3456619, at *2 (E.D. Cal. May 15, 2023) (claim for perpetrator liability requires allegations of actual knowledge).

Second, the Amended Complaint does not plausibly allege that the G6 had any ***intent*** to further the trafficking of Plaintiff. The TVPRA does not define what it means to "harbor" or "maintain" a sex-trafficking victim, but courts interpreting it have concluded that, to be held liable as a perpetrator, there must be some intent to commit the crime or further the criminal enterprise. *See, e.g.*, *Mouloki v. Epee*, 262 F. Supp. 3d 684, 698 (N.D. Ill. 2017) ("[P]roviding lodging to someone ***for the purpose*** of obtaining her labor or services against her will constitute 'harboring[,]'" and "a question remains as to whether that was ***intended*** to obtain her labor or services." (emphasis added)); *Ricchio*, 853 F.3d at 555 (TVPRA claim stated where trafficker "had prior commercial dealings with the [hotel owners], which the parties ***wished*** to reinstate for profit," and the trafficker and hotel owners "expressed this ***intent*** by exchanging high-fives in the motel's parking lot while speaking about 'getting this thing going again,' in circumstances in which [the trafficker's] coercive and abusive treatment of [the victim] as a sex slave had become apparent to the" owners (emphasis added)). Plaintiff does not plead any facts to support this element. As such, her perpetrator liability claim against G6 should be dismissed.

### C.  Plaintiff's indirect liability theory fails to overcome the lack of underlying TVPRA violations.

Plaintiff finally seeks to hold G6 indirectly liable for the Motel 6 Franchisees' alleged knowledge and participation based on an alleged agency relationship. Am. Compl. ¶ 238.[4] These

---

[4] Plaintiff also makes a contradictory and unsupported allegation that G6 "is a joint employer of the employees" at the Oklahoma City Motel 6. Am. Compl. ¶ 238. This allegation is not made with specificity to G6 and contradicts the prior allegations that the Oklahoma City Motel 6 is owned by four independent franchisees and that G6 only serves as a franchisor for the hotel. This is the type of vague, conclusory, and contradictory allegation that this Court should not credit. *Iqbal*, 556 U.S. at 678.

theories fail because Plaintiff's allegations do not show any underlying TVPRA violations on the part of the Motel 6 Franchisees and because the allegations as insufficient to establish the agency relationship between franchisor-franchisee.

### 1. Plaintiff fails to state a plausible claim against franchisees.

"To show vicarious liability, a plaintiff must allege (1) an underlying violation of TVPRA by the defendant's franchisee and (2) that franchisors and their corresponding hotels were in an agency relationship." *C.A.A.*, 2025 WL 1953857, at *7; *J.L.*, 521 F. Supp. 3d at 1064–65 ("a plaintiff must plausibly allege that (1) defendants and their corresponding hotels were in an agency relationship and (2) the hotels or hotel staff are plausibly liable under § 1595"). In *K.H.*, the Eleventh Circuit dismissed claims against a franchisee with allegations similar to the allegations here that the franchisee, "based on online reviews, police reports, and visible indicators" knew or should have known about sex trafficking at the hotel but continued to "collect room revenue from" plaintiff's trafficker, finding these allegations did not plausibly allege the franchisee "took part in a common sex trafficking undertaking or enterprise" with plaintiff's trafficker. *K.H.*, 2024 WL 505063, at *3; *see also C.A.A.*, 2025 WL 1953857, at *7 (dismissing indirect liability claim for failure to state "an underlying TVPRA violation by any franchisee defendant"). The same result should follow. Here, as discussed above, Plaintiff does not make any allegation that Motel 6 Franchisee employees observed any signs of sex trafficking: *i.e.*, commercial sex induced by force, fraud, or coercion. While two staff members allegedly knew of her commercial sex activity, there are no allegations that her trafficker (Domino) was present, nor any allegations of physical violence toward Plaintiff, nor verbal altercations, nor confinement, nor bruising, nor pleas for help.

As discussed above, Plaintiff's allegations may indicate *prostitution*, but they are insufficient to put the franchisee operating the hotel on notice of force or coercion necessary for *sex trafficking*. *See*, *e.g.*, *J.B. v. G6 Hosp., LLC*, 2020 WL 4901196, at *11 (N.D. Cal. Aug. 20, 2020) (allegations

must be sufficient to "allow courts to infer that motel or hotel employees should have known that human trafficking was occurring, as opposed to other criminal conduct, such as prostitution."); *A.B.*, 532 F. Supp. 3d at 1028–29 (complaint "fail[ed] to show the hotels knew or should have known that Plaintiff was engaging in commercial sex as a result of fraud, force, or coercion" where hotel staff "had some level of notice" that plaintiff was "engaged in commercial sex acts" but plaintiff did "not contend that hotel staff observed her trafficker forcefully bring her to [the] hotel, attack her, or restrain her."). As in each of these cases, in the absence of any allegation that hotel staff witnessed Plaintiff being physically attacked, restrained, or coerced in connection with commercial sex work, she does not plausibly allege that even Franchisees had constructive notice of her trafficking.

The *Lundstrom* case is also instructive here. In that case, the court dismissed indirect liability claims against the franchisor. Even where "red flags" were observed by staff, plaintiff failed to "allege that hotel staff actually noticed these to be signs of trafficking." 2021 WL 5579117, at *9. The court explained,

> Because these allegations are not sufficient for the Court to conclude that the hotels, i.e. defendant's [assumed] agents, knew of plaintiff's trafficking, as opposed to her commercial sex activity, plaintiff necessarily has not stated a claim that defendant could be liable under an actual agency theory.

*Id.* (citing cases). Plaintiff then sued in another district court alleging indirect liability claims by reason of the franchisee's constructive notice of her trafficking. *See Lundstrom v. Holiday Hosp. Franchising, LLC*, 2023 WL 4424725 (D.N.D. May 22, 2023). That court also dismissed the indirect liability claims because the complaint did not sufficiently plead the franchisee knew or should have known of plaintiff's trafficking, and thus, the franchisor could not be indirectly liable. *Id.,* at *9–10. As support for the dismissal, the court looked to the first court's analysis of cases where there *were* sufficient facts pleaded regarding objective trafficking signs of physical harm and danger. *See id.* (citing *A.B. v. Marriott Int'l, Inc.*, 455 F. Supp. 3d 171, 189-90 (E.D. Pa. 2020) (plaintiff alleged

staff were aware of "loud altercations" as well as "constant" attacks on the plaintiff) and *H.H. v. G6 Hosp., Inc.*, 2019 WL 6682152, at *1 (S.D. Ohio Dec. 6, 2019) (plaintiff alleged hotel staff discovered her chained up in the bathroom and ignored her plea for help)). Here, Plaintiff makes no such allegation of coercion at the Oklahoma City Motel 6, and indeed, her allegations of employee knowledge are less substantial than those in *Lundstrom*, *J.L.*, or *C.A.A.*

Regardless, Plaintiff fails to plead any facts indicating coercion sufficient to put the Motel 6 Franchisees, or G6, on notice of Plaintiff's trafficking. Without an underlying violation, her claim for indirect liability against G6 fails.

### 2. Plaintiff's agency theory fails.

Even if Plaintiff had pleaded a plausible direct liability claim against the Motel 6 Franchisees, she does not allege facts sufficient to demonstrate an underlying agency relationship between G6 and Franchisees. "Because the TVPRA is silent, courts have held that the federal common law of agency should apply." *Lundstrom*, 2021 WL 5579117, at *8. It is well-established, under the federal common law of agency, that quality control or brand standard elements inherent to a franchise agreement do not, on their own, give rise to an agency relationship as a matter of law. *In re Volkswagen*, 28 F.4th 1203, 1209 (Fed. Cir. 2022) (holding that federal common law of agency "requires that the principal have the right throughout the duration of the relationship to control the agents' acts" and "setting standards in an agreement for acceptable service quality does not of itself create a right of control"); *Lockard v. Pizza Hut, Inc.*, 162 F.3d 1062 (10th Cir. 1998) (franchisor was not an employer even though it "may have stringently controlled the manner of its franchisee's operations, conducted frequent inspections, and provided training for franchise employees.");

Despite this, Plaintiff alleges merely a typical franchisor-franchisee relationship in which G6 sets quality control standards for operating a franchised hotel. As another district court in this circuit observed for similar allegations, "Plaintiff's allegations regarding the training or policies

19

that defendant controls . . . are at best vague and conclusory because they are devoid of details." *Lundstrom*, 2021 WL 5579117, at *9 (assuming without finding an agency relationship and dismissing on other grounds). Here, Plaintiff alleges the Motel 6 Franchisees were required to comply with franchise agreement standards, policies, and rules adopted by G6, including, among other things, standardized training methods for general managers; standardized rules of operation; and standardized recordkeeping and reporting requirements. Am. Compl. ¶ 145.

Other than Plaintiff's conclusory allegations that G6 retained control, the elements of control Plaintiff enumerates are nothing more than those required of all franchisors to maintain their trademarks under the Lanham Act. *See* Fed. Trade Comm'n, 2007 Franchise Rule Compliance Guide ¶ 6086 (Bus. Franchise Guide (CCH)). Yet, as courts have consistently held, such "control" of a trademark does not, on its own, engender the franchisor's control over the day-to-day functioning of the franchisee, let alone those specific operations allegedly responsible for the plaintiff's injury. *See D.D.J. v. G6 Hospitality, LLC*, 1:23-CV-269, Dkt. 94, at 21 (E.D. Tex. Sept. 20, 2024) (to create agency liability "the control exercised by a franchisor must exceed that of merely maintaining brand standards").

Courts construing similar control allegations in TVPRA claims have held them insufficient to establish a franchisor's liability based on an agency theory. Indeed, two federal courts dismissed claims based on allegations of agency nearly identical to those alleged here, holding: "none of the facts alleged appear to exceed that of a typical franchise agreement arrangement." *J.K. v. Ramada Worldwide, Inc.,* 2023 WL 5621913, at *4 (N.D. Ga. Aug. 30, 2023); *see also K.M. v. CPA Hotels of Atlanta, LLC,* 2023 WL 5747490, at *2 (N.D. Ga. Aug 30, 2023) (dismissing vicarious liability claim against franchisor where allegations showed only that franchisor's involvement did not

"exceed that of a typical franchise agreement arrangement"). Similarly, in *S.J. v. Choice Hotels International, Inc.*, allegations that the franchisor defendant

> (1) hosted the [franchisee's] online bookings on their domain; (2) required [franchisee] to use their customer rewards program; (3) set employee wages; (4) made employment decisions; (5) advertised for employment; (6) shared in the profits; (7) provided standardized training methods for [franchisee's] employees (8) specified how to build and maintain the facilities; (9) provided standardized rules of operation; (10) regularly inspected their [franchise] facility; (11) fixed prices; and (12) deprived the [franchisee] of independence in business operation . . .

showed that the franchisor's involvement was "limited to uniformity and standardization of the brand" and were therefore insufficient to establish an agency relationship. *S.J.*, 473 F. Supp. 3d 147, 156 (E.D.N.Y. 2020). The same result is warranted here.

Plaintiff contends one of the Motel 6 Franchisees' employees purchased commercial sex from Plaintiff. As the alleged solicitation was directly with Plaintiff and not her trafficker, that allegation is devoid of any evidence of fraud, force, or coercion. The employee's illegal conduct cannot be imputed to the Motel 6 Franchisees or G6. *Hill v. McQueen*, 230 P.2d 483, 486 ¶ 8 (Okla. 1951) Where an employee's motivation was solely personal, the unlawful conduct cannot be imputed to the employer. *See Hockenberry v. United States*, 42 F.4th 1164, 1171 (10th Cir. 2022). Here, there is no question that an employee engaging in commercial sex with a hotel guest, and taking her to a local casino afterward, is not within scope of his employment.

### D.  Plaintiff's claim under Oklahoma's human trafficking statutes fails.

Finally, Plaintiff brings a claim under the Oklahoma human trafficking act, 21 O.S. § 748.2(B), which provides a right to civil action against traffickers in violation of 21 O.S. § 748. *See* Am. Compl. ¶¶ 240–45. That claim is barred by the applicable statute of limitations, and even if it is not barred, Plaintiff fails to state a claim under § 748.2(B) against G6, a franchisor who never interacted with Plaintiff or her trafficker.

### 1. *Plaintiff's State law claim is time barred.*

As Plaintiff acknowledges, under Oklahoma law, she must bring her action within three years of the accrual date. 12 O.S. § 95(A)(2). Generally, "[t]he statute of limitations begins to run when the cause of action accrues." *Wing v. Lorton*, 261 P.3d 1122, 1125 (Okla. 2011). Oklahoma's human trafficking statute outlines that a cause of action accrues on "the latter of the victim's emancipation from the defendant, the victim's twenty-first birthday, or the plaintiff discovers or reasonably should have discovered that he or she was a victim of human trafficking and that the defendant caused, was responsible for or profited from human trafficking." 21 O.S. § 748.2(B).

Plaintiff alleges that she escaped "an abusive relationship as a teenager," "experienced homelessness," was briefly incarcerated, had children, and was engaged prior to 2020. *See* Am. Compl. ¶¶ 71. In that year, her fiancé committed suicide, which caused Plaintiff to contact "the abusive father of one of her kids" who gave her drugs and started her life to another downward spiral. *Id.* at ¶ 72. Then, in "early 2021," Plaintiff met Domino, who became her trafficker, at the Plaza Inn. *Id.* at ¶ 73. He forced Plaintiff to "engage in commercial sex" through various forms of coercion until his arrest at "the beginning of 2022." *Id.* at ¶¶ 75–81. After his arrest, he continued to exert control over Plaintiff through members of his gang. *Id.* at ¶ 81. Further, Plaintiff was trafficked, at one site, by "Mexican traffickers" as late as August 2022. *See id.* at ¶¶ 147, 151.

As an initial point, these allegations and this level of detail alone are insufficient to entitle plaintiff to proceed with her State law claims because Oklahoma law requires plaintiffs to provide "[a] short and plain statement of the claim showing that the pleader is entitled to relief." 12 O.S. § 2008(A)(1). She fails to plead her age at any point in time, the dates (or even the month) of her trafficking at the Oklahoma City Motel 6, the date of Domino's arrest, or the date she escaped his control, although that had to be sometime before August 2022. Although Plaintiff does not specify her age, she states that she was homeless, incarcerated, and had multiple children all after escaping

abuse as a teenager but before 2020. It is reasonable to assume that Plaintiff's 21st birthday was sometime before or around 2020. Under the second prong, the statute of limitations ran prior to filing. Further, Plaintiff knew that she was the victim of human trafficking in "early 2021." As it relates to G6, Plaintiff alleges she stayed at the subject Motel 6 property in "early 2022" for approximately six days. *See* Am. Compl. ¶ 132 (alleging 60 johns), 86 (providing Domino's "daily quota of 10 johns"). In other words, Plaintiff was aware of her trafficking in 2021, and Plaintiff's alleged staying at the Oklahoma City Motel 6 property in "early 2022." Accepting this as true, under the third prong, any allegations against G6 fall outside the three-year limitations period.

Finally, as to the first prong, "emancipation from the defendant," this only serves to highlight the fact that § 748.2(B) is not actually intended to provide a civil cause of action against tangentially-related entities, like G6. As discussed below, this section provides a cause of action *against traffickers*. Plaintiff was never "emancipated" from G6 or the subject Motel 6 property. Indeed, under her own allegations, she checked out a room and left the hotel periodically during her stay. *See* Am. Compl. at ¶¶ 137, 140. This first prong does not apply to G6 and does not serve to toll the accrual of her claim. Plaintiff's allegations are either insufficient to show that her claims fit within the applicable three-year statute of limitations or they demonstrate that her claims accrued more than three years before filing. Accordingly, her State law claim must be dismissed.

### 2. Plaintiff fails to state a claim against G6 under 21 O.S. § 748.2(B).

Oklahoma's human trafficking statutes provide a civil cause of action for victim of human trafficking *against the perpetrators*. The statute does not include the same beneficiary liability, with its "knew or should have known" standard, as the TVPRA. That omission is obvious from the statutory text. First, Oklahoma states, "It shall be unlawful to *knowingly* engage in human trafficking." 21 O.S. § 748(B) (emphasis added). That same statutory provision defines "human trafficking" as "modern-day slavery that includes, but is not limited to, extreme exploitation and

the denial of freedom or liberty of an individual for purposes of deriving benefit from that individual's commercial sex act or labor." 21 O.S. § 748(A)(4). Section 748 makes it a crime to *knowingly* exploit in the extreme or deny the freedom of a person for the purpose of gaining a benefit from that person's commercial sex. This is a direct corollary to the TVPRA's perpetrator liability claim, which criminalizes knowingly, *inter alia*, harboring or maintaining a person or financially benefiting from participation in such a venture ***with knowledge*** "that means of force, threats of force, fraud, [or] coercion . . . will be used to cause the person to engage in a commercial sex act." Under both § 1591 and § 748, a person cannot commit the crime without actual knowledge of the trafficking.

Next, the Oklahoma human trafficking statutes state, "Any person aggrieved by a violation of subsection B of Section 748 of this title may bring a civil action *against the person or persons who committed the violation*." 21 O.S. § 748.2(B) (emphasis added). Plainly, this statutory section provides a civil cause of action against the trafficker *only*, and does not include the language of the TVPRA providing a civil cause of action permitting a claim against a beneficiary based on a "knew or should have known" standard *Cf.* 18 U.S.C. § 1595(a). As one Oklahoma district court noted, in a case involving allegations of intentional violation of the forced labor provisions of the TVPRA, a plaintiff's "Oklahoma human trafficking claim succeeds or fails for the same reasons as their § 1589 claims." *Copeland v. C.A.A.I.R., Inc.*, 2019 WL 4307125, at *9 (N.D. Okla. Sept. 11, 2019). The same is true here. Plaintiff does not, and cannot, allege that G6, a franchisor that never interacted with her, her trafficker, or any of his affiliates, knowingly engaged in human trafficking. The Oklahoma law claim should be dismissed.

## VI.    CONCLUSION AND REQUEST FOR RELIEF

For the foregoing reasons, G6 respectfully requests that this Court dismiss Plaintiff's Complaint against G6 in its entirety with prejudice.

Dated:  November 19, 2025

Respectfully submitted,


By:  /s/ Daniel J. Thompson
      Daniel J. Thompson     OBA No. 32129
      Wiggins Sewell
      3100 Oklahoma Tower
      210 Park Avenue
      Oklahoma City, OK  73102
      405/232-1211
      405/235-7025 (fax)
      dthompson@wigginssewell.com

      Attorney for Defendant,
      G6 Hospitality Franchising, LLC

## Certificate of Service

I certify that the foregoing document was filed electronically on November 19, 2025 and has been served on all counsel who have consented to electronic service.

/s/ Daniel J. Thompson
Daniel J. Thompson
