# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF OKLAHOMA

NANCY R., pseudonymously,

    Plaintiff,

vs.

PLAZA HOTELS, LLC et al.,

    Defendants.

Case No.: 5:25-cv-462

Judge Charles B. Goodwin

**PLAINTIFF'S RESPONSE TO THE MOTIONS TO DISMISS FILED BY STEVE KETTER, MICHAEL WILEY, AND PLAZA HOTELS, LLC**

COMES NOW Plaintiff Nancy R. ("Plaintiff" or "Nancy" herein), by and through her undersigned attorneys, and submits this Response to the Motions to Dismiss filed by the Plaza Defendants—Steve Ketter, Michael Wiley, and Plaza Hotel, LLC (Docs 118, 119, & 120.) No. 119).

DATED this 21st day of November, 2025

*/s/ Geoffrey C. Parker*

GEOFFREY C. PARKER, ESQ.
Ohio Bar No. 0096049
JONATHAN L. HILTON, ESQ.
Ohio Bar No. 0095742
HILTON PARKER LLC
7658 Slate Ridge Boulevard
Reynoldsburg, Ohio 43068

MICHAEL C. KANE, ESQ.
Nevada Bar No. 10096
THE702FIRM INJURY ATTORNEYS
400 South 7th Street, Suite 400
Las Vegas, Nevada 89101

*Attorneys for Nancy R.*

# **TABLE OF CONTENTS**

I.    INTRODUCTION ................................................................................. 1

II.   STATEMENT OF FACTS.................................................................... 4

    A.    Nancy was trafficked by an abusive gang member. .................................. 4

    B.    Defendants knew most prostitutes are trafficking victims...................... 5

    C.    Defendants knew Nancy was a prostitute. ................................................. 7

    D.    Defendant had reason to know of the § 1591 violations. ........................... 8

III.  DEFENDANT'S 'PROCEDURAL ARGUMENTS LACK MERIT. ..................... 9

    A.    Ketter and Plaza Have Now Been Properly Served. ................................ 9

    C.    No Criminal Proceedings Mandate a Stay of This Case......................... 11

    D.    The Complaint is Not Too Vague Under Rule 8. ..................................... 12

IV.   STANDARD FOR FAILURE TO STATE A CLAIM.............................. 13

V.    PLAINTIFF STATES BENEFICIARY LIABILITY CLAIMS........................... 14

    A.    Defendants Participated in a Venture.......................................................... 14

    B.    Defendants "Should Have Known" of the Violations. ............................. 17

VI.   PLAINTIFF STATES PERPETRATOR LIABILITY CLAIMS. ......................... 18

VII.  DEFENDANT'S 'STATE LAW ARGUMENTS LACK MERIT ........................ 20

    A.    Plaintiff's State Law Claims are Not Time-Barred. ................................ 20

    B.    Ketter's and Plaza's Argument that Oklahoma Law Grants a Remedy Against Only Traffickers Lacks Merit. ..................................... 21

    C.    Defendants Acted in Their Scope of Employment. ................................... 22

VIII. CONCLUSION ........................................................................................ 23

## I.    INTRODUCTION

Plaintiff Nancy R. was a young woman trying to find stability while in recovery and grieving the loss of her fiancé. Instead, she was drawn into the control of a trafficker known as "Domino." For almost two years, Domino forced Nancy to engage in commercial sex acts throughout Oklahoma, rotating multiple hotels. Throughout Nancy's trafficking, Domino beat her, plied her with drugs, and took every dollar she earned.

Nancy's pimp—Domino—lived at the Plaza Inn throughout the entire period he trafficked Nancy. Nancy, who depended on Domino for drugs and everything else, was a constant fixture at the Plaza, where Domino forced her to meet a quota of 10 johns a day.

The Trafficking Victims Protection Reauthorization Act ("TVPRA"), at 18 U.S.C. § 1595, provides a pathway to recovery for victims against those who "should have known" that they were benefiting from sex trafficking—and this is a *negligence* standard. *Acevedo v. Exp. Realty, LLC*, 2024 U.S. Dist. LEXIS 16498, at *66 (C.D. Cal. Jan. 29, 2024).

All three Plaza Defendants here miss that the standard for a civil claim is negligence—that is, the defendant can be held responsible for what it *should have known*. Certainly, if Wiley, Ketter, and Plaza had implemented even the most rudimentary safeguards, they could have prevented Plaza from rampantly benefitting from sex trafficking the way that they did.

What is more, the Complaint straightforwardly alleges that all three Defendants had actual knowledge of Domino's coercion of Nancy. These direct allegations of actual knowledge are, under these circumstances, entitled to credit at the motion to dismiss stage. Knowledge "may be alleged generally." Fed. R. Civ. P. 9(b); *accord S.C. v. Hilton Franchise Holding, LLC*, No. 2:23-cv-2037-APG-DJA, 2024 U.S. Dist. LEXIS 205682 at *8 (D. Nev. Nov. 12, 2024) (accepting allegations "upon information and belief" that hotel staff had actual knowledge at 12(b)(6) stage).

Unable to defeat the TVPRA on their substance, Defendants make several procedural arguments, but these are meritless. ***First***, Plaza and Ketter have now been properly served. (Docs. 112–13.) Thus, their service of process concerns are moot.

***Second***, Defendants argue that Plaintiff's use a pseudonym threatens this Court's jurisdiction. If this is true, the Court's remedy is remand to Oklahoma state court—not to dismiss the case. *See Auran v. Nelnet Servicing, LLC*, Civil Action No. 1:24-cv-03038-KAS, 2025 U.S. Dist. LEXIS 143248, at *4 (D. Colo. June 10, 2025).

That being said, Plaintiff has now moved for leave to use a pseudonym. If the Court wishes to obtain jurisdiction and keep the case, it may simply grant that motion. *Doe v. Tulsa Cty.*, No. 24-CV-00380-SEH, 2024 U.S. Dist. LEXIS 182503, at *14 (N.D. Okla. Oct. 7, 2024) (collecting cases).

***Third***, Defendants claim Plaintiff needed to allege more details in the complaint so they would know if the case was subject to a mandatory stay under 18 U.S.C. 1595(b)(1) pending any criminal cases. The TVPRA's mandatory stay provision "was not designed to help a defendant delay a U.S. civil action," and exists solely for the benefit of the Department of Justice and prosecutors. *Plaintiff A v. Schair*, 744 F.3d 1247, 1254–55 (11th Cir. 2014). The stay provision is not an affirmative defense because it does not protect a civil defendant's rights or interests "in any way." *Id.* So Defendants have nothing to complain of here. For what it is worth, however, Plaintiff has no reason to believe this case is subject to a mandatory stay.

Finally, with respect to Plaintiff's state-law claims, the statute of limitations is three years from when her trafficking stopped ***or*** when she discovered (or should have discovered) that she was a victim of human trafficking, whichever comes later. 21 O.S § 748.1(B). Plaintiff alleges her trafficking continued through 2022. Nothing on the face of the complaint suggests her claims are time-barred. Finally, state law—like the TVPRA—also allows for recovery against someone for "benefiting, financially or by receiving anything of value, from participating in a venture that has engaged in an act of trafficking for commercial sex." 21 O.S § 748.1(A)(6)(c). Thus, the state-law claims rise or fall with the TVPRA claims. Let's get started.

## II.    STATEMENT OF FACTS

We first explain how Defendants' industry profits from sex trafficking. We then show that Defendant, and their staff, knew about Nancy's individual trafficking and failed to act.

### A.    <u>Nancy was trafficked by an abusive gang member.</u>

After a childhood of abuse, homelessness, and incarceration, Nancy was able to turn her life around (First Amended Complaint, Doc. 115, ¶ 71.). She got engaged, lived in a house, had a job, and was sober (*Id.*) Unfortunately, the death of her fiancé threw Nancy into a state of intense grief. She moved into a hotel with an abusive ex-boyfriend who gave her drugs, resulting in Nancy's relapse. (*Id.* ¶ 72).

Then, at one of the lowest points in her life, Nancy met her trafficker: Domino. (*Id.* ¶ 73.) Domino, a gang member and well-known pimp, trafficked Nancy for almost two years and took all of her earnings during this time frame. (*Id.* ¶¶ 74, 76, 81.) He maintained control over her with threats, physical violence, intimidation, and drug withdrawal. (*Id.* ¶¶ 75, 77.) Nancy relied on Domino entirely for money, shelter, and drugs. (*Id.* ¶¶ 76, 78.) From 2021 through 2022, Domino trafficked Nancy out of several hotels in Oklahoma, including the Plaza, where he forced her to have commercial sex with at least 10 johns a day. (*Id.* ¶¶ 84, 86.)

Even after his arrest, Domino continued to traffic and control Nancy through members of his affiliated gang. (*Id*. ¶ 81.) Nancy eventually escaped after meeting her husband and receiving treatment for addiction. (*Id*. ¶ 82.) Nancy still deals with the physical and trauma from her trafficking (*Id*. ¶ 83.)

## B.    <u>Defendants knew most prostitutes are trafficking victims.</u>

Hotels, by their nature, provide temporary, anonymous, and private lodgings near airports, highways, and event spaces, making them convenient for travelers but also prime venues for sex trafficking. (Complaint, Doc. 115, ¶¶ 51-52.)

Hotels are heavily used in trafficking: a 2018 Polaris Project report found 75% of sex trafficking victims surveyed had spent time in a hotel during their trafficking, and 60% had engaged in commercial sex inside one. (*Id*. at ¶ 53.) As of 2020, 77% of active federal sex trafficking prosecutions involving completed sex acts involved commercial sex in a hotel. (*Id*. ¶ 54.)

Studies bear out that 80-90% of prostitutes are controlled by pimps, and a majority use threats and physical violence to maintain control. (*Id*. ¶ 27-28.) As a member of the hospitality industry, Defendant sees far more of the sex trade than the general public. (*Id*. ¶ 55.) The hotel industry knows that sex trafficking runs rampant behind guestroom doors. (*Id*. ¶ 58.) Hotels know how to identify victims and red flags of sex trafficking, but they choose to not intervene as long rooms are being paid for. (*Id*. at ¶ 70.)

Defendant Plaza owned and operated the Plaza Inn ("the Plaza") where Nancy was trafficked. (*Id*. ¶ 2.) The Plaza was known as a hotspot for prostitution, violent crime, and drugs by locals and Oklahoma news outlets. (*Id*. ¶ 103.) The Plaza was forced to permanently close because they could not address safety concerns. (*Id*. ¶ 105.)

So, Defendants knew prostitution was occurring on its property and that *most* prostitutes are trafficking victims, and Plaza continued to facilitate and profit from it until the city forced the motel to close its doors.

Defendant Ketter owned, operated, and managed day-to-day operations of the Plaza Inn ("the Plaza") where Nancy was trafficked. (*Id*. ¶ 3.) His motel was known as a hotspot for prostitution, violent crime, and drugs by locals and Oklahoma news outlets. (*Id*. ¶ 103.)

Ketter knew prostitution was occurring on his property and that *most* prostitutes are trafficking victims, and he continued to profit from it until the city forced him to close his doors.

Defendant Wiley owned, operated, and managed day-to-day operations of the Plaza Inn ("the Plaza") where Nancy was trafficked. (*Id*. ¶ 4.) His motel was known as a hotspot for prostitution, violent crime, and drugs by locals and Oklahoma news outlets. (*Id*. ¶ 103.)

So, Wiley knew prostitution was occurring on his property and that *most* prostitutes are trafficking victims, and he continued to facilitate and profit from it until the city forced him to close his doors.

### C.  Defendants knew Nancy was a prostitute.

Nancy met her pimp, Domino, at the Plaza in 2021 where he was known as a "main pimp" at the property (*Id.* ¶¶ 74, 96.) Throughout Nancy's trafficking Domino resided at the Plaza, where he forced her to have commercial sex with about ten johns per day. (*Id.* ¶¶ 84, 97-98, 101-102.) Michael Wiley, Plaza's other owner, met Domino and was aware that he was Nancy's pimp who was controlling her via threats of physical abuse and drug withdrawal. (*Id.* ¶ 102.) Plaza employees observed Domino's control over Nancy, the bruises he gave Nancy, and his suspiciously frequent comings and goings from the hotel. (*Id.* ¶¶ 79, 80.)

Domino made Nancy perform "in calls" at the Plaza and have commercial sex with 10 johns a day. (*Id.* ¶¶ 85, 86.) On one occasion at the Plaza, Nancy had sex with Wiley in exchange for a room—something he was known for among sex workers who frequented the Plaza. (*Id.* ¶¶ 98-100.) On multiple other occasions, Wiley allowed Nancy to pay for a room after she met with a client—allowing Plaza, and therefore the Defendant, to financially benefit from Nancy's trafficking. (*Id.* ¶ 101.)

Defendant Ketter, Wiley's partner, was made aware of the same facts that Wiley knew—that Domino was Nancy's pimp, threatening her with abuse and drug withdrawal. (*Id.* ¶ 102.) As the owner and operator of the Plaza, Defendant should have been aware that its staff was participating in, and tolerating, Nancy's trafficking. (*Id.* ¶ 106.) But Ketter did not kick Nancy or Domino off the property. Instead, he continued to allow his staff to rent them the rooms in which Nancy was trafficked.

### D. <u>Defendant had reason to know of the § 1591 violations.</u>

Ketter and Wiley managed the day-to-day operations of the Plaza during the relevant time frame. (*Id.* ¶¶ 3–4.) Meanwhile, Plaza Hotels, LLC owned and operated the Plaza during the relevant time frame, and was responsible for training its staff. *See* (*Id.* ¶ 2.)

During her trafficking, staff at the Plaza witnessed Nancy escorting dozens of unregistered guests to her room at the Plaza. (*Id.* ¶ 92.) Defendants' staff should have been able to identify indicators that Nancy was being trafficked at the Plaza (*Id.* ¶ 89.) Nancy even had conversations with Plaza staff, including Wiley, that explicitly referenced her engaging in commercial sex on the premises. (*Id.* ¶ 95.)

Nancy also exhibited behaviors indicative of trafficking like wearing heels and inappropriate clothing during check-in, renting rooms with a fake or paper temporary Oklahoma ID, booking rooms under her name even if

someone else showed their ID, extending her stay day-by-day, asking for excessive towels and linens, and disposing excessive numbers of used condoms and wrappers in the trash. (*Id*. ¶¶ 91(a)-(d), 91(f)-(g).)

Despite the red flags, the defendant and his staff failed to intervene, and the Defendant did not instruct staff to remove or deny service to Nancy despite knowing she was a prostitute. This failure to act allowed for the continued trafficking of Nancy R. at the Plaza.

## III.   DEFENDANT'S 'PROCEDURAL ARGUMENTS LACK MERIT.

### A.   <u>Ketter and Plaza Have Now Been Properly Served.</u>

The Court extended Plaintiff's deadline to serve Defendants Plaza and Ketter to September 20, 2025. (Doc. 94.) Plaintiff successfully served these Defendants on August 28, 2025. (Docs. 112–13.) Thus, the service of process issues raised in Ketter's and Plaza's motions to dismiss—which target only earlier, allegedly unsuccessful service attempts—are now moot.

### B.   <u>Plaintiff Has Cured Any Jurisdictional Concerns by Filing a Motion for Leave to Proceed under a Pseudonym.</u>

Defendants argue that Plaintiff's use a pseudonym threatens this Court's jurisdiction. If this is true, the Court's remedy is to remand the case to Oklahoma state court—not to dismiss it. *See Auran v. Nelnet Servicing, LLC*, Civil Action No. 1:24-cv-03038-KAS, 2025 U.S. Dist. LEXIS 143248, at *4 (D. Colo. June 10, 2025). Plaintiff asks for remand here.

That being said, a plaintiff may "eliminate" a "jurisdictional issue" with her complaint by supplementing it after filing. *Mathews v. Diaz*, 426 U.S. 67, 75 (1976). Similarly, when the plaintiff files under a pseudonym without first moving for leave to do so, this defect is "curable." *Doe v. Tulsa Cty.*, No. 24-CV-00380-SEH, 2024 U.S. Dist. LEXIS 182503, at *14 (N.D. Okla. Oct. 7, 2024) (collecting cases). Giving the plaintiff a chance to cure the defect by filing a motion for leave to proceed under a pseudonym "is logical and consistent with Tenth Circuit precedent." *Id.* at *15–16.

Here, Plaintiff has filed a motion for entry of a protective order permitting the use of a pseudonym—and Defendants Plaza, Ketter, and Wiley have (through counsel) represented that they do not oppose Plaintiff's use of a pseudonym. (Doc. 164 at Page 3.) The Court should grant the Order, curing the jurisdictional defect. This approach has been employed in a similar trafficking case. *C.J. v. Santosa & Brother Inc.*, No. 24-cv-01548-PAB-MDB, 2025 U.S. Dist. LEXIS 57702, at *24 (D. Colo. Mar. 27, 2025) (denying a motion to dismiss but ordering the plaintiff to move for leave to use a pseudonym).

Defendants' case, *Doe v. Kan. State Univ.*, No. 2:20-cv-02258-HLT-TJJ, 2021 U.S. Dist. LEXIS 4538, at *6 (D. Kan. Jan. 11, 2021), was wrongly decided. There, the Court mistakenly believed that a Tenth Circuit case, *W.N.J. v. Yocom*, 257 F.3d 1171 (10th Cir. 2001), required dismissal without prejudice. But in *W.N.J.*, the plaintiff had failed to move for leave to use a

pseudonym at all in the trial court—and no one caught the defect until the case was already on appeal. 257 F.3d at 1172. Because the trial court was divested of jurisdiction by the notice of appeal, it was too late for the trial court to cure the defect (even through a nunc pro tunc order). *Id.* Thus, *W.N.J.* stands only for the proposition that a trial court lacks jurisdiction to grant leave to proceed under a pseudonym after a notice of appeal has been filed.

Finally, if the Court still has concerns, it should grant Plaintiff leave to amend so that her complaint post-dates her motion for leave to file under a pseudonym. Jurisdictionally deficient allegations "may be amended, upon terms, in the trial or appellate courts." 28 U.S.C. § 1653; *see also Sac & Fox Nation v. Cuomo*, 193 F.3d 1162, 1167 (10th Cir. 1999) (noting that pleadings "may be amended, including on appeal, to cure defective allegations of jurisdiction"). Remand is warranted here—but not dismissal.

## C.    <u>No Criminal Proceedings Mandate a Stay of This Case.</u>

The TVPRA mandates a stay where certain criminal proceedings are pending. 18 U.S.C. § 1595(b)(1). Defendants—believing the automatic stay provision is a type of affirmative defense—complain that the complaint fails to alert them as to whether this defense is available to them.

***First***, the TVPRA's mandatory stay provision "was not designed to help a defendant delay a U.S. civil action." *Plaintiff A v. Schair*, 744 F.3d 1247, 1254-55 (11th Cir. 2014). The stay provision exists solely for the benefit of the

U.S. Department of Justice and domestic prosecutors. *Id.* The stay provision is not an affirmative defense because it does not protect a civil defendant's rights or interests "in any way." *Id.*

**Second**, even if the stay provision were an affirmative defense, Plaintiff would not need to anticipate it or plead around in her complaint. *Fernandez v. Clean House, LLC*, 883 F.3d 1296, 1298 (10th Cir. 2018). A complaint is not deficient under Rule 8 just because it omits the facts necessary for a defendant to set out an affirmative defense. *Id.*

**Third**, Plaintiff is unaware of any pending criminal cases against Plaintiff's trafficker, Domino. Nothing in the Complaint suggests there is any such pending case. This argument lacks merit.

### D.    The Complaint is Not Too Vague Under Rule 8.

A complaint must contain a "short and plain" statement of the claim. Fed. R. Civ. P. 8(a)(2). In an often-cited case on what is needed for a sex trafficking victim to plead a TVPRA claim against a hotel, the plaintiff alleged sex trafficking at various hotels from "the spring of 2014 until August 2015"— and her complaint passed muster. *M.A. v. Wyndham Hotels & Resorts, Inc.*, 425 F. Supp. 3d 959, 962 (S.D. Ohio 2019) (cited 213 times).

Defendants complain the Nancy's complaint is too vague because it does not always lay out precise dates, using instead timeframes such as "early 2022"

or "the beginning of 2022." Looking at the complaint as a whole, however, it is at least as detailed—if not more so—than the one in *M.A.*

Defendants also ask for more details on the who, what, when, where, why, and how of Plaintiff's claims. But TVPRA claims are not fraud claims, and they are not subject to the heightened pleading standards. For fraud claims, a complaint satisfies the Tenth Circuit's standard by alleging the "who, what, when, where, and why of the alleged misrepresentations." *In re Williams Sec. Litig.*, 339 F. Supp. 2d 1206, 1221 (N.D. Okla. 2003).

By contrast, a TVPRA claimant—like all other claimants—need only plead enough factual matter to show she has more than a speculative right to relief. Here, the Complaint includes detailed allegations about Wiley, Ketter, and Plaza, as well as group allegations stating that all defendants observed certain conduct. The Complaint is not too vague.

## IV.    STANDARD FOR FAILURE TO STATE A CLAIM.

At the motion to dismiss stage, the Court accepts well-pled allegations as true and draws all reasonable inferences in Plaintiff's favor. *Brokers' Choice of Am., Inc. v. NBC Universal, Inc.*, 757 F.3d 1125, 1136 (10th Cir. 2014). "To withstand a motion to dismiss, a complaint must contain enough allegations of fact 'to state a claim to relief that is plausible on its face.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

## V.    PLAINTIFF STATES BENEFICIARY LIABILITY CLAIMS.

"The TVPRA provides a civil cause of action for victims of any crime under chapter 77 of title 18 of the U.S. Code." *Bistline v. Parker*, 918 F.3d 849, 870 (10th Cir. 2019) (citing 18 U.S.C. § 1595).

One way a victim of trafficking can state a cause of action against a hotel is by alleging that the hotel "(1) knowingly benefitted, financially or by receiving anything of value; (2) from participation in a venture; (3) which they knew or should have known has engaged in an act in violation of Section 1591." *M.A. v. Wyndham Hotels & Resorts, Inc.*, No. 2:19-cv-00849, 2025 U.S. Dist. LEXIS 185758, at *30 (S.D. Ohio Sep. 22, 2025).

Defendants concede the first element. (Doc. 118, Page 17); (Doc. 119, Page 18); (Doc. 120, Page 8.) We turn to the next two elements.

### A.    <u>Defendants Participated in a Venture.</u>

Congress has not defined "participation in a venture" for purposes of civil liability under § 1595. *G.G.*, 76 F.4th at 558. The criminal portion of the statute defines participation in an venture as "participation in a venture" as knowingly "assisting, supporting, or facilitating a violation" of Section 1591(a)(1). 18 U.S.C. 1591(e)(4). But that definition cannot be "import[ed]" into § 1595 because this would conflict with § 1595's "known or should have known" language, and because the criminal definition—by its own language—applies in the criminal section only. *G.G*, 76 F.4th at 558.

Several principles guide the analysis of what "participation in a venture" means in the civil context. ***First***, participation in a venture for purposes of civil liability should not be harder for a plaintiff to show than the definition of the same phrase in the criminal portion of the statute. *G.G.*, 76 F.4th at 558–60. The criminal definition sets the "upper limits" of what the civil definition requires, but the plaintiff should be able to state a civil claim even with a lesser showing. *Id.* The Seventh Circuit allows for an alternative, less demanding test, where the plaintiff can show the defendant had a mere "*desire* to promote the wrongful venture's success," regardless of "actual knowledge of criminal wrongdoing." *Id.* (emphasis added).

***Second***, there is "widespread agreement" among District Courts that an "overt act in furtherance of" a trafficking violation is ***not*** required for the defendants to have participated in a venture. *F.C. v. Jacobs Sols. Inc.*, 790 F. Supp. 3d 1158, 1187 (D. Colo. 2025).

***Third***, Congress expanded the scope of civil liability under the TVPRA to target "the financial motivations and the infrastructure that allows trafficking organizations to thrive." *M.A.*, 2025 U.S. Dist. LEXIS 185758 at *6. In the sex trafficking industry, "that infrastructure begins and ends with physical spaces." *Id.*" When a defendant provides sex trafficking something it "cannot operate without," that constitutes participation in a venture for civil purposes. *Id.*

**Fourth**, whatever "participation in a venture" means, it is something less demanding than a RICO "enterprise." *Doe (L.M.) v. 42 Hotel Raleigh, LLC*, No. 5:23-CV-235-FL, 2024 U.S. Dist. LEXIS 165863, at *15 (E.D.N.C. Sep. 16, 2024). Congress "elected to write RICO and the TVPRA differently," with the TVPRA permitting liability where RICO would not. *Id.* Certainly, a plaintiff can show a TVPRA venture by alleging facts sufficient to show that two or more people are "associated in fact." *F.C.*, 790 F. Supp. 3d at 1186.

Applying these principles here, Wiley, Ketter, Plaza, and Domino were at a minimum associated in fact. Wiley and Ketter were partners, and Wiley was committing violations of § 1591(a)(1) by patronizing prostitutes.

The Complaint contains enough factual material to meet a negligence standard against Plaza: One of its owners and managers, Michael Wiley, knew Plaintiff's pimp, yet was trading hotel rooms for sex with prostitutes. This shows a total failure to implement any safeguards.

Moreover, a civil venture requires less than a criminal one—and in this case, the Plaza and its owners were knowingly providing hotel rooms to Domino and allowing sex trafficking to take place on their properties. They did not need to take any "overt act," as long as they were continuing to do business with those who were carrying out sex trafficking, and making it easier for them to do so. The Complaint plausibly meets this standard.

**B.**    **Defendants "Should Have Known" of the Violations.**

Beneficiary liability under § 1595, by contrast, requires a plaintiff to show only that the Defendant benefitted from participating in a venture—even if its participation did not relate to the trafficking—so long as the Defendant "knew or should have known" that the venture had engaged in sex trafficking. *M.A. v. Wyndham*, 425 F. Supp. 3d 959 at 969–70 (S.D. Ohio 2019) (Marbley, J.); *accord G.G. v. Salesforce.Com, Inc.*, 76 F.4th 544, 554 n.8 & 559 (7th Cir. 2023) (collecting cases).

Unlike § 1591(a), which requires at least "reckless disregard" of coercion, the "should have known" language of § 1595 imposes a more lenient negligence standard. *Acevedo v. Exp. Realty, LLC*, 2024 U.S. Dist. LEXIS 16498, at *66 (C.D. Cal. Jan. 29, 2024) (citing *M.A. v. Wyndham*, 425 F. Supp. 3d at 965–66); *see also Doe v. Reddit, Inc.*, 51 F.4th 1137, 1141 (9th Cir. 2022) (noting that § 1595 beneficiary liability lacks § 1591(a)(2)'s more stringent *mens rea* requirement).

Here, the Complaint includes sufficient facts to conclude that Defendants—at a minimum—"should have known" that someone was being trafficked at the Plaza.  Her sex trafficking was open and obvious; staff knew about it; and Wiley and Ketter knew of Domino and his control.  This shows a total failure to implement any training or safeguards against sex trafficking, easily meeting the "should have known" standard.

## VI.    PLAINTIFF STATES PERPETRATOR LIABILITY CLAIMS.

In addition to beneficiary liability, a plaintiff can recover against a "perpetrator" of trafficking. 18 U.S.C. § 1595. A perpetrator is one who knowingly solicits, patronizes, harbors, or maintains a person, "in reckless disregard of the fact that means of force, threats of force, fraud, coercion . . . will be used to cause the person to engage in a commercial sex act." *Id.*

"Coercion" essentially means the threat of "serious harm," which in turn means any harm, "including psychological, financial, or reputational harm," that is serious enough "to compel a reasonable person of the same background and in the same circumstances to perform or to continue performing commercial sexual activity in order to avoid incurring that harm." 18 U.S.C. § 1591(e)(2) & (e)(5).

Meanwhile, a defendant acts "in reckless disregard of" a fact if he acts while knowing of "a substantial and unjustifiable risk" that the fact is true. *United States v. Rodriguez*, 880 F.3d 1151, 1162 (9th Cir. 2018)

Thus, a person is a perpetrator of sex trafficking under § 1591(a) if he knowingly harbors a person while knowing there is "a substantial and unjustifiable risk" that the person will be caused to engage in commercial sex by threat of any harm sufficient to convince a reasonable person of the victim's background and in the victim's circumstances to engage in commercial sex. 18 U.S.C. §§ 1591(a)(1), (e)(2) & (e)(5).

[ 18 ]

Here, Defendants violated § 1591(a)(1) because they knowingly harbored and maintained Plaintiff (or in the case of Wiley, also solicited and patronized her), in reckless disregard of her coercion.

Harboring is "[t]he act of affording lodging or refuge to a person, esp. a criminal or illegal alien." BLACK'S LAW DICTIONARY 860 (11th Ed. 2019). Harbor can also mean "to give shelter or refuge to." *Harbor*, MERRIAM-WEBSTER, https://www.merriam-webster.com/dictionary/harbor.

Here, Defendants provided hotel rooms for sex—in other words, they harbored prostitutes, keeping those prostitutes away from the prying eyes of law enforcement and allowing them to have commercial sex in private. *See United States v. Brooks*, 610 F.3d 1186, 1197 (9th Cir. 2010) (affirming harboring conviction based on hotel room receipts). They knew she would be engaging in illegal activity, and they were concealing her—this is harboring.

Moreover, Defendants did so in reckless disregard of Plaintiff's coercion. The Complaint alleges that all three Defendants had actual knowledge. These allegations must be credited at the pleading stage. Knowledge "may be alleged generally." Fed. R. Civ. P. 9(b); *S.C.*, 2024 U.S. Dist. LEXIS 205682 at *8 (D. Nev. Nov. 12, 2024) (accepting allegations "upon information and belief" that hotel staff had actual knowledge at 12(b)(6) stage). Thus, Defendants are also liable as perpetrators of sex trafficking here.

## VII.  DEFENDANT'S 'STATE LAW ARGUMENTS LACK MERIT

### A.    <u>Plaintiff's State Law Claims are Not Time-Barred.</u>

Courts should not dismiss a claim as time-barred unless the statute of limitations defense is definitively established "on the face of the complaint." *Fernandez*, 883 F.3d at 1299 (quoting case law).

Under Oklahoma law, a victim of human trafficking may bring suit within three years—but the clock does not start until the plaintiff (1) is emancipated from trafficking, (2) is 21 years of age, ***and*** (3) "discovers or reasonably should have discovered that he or she was a victim of human trafficking and that the defendant caused, was responsible for or profited from the human trafficking." 21 O.S. § 748.2(B). (emphasis added.)

Plaintiff filed her complaint in state court on March 19th, 2025. She alleges that she was trafficked through 2022. (FAC ¶ 84.) Nothing on the face of the complaint establishes that she was emancipated from the trafficking more than three years before she filed her complaint. This Court should not dismiss. *Fernandez*, 883 F.3d at 1299.

Defendants claim that Plaintiff's trafficking must have ended with Domino's arrest at the start of 2022—but Plaintiff alleges that Domino and his associates continued to traffic her even after Dominos' incarceration. (Doc. 115 ¶¶ 81, 84). Traffickers can continue to control their victims from behind bars. *See*, *e.g.*, *United States v. Williams*, 666 F. App'x 186, 191 (3d Cir. 2016)

(explaining that a pimp "continued to direct the women's work" from prison and used the proceeds to make bail); *United States v. Hutto*, 853 F. App'x 445, 448 (11th Cir. 2021) (similar); *Catelyn H. v. G6 Hosp., LLC*, No. 2:24-CV-939 JCM (DJA), 2025 LX 180639, at *7 (D. Nev. Mar. 26, 2025) (refusing to dismiss on statute of limitations grounds because it was "at least plausible" that the plaintiff "continued to be trafficked" after her pimp's arrest).

Moreover, nothing on the face of the complaint establishes when Plaintiff discovered or should have discovered that she was a victim of human trafficking. Victims often require time and counseling to discover that they have been trafficked. *M.L. v. Craigslist, Inc.*, No. C19-6153 BHS-TLF, 2022 U.S. Dist. LEXIS 74884, at *29–31 (W.D. Wash. Apr. 25, 2022). Defendants' arguments may be appropriate for summary judgment, but not on a motion to dismiss. The Court should deny Defendants' motion.

### B.    Ketter's and Plaza's Argument that Oklahoma Law Grants a Remedy Against Only Traffickers Lacks Merit.

Defendants Ketter and Plaza (but not Wiley) argue that because they were not Plaintiff's pimp, they cannot be liable under 21 O.S § 748.2(B).

That provision authorizes a civil action against any "prospective defendant" who "has committed any act which subjects him or her to liability under this section." *Id.* A "criminal case or prosecution is not a necessary precedent" for the plaintiff to bring suit.

The criminal provision, meanwhile, states that "[i]t shall be unlawful to knowingly engage in human trafficking." 21 O.S § 748.1(B). The statute defines human trafficking as—among other things— "benefiting, financially or by receiving anything of value, from participating in a venture that has engaged in an act of trafficking for commercial sex." 21 O.S § 748.1(A)(6)(c).

The statute of limitations reinforces that someone other than a pimp can be held civilly liable. For instance, in one part, the text of the statute states that the limitation period does not begin until the plaintiff discovers that the defendant "profited from the human trafficking." 21 O.S § 748.2(B). Thus, the statute clearly contemplates that those who benefit from human trafficking can be held civilly liable. Defendants' arguments on this point lack merit.

**C.    <u>Defendants Acted in Their Scope of Employment.</u>**

Ketter and Wiley make arguments that they were not acting in the scope of their employment.  But they were the owners of the hotel, managing on premises.  Wiley even exchanged hotel rooms for sex—so even if he did something he was not supposed to do, he was still acting within the scope of his agency.  The agency-based arguments lack merit, as everything took place on Plaza premises and with on-duty Plaza staff (and with Plaza's owners, who were managing the business).

## VIII. CONCLUSION

For the reasons above, the Court should deny Defendants' motions to dismiss.

DATED this 21st day of November, 2025

Respectfully submitted,

/s/ Geoffrey C. Parker

Geoffrey C. Parker, Esq. (*pro hac vice*)
HILTON PARKER LLC
7658 Slate Ridge Blvd.
Reynoldsburg, OH 43068
Tel: (614) 992-2277
Fax: (614) 927-5980
gparker@hiltonparker.com
*Attorney for Plaintiff Nancy R.*

[ 23 ]