## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF OKLAHOMA

NANCY R., pseudonymously,

   Plaintiff,

vs.

PLAZA HOTELS, LLC et al.,

   Defendants.

Case No.: 5:25-cv-462

Judge Charles B. Goodwin

### PLAINTIFF'S RESPONSE TO THE MOTION TO DISMISS FILED BY RAJ KRUPA HOTEL, LLC.

COMES NOW Plaintiff Nancy R. ("Plaintiff" or "Nancy" herein), by and through her undersigned attorneys, and submits this Response to the Motion to Dismiss filed by Defendant—Raj Krupa Hotel, LLC. (Doc. 138).

DATED this 5th day of December, 2025

           */s/ Geoffrey C. Parker*
           GEOFFREY C. PARKER, ESQ.
           Ohio Bar No. 0096049
           JONATHAN L. HILTON, ESQ.
           Ohio Bar No. 0095742
           HILTON PARKER LLC
           7658 Slate Ridge Boulevard
           Reynoldsburg, Ohio 43068

           MICHAEL C. KANE, ESQ.
           Nevada Bar No. 10096
           THE702FIRM INJURY ATTORNEYS
           400 South 7th Street, Suite 400
           Las Vegas, Nevada 89101

           *Attorneys for Nancy R.*

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES...................................................................ii

I.      INTRODUCTION........................................................................ 1

II.     STATEMENT OF FACTS............................................................ 5

        A.      Nancy Was Trafficked by an Abusive Gang Member.......................... 6

        B.      Defendants Knew Hotels Are Prone to Sex Trafficking. ..................... 6

        C.      Raj Krupa Saw Nancy's Client Volume, Condom Use, and
                Trafficker Control—But Staff Continued Renting Rooms................... 8

        D.      Raj Krupa Was Equipped to Detect and Track Red Flags of
                Trafficking—But Turned a Blind Eye. ............................................ 11

III.    DEFENDANT'S PROCEDURAL ARGUMENTS LACK MERIT................. 12

        B.      No Criminal Proceedings Mandate a Stay of This Case.................... 12

        C.      The Complaint is Not Too Vague Under Rule 8............................... 13

IV.     STANDARD FOR FAILURE TO STATE A CLAIM. .......................... 14

V.      PLAINTIFF STATES BENEFICIARY LIABILITY CLAIMS. ................... 14

        A.      Raj Krupa Knowingly Benefited from Hotel Rentals....................... 15

        B.      Raj Krupa Participated in a Venture. ........................................... 16

        C.      Raj Krupa "Should Have Known" of the Violations. ......................... 21

VI.     PLAINTIFF STATES PERPETRATOR LIABILITY CLAIMS. ................... 22

        A.      Raj Krupa is Liable as a Perpetrator. ........................................... 22

        B.      Raj Krupa Knowingly Harbored Nancy.......................................... 22

        C.      Raj Krupa Acted "in Reckless Disregard" of Coercion...................... 23

VII.    DEFENDANT'S STATE LAW ARGUMENTS LACK MERIT.................... 25

VIII.   CONCLUSION......................................................................... 25

# TABLE OF AUTHORITIES

## CASES

*Acevedo v. Exp. Realty, LLC*, 2024 U.S. Dist. LEXIS 16498 (C.D. Cal. Jan. 29, 2024) ........................................................................... 21

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) ............................................. 14

*Bistline v. Parker*, 918 F.3d 849 (10th Cir. 2019) ............................................ 14

*Brokers' Choice of Am., Inc. v. NBC Universal, Inc.*, 757 F.3d 1125 (10th Cir. 2014) ................................................................................... 14

*D.H. v. Tucker Inn Inc.*, 689 F. Supp. 3d 1304 (N.D. Ga. 2023) .................. 2, 15

*Doe (L.M.) v. 42 Hotel Raleigh, LLC*, 2024 U.S. Dist. LEXIS 165863 (E.D.N.C. Sep. 16, 2024) ........................................................................ 18

*Doe v. Reddit, Inc.*, 51 F.4th 1137 (9th Cir. 2022) ........................................... 21

*Doe v. Tulsa City.*, 2024 U.S. Dist. LEXIS 182503 (N.D. Okla. Oct. 7, 2024) ................................................................................................... 1, 12

*Doe v. Wyndham Hotels & Resorts*, 2025 No. 2:23-cv-01676-DAD-CSK; 2025 U.S. Dist. LEXIS 2988 (2025) ............................................... 23

*F.C. v. Jacobs Sols. Inc.*, 790 F. Supp. 3d 1158 (D. Colo. 2025) ............... 17, 18

*Fernandez v. Clean House, LLC*, 883 F.3d 1296 (10th Cir. 2018) ............. 13, 25

*Fleites v. MindGeek S.A.R.L.*, 2025 No. 2:21-cv-04920-WLH-ADS; 2025 U.S. Dist. LEXIS 190592 (2025) ..................................................... 15

*G.G. v. Salesforce.Com, Inc.*, 76 F.4th 544 (7th Cir. 2023) ...................... 16, 17

*M.A. v. Wyndham Hotels & Resorts, Inc.*, 425 F. Supp. 3d 959 (S.D. Ohio 2019) .......................................................................................... 2, 13, 21

*M.A. v. Wyndham Hotels & Resorts, Inc.*, No. 2:19-cv-00849, 2025 U.S. Dist. LEXIS 185758 (S.D. Ohio Sep. 22, 2025) ...................... *passim*

*Plaintiff A v. Schair*, 744 F.3d 1247 (11th Cir. 2014) ..................................... 13

*Street, Suite 400*, 400 So. 7 ..................................................................... 1

*T.P. v. Wyndham Hotels & Resorts, Inc.*, No. 2:21-cv-04933, 2022
    U.S. Dist. LEXIS 217315 (S.D. Ohio Dec. 1, 2022) .......................... 17, 18

*United States ex rel. Schutte v. SuperValu Inc.*, 598 U.S. 739 (2023) ............. 24

*United States v. Christensen*, 828 F.3d 763 (9th Cir. 2016) ..................... 18, 20

*United States v. Duong*, 848 F.3d 928 (10th Cir. 2017) .................................. 24

*In re Williams Sec. Litig.*, 339 F. Supp. 2d 1206 (N.D. Okla. 2003) .............. 14

## FEDERAL STATUTES

18 U.S.C.
    § 1591.............................................................................................. 23
    § 1591(a) ........................................................................................... 3
    § 1591(a)(1) ..................................................................................... 22
    § 1591(a)(2) ..................................................................................... 15
    § 1591(e)(4) ..................................................................................... 16
    § 1595............................................................................................ 1, 14
    § 1595(a) ........................................................................................... 22
    § 1595(b)(1) ................................................................................... 1, 12

28 U.S.C.
    § 1447(c)........................................................................................... 12

## STATE STATUTES

Oklahoma
    O.S. 21.2(B) ...................................................................................... 5

## OTHER AUTHORITIES

BLACK'S LAW DICTIONARY 860 (11th Ed. 2019) ................................................... 3

BLACK'S LAW DICTIONARY 860 (11th Ed. 2019) ................................................ 22

https://corporate.wyndhamhotels.com/modern-slavery-statement/................. 7

iii

## I.    INTRODUCTION

This case arises out of the sex trafficking of Nancy R., who lived under the thumb of a pimp named "Domino"—a member of the Bloods gang—for almost two years. Nancy spent four weeks being trafficked out of Days Inn by Wyndham Oklahoma City/Moore ("the Days Inn") located at 8217 S I-35 Service Road, Oklahoma City, OK 73149, owned and operated by Defendant Raj Krupa Hotel, LLC ("Raj Krupa"). The Court should deny Raj Krupa's motion to dismiss.

*First*, Raj Krupa's procedural arguments lack merit. The Court may either remand this case to state court or grant Plaintiff's motion for leave to proceed under a pseudonym—thus curing any jurisdictional defect. *Doe v. Tulsa Cty.*, No. 24-CV-00380-SEH, 2024 U.S. Dist. LEXIS 182503, at *14 (N.D. Okla. Oct. 7, 2024) (collecting cases). Nor is this case subject to a mandatory stay under 18 U.S.C. 1595(b)(1), as no criminal proceedings for sex trafficking are pending against Plaintiff's trafficker. Finally, the Complaint—which includes highly specific details about Raj Krupa's actions—is not too vague under Rule 8, which requires only a "short and plain statement" of the facts.

*Second*, Nancy states beneficiary liability claims under the Trafficking Victims Protection Reauthorization Act ("TVPRA"), 18 U.S.C. § 1595, against Raj Krupa. A plaintiff states a beneficiary liability claim against a hotel by pleading three elements: The hotel "(1) knowingly benefitted, financially or by

receiving anything of value; (2) from participation in a venture; (3) which they knew or should have known has engaged in an act in violation of Section 1591." *M.A. v. Wyndham Hotels & Resorts, Inc.*, No. 2:19-cv-00849, 2025 U.S. Dist. LEXIS 185758, at *30 (S.D. Ohio Sep. 22, 2025).

Here, Raj Krupa benefited by receiving money from room rentals. *D.H. v. Tucker Inn Inc.*, 689 F. Supp. 3d 1304, 1309 (N.D. Ga. 2023) (holding that receiving revenue from a "room rental" constitutes a "financial benefit sufficient to meet" the first element of a beneficiary liability claim).

Raj Krupa also participated in a venture here because it facilitated Nancy's trafficking. Raj Krupa:

- Allowed Nancy to pay for rooms after meeting with johns, using money earned from commercial sex;

- Addressed a clog in the septic system due to Nancy flushing condoms down the toilet and allowed her to stay;

- Rented rooms to Nancy and other victims knowing those rooms were being used for commercial sex;

- Allowed Nancy's trafficker to retrieve his gun from the front desk and continue to stay with Nancy in her room; and

- Turned a blind eye to traffickers intimidating renegades on the premises, pressuring them into working for a pimp.

(First Amended Complaint ("FAC"), Doc 115 at ¶ 167–77, 179–80.)

Finally, Raj Krupa knew or should have known of the violations of § 1591, which criminalizes sex trafficking. The "should have known" language in § 1595 imposes a "negligence standard"—nothing more. *M.A. v. Wyndham*

*Hotels & Resorts, Inc.*, 425 F. Supp. 3d 959, 965 (S.D. Ohio 2019). Here, anti-trafficking training was made available to Raj Krupa and its staff through its parent company Wyndham in 2019. The program highlighted many red flags that Nancy showed during her trafficking including paying in cash, wearing little clothing, discarding numerous condoms, use of Backpage.com, and heavy foot traffic to a room by different men. (FAC, Doc. 115 at ¶¶ 62–64, 91(a), 91(d), 173–75.) Raj Krupa should have known that Nancy was being trafficked at its Days Inn had it completed the training or not ignored it. Thus, Nancy states a beneficiary liability claim.

*Third*, Nancy asserts a direct "perpetrator" liability claim against Raj Krupa for knowingly harboring her, in reckless disregard of the fact that she was subject to force, fraud, or coercion. 18 U.S.C. § 1591(a). To "harbor" means "[t]he act of affording lodging or refuge to a person, esp. a criminal or illegal alien." BLACK'S LAW DICTIONARY 860 (11th Ed. 2019). Here, Raj Krupa provided Nancy (and her trafficker, Domino) with a hotel room for four weeks—thus affording them lodging—even though they were engaged in at least prostitution, which is a criminal activity. Nancy checked in wearing skimpy clothing consistent with sex work and shared rooms with other sex workers, which security cameras showed had heavy male foot traffic. (FAC, Doc. 115 at ¶¶ 91(a), 173–74.) She informed desk staff that she was meeting clients and would pay for the room afterward with the money she earned. (*Id.* ¶¶ 167–69.)

She also clogged the hotel's septic system by flushing condoms, and Domino posted her sex ads on Backpage.com using the hotel's Wi-Fi. (*Id.* ¶¶ 175, 183(j)(ii).) These facts made it clear to Raj Krupa and its staff that Nancy and Domino were engaging in prostitution.

Raj Krupa acted with reckless disregard for the fact that Domino was subjecting Nancy to force, fraud, or coercion. As of 2020, 77% of active federal sex trafficking prosecutions involving completed sex acts occurred in hotels. (*Id.* ¶ 54.) Since 2015, hotel franchisors and franchisees—including the Days Inn—have faced hundreds of civil sex trafficking lawsuits. (*Id.* ¶ 59.) By 2021, Wyndham, the parent company of Days Inn, had been named in approximately 40 civil cases involving alleged participation in human trafficking. (*Id.* ¶ 185.)

Here, Raj Krupa knew Nancy was a prostitute and therefore likely a trafficking victim. It witnessed Domino uploading sex ads for Nancy on Backpage.com, observed physical abuse against her, and knew he was staying with her in the room—armed with a gun—despite not being listed on the reservation. (*Id.* ¶¶ 176–78, 183(j)(ii).) Raj Krupa also allowed traffickers on the property to police "renegades" by scaring off their clients and coercing them into working for a pimp. (*Id.* ¶¶ 179–80.) Raj Krupa was aware of the prevalence of human trafficking—not only across the hospitality industry, but within its own hotel, at other Days Inn locations, and across Wyndham properties.

[ 4 ]

Thus, Raj Krupa knowingly harbored Nancy, a prostitute engaged in illegal activity, while recklessly disregarding the fact that Domino was sex trafficking her. Nancy states a claim for perpetrator liability under § 1591(a).

***Fourth,*** Nancy's claims are not time-barred on the face of her Complaint. Under Oklahoma law, a trafficking survivor has three years to bring suit, but the limitations period does not begin until the plaintiff is emancipated from trafficking, turns 21, and discovers—or reasonably should have discovered—that she was trafficked and that the defendant caused, was responsible for, or profited from it. 21 O.S. § 748.2(B).

Plaintiff filed her complaint in March 2025 and alleges she was trafficked through 2022, and nothing on the face of the complaint establishes that she was emancipated more than three years before filing. Defendants argue that trafficking ended with Domino's arrest in early 2022, but Plaintiff alleges he and his associates continued to control and traffic her after that. Nor does the complaint establish when Plaintiff discovered she was a trafficking victim, a process that often requires time and counseling.

Let's get started.

## II. STATEMENT OF FACTS

We first explain how Defendant's industry profits from sex trafficking. We then show that Defendant, and its staff, knew about Nancy's trafficking.

A.    <u>**Nancy Was Trafficked by an Abusive Gang Member.**</u>

After overcoming a childhood marked by abuse, homelessness, and incarceration, Nancy's brief stability was cut short by her fiancé's death. (Doc. 115 ¶¶ 71–72.) She fell into drug addiction and soon ended up under the thumb of Domino, a Bloods-affiliated pimp. (Doc. 115 ¶¶ 73–74.) From 2021 through 2022, Domino trafficked Nancy across multiple Oklahoma hotels and forced her to engage in commercial sex with at least ten men a day. (*Id.* ¶¶ 76, 81, 84, 86.) Nancy depended on Domino for money, shelter, and drugs while he threatened, beat, and coerced her—including continuing to control her through gang affiliates even after his arrest. (*Id.* ¶¶ 75–78, 81.) Nancy ultimately escaped and entered treatment, but she continues to suffer the lasting physical and psychological effects of her trafficking. (*Id.* ¶¶ 82–83.)

B.    <u>**Defendants Knew Hotels Are Prone to Sex Trafficking.**</u>

Hotels provide temporary, anonymous, and private lodgings near airports, highways, and event spaces. (*Id.* ¶ 51.) These characteristics often attract traffickers to hotels. (*Id.* ¶ 52.) A 2018 Polaris Project report found 75% of sex trafficking victims surveyed had spent time in a hotel during their trafficking, and 60% had engaged in commercial sex inside one. (*Id.* ¶ 53.)

Human trafficking-related court cases paint a similar picture: As of 2020, 77% of active federal sex trafficking prosecutions involving completed sex acts involved commercial sex in a hotel. (*Id.* ¶ 54.)

Since 2015, hundreds of civil sex trafficking lawsuits have been filed against hotel franchisees and franchisors, including the Days Inn. (*Id.* ¶ 59.) By early 2021, Wyndham—the Days Inn's parent company—was a defendant in roughly 40 civil cases related to alleged involvement in or profiting from human trafficking. (*Id.* ¶ 185.) Because hotels encounter the majority of sex trafficking victims, in 2018 the Polaris Project published a list of red flags to help hospitality employees identify instances of in-call escort services involving trafficking victims on hotel properties. (*Id.* ¶¶ 55–56.) These red flags include:

- Paying for stays in cash or with prepaid credit cards;
- Booking for a single night and extending day by day;
- Excessive condoms in hotel wastebins;
- Excessive foot traffic;
- Inappropriate attire;
- Frequent requests for new towels; and
- One person checking in with multiple people in tow.

(*Id.*)

According to Wyndham's 2024 Modern Slavery Statement, the Days Inn parent company made human trafficking training programs available to all its branded hotels like Raj Krupa's Days Inn in 2019.[1] *See also* (*Id.* ¶¶ 60–63.) This training program was the product of a partnership between the American

---

[1] https://corporate.wyndhamhotels.com/modern-slavery-statement/.

Hotel and Lodging Association (AHLA) and the Polaris Project. (*Id.* ¶ 61.) The training highlights the following behaviors as red flags of human trafficking:

- Paying in cash or with a prepaid card one day at a time;
- Wearing heavy makeup, lingerie, and little clothing;
- Carrying little luggage;
- Displaying signs of drug use or sleep deprivation;
- Discarding condoms;
- Use of Backpage.com; and
- Heavy foot traffic to a room by different men.

(*Id.* ¶¶ 62–64.)

### C.    Raj Krupa Saw Nancy's Client Volume, Condom Use, and Trafficker Control—But Staff Continued Renting Rooms

Defendant Raj Krupa Hotel, LLC. ("Raj Krupa") owned and operated the Days Inn by Wyndham Oklahoma City/Moore ("the Days Inn") located at 8217 S. I-35 Service Road, Oklahoma City, OK 73149 during Nancy's trafficking. (*Id.* ¶ 10.) Nancy stayed at Raj Krupa's Days Inn for a total of about four weeks between 2021 and 2022. (*Id.* ¶ 166.) Nancy was forced to engage in commercial sex at least 10 times per day—meaning she was trafficked nearly 300 times on Raj Krupa's property. (*Id.* ¶¶ 85–86.)

Nancy showed up to check-in wearing high heels and skimpy clothing. (*Id.* ¶ 91(a).) She rented rooms with a fake ID—often a flimsy paper "temporary" one—or sometimes didn't show her ID at all, even though she was booking under her own name. (*Id.* ¶ 91(b)–(c).) She extended her stay day by

day, paying in cash or with a prepaid card. (*Id.* ¶ 91(d).) She also asked for countless towels and linen changes. (*Id.* ¶¶ 91(f), 172.)

Nancy often shared a pair of rooms with other sex workers, as demanded by their trafficker. (*Id.* ¶ 173.) One room would be used to meet with clients, and the other for waiting or sleeping. (*Id.*) Security cameras captured Nancy, and other victims, moving between the rooms, multiple times per day, when it was their turn to meet with a client. (*Id.* ¶ 174.) Heavy foot traffic in and out of rooms was a known red flag listed in the Days Inn anti-trafficking training. (*Id.* ¶¶ 62–64.)

When Nancy had to book her own rooms to meet clients, she told front desk staff on multiple occasions that she had a "trick" or "client" coming, and that she would pay for the room after her "date." (*Id.* ¶ 167.) Sometimes, clients themselves told front desk staff that Nancy would come back soon to pay for the room. (*Id.* ¶ 168.) Raj Krupa's desk staff allowed this arrangement multiple times. (*Id.* ¶ 169.) If the situation arose during a shift change, Raj Krupa's front desk employees left notes on Nancy's guest profile informing the next shift's staff about the delayed payment arrangements. (*Id.* ¶¶ 170–71.)

During a one-week stay at the Days Inn, Nancy and other victims staying with her flushed so many condoms down the toilet that the hotel's septic system clogged. (*Id.* ¶ 175.) The use of large numbers of condoms is an

industry-recognized red flag of trafficking. (*Id.* ¶ 89(e).) Nancy and the other victims were not kicked out of the hotel despite the incident. (*Id.* ¶ 176.)

The Days Inn staff witnessed other evidence of Nancy's trafficking. On one occasion, as he was moving his group of girls to another room within the hotel, Domino left his gun behind in the microwave of the room they had just vacated. (*Id.* ¶ 177.) Days Inn staff called Nancy to complain about the gun but allowed Domino to personally retrieve the weapon, even though the room was booked under Nancy's name. (*Id.* ¶¶ 176–177.) Domino was not kicked out of the hotel but instead returned to the new room one of his other girls had just reserved. (*Id.*) On another occasion, Nancy was dangled over the balcony of her room by a client after he physically assaulted her. (*Id.* ¶ 178.)

Finally, Raj Krupa's Days Inn was known for how badly the numerous traffickers who used it treated freelance prostitutes on the property. (*Id.* ¶ 179.) Traffickers were allowed to stand outside the rooms of freelancers to scare off their clients and intimidate the women into working for them. (*Id.* ¶ 180.) Studies show that 80–90% of prostitutes are controlled by pimps, and most pimps use threats and physical violence. (*Id.* ¶¶ 27–28.) Raj Krupa knew that most prostitutes with pimps are coerced. (*Id.* ¶¶ 41, 182.)

### D. __Raj Krupa Was Equipped to Detect and Track Red Flags of Trafficking—But Turned a Blind Eye.__

First, Raj Krupa knew sex trafficking was a common issue in the hospitality industry prior to Nancy's trafficking at the Days Inn. (*Id.* ¶¶ 53–54. 58–59, 185.) Second, its staff were trained to recognize and report the very red flags Nancy exhibited. (*Id.* ¶¶ 60–64, 183(c), 183(m(i)).) Third, Raj Krupa's franchise agreement with Days Inn Worldwide shows it tracked red flags in a systemized manner. (*Id.* ¶ 183(b) –(m).)

For example, Raj Krupa was required by its franchisor to record all notes on individual guests, such as those about Nancy's delayed room payments, in Days Inn's Property Management System. (*Id.* ¶¶ 170–71, 183(e).) Raj Krupa was also opted into the Days Inn Hotel Revenue Management Agreement, which required Raj Krupa and its staff to report data on in-person cash reservations. (*Id.* ¶ 183(i(iii)).) The Hotel Revenue Management Agreement also required Raj Krupa to track and report on what it spent on laundry and maintenance services to the franchisor monthly. (*Id.* ¶ 183(i(ii)).)

Raj Krupa could see guest internet usage records from Wi-Fi purchases, including the full list of websites visited by persons associated with each individual reservation. (*Id.* ¶ 183(j(ii)).) It had access to Domino and Nancy's internet history when they posted sexual advertisements on Backpage.com for Raj Krupa's hotel rooms using hotel Wi-Fi. (*Id.* ¶ 183(j(iii)) –(iv)).)

[ 11 ]

Finally, Raj Krupa was required by its franchisor to read and respond to third-party reviews. (*Id.* ¶ (183(l).) As required by its franchise agreement, Raj Krupa read a guest review posted before or during Nancy's trafficking that warned of prostitutes on the hotel's property. (*Id.* ¶¶ 183(l), 222–23.)

Nancy showed every one of the human trafficking red flags that Raj Krupa was required to detect and report through its franchise disclosure agreement throughout her trafficking at the Days Inn. (*Id.* ¶¶ 85–86, 91(a) – (d), 91(f), 167–69, 171–80.)

## III.    DEFENDANT'S PROCEDURAL ARGUMENTS LACK MERIT.

### A.    <u>Plaintiff Has Cured Any Jurisdictional Concerns by Filing a Motion for Leave to Proceed under a Pseudonym.</u>

Defendant claims this Court lacks jurisdiction because Plaintiff filed under a pseudonym. By statute, if the Court learns "at any time" that it lacks jurisdiction over a removed case, it "shall" remand to State court. 28 U.S.C. 1447(c). In the alternative, the Court can grant Plaintiff's pending motion for leave to proceed under a pseudonym, curing the jurisdictional defect. *Doe v. Tulsa City.*, No. 24-CV-00380-SEH, 2024 U.S. Dist. LEXIS 182503, at *14 (N.D. Okla. Oct. 7, 2024) (collecting cases); *see also* (Doc. 165, pages 9–11).

### B.    <u>No Criminal Proceedings Mandate a Stay of This Case.</u>

The TVPRA mandates a stay where certain criminal proceedings are pending. 18 U.S.C. § 1595(b)(1). This provision "was not designed to help a defendant delay a U.S. civil action" and exists solely for the benefit of

prosecutors. *Plaintiff A v. Schair*, 744 F.3d 1247, 1254-55 (11th Cir. 2014). And even if it were an affirmative defense (which it is not), Plaintiff was not required to anticipate it in her complaint. *Fernandez v. Clean House, LLC*, 883 F.3d 1296, 1298 (10th Cir. 2018). The FAC does not allege any ongoing criminal prosecution, so Raj Krupa's argument works only if the Court impermissibly draws and inference *against* her. Raj Krupa's stay argument lacks merit.

**C.    The Complaint is Not Too Vague Under Rule 8.**

A complaint must contain a "short and plain" statement of the claim. Fed. R. Civ. P. 8(a)(2). In an often-cited case on what is needed for a sex trafficking victim to plead a TVPRA claim against a hotel, the plaintiff alleged sex trafficking at various hotels from "the spring of 2014 until August 2015"— and her complaint passed muster. *M.A. v. Wyndham Hotels & Resorts, Inc.*, 425 F. Supp. 3d 959, 962 (S.D. Ohio 2019) (cited 213 times).

Defendants complain the Nancy's complaint is too vague because it does not always lay out precise dates, using instead timeframes such as "early 2022" or "the beginning of 2022." Looking at the complaint as a whole, however, it is at least as detailed—if not more so—than the one in *M.A.*

Defendants also ask for more details on the who, what, when, where, why, and how of Plaintiff's claims. But TVPRA claims are not fraud claims, and they are not subject to the heightened pleading standards. For fraud claims, a complaint satisfies the Tenth Circuit's standard by alleging the "who,

what, when, where, and why of the alleged misrepresentations." *In re Williams Sec. Litig.*, 339 F. Supp. 2d 1206, 1221 (N.D. Okla. 2003).

By contrast, a TVPRA claimant—like all other claimants—need only plead enough factual matter to show she has more than a speculative right to relief. Here, the Complaint includes detailed allegations about Raj Krupa, as well as allegations detailing Domino's M.O. and group allegations regarding conduct common to all defendants. The Complaint is not too vague.

## IV.    STANDARD FOR FAILURE TO STATE A CLAIM.

At the motion to dismiss stage, the Court accepts well-pled allegations as true and draws all reasonable inferences in Plaintiff's favor. *Brokers' Choice of Am., Inc. v. NBC Universal, Inc.,* 757 F.3d 1125, 1136 (10th Cir. 2014). The complaint must contain enough allegations of fact to state a claim "that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

## V.    PLAINTIFF STATES BENEFICIARY LIABILITY CLAIMS.

"The TVPRA provides a civil cause of action for victims of any crime under chapter 77 of title 18 of the U.S. Code." *Bistline v. Parker*, 918 F.3d 849, 870 (10th Cir. 2019) (citing 18 U.S.C. § 1595). One way a victim of trafficking can state a claim against a hotel is by alleging that the hotel "(1) knowingly benefitted, financially or by receiving anything of value; (2) from participation in a venture; (3) which they knew or should have known has engaged in an act

in violation of Section 1591." *M.A. v. Wyndham Hotels & Resorts, Inc.*, No. 2:19-cv-00849, 2025 U.S. Dist. LEXIS 185758, at *30 (S.D. Ohio Sep. 22, 2025).

This is known as beneficiary liability, and it involves a "*negligence* standard, not a willful blindness or a reckless disregard standard"—so a business's failure to implement basic protections to avoid profiting from sex trafficking breaches the standard of care. *Fleites v. MindGeek S.A.R.L.*, No. 2:21-cv-04920-WLH-ADS, 2025 U.S. Dist. LEXIS 190592, at *51 (C.D. Cal. Sep. 26, 2025) (emphasis in original). Because beneficiary liability is rooted in negligence, a "long line of cases" holds that the plaintiff need not prove an "overt act" by the defendant that "furthered the sex trafficking aspect of the venture." *Id.* at *43 (collecting cases).

Raj Krupa fails to address Plaintiff's beneficiary liability claim. Instead, Raj Krupa focuses on a similarly-worded subsection of the criminal part of the statute, 18 U.S.C. § 1591(a)(2). That section, however, has a higher *mens rea* (actual knowledge, rather than "knew or should have known"). Thus, Raj Krupa's analysis under § 1591(a)(2) does not address the correct legal standards for a beneficiary liability claim.

### A.     Raj Krupa Knowingly Benefited from Hotel Rentals.

Receiving revenue from a "room rental" constitutes a "financial benefit sufficient to meet" the first element of a beneficiary liability claim. *D.H. v. Tucker Inn Inc.*, 689 F. Supp. 3d 1304, 1309 (N.D. Ga. 2023). Here, Nancy often

shared a pair of rooms with other sex workers, using them to sleep in and meet clients. (Doc. 115 at ¶ 173.) Each time, Raj Krupa profited from the revenue of both rooms, and surveillance footage captured the rooms being used for commercial sex. (*Id.* ¶ 174.) On multiple other occasions, Nancy informed Raj Krupa's front desk staff that she had a "trick" or "client" coming and that she would pay for the room after her date. (*Id.* ¶ 167–71.) Raj Krupa's staff knew Nancy was meeting with a john for commercial sex and then using that money to pay for the room after-the-fact, providing Raj Krupa with room revenue. Raj Krupa also financially benefited from each time that Nancy made a day-to-day cash extension. (*Id.* ¶ 91(a) –(d).)

### B.     Raj Krupa Participated in a Venture.

Congress has not defined "participation in a venture" for purposes of civil liability under § 1595. *G.G. v. Salesforce.Com, Inc., 76 F.4th 544, 557–58 (7th Cir. 2023).* The criminal portion of the statute defines participation in a venture as "participation in a venture" as knowingly "assisting, supporting, or facilitating a violation" of Section 1591(a)(1). 18 U.S.C. 1591(e)(4). But that definition cannot be "import[ed]" into § 1595 because this would conflict with § 1595's "known or should have known" language, and because the criminal definition—by its own language—applies in the criminal section only. *G.G*, 76 F.4th at 558.

[ 16 ]

Several principles guide the analysis of what "participation in a venture" means in the civil context. ***First***, any type of venture—even a commercial one, unrelated to sex trafficking—satisfies this element. *F.C. v. Jacobs Sols. Inc.*, 790 F. Supp. 3d 1158, 1186 (D. Colo. 2025) (the venture "need not have as its primary purpose violating the TVPRA, but instead can be a commercial venture like running or expanding a business") (cleaned up). Thus, running a hotel alone satisfies the "participation in a venture" element. *T.P. v. Wyndham Hotels & Resorts, Inc.*, No. 2:21-cv-04933, 2022 U.S. Dist. LEXIS 217315, at *31 (S.D. Ohio Dec. 1, 2022) (holding that a hotel was a "venture").

***Second***, participation in a venture for purposes of civil liability should not be harder for a plaintiff to show than the definition of the same phrase in the criminal portion of the statute. *G.G.*, 76 F.4th at 558–60. The criminal definition sets the "upper limits" of what the civil definition requires, but the plaintiff should be able to state a civil claim even with a lesser showing. *Id.*

***Third***, there is "widespread agreement" among District Courts that an "overt act in furtherance of" a trafficking violation is ***not*** required for the defendants to have participated in a venture. *F.C. v. Jacobs Sols. Inc.*, 790 F. Supp. 3d 1158, 1187 (D. Colo. 2025).

***Fourth***, Congress expanded the scope of civil liability under the TVPRA to target "the financial motivations and the infrastructure that allows trafficking organizations to thrive." *M.A.*, 2025 U.S. Dist. LEXIS 185758 at *6.

[ 17 ]

In the sex trafficking industry, "that infrastructure begins and ends with physical spaces." *Id.*" When a defendant provides sex trafficking something it "cannot operate without," that constitutes participation for civil purposes. *Id.*

**Fifth**, whatever "participation in a venture" means, it is something less demanding than a RICO "enterprise." *Doe (L.M.) v. 42 Hotel Raleigh, LLC*, No. 5:23-CV-235-FL, 2024 U.S. Dist. LEXIS 165863, at *15 (E.D.N.C. Sep. 16, 2024). Congress "elected to write RICO and the TVPRA differently," with the TVPRA permitting liability where RICO would not. *Id.*

Certainly, a plaintiff can show a TVPRA venture by alleging facts sufficient to show that two or more people are "associated in fact," As required by RICO. *F.C.*, 790 F. Supp. 3d at 1186. Even under RICO's higher standards, it is enough that the defendant know the "general nature of the enterprise" and that it "extends beyond his individual role"—it need not know who else is involved. *United States v. Christensen*, 828 F.3d 763, 780 (9th Cir. 2016).

Applying these principles here, **first**, Raj Krupa participated in a venture because it operated a hotel—and this alone satisfies the participation in a venture element. *T.P.*, 2022 U.S. Dist. LEXIS 217315 at *31.

**Second**, even if this weren't enough (which it is), Raj Krupa's actions here would satisfy even the *criminal* definition of "participation in a venture" under § 1591(e)(4) because it assisted, supported, or facilitated violations of § 1591(a)(1). Facilitating a violation means making it easier—and this is

exactly what Raj Krupa did. Nancy informed Raj Krupa's staff on multiple occasions that she was unable to pay for a room, but that she had a "trick" or "client" coming and she would be able to pay after meeting him—and Raj Krupa's staff then knowingly facilitated the trafficking transactions by lending her the required rooms. (Doc. 115 at ¶ 167–69.)

**Third**, holding that Raj Krupa participated in a venture here accords with Congress's purpose in amending § 1595, which was to target the "infrastructure"—including hotels—that allow trafficking to thrive. *M.A.*, 2025 U.S. Dist. LEXIS 185758 at *6. Here, Raj Krupa allowed trafficking to thrive by creating an environment where traffickers felt safe operating out of its Days Inn. Raj Krupa made it easier for Nancy to secure rooms by allowing her to pay after meeting with clients. (Doc. 115 at ¶¶ 167–71.)

Raj Krupa also taught Domino that, despite displaying signs of trafficking, neither he nor Nancy would be kicked out. For instance, after an incident where Domino's girls flushed so many condoms down the toilet that the septic system became clogged, neither Nancy nor Domino were asked to leave. (*Id.* ¶¶ 175–76.) She was also allowed to stay despite wearing skimpy clothing, using a fake temporary ID, paying in cash for extensions, and requesting unusual numbers of towel and linen changes. (*Id.* ¶¶ 91(a) –(d), 91(f), 172.) Each of these behaviors is a well-known indicator of trafficking, recognized throughout the hospitality industry, including by Raj Krupa itself.

(*Id.* ¶¶ 56, 62–64.) Raj Krupa also allowed trafficking to thrive by allowing traffickers at its hotel to mistreat freelance prostitutes by scaring off their clients and intimidating them into working for a pimp. (*Id.* ¶ 180.) Raj Krupa, on multiple occasions, permitted traffickers to use its Days Inn to recruit victims.

*Fourth* and finally, Raj Krupa had every reason to know that there were victims of sex trafficking on its property, and that it was helping pimps. Raj Krupa did not even need to know Plaintiff's trafficker's name (or even know his identity) to participate in a venture with him. *Christensen*, 828 F.3d at 780. But Raj Krupa did know who Plaintiff's trafficker was. Following the septic system clog incident, Domino decided to move his group of girls to a different room. (Doc. 115 at ¶ 176.) He left behind a gun in the microwave of the room they had just vacated. (*Id.* ¶ 177.)

Although that room was booked solely under Nancy's name, Raj Krupa and its staff allowed Domino to personally retrieve the gun from the front desk. (*Id.*) Raj Krupa therefore knew that Domino was staying in Nancy's room with multiple prostitutes, including Nancy, and that he carried a gun while doing so. Raj Krupa was also able to see guest internet usage records from Wi-Fi purchases which allowed it to access Domino's internet history when he posted sexual advertisements for Nancy on Backpage.com while using Days Inn's Wi-Fi. (*Id.* ¶ 183(j(iii) –(iv)).) In sum, Raj Krupa participated in a venture.

C.    <u>**Raj Krupa "Should Have Known" of the Violations.**</u>

Unlike § 1591(a), which requires at least "reckless disregard" of coercion, the "should have known" language of § 1595 imposes a more lenient negligence standard. *Acevedo v. Exp. Realty, LLC*, 2024 U.S. Dist. LEXIS 16498, at *66 (C.D. Cal. Jan. 29, 2024) (citing *M.A.*, 425 F. Supp. 3d at 965–66); *see also Doe v. Reddit, Inc.*, 51 F.4th 1137, 1141 (9th Cir. 2022) (noting that § 1595 beneficiary liability lacks § 1591(a)(2)'s more stringent *mens rea* requirement).

In the context of hotels, negligence means failure to train staff to recognize the red flags of human trafficking. *M.A., 425 F. Supp. 3d at 967.* Here, in partnership with the Polaris Project and the AHLA, Days Inn implemented human trafficking training that should have equipped Raj Krupa's staff to identify the trafficking signs exhibited by Nancy. The training identified the following conduct as red flags of trafficking:

- Paying in cash or with a prepaid card, often one day at a time;
- Wearing heavy makeup, lingerie, or minimal clothing;
- Discarding condoms;
- Use of Backpage.com; and
- Heavy foot traffic to a room by different men.

Nancy displayed every one of these behaviors during her trafficking. She paid for day-to-day extensions in cash, wore minimal clothing, flushed numerous condoms down the toilet causing a clog, saw at least 10 clients per day which was caught on security cameras, and appeared in Backpage.com ads

at Raj's Days Inn which were posted by Domino under the hotel's Wi-Fi. Yet Raj and its staff did not recognize, report, or intervene in response to these red flags. Despite having training that specifically warned of these indicators, Raj did nothing to stop Nancy's trafficking. This demonstrates that the training was either insufficient, not enforced, or simply ignored by employees.

The absence of effective training—and the failure to act on the red flags—shows a lack of responsibility, which allowed Nancy's trafficking to continue and for Raj to profit from it.

## VI.    PLAINTIFF STATES PERPETRATOR LIABILITY CLAIMS.

### A.    Raj Krupa is Liable as a Perpetrator.

The TVPRA creates a cause of action for trafficking victims "against the perpetrator." 18 U.S.C. § 1595(a). Perpetrators are those who—among other things—knowingly "harbor" or "provide" any person in reckless disregard of the fact that force, threats, fraud, or coercion "will be used to cause the person to engage in a commercial sex act." 18 U.S.C. § 1591(a)(1)–(2). We first show how Raj Krupa knowingly harbored Nancy, a prostitute. Then, we will show how it operated in reckless disregard of the fact that she was being coerced.

### B.    Raj Krupa Knowingly Harbored Nancy.

The TVPRA does not define "harbors," so the word takes its ordinary meaning. "Harboring" means "[t]he act of affording lodging or refuge to a person, esp. a criminal or illegal alien." BLACK'S LAW DICTIONARY 860

(11th Ed. 2019). Hotels can harbor a victim "through the act of renting rooms to a trafficker." *Doe v. Wyndham Hotels & Resorts*, No. 2:23-cv-01676-DAD-CSK, 2025 U.S. Dist. LEXIS 2988, at *54 (E.D. Cal. Jan. 6, 2025) (collecting cases). The hotel need not have acted with any "intent to commit a crime." *Id*. Certainly, knowingly providing someone with a room that will be used for commercial sex—a crime—is "harboring" under any definition.

Here, Nancy alleged facts showing Raj Krupa "harbored" her within the ordinary meaning of that word by renting her rooms that she had explicitly told it would be used for sex work. It sheltered her in the literal sense of providing a roof over her head. It also sheltered her in the figurative sense of concealing the crime of prostitution from public view. Thus, Nancy's allegations that Raj Krupa "knowingly . . . harbor[ed]" her are plausible.

## C.    Raj Krupa Acted "in Reckless Disregard" of Coercion.

Next, we explain why § 1591 requires reckless disregard, not actual knowledge, that a victim was coerced to sell sex. We then show that Raj Krupa acted with reckless disregard of Nancy's coercion because Raj Krupa knew Nancy was a prostitute, and they therefore knew there was an over 50% chance she was being coerced—factual allegations the Court must credit at this stage.

18 U.S.C. § 1591 sets out a two-tiered *mens rea*: the defendant must knowingly engage in specified conduct (e.g., harboring) with respect to a trafficking victim, and then it must either know or recklessly disregard the fact

that the person is a trafficking victim. *United States v. Duong*, 848 F.3d 928, 933 (10th Cir. 2017) (explaining that the TVPRA was amended in 2008, which "decreased the prosecution's burden of proving *mens rea* by permitting it to show reckless disregard in lieu of knowledge.").

A defendant acts in "reckless disregard" of a fact when it was aware of a "substantial and unjustifiable risk" that the fact is true. *United States ex rel. Schutte v. SuperValu Inc.*, 598 U.S. 739, 751 (2023). Here, Nancy has alleged facts showing that Raj Krupa knew she would engage in commercial sex. What's more, Nancy alleges that the sex trade is an omnipresent part of the hotel industry—and that as a result, the Defendant was more aware than most about the universally coercive nature of sex work. (Doc. 115, at ¶¶ 27–28, 40, 51–55, 58.) It was therefore at least plausibly aware that over half of all prostitutes face serious harm when trying to leave—a level of risk that would dissuade a reasonable person in similar circumstances. (*Id.* ¶ 40.)

Further, Raj Krupa disregarded a substantial and unjustifiable risk that Nancy was being coerced. Namely, Nancy had visible bruises at check in, and it saw Nancy service more than ten men per day. (*Id.* ¶¶ 85–86.) Worst of all, when Domino's gun was found in Nancy's room, Raj Krupa literally handed it back to him. (*Id.* ¶¶ 176–177.) This was reckless.

## VII.  DEFENDANT'S STATE LAW ARGUMENTS LACK MERIT

Raj Krupa argues that because it did not engage in "any of the methods or coercion to constitute human trafficking", it cannot be liable under 21 O.S § 748.2(B). The statute defines human trafficking as—among other things— "benefiting, financially or by receiving anything of value, from participating in a venture that has engaged in an act of trafficking for commercial sex." 21 O.S § 748.1(A)(6)(c). As discussed in the §§ V(A)–V(C), *supra*, Raj did knowingly profited from sex trafficking. Defendant's argument lacks merit.

Further, Courts should not dismiss a claim as time-barred unless the statute of limitations defense is definitively established "on the face of the complaint." *Fernandez*, 883 F.3d at 1299 (quoting case law). Plaintiff filed her complaint in state court on March 19th, 2025. She alleges that she was trafficked through 2022. (FAC ¶ 84.) As Plaintiff has explained elsewhere, nothing on the face of the complaint suggests her complaint is time-barred.

## VIII. CONCLUSION

Raj Krupa cleaned up the mess of hundreds of trafficking transactions and literally handed Nancy's trafficker his gun back. The Court should deny Defendant's motion in its entirety.

DATED this 5th day of December, 2025

Respectfully submitted,

/s/ Geoffrey C. Parker

Geoffrey C. Parker, Esq. (*pro hac vice*)
HILTON PARKER LLC
7658 Slate Ridge Blvd.
Reynoldsburg, OH 43068
Tel: (614) 992-2277
Fax: (614) 927-5980
gparker@hiltonparker.com
*Attorney for Plaintiff Nancy R.*