## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| NANCY R., pseudonymously, | Case No.: 5:25-cv-462 |
|     Plaintiff, | Judge Charles B. Goodwin |
| vs. | |
| PLAZA HOTELS, LLC et al., | **PLAINTIFF'S RESPONSE TO THE MOTION TO DISMISS FILED BY JALIYAN HOSPITALITY, INC.** |
|     Defendants. | |

COMES NOW Plaintiff Nancy R. ("Plaintiff" or "Nancy" herein), by and through her undersigned attorneys, and submits this Response to the Motion to Dismiss filed by Defendant Jaliyan Hospitality, Inc. (Doc. 137.)

DATED this 5th day of December, 2025

                                */s/ Geoffrey C. Parker*
                                GEOFFREY C. PARKER, ESQ.
                                Ohio Bar No. 0096049
                                JONATHAN L. HILTON, ESQ.
                                Ohio Bar No. 0095742
                                HILTON PARKER LLC
                                7658 Slate Ridge Boulevard
                                Reynoldsburg, Ohio 43068

                                MICHAEL C. KANE, ESQ.
                                Nevada Bar No. 10096
                                THE702FIRM INJURY ATTORNEYS
                                400 South 7th Street, Suite 400
                                Las Vegas, Nevada 89101

                                *Attorneys for Nancy R.*

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ............................................................. ii

I.      INTRODUCTION ............................................................. 1

II.     STATEMENT OF FACTS .................................................. 5

    A.    Nancy Was Trafficked by an Abusive Gang Member. ................. 6

    B.    Defendant Knew Hotels Are Prone to Sex Trafficking. ............... 6

    C.    When Jaliyan Saw How Many Towels Nancy Needed and How Many Condoms Were in Her Trash, It Upped Her Room Deposit. ....................................................... 8

    D.    Jaliyan Was Able to Detect and Track Red Flags of Trafficking. ................................................... 9

III.    STANDARD FOR FAILURE TO STATE A CLAIM. ............ 11

IV.     DEFENDANT'S PROCEDURAL ARGUMENTS LACK MERIT. ........ 11

    A.    Plaintiff Has Cured Any Jurisdictional Concerns by Filing a Motion for Leave to Proceed under a Pseudonym. ....................... 11

    B.    No Criminal Proceedings Mandate a Stay of This Case. ............. 11

V.      PLAINTIFF STATES BENEFICIARY LIABILITY CLAIMS. ............ 12

    A.    Jaliyan Knowingly Benefited from Room Rentals ...................... 13

    B.    Jaliyan Participated in a Venture. .................................. 13

    C.    Jaliyan "Should Have Known" of the Violations. ....................... 18

VI.     PLAINTIFF STATES PERPETRATOR LIABILITY CLAIMS. ............ 19

    A.    Jaliyan Hospitality, Inc. is Liable as a Perpetrator. .................. 19

    B.    Jaliyan Knowingly Harbored Nancy. ................................ 20

    C.    Jaliyan Acted in "Reckless Disregard" of Coercion. .................. 21

        1.   Perpetrator liability requires "reckless disregard"—not actual knowledge. ..................................................... 22

        2.   Jaliyan "recklessly disregarded" Nancy's coercion. ............... 22

VII.    DEFENDANT'S STATE LAW ARGUMENTS LACK MERIT ............. 23

    A.    Jaliyan's Argument that Oklahoma Law Grants a Remedy Against Only Perpetrators Lacks Merit. ..................... 23

    B.    Nancy's State Law Claims are Not Time-Barred. ...................... 24

VIII.   CONCLUSION ............................................................ 25

## <u>TABLE OF AUTHORITIES</u>

### <u>CASES</u>

*Acevedo v. Exp. Realty, LLC,*
   2024 U.S. Dist. LEXIS 16498 (C.D. Cal. Jan. 29, 2024) ...................... 18

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007) ................................................................................ 11

*Bistline v. Parker*,
   918 F.3d 849 (10th Cir. 2019) ............................................................... 12

*Brokers' Choice of Am., Inc. v. NBC Universal, Inc.*,
   757 F.3d 1125 (10th Cir. 2014) ............................................................. 11

*D.H. v. Tucker Inn Inc.*,
   689 F. Supp. 3d 1304 (N.D. Ga. 2023) ............................................. 2, 13

*Doe (L.M.) v. 42 Hotel Raleigh, LLC*,
   2024 U.S. Dist. LEXIS 165863 (E.D.N.C. Sep. 16, 2024) ..................... 15

*Doe v. Reddit, Inc.*,
   51 F.4th 1137 (9th Cir. 2022) ................................................................ 18

*Doe v. Tulsa Cty.*,
   2024 U.S. Dist. LEXIS 182503 (N.D. Okla. Oct. 7, 2024) ................. 1, 11

*Doe v. Wyndham Hotels & Resorts*,
   2025 No. 2:23-cv-01676-DAD-CSK; 2025 U.S. Dist. LEXIS
   2988 (2025) ............................................................................................ 20

*F.C. v. Jacobs Sols. Inc.*,
   790 F. Supp. 3d 1158 (D. Colo. 2025) ....................................... 14, 15, 16

*Fernandez v. Clean House, LLC*,
   883 F.3d 1296 (10th Cir. 2018) ....................................................... 12, 24

*Fleites v. MindGeek S.A.R.L.*,
    2025 No. 2:21-cv-04920-WLH-ADS; 2025 U.S. Dist. LEXIS
    190592 (2025) .......................................................................... 13

*G.G. v. Salesforce.com, Inc.*,
    76 F.4th 544 (7th Cir. 2023) ............................................... 13, 14

*M.A. v. Wyndham Hotels & Resorts, Inc.*,
    425 F. Supp. 3d 959 (S.D. Ohio 2019) ................................... 3, 18

*M.A. v. Wyndham Hotels & Resorts, Inc.*,
    No. 2:19-cv-00849, 2025 U.S. Dist. LEXIS 185758 (S.D. Ohio
    Sep. 22, 2025) ........................................... 2, 12, 15, 16, 17

*P.C. v. D Fort Hotel, LLC, Civil Action*,
    2025 No. 24-cv-01584-PAB-TPO; 2025 U.S. Dist. LEXIS 20835
    (2025) .................................................................. 16, 17, 23

*Plaintiff A v. Schair*,
    744 F.3d 1247 (11th Cir. 2014).............................................. 12

*S.C. v. Hilton Franchise Holding, LLC*,
    2024 U.S. Dist. LEXIS 205682 (D. Nev. Nov. 12, 2024) ...................... 21

*T.P. v. Wyndham Hotels & Resorts, Inc.*,
    2:21-cv-4933, 2022 U.S. Dist. LEXIS 217315 (S.D. Ohio Dec. 1,
    2022) .................................................................... 14, 15

*United States ex rel. Schutte v. SuperValu Inc.*,
    598 U.S. 739 (2023) ......................................................... 22

*United States v. Christensen*,
    828 F.3d 763 (9th Cir. 2016)............................................. 15, 18

*United States v. Duong*,
    848 F.3d 928 (10th Cir. 2017).............................................. 22

*United States v. Rodriguez*,
    880 F.3d 1151 (9th Cir. 2018).............................................. 22

## STATUTES

18 U.S.C.
    § 1591(a) ................................................................................................ 3
    § 1591(a)(1) ......................................................................................... 20
    § 1591(e)(4) ..................................................................................... 2, 13
    § 1595 ............................................................................................... 1, 12
    § 1595(a) ............................................................................................. 19
    § 1595(b)(1) ................................................................................... 1, 11

28 U.S.C.
    § 1447(c) ............................................................................................. 11

Oklahoma
    O.S. 21.1(A)(6)(c) ............................................................................ 24
    O.S. 21.1(B) ....................................................................................... 24
    O.S. 21.2(B) ................................................................... 5, 23, 24, 25

## FEDERAL RULES

Fed. R. Civ. P.
    Rule 9(b) ............................................................................................. 21

## OTHER AUTHORITIES

BLACK'S LAW DICTIONARY 860 (11th Ed. 2019) ............................................ 3, 20

*Harbor*, Merriam-Webster Dictionary, https://www.merriam-webster.com/dictionary/harbor .............................................................. 20

Wyndham Hotels & Resorts, Modern Slavery Statement (2025), available at: https://corporate.wyndhamhotels.com/modern-slavery-statement/ ................................................................................... 7

## I.    INTRODUCTION

This case arises out of the sex trafficking of Nancy R., who lived under the thumb of a pimp named "Domino"—a member of the Bloods gang—for almost two years. Domino beat Nancy regularly and, across two weeks' worth of stays, forced Nancy to have sex with 140 men at the Super 8 by Wyndham Oklahoma City ("the Super 8 Prospect") located at 3852 S. Prospect Avenue, Oklahoma City OK 73129, owned and operated by Defendant Jaliyan Hospitality, Inc. ("Jaliyan").   The Court should deny Jaliyan's motion to dismiss.

***First***, Jaliyan's procedural arguments lack merit.  The Court may either remand this case to state court or grant Plaintiff's motion for leave to proceed under a pseudonym—thus curing any jurisdictional defect. *Doe v. Tulsa Cty.*, No. 24-CV-00380-SEH, 2024 U.S. Dist. LEXIS 182503, at *14 (N.D. Okla. Oct. 7, 2024) (collecting cases).  Nor is this case subject to a mandatory stay under 18 U.S.C. 1595(b)(1), as no criminal proceedings for sex trafficking are pending against Plaintiff's trafficker.

***Second***, Nancy states beneficiary liability claims under the Trafficking Victims Protection Reauthorization Act ("TVPRA"), 18 U.S.C. § 1595, against Jaliyan.  A plaintiff states a beneficiary liability claim against a hotel by pleading three elements: The hotel "(1) knowingly benefitted, financially or by receiving anything of value; (2) from participation in a venture; (3) which they

knew or should have known has engaged in an act in violation of Section 1591." *M.A. v. Wyndham Hotels & Resorts, Inc.*, No. 2:19-cv-00849, 2025 U.S. Dist. LEXIS 185758, at *30 (S.D. Ohio Sep. 22, 2025).

Here, Jaliyan benefited by receiving money from room rentals. *D.H. v. Tucker Inn Inc.*, 689 F. Supp. 3d 1304, 1309 (N.D. Ga. 2023) (holding that receiving revenue from a "room rental" constitutes a "financial benefit sufficient to meet" the first element of a beneficiary liability claim).

Jaliyan also participated in a venture here because it "facilitate[d]" Nancy's trafficking. *See* 18 U.S.C. 1591(e)(4). Jaliyan:

- Rented rooms to Nancy and other victims knowing those rooms were being used for commercial sex;

- Allowed a visibly bruised Nancy to book rooms despite watching her escort 140 men to her hotel room over a 2 week period;

- Allowed Nancy to reserve rooms and after cleaning condoms from her rooms from previous stays;

- Allowed Nancy to extend her stay day-by-day with cash payments earned from being trafficking in the hotel rooms—while knowing that she was earning the money that way;

- Provided Nancy with excess towels and linens, making it easier for Nancy to be sold for sex out of the hotel room; and

- Increased Nancy's room deposit when they noticed signs of prostitution—allowing the hotel to hold onto the proceeds of human trafficking.

Finally, Jaliyan knew or should have known of the violations of § 1591, which criminalizes sex trafficking. The "should have known" language in

§ 1595 imposes a "negligence standard"—nothing more. *M.A. v. Wyndham Hotels & Resorts, Inc.*, 425 F. Supp. 3d 959, 965 (S.D. Ohio 2019).

Here, anti-trafficking training was made available to Jaliyan and its staff through its parent company Wyndham in 2019, two years before Nancy's trafficking started. The program highlighted many of the red flags that attended Nancy's trafficking, including paying in cash or with prepaid cards, wearing little clothing, discarding of tons of condoms, use of Backpage.com to advertise sex trafficking on the hotel Wi-Fi, and heavy foot traffic to a room by non-guest men. (FAC, Doc. 115 at ¶¶ 62–64, 91–93, 161.) Jaliyan either knew that Nancy was being trafficked at its Super 8, or it would have known had it completed the training and adhered to it. Thus, Nancy states a beneficiary liability claim.

***Third***, Nancy states a direct "perpetrator" liability claim against Jaliyan for knowingly harboring her, in reckless disregard of the fact that she was subject to force, fraud, or coercion. 18 U.S.C. § 1591(a). To "harbor" means "[t]he act of affording lodging or refuge to a person, esp. a criminal or illegal alien." BLACK'S LAW DICTIONARY 860 (11th Ed. 2019).

Here, Jaliyan provided Nancy (and her trafficker, Domino) a hotel room for two weeks—thus affording them lodging—even though they were clearly engaged in at least prostitution, which is a criminal activity. That's harboring.

Nancy checked in wearing skimpy clothing consistent with sex work, shared rooms with other sex workers, and escorted dozens of male visitors to her room. (FAC, Doc. 115 at ¶¶ 91–94, 160–162.) Domino visited Nancy at the hotel to collect her earnings, and he posted her sex ads on Backpage.com using the hotel's Wi-Fi. (*Id.* ¶ 164(h)(iii).) These facts made it clear to Jaliyan and its staff that Nancy was engaging in prostitution under Domino's control.

Jaliyan did this in reckless disregard of the fact that Domino was subjecting Nancy to force, fraud, or coercion. Jaliyan knew Nancy was a prostitute, and it knew that most prostitutes have abusive pimps. (*Id.* ¶ 163.) Its staff saw Nancy's bruises—signs of Domino's abuse and coercion—when she checked in for rooms, extended her stays, and escorted johns through the hotel lobby. (*Id.* ¶ 80.) And it saw the huge number of men Nancy was forced to have sex with to make her quota. (*Id.* ¶¶ 86, 92.)

Jaliyan was aware of the prevalence of human trafficking across the hospitality industry. Jaliyan also saw reviews mentioning prostitution on its hotel property. (*Id.* ¶ 220.) Jaliyan and its staff had access to human trafficking training, but either never took the training or choose to ignore its lessons. Jaliyan knew Nancy was a bruised prostitute being worked to the bone and, therefore, likely a trafficking victim. Despite Nancy exhibiting numerous red flags of human trafficking, Jaliyan continued to provide a safe harbor for her trafficking.

[ 4 ]

Thus, Jaliyan knowingly harbored Nancy, a prostitute engaged in illegal activity, while recklessly disregarding the fact that Domino was sex trafficking her. Nancy states a claim for perpetrator liability under § 1591(a).

**Fourth**, Nancy's claims are not time-barred on the face of her Complaint. Under Oklahoma law, a trafficking survivor has three years to from the date she discovers—or reasonably should have discovered—that she was trafficked *and* that the defendant caused, was responsible for, or profited from it. 21 O.S. § 748.2(B). Plaintiff filed her complaint in March 2025 and alleges she was trafficked through 2022, and nothing on the face of the complaint establishes when Plaintiff discovered she was a trafficking victim— a process that often requires time and counseling—or when she discovered Jaliyan profited from her trafficking.

Taken together, Nancy more than plausibly alleges that Jaliyan benefited from, participated in, and knowingly facilitated her trafficking. Nothing in Jaliyan's procedural or substantive arguments warrants dismissal at this early stage. The Court should deny the motion to dismiss in its entirety.

Let's get started.

## II. STATEMENT OF FACTS

We first explain how Jaliyan's industry profits from sex trafficking. We then show that Jaliyan, and its staff, knew about Nancy's individual trafficking and failed to act.

[ 5 ]

## A.  Nancy Was Trafficked by an Abusive Gang Member.

After overcoming a childhood marked by abuse, homelessness, and incarceration, Nancy's brief stability was shortened by her fiancé's death. (Doc. 115 ¶¶ 71–72.)  She fell into drug addiction and soon ended up under the thumb of Domino, a Bloods-affiliated pimp. (*Id.* ¶¶ 73–74.) From 2021 through 2022, Domino trafficked Nancy across multiple Oklahoma hotels and forced her to engage in commercial sex with at least ten men a day. (*Id.* ¶¶ 76, 81, 84, 86.) Nancy depended on Domino for money, shelter, and drugs while he threatened, beat, and coerced her—including continuing to control her through gang affiliates even after his arrest. (*Id.* ¶¶ 75–78, 81.) Nancy ultimately escaped after meeting her husband and entering treatment, but she continues to suffer the lasting physical and psychological effects of her trafficking. (*Id.* ¶¶ 82–83.)

## B.  Defendant Knew Hotels Are Prone to Sex Trafficking.

Hotels provide temporary, anonymous, and private lodgings near airports, highways, and event spaces. (*Id.* ¶ 51.) These characteristics often attract traffickers to hotels. (*Id.* ¶ 52.)

Since 2015, hundreds of civil sex trafficking lawsuits have been filed against both local hotel franchisees and the hotel franchisors themselves. (*Id.* ¶ 59.) In 2018, Polaris Project published a report finding that the 75% of sex trafficking victims are kept in hotels and 60% of all victims are forced to engage in commercial sex at hotels during their trafficking. (*Id.* ¶ 53.) Human

trafficking-related court cases paint a similar picture: As of 2020, 77% of all active federal prosecutions for human trafficking involve sex trafficking at hotels. (*Id.* ¶ 54.)

Because hotels encounter the majority of sex trafficking victims, in 2018 the Polaris Project published a list of red flags to help hospitality employees identify instances of in-call escort services involving trafficking victims on hotel properties. (*Id.* ¶¶ 55–56.) These signs include:

- paying for stays in cash or with prepaid credit cards;
- booking for a single night and extending day by day;
- excessive condoms in hotel wastebins, excessive foot traffic;
- inappropriate attire;
- frequent requests for new towels; and
- one person checking in with multiple people in tow. (*Id.*)

According to Wyndham's 2024 Modern Slavery Statement, the Super 8 parent company made human trafficking training programs available to all its branded hotels including Jaliyan's Super 8 in 2019.[1] (*See also Id.* ¶ 60.) This training emphasized the following red flags, among others, as potential signs of human trafficking:

- paying in cash or prepaid card one day at a time;
- wearing heavy makeup, lingerie, and little clothing;
- carrying little luggage;

---

[1] Wyndham Hotels & Resorts, Modern Slavery Statement (2025), available at: https://corporate.wyndhamhotels.com/modern-slavery-statement/.

- displaying signs of drug use or sleep deprivation;

- discarding condoms;

- use of Backpage.com; and

- heavy foot traffic to room by different men. (*Id.* ¶¶ 62–64.)

### C. **When Jaliyan Saw How Many Towels Nancy Needed and How Many Condoms Were in Her Trash, It Upped Her Room Deposit.**

Defendant Jaliyan Hospitality, Inc. ("Jaliyan") owned and operated the Super 8 by Wyndham Oklahoma City ("the Super 8 Prospect") located at 3852 S. Prospect Avenue, Oklahoma City, OK 73129 during Nancy's trafficking, (*Id.* ¶¶ 8, 157.) Over two weeks of stays at the Super 8 Prospect, Nancy was forced to do in-calls and sell sex to a minimum of 10 men a day—meaning she was trafficked at least 140 times on Jaliyan's property. (*Id.* ¶¶ 85, 86, 157.)

At the Super 8 Prospect, Nancy presented visible bruises from Domino's abuse each time she checked in, each time she extended her stays, and each of the dozens of times she escorted johns through the hotel's lobby. (*Id.* ¶ 80.)

Here, Nancy showed up to check-in wearing high heels and skimpy clothing. (*Id.* ¶ 91(a).) She rented rooms with a fake ID—usually a flimsy paper "temporary" one—or sometimes didn't show her ID at all, even though she was booking under her own name. (*Id.* ¶ 91(b–c).) She extended her stay day by day, paying in cash or with a prepaid card. (*Id.* ¶ 91(d).)

Nancy also shared a room with other prostitutes at the Super 8 Prospect. (*Id.* ¶ 160.) Nancy and these women left dozens of used condoms in the hotel

[ 8 ]

room trash and repeatedly requested fresh towels and linens far more than a typical guest. (*Id.* ¶ 91(f)–(g), 160–162.) When staff noticed Nancy's abnormally frequent towel requests—an industry-recognized red flag for trafficking—it increased Nancy's room deposit for her next stay. (*Id.* ¶¶ 56(d), 162.)

During her trafficking, staff at the Super 8 Prospect witnessed Nancy escorting dozens of unregistered guests to her hotel room. (*Id.* ¶ 92.) Staff also saw the bruises Domino gave Nancy, and his daily comings and goings from the hotel. (*Id.* ¶¶ 79, 80.) Jaliyan recognized Nancy was engaged in "in-call" prostitution under the control of a pimp. (*Id.* ¶ 163.) Studies bear out that 80-90% of prostitutes are controlled by pimps, and a majority use threats and physical violence to maintain control. (*Id.* ¶¶ 27–28.) And Jaliyan knew that most prostitutes with pimps are victims of coercion. (*Id.* ¶ 163.)

## D. Jaliyan Was Able to Detect and Track Red Flags of Trafficking.

First, Jaliyan knew sex trafficking was a prevalent issue in the hospitality industry prior to Nancy's trafficking on its property. (*Id.* ¶¶ 53, 54 58, 59.) Second, its staff was—or should have been—trained to recognize and report the very red flags Nancy exhibited. (*Id.* ¶¶ 60–64, 70, 164(k)).) Third, Jaliyan's franchise agreement with Super 8 shows it tracked such red flags in a systematized manner.

For example, Jaliyan was required by its franchisor to read and respond to third-party reviews. (*Id.* ¶¶ 164(j), 226.) As required by its franchise agreement, Jaliyan read two guest reviews that warned of "hookers" and "prostitutes" on the hotel's property (*Id.* ¶¶ 220–220.) These reviews were posted either before or during Nancy's trafficking. (*Id.*)

Jaliyan could see guest internet usage records from WiFi purchases, including the full list of websites visited by persons associated with each individual reservation. (*Id.* ¶ 164(ii).) Jaliyan could see Domino and Nancy's internet history when they posted sexual advertisements on Backpage.com for Jaliyan's hotel rooms using hotel WiFi. (*Id.* ¶ 164(ii–iii).)

 Jaliyan also reported data on in-person cash reservations and what it spent on laundry and maintenance services to the franchisor on a monthly basis. (*Id.* ¶164(g)(ii–iii).) Jaliyan was required to record evidence of criminal activity, particularly evidence indicative of sex trafficking like excessive used condoms left behind, excessive requests for linens, and excessive foot traffic to particular rooms. (*Id.* 164k(i).) It knew that these were signs of trafficking. (*Id.* ¶¶ 60, 62–64, 70, 89, 163.) And Nancy's trafficking exhibited every one of these red flags throughout her trafficking at the Super 8 Prospect. (*Id.* ¶¶ 57, 63, 87, 90, 91, 92, 93, 160, 161, 162.)

### III.   STANDARD FOR FAILURE TO STATE A CLAIM.

At the motion to dismiss stage, the Court accepts well-pled allegations as true and draws all reasonable inferences in Plaintiff's favor. *Brokers' Choice of Am., Inc. v. NBC Universal, Inc.,* 757 F.3d 1125, 1136 (10th Cir. 2014). "To withstand a motion to dismiss, a complaint must contain enough allegations of fact 'to state a claim to relief that is plausible on its face.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

### IV.   DEFENDANT'S PROCEDURAL ARGUMENTS LACK MERIT.

### A.   Plaintiff Has Cured Any Jurisdictional Concerns by Filing a Motion for Leave to Proceed under a Pseudonym.

Defendant here—like Wiley, Ketter, and Plaza—claim this Court lacks jurisdiction because Plaintiff filed under a pseudonym. By statute, if the Court learns "at any time" that it lacks jurisdiction over a removed case, it "shall" remand to State court. 28 U.S.C. 1447(c). In the alternative, the Court can grant Plaintiff's pending motion for leave to proceed under a pseudonym, curing the jurisdictional defect. *Doe v. Tulsa Cty.*, No. 24-CV-00380-SEH, 2024 U.S. Dist. LEXIS 182503, at *14 (N.D. Okla. Oct. 7, 2024) (collecting cases).

Plaintiff has dealt with this issue in more depth elsewhere at Doc. 165, pages 9–11.

### B.   No Criminal Proceedings Mandate a Stay of This Case.

The TVPRA mandates a stay when certain criminal proceedings are pending. 18 U.S.C. § 1595(b)(1). This provision "was not designed to help a

defendant delay a U.S. civil action" and exists solely for the benefit of prosecutors. *Plaintiff A v. Schair*, 744 F.3d 1247, 1254–55 (11th Cir. 2014). And even if it were an affirmative defense (which it is not), Plaintiff was not required to anticipate it or plead around it in her complaint. *Fernandez v. Clean House, LLC*, 883 F.3d 1296, 1298 (10th Cir. 2018). Moreover, Nancy's Complaint does not allege any ongoing criminal prosecution, so Jaliyan's argument works only if the Court impermissibly draws and inference *against* her. This Court need not stay or dismiss the case.

## V.     PLAINTIFF STATES BENEFICIARY LIABILITY CLAIMS.

"The TVPRA provides a civil cause of action for victims of any crime under chapter 77 of title 18 of the U.S. Code." *Bistline v. Parker*, 918 F.3d 849, 870 (10th Cir. 2019) (citing 18 U.S.C. § 1595).

One way a victim of trafficking can state a cause of action against a hotel is by alleging that the hotel "(1) knowingly benefitted, financially or by receiving anything of value; (2) from participation in a venture; (3) which they knew or should have known has engaged in an act in violation of Section 1591." *M.A. v. Wyndham Hotels & Resorts, Inc.*, No. 2:19-cv-00849, 2025 U.S. Dist. LEXIS 185758, at *30 (S.D. Ohio Sep. 22, 2025).

This is known as beneficiary liability, and it involves a "*negligence* standard, not a willful blindness or a reckless disregard standard"—so a business's failure to implement basic protections to avoid profiting from sex

trafficking breaches the standard of care. *Fleites v. MindGeek S.A.R.L.*, No. 2:21-cv-04920-WLH-ADS, 2025 U.S. Dist. LEXIS 190592, at *51 (C.D. Cal. Sep. 26, 2025) (emphasis in original). Because beneficiary liability is rooted in negligence, a "long line of cases" holds that the plaintiff need not prove an "overt act" by the defendant that "furthered the sex trafficking aspect of the venture." *Id.* at *43 (collecting cases). We now turn to the elements of a beneficiary liability claim.

### A. <u>Jaliyan Knowingly Benefited from Room Rentals</u>

Receiving revenue from a "room rental" constitutes a "financial benefit sufficient to meet" the first element of a beneficiary liability claim. *D.H. v. Tucker Inn Inc.*, 689 F. Supp. 3d 1304, 1309 (N.D. Ga. 2023). Here, Nancy stayed and saw clients in rooms she shared with other sex workers. (First Amended Complaint, Doc. 115 at ¶ 160.) Each time, Jaliyan profited from the room rentals. Jaliyan also financially benefited each time that Nancy made a day-to-day cash extension. (*Id.* ¶ 91(a)–(d).)

### B. <u>Jaliyan Participated in a Venture.</u>

Congress has not defined "participation in a venture" for purposes of civil liability under § 1595. *G.G. v. Salesforce.com, Inc.*, 76 F.4th 544, 558 (7th Cir. 2023). The criminal portion of the statute defines participation in a venture as "participation in a venture" as "knowingly assisting, supporting, or facilitating" a violation of Section 1591(a)(1). 18 U.S.C. 1591(e)(4). But that

definition cannot be "import[ed]" into § 1595 because this would conflict with § 1595's "known or should have known" language, and because the criminal definition—by its terms—applies in § 1591, only. *G.G*, 76 F.4th at 558.

Several principles guide the analysis of what "participation in a venture" means in the civil context. ***First***, any type of venture—even a commercial one, unrelated to sex trafficking—satisfies this element. *F.C. v. Jacobs Sols. Inc.*, 790 F. Supp. 3d 1158, 1186 (D. Colo. 2025) (the venture "need not have as its primary purpose violating the TVPRA, but instead can be a commercial venture like running or expanding a business") (cleaned up). Thus, running a hotel alone satisfies the "participation in a venture" element. *T.P. v. Wyndham Hotels & Resorts, Inc.*, No. 2:21-cv-04933, 2022 U.S. Dist. LEXIS 217315, at *31 (S.D. Ohio Dec. 1, 2022) (holding that a hotel was a "venture").

***Second***, participation in a venture for purposes of civil liability should not be harder for a plaintiff to show than the definition of the same phrase in the criminal portion of the statute. *G.G.*, 76 F.4th at 558–60. The criminal definition sets the "upper limits" of what the civil definition requires, but the plaintiff should be able to state a civil claim even with a lesser showing. *Id.*

***Third***, there is "widespread agreement" among District Courts that an "overt act in furtherance of" a trafficking violation is ***not*** required for the defendants to have participated in a venture. *F.C. v. Jacobs Sols. Inc.*, 790 F. Supp. 3d 1158, 1187 (D. Colo. 2025).

[ 14 ]

**Fourth**, Congress expanded the scope of civil liability under the TVPRA to target "the financial motivations and the infrastructure that allows trafficking organizations to thrive." *M.A.*, 2025 U.S. Dist. LEXIS 185758 at *6. In the sex trafficking industry, "that infrastructure begins and ends with physical spaces." *Id.*" When a defendant provides sex trafficking something it "cannot operate without," that constitutes participation in a venture for civil purposes. *Id.*

**Fifth**, whatever "participation in a venture" means, it is something less demanding than a RICO "enterprise." *Doe (L.M.) v. 42 Hotel Raleigh, LLC*, No. 5:23-CV-235-FL, 2024 U.S. Dist. LEXIS 165863, at *15 (E.D.N.C. Sep. 16, 2024). Congress "elected to write RICO and the TVPRA differently," with the TVPRA permitting liability where RICO would not. *Id.*

Certainly, a plaintiff can show a TVPRA venture by alleging facts sufficient to show that two or more people are "associated in fact.," as required by RICO. *F.C.*, 790 F. Supp. 3d at 1186. Even under RICO's higher standards, it is enough that the defendant know the "general nature of the enterprise" and that it "extends beyond his individual role"—it need not know who else is involved. *United States v. Christensen*, 828 F.3d 763, 780 (9th Cir. 2016).

Applying these principles here, **first**, Jaliyan participated in a venture because it operated a hotel—and this alone satisfies the participation in a venture element. *T.P.*, 2022 U.S. Dist. LEXIS 217315 at *31.

***Second***, even if this weren't enough (which it is), Jaliyan's actions here would satisfy even the *criminal* definition of "participation in a venture" under § 1591(e)(4) because it assisted, supported, or facilitated violations of § 1591(a)(1).  Facilitating a violation means making it easier—and Jaliyan made the trafficking easier by opening its hotel to the steady stream of 140 male sex buyers who came to victimize Nancy, and by cleaning up the messes they left behind. *See P.C. v. D Fort Hotel, LLC*, Civil Action No. 24-cv-01584-PAB-TPO, 2025 U.S. Dist. LEXIS 20835, at *15 (D. Colo. Feb. 5, 2025) ("Courts have also found that allegations of voluminous sex buyers are indicative of the fact that the commercial sex activity was coerced.").

***Third***, overt acts aren't a requirement of participation. *F.C.*, 790 F. Supp. 3d at 1187.  But even so, overseeing a stream of 140 sex buyers within a 2-week period (and cleaning up the condoms after them) isn't a small undertaking. Moreover, when Jaliyan's employees realized what Nancy was doing in the hotel room, they ***increased*** her room deposit compared to other customers—an act that allowed them to hold on to the proceeds of human trafficking.

***Fourth***, holding that Jaliyan participated in a venture here accords with Congress's purpose in amending § 1595, which was to target the "infrastructure"—including hotels—that allow trafficking to thrive. *M.A.*, 2025 U.S. Dist. LEXIS 185758 at *6. Here, Jaliyan allowed trafficking to thrive by

creating an environment where traffickers felt safe operating out of its Super 8. From Nancy's repeated stays, Domino knew that hotel staff would not deny them rooms for displaying signs of trafficking. For instance, Nancy was able to book multiple rooms despite wearing skimpy clothing, using a fake or temporary ID, paying in cash for extensions, and having heavy foot traffic to her room. (*Id.* ¶ 91(a)–(d), 91(f), 92.)

Each of these behaviors is a known red flag that was taught—or should have been taught—to Jaliyan's hotel staff through Wyndham's human trafficking training program. The sheer number of men Nancy was seeing was a telltale sign she was being coerced—no "freelance" prostitute working on her own sees ten men a night. *See P.C. v. D Fort Hotel, LLC*, 2025 U.S. Dist. LEXIS 20835 at *15 (explaining that a large number of sex buyers is evidence of coercion). Courts routinely hold that when a prostitute sees more than two men per night, it is at least plausible at the pleading stage that the hotel recognized (or should have recognized) she was being coerced. *Id.* (collecting cases).

Viewed together with the other warning signs, Nancy's extra towel requests should have further alerted Jaliyan that Nancy was being trafficked. Instead of reporting her for suspected trafficking, however, Jaliyan decided to increase its own take by upping her room deposit. (*Id.* ¶ 162.) Nancy could be trafficked out of the Super 8—so long as Jaliyan felt it was fairly compensated.

***Fifth*** and finally, Jaliyan had every reason to suspect that Nancy is a victim of sex trafficking and that she was under the control of a pimp—and it didn't need to know Plaintiff's trafficker's name (or even his identity) to participate in a venture. *United States v. Christensen*, 828 F.3d 763, 780 (9th Cir. 2016). That being said, hotel staff saw when Domino came to the hotel to oversee Nancy's work—so they did know a pimp was involved. (*Id.* ¶ 80.) Jaliyan also saw when Domino registered for its Super 8's WiFi to post Nancy for sex online. (*Id.* ¶ 164(h)(iii).)

So, Plaintiff sufficiently alleges that Jaliyan participated in a venture.

### C.    <u>Jaliyan "Should Have Known" of the Violations.</u>

Unlike § 1591(a), which requires at least "reckless disregard" of coercion, the "should have known" language of § 1595 imposes a more lenient negligence standard. *Acevedo v. Exp. Realty, LLC*, 2024 U.S. Dist. LEXIS 16498, at *66 (C.D. Cal. Jan. 29, 2024) (citing *M.A. v. Wyndham*, 425 F. Supp. 3d at 965–66); *see also Doe v. Reddit, Inc.*, 51 F.4th 1137, 1141 (9th Cir. 2022) (noting that § 1595 beneficiary liability lacks § 1591(a)(2)'s more stringent *mens rea* requirement).

In the context of hotels, negligence means failure to train staff to recognize the red flags of human trafficking. *M.A.*, 425 F. Supp. 3d at 967. Here, Wyndham provided Jaliyan with human trafficking training that should have equipped staff to identify the clear and obvious signs exhibited by Nancy

at the Super 8 Prospect. The training identifies the following conduct as red flags of trafficking:

- Paying in cash or with a prepaid card, often one day at a time;
- Wearing heavy makeup, lingerie, or minimal clothing;
- Discarding condoms;
- Use of Backpage.com; and
- Heavy foot traffic to a room by different men.

(First Amended Complaint, Doc. 115 at ¶¶ 62–64.)

Nancy displayed every one of these behaviors during her trafficking at Jaliyan's Super 8. (*Id.* ¶ 91(a), 91(d), 161–63, 164(h)(iii).) Yet Jaliyan and its staff failed to intervene—or even stop renting rooms—in response to these red flags. Wyndham's anti-trafficking training was either not implemented by Jaliyan or simply disregarded in Nancy's case. Instead, rather than refuse to rent to Nancy, they ***increased*** her room deposit. So, Jaliyan allowed Nancy's trafficking to continue—and continued to profit from it—because it failed to adequately train and supervise its employees and implement effective reporting mechanisms.

## VI. PLAINTIFF STATES PERPETRATOR LIABILITY CLAIMS.

### A. <u>Jaliyan Hospitality, Inc. is Liable as a Perpetrator.</u>

In addition to beneficiary liability, the TVPRA creates a cause of action for trafficking victims "against the perpetrator." 18 U.S.C. § 1595(a). Perpetrators are those who—among other things—knowingly "harbor" or

"provide" any person in reckless disregard of the fact that force, threats, fraud, or coercion "will be used to cause the person to engage in a commercial sex act." 18 U.S.C. § 1591(a)(1)–(2).

We first show how Jaliyan knowingly harbored Nancy, a known prostitute. Then, we will show how it operated in reckless disregard of the fact that she was being coerced by her pimp.

### B.  Jaliyan Knowingly Harbored Nancy.

The TVPRA does not define "harbors," so the word takes its ordinary meaning. According to Black's Law Dictionary, "harboring" means "[t]he act of affording lodging or refuge to a person, esp. a criminal or illegal alien." Black's Law Dictionary 860 (11th Ed. 2019). Similarly, Merriam-Webster defines "harbor" as "to give shelter or refuge to." *Harbor*, Merriam-Webster Dictionary, https://www.merriam-webster.com/dictionary/harbor.

Courts overwhelmingly hold that hotels can harbor a victim "through the act of renting rooms to a trafficker." *Doe v. Wyndham Hotels & Resorts*, No. 2:23-cv-01676-DAD-CSK, 2025 U.S. Dist. LEXIS 2988, at *54 (E.D. Cal. Jan. 6, 2025) (collecting cases). The hotel need not have acted with any "intent to commit a crime." *Id.* Certainly, knowingly providing someone with a room that will be used for commercial sex—a crime—is "harboring" crime under any definition.

Here, Nancy alleged facts showing Jaliyan "harbored" her within the ordinary meaning of that word by renting her rooms for sex work. It sheltered her in the literal sense of providing a roof over her head. It also sheltered her in the figurative sense of concealing the crime of prostitution from public view.

Nancy has alleged this was done "knowingly." Under the Rules, she may allege knowledge "generally." *See* Fed. R. Civ. P. 9(b); *see also S.C. v. Hilton Franchise Holding, LLC*, 2024 U.S. Dist. LEXIS 205682 at *8 (D. Nev. Nov. 12, 2024) (accepting allegations "upon information and belief" that a hotel had actual knowledge). Nancy's pleadings go beyond what the Rules require.

Jaliyan's staff knew that Nancy was a prostitute because she displayed all the signs of sex work. She was dressed for sex work at check-in with few belongings and other prostitutes in tow; hotel staff watched her escort several men a day from the lobby to her room; she paid for rooms day-by-day in cash or a pre-paid card; she repeatedly requested extra towels and linen changes; she discarded several used condoms in the hotel trash; and she advertised sex online using the hotel's WiFi, which Jaliyan could monitor. (FAC, Doc. 115, ¶¶ 91–94, 160–163, 164(h).) Thus, at the motion to dismiss stage, Nancy's allegations that Jaliyan "knowingly … harbor[ed]" her are plausible.

### C. <u>Jaliyan Acted in "Reckless Disregard" of Coercion.</u>

Next, we explain why § 1591 requires reckless disregard, not actual knowledge, that a victim was coerced to sell sex. We then show that Jaliyan

acted with reckless disregard of Nancy's coercion because it knew Nancy was a prostitute, and it therefore knew there was an over 50% chance she was being coerced—factual allegations the Court is obligated to credit at this stage.

      1.    <u>Perpetrator liability requires "reckless disregard"—not actual knowledge.</u>

The statute sets out a two-tiered *mens rea*: the defendant must knowingly engage in specified conduct (e.g., harboring) with respect to a trafficking victim, and then it must either know or recklessly disregard the fact that the person is a trafficking victim. *United States v. Duong*, 848 F.3d 928, 933 (10th Cir. 2017) (explaining that the TVPRA was amended in 2008, which "decreased the prosecution's burden of proving mens rea by permitting it to show reckless disregard in lieu of knowledge.").

A defendant acts in "reckless disregard" of a fact when it was aware of a "substantial and unjustifiable risk" that the fact is true. *United States ex rel. Schutte v. SuperValu Inc.*, 598 U.S. 739, 751 (2023); *see also United States v. Rodriguez*, 880 F.3d 1151, 1162 (9th Cir. 2018). Nancy has further elaborated on this standard in her other brief. (Doc. 165, pages 18–19.)

      2.    <u>Jaliyan "recklessly disregarded" Nancy's coercion.</u>

Here, Nancy has alleged facts showing that Defendant knew she would engage in commercial sex. What's more, Nancy alleges that the sex trade is an omnipresent part of the hotel industry—and that, as a result, Jaliyan was more

aware than most about the almost universally coercive nature of sex work. (FAC, Doc. 115, ¶¶ 27–28, 40, 51–55, 58, 88.)  It was thus at least plausibly aware that Nancy—like most prostitutes—was at risk of serious harm on a level that would dissuade her from attempting to get out of the Life.  (*Id.* ¶ 40.)

Additionally, the sheer volume of men (ten per night) coming in and out of her room was by itself evidence of coercion because no "freelance" prostitute is likely to see more than one or two sex buyers per night of her own free will. *See P.C. v. D Fort Hotel, LLC*, Civil Action No. 24-cv-01584-PAB-TPO, 2025 U.S. Dist. LEXIS 20835, at *15 (D. Colo. Feb. 5, 2025) ("Courts have also found that allegations of voluminous sex buyers are indicative of the fact that the commercial sex activity was coerced.") (collecting cases).

Moreover, Nancy would check in, extend stays, and escort johns through the hotel lobby while bearing visible bruises from her trafficker—who often visited Nancy at the Super 8 Prospect. Putting the whole picture together, it is plausible that Jaliyan disregarded a "substantial and unjustifiable risk" Nancy was a victim of coercion, making it liable as a perpetrator under § 1591(a)(1).

## VII.  DEFENDANT'S STATE LAW ARGUMENTS LACK MERIT

### A.    Jaliyan's Argument that Oklahoma Law Grants a Remedy Against Only Perpetrators Lacks Merit.

Jaliyan argues that because it did not engage in "any of the methods or coercion to constitute human trafficking", it cannot be liable under 21 O.S.

§ 748.2(B). That provision authorizes a civil action against any "prospective defendant" who "has committed any act which subjects him or her to liability under this section." *Id.* A "criminal case or prosecution is not a necessary precedent" for the plaintiff to bring suit.

The criminal provision, meanwhile, states that "[i]t shall be unlawful to knowingly engage in human trafficking." 21 O.S. § 748.1(B). The statute defines human trafficking as—among other things— "benefiting, financially or by receiving anything of value, from participating in a venture that has engaged in an act of trafficking for commercial sex." 21 O.S. § 748.1(A)(6)(c).

The statute of limitations reinforces that someone other than a pimp can be held civilly liable. For instance, in one part, the text of the statute states that the limitation period does not begin until the plaintiff discovers that the defendant "profited from the human trafficking." 21 O.S. § 748.2(B). Thus, the statute clearly contemplates that those who knowingly benefit from human trafficking can be held civilly liable. As discussed in §§ V(A)–V(C), *supra* Jaliyan *did* knowingly profit from sex trafficking. Defendant's argument on this point lacks merit.

**B.    Nancy's State Law Claims are Not Time-Barred.**

Courts should not dismiss a claim as time-barred unless the statute of limitations defense is definitively established "on the face of the complaint." *Fernandez*, 883 F.3d at 1299 (quoting case law).

Under Oklahoma law, a victim of human trafficking may bring suit within three years after the plaintiff (1) is emancipated from trafficking, (2) is 21 years of age, ***and*** (3) "discovers or reasonably should have discovered that he or she was a victim of human trafficking and that the defendant caused, was responsible for or profited from the human trafficking." 21 O.S. § 748.2(B). (emphasis added.)

Plaintiff filed her complaint in state court on March 19th, 2025. She alleges that she was trafficked through 2022. (FAC ¶ 84.) As Plaintiff has explained elsewhere, nothing on the face of the complaint suggests her complaint is time-barred. (Doc. 165, pages 20–21.)

## VIII. CONCLUSION

Jaliyan watched as Nancy, bruised and exhausted, paraded dozens of sex buyers through its lobby. It responded by charging her extra. The Court should deny Defendant Jaliyan Hospitality Inc.'s motions to dismiss.

DATED this 5th day of December, 2025

Respectfully submitted,

/s/ Geoffrey C. Parker

Geoffrey C. Parker, Esq. (*pro hac vice*)
HILTON PARKER LLC
7658 Slate Ridge Blvd.
Reynoldsburg, OH 43068
Tel: (614) 992-2277
Fax: (614) 927-5980
gparker@hiltonparker.com

*Attorney for Plaintiff Nancy R.*