## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF OKLAHOMA

NANCY R., pseudonymously,            §
                                     §
     *Plaintiff*,                   §
                                     §          Civil Action No. 5:25-cv-462
v.                                   §
                                     §
Plaza Hotels, LLC, et al.,           §
                                     §
     *Defendants*.                  §
                                     §
                                     §
                                     §
                                     §
                                     §
                                     §
                                     §
                                     §

## G6 HOSPITALITY FRANCHISING, LLC'S REPLY
## <u>IN SUPPORT OF ITS MOTION TO DISMISS</u>

# TABLE OF CONTENTS

TABLE OF CONTENTS....................................................................................................i

TABLE OF AUTHORITIES ............................................................................................ii

I.    Plaintiff concedes her perpetrator liability claim as to G6. ..................................... 1

II.   Plaintiff likewise concedes her claim that G6 and Plaintiff's Trafficker participated in a venture together. ................................................................................................. 1

III.  Plaintiff misrepresents and overstates the facts alleged as to her time at the Oklahoma City Motel 6 and misstates key legal holdings. ...................................... 2

     A.   Plaintiff misrepresents or exaggerates factual allegations................................ 2

     B.   Plaintiff misstates legal holdings. ..................................................................... 4

IV.   Plaintiff cannot assert a perpetrator liability claim against the Motel 6 Franchisees and, without that, cannot assert a beneficiary liability claim against G6................ 6

V.    Plaintiff's indirect liability claims also fail because she does not and cannot satisfy either the agency or joint employer theories of indirect liability. ........................... 7

VI.   Plaintiff's State-law claims are based on theories of liability that do not appear in the Oklahoma human trafficking statute. ................................................................ 9

VII.  Plaintiff's request for leave is procedurally improper and should not be considered. ................................................................................................................................. 10

CERTIFICATE OF SERVICE........................................... **Error! Bookmark not defined.**

# TABLE OF AUTHORITIES

**Cases**

*Bristol v. Bd. of Cnty. Comm'rs*
312 F.3d 1213 (10th Cir. 2002) ....................................................................... 9

*Cooper v. Saffle*
30 F. App'x 865 (10th Cir. 2002) ................................................................. 10

*Doe v. Wyndham Hotels & Resorts*
2025 WL 85831 (E.D. Cal. Jan. 7, 2025) ........................................................ 6

*Dronsejko v. Thornton*
632 F.3d 658 (10th Cir. 2011) ....................................................................... 7

*Endicott v. Choctaw Cnty. City of Hugo Hosp. Auth.*
2025 WL 961618 (E.D. Okla. Mar. 31, 2025) ................................................ 7

*J.K. v. Ramada Worldwide, Inc.*
2023 WL 5621913 (N.D. Ga. Aug. 30, 2023) ................................................ 8

*Joint Technology, Inc. v. Weaver*
2011 WL 4639926 (W.D. Okla. Oct. 4, 2011) ................................................ 1

*Knitter v. Corvias Military Living, LLC*
758 F.3d 1214 (10th Cir. 2014) ..................................................................... 9

*Lundstrom v. Choice Hotels Int'l, Inc.*
2021 WL 5579117 (D. Col. Nov. 30, 2011) ............................................... 6, 7

*Morrison ex rel. Haar Family Trust v. Anadarko Petro. Corp.*
2010 WL 2721397 (W.D. Okla. July 6, 2010) ................................................ 1

*P.C. v. D. Fort Hotel, LLC*
2025 WL 404296 (D. Col. Feb. 5, 2025) ..................................................... 4, 5

*S.J. v. Choice Hotels, Int'l, Inc.*
473 F. Supp. 3d 147 (E.D.N.Y. 2020) ............................................................ 8

*Sibley v. Kane*
2024 WL 917596 (W.D. Okla. Mar. 4, 2024) ................................................. 7

*SouthStar Exploration, LLC v. 7C Land & Minerals, Co.*
2018 WL 8755873 (W.D. Okla. Mar. 15, 2018) ........................................... 10

**Statutes**

21 O.S. § 748.2(B) .................................................................................... 9, 10

**Other Authorities**

Restatement (Third) of Agency § 1.01 ................................................................. 8

**Rules**

Federal Rule of Civil Procedure 15(a)(2) ........................................................... 10

Local Rule 15.1 ......................................................................................... 10

Defendant G6 Hospitality, LLC ("G6"), a hotel franchisor, does not own, operate, or manage the Oklahoma City Motel 6. Nevertheless, in her Amended Complaint, Plaintiff brought claims against G6 for perpetrator liability, beneficiary liability, indirect liability under agency and joint employer theories, and state-law human trafficking claims. In her response to G6's motion to dismiss, Plaintiff narrows the claims. She argues, first, that the *Motel 6 Franchisees* are liable as perpetrators and beneficiaries and that G6 is liable for the Franchisees' conduct under agency or joint employer theories, second, that G6 is liable as a direct beneficiary based on its venture with the Motel 6 Franchisees (and their status as perpetrators), and third, that her state-law claims are viable. For all the reasons discussed in G6's initial motion briefing and below, these claims must be dismissed.

## I.    Plaintiff concedes her perpetrator liability claim as to G6.

Plaintiff does not address G6's arguments on the perpetrator liability claim made against G6 directly. As this district has consistently explained, "a plaintiff's failure to address the arguments presented in a motion to dismiss is an implicit concession that the plaintiff fails to state a claim on which relief may be granted." *Joint Technology, Inc. v. Weaver*, 2011 WL 4639926, at *3 (W.D. Okla. Oct. 4, 2011) (citing *Morrison ex rel. Haar Family Trust v. Anadarko Petro. Corp.*, 2010 WL 2721397, at * 4 (W.D. Okla. July 6, 2010)). Accordingly, that claim must be dismissed.

## II.    Plaintiff likewise concedes her claim that G6 and Plaintiff's Trafficker participated in a venture together.

Plaintiff's Amended Complaint also alleges that G6 "participated in ventures together with Domino . . . which [G6] knew had engaged in acts of human trafficking." Am. Comp.

¶ 237. However, in her response brief, Plaintiff now argues *only* that G6 "knowingly benefitted from participating in a franchisee-franchisor relationship venture with the Motel 6 Franchisees." Plaintiff's failure to address the argument in G6's motion to dismiss (*see* Dkt. 161 at 10) is an implicit concession that the motion must be granted. Indeed, Plaintiff admits "Domino was incarcerated during Nancy's trafficking at Motel 6." Dkt. 181 at 7. Accordingly, Plaintiff's claim for beneficiary liability based on a venture between G6 and Plaintiff's trafficker must be dismissed.

## III. Plaintiff misrepresents and overstates the facts alleged as to her time at the Oklahoma City Motel 6 and misstates key legal holdings.

Setting aside the abandoned claims, Plaintiff exaggerates factual allegations in the Amended Complaint and twists the legal holding of a district court ruling within this circuit.

### A. Plaintiff misrepresents or exaggerates factual allegations.

Perhaps sensing the insufficiency of the allegations as to G6, Plaintiff spends significant time in the response brief overstating or misrepresenting the facts alleged. For example, Plaintiff states that G6 (and the Motel 6 Franchisees) knew the red flags of sex trafficking and that Nancy "exhibited every one of these red flags throughout her trafficking at the Motel 6 location." Dkt. 181 at 9. In support, Plaintiff cites paragraphs 89 of the Amended Complaint, which provides a list of the "red flags."

Contrary to her new claim that "every one" of those red flags was present during her time at the Oklahoma City Motel 6, the Amended Complaint does not include any allegation that Nancy's trafficker (who was incarcerated at the time) checked in with multiple women in tow; that Nancy (or anyone else) experienced verbal or physical abuse; that she had

restricted or controlled communications; that she had restricted movement or constant monitoring; that she had no control of money, cell phone, or identification; that she (or anyone else) exhibited fearful, anxious, or submissive behavior; that she lacked knowledge of her whereabouts; or that she showed signs of poor hygiene, malnourishment, or fatigue. *See* Am. Compl, at ¶ 89. Instead, Nancy alleged that she rented the rooms herself. *See id.* at ¶¶ 91, 137, 144. She communicated directly with the hotel staff. *See id.* at ¶¶ 133–135 (stating staff "would notify Nancy" about potential customers, johns, or Greyhound buses). She left the hotel to go to the casino. *See id.* at ¶ 140. Most importantly, Nancy does not allege physical or verbal abuse, fearful behavior, lack of money (again, she rented the rooms each night), poor hygiene, or malnourishment. Nancy alleges the Motel 6 Franchisees' employees "knew that [she] was a prostitute and that the money she paid Motel 6 for room rentals was the proceeds of illegal commercial sex." Dkt. 181 at 17. What she does not allege is evidence of coercion.

The Amended Complaint describes a man coming to the hotel and giving her drugs for money. Nothing more. That is a perfect description of a drug deal. While illegal, it is not sex trafficking. The only interactions between Nancy and the unidentified "homeboy" are drug deals. She does not allege physical or verbal abuse or that he forced her to take drugs. Here, for the first time, Nancy claims Motel 6 Franchisee employees "would have seen the signs of him withholding drugs from her, inducing painful withdrawal symptoms." Dkt. 181 at 18. The allegation that he "withheld" drugs from her is contradicted by the Amended Complaint, stating that he "visited [to] give her drugs." The allegations that she had

3

withdrawal symptoms is absent from the Amended Complaint and makes little sense, given that she was onsite for a total of six days.

The response brief includes other lesser factual embellishments. For instance, she repeatedly claims that Motel 6 Franchisee employees "increased" the room rate if she saw more clients in a given day, but the Amended Complaint says only that they "changed the rate . . . based on the number of johns the employees thought she'd seen on a given day." Am. Compl. at ¶ 137. By that allegation, it is equally likely they *lowered* the rate when she saw fewer johns. In other places, she refers to the hotel staff as G6's employees. *See, e.g.*, Dkt. 181 at 8 ("its staff were trained . . ."). Additionally, Nancy claims that training a manager equates to "total discretionary control over management" of the hotel or that the right to send inspectors meant that G6 inspectors were ever present and omniscient.

The consistent misrepresentation of the facts or the inclusion of unalleged facts or the exaggeration of the facts all point to the same issue. The facts alleged in the Amended Complaint are insufficient to state a claim for direct beneficiary liability against G6.

### B.  Plaintiff misstates legal holdings.

Plaintiff also repeatedly misstates the law. This is particularly true with regard to *P.C. v. D. Fort Hotel, LLC*, 2025 WL 404296 (D. Col. Feb. 5, 2025), one of the few TVPRA cases Plaintiff cites from the Tenth Circuit. Plaintiff claims that opinion stands for the proposition that voluminous sex work *alone* is sufficient to establish her TVPRA claims. *See, e.g.*, Dkt. 181 at 23 ("The heavy foot traffic alone was enough to imply coercion."). The *D Fort* Court's actual conclusion was less extraordinary. It stated as follows:

> The Court, however, finds that three of plaintiffs' allegations support an inference that D Fort staff should have known that P.C. was being trafficked, namely, P.C.'s allegations that (1) bruised, malnourished, drug and alcohol-impaired, sleep-impaired, and hygiene-impaired trafficking victims would walk around the hotel grounds, (2) that D Fort staff witnessed P.C., her trafficker, and a steady procession of sex buyers going in and out of a single room on a daily basis, and (3) that P.C.'s trafficker had direct interaction with hotel employees by paying them to serve as lookouts/informants.

*D. Fort Hotel*, 2025 WL 404296, at *5. Based on those allegations, the Court concluded her complaint "nudge[d] her claim from possible to plausible." *Id.* at *6. None of those allegations are present in the Amended Complaint as to G6 or the Oklahoma City Motel 6. Significantly for the legal analysis, the Court did *not* conclude that a large number of sex buyers, absent other allegations, was sufficient evidence of coercion.

At one point, Plaintiff cited the *D. Fort* case to support an off-the-wall statement that "no 'freelance' prostitute is likely to see more than one or two sex buyers per night of her own free will." Dkt. 181 at 15. First, G6 has no idea what support Plaintiff or her counsel have for that claim. It certainly does not appear in the Amended Complaint. Second, that case does not provide any support for the strange assertion. Third, Plaintiff's citation includes a quote in the parenthetical that is not found in the case; likewise, the word "freelance," which is in quotations in the sentence, is not found in that case. Plaintiff stretches the *D. Fort* case beyond its holding or any recognizable analysis.

Plaintiff's misrepresentation of the facts and law, particularly D. Fort, demonstrates that the Amended Complaint fails to state a beneficiary-liability claim against G6 or the Motel 6 Franchisees, and those claims should be dismissed.

**IV.   Plaintiff cannot assert a perpetrator liability claim against the Motel 6 Franchisees and, without that, cannot assert a beneficiary liability claim against G6.**

Plaintiff clarifies that her direct beneficiary claim against G6 is predicated solely on establishing that the Motel 6 Franchisees were perpetrators of Nancy's sex trafficking. *See* Dkt. 181 at 21 (stating G6 knowingly benefitted "from participating in a franchisee-franchisor relationship venture with the Motel 6 Franchisees (*which were perpetrators of Nancy's trafficking*)"), 24 (stating G6's access to information "makes it more than plausible that G6 knew . . . Motel 6 Franchisees were harboring trafficking victims and thereby violating § 1591"). If Plaintiff fails to establish a perpetrator liability claim against the Motel 6 Franchisees, Plaintiff's claim against G6 for beneficiary liability also fails.

First, Plaintiff cannot establish that Motel 6 Franchisees knowingly harbored her. Plaintiff cites a single TVPRA case that states hotels harbor a victim by "renting rooms to a trafficker." *Doe v. Wyndham Hotels & Resorts*, 2025 WL 85831, at *15 (E.D. Cal. Jan. 7, 2025). But, Plaintiff rented her room at Motel 6, not a trafficker. As Plaintiff states, "Motel 6 staff knew that Nancy was a prostitute." Dkt. 181 at 12. However, her allegations as to the Oklahoma City Motel 6 are devoid of anything beyond that. This case is almost identical to the *Lundstrom* case discussed in G6's initial motion. In that case, "plaintiff did not allege… hotel staff heard and ignored her pleas" and plaintiff made "no allegation that [her] trafficker was ever present." *Lundstrom v. Choice Hotels Int'l, Inc.*, 2021 WL 5579117, at *7–8 (D. Col. Nov. 30, 2011). As a result, plaintiff failed to plausibly allege hotel staff knew "she was being forced to engage in commercial sex activity, as opposed to engaging in commercial sex by choice, which the TVPRA does not address." *Id.* at *8. The same is true here.

Next, Plaintiff turns to the "reckless disregard" standard. This district has explained, "Reckless disregard is established by showing that the defendant was either aware, or did not care, that there was a substantial and unnecessary risk that [his] conduct would cause serious injury to others." *Sibley v. Kane*, 2024 WL 917596, at *3 (W.D. Okla. Mar. 4, 2024). "'Reckless disregard' is not to be confused with inadvertent conduct." *Id.*; *see also Dronsejko v. Thornton*, 632 F.3d 658, 668 (10th Cir. 2011) (citing cases to say recklessness is "a state of mind approximating actual intent, and not merely a heightened form of negligence" and equating recklessness with "conscious disregard"); *Endicott v. Choctaw Cnty. City of Hugo Hosp. Auth.*, 2025 WL 961618, at *2 (E.D. Okla. Mar. 31, 2025) (equating recklessness with "deliberate indifference").

As discussed above, the Amended Complaint does not include any allegations of coercion. The Amended Complaint alleges prostitution and an exchange of money for drugs, but no facts suggesting physical or emotional abuse, outward signs of abuse, drug dependence, room rentals to a trafficker, or interactions between a trafficker and hotel staff. Plaintiff fails to state a perpetrator liability claim. Moreover, without a perpetrator claim against the Motel 6 Franchisees, the direct beneficiary claim against G6 fails.

## V.  Plaintiff's indirect liability claims also fail because she does not and cannot satisfy either the agency or joint employer theories of indirect liability.

Plaintiff presents two theories for indirect liability. Both fail. G6 has previously discussed the shortcomings of Plaintiff's agency theory. Plaintiff responds that the existence of an agency relationship "depends on how closely the franchisor controlled ***the day-to-day operations*** of its branded property." Dkt. 181, at 19. On this point, we agree. However,

Plaintiff does not allege that G6 exerted day-to-day operational control over the Motel 6 Franchisees. The entirety of its "agency" allegations are found in Paragraph 145 of the Amended Complaint.

Plaintiff simply described a standard franchisor-franchisee relationship.

> **Importantly, none of the facts alleged appear to exceed that of a typical franchise agreement arrangement**—for example, providing its trademark and brand signage, providing equipment and supplies, requiring payment of royalty fees and taxes, requiring the franchisee to join associations and attend conferences, setting hours and holidays, determining acceptance of credit cards and storage of consumer data, requiring job training, providing training tools and materials, and retaining the right to inspect the facility at any time.

*J.K. v. Ramada Worldwide, Inc.*, 2023 WL 5621913, at *4 (N.D. Ga. Aug. 30, 2023). Under the Restatement (Third) of Agency, "the principal's right of control in any agency relationship is a narrower and more sharply defined concept than . . . influence more generally." Restatement (Third) of Agency § 1.01 cmt f ("essential element of agency is the principal's right to control the agent's actions"). The allegations here, however, are "limited to uniformity and standardization of the brand." *S.J. v. Choice Hotels, Int'l, Inc.*, 473 F. Supp. 3d 147, 156 (E.D.N.Y. 2020). Indeed, Plaintiff's allegations are *not* that G6 controlled day-to-day operations at the Oklahoma City Motel 6 but that it required training for the general manager and brand uniformity that is standard in any franchise arrangement. That is insufficient to establish a claim for indirect liability.

Alternatively, Plaintiff makes a wholly unsupported argument that G6 was a joint employer of the employees at the Oklahoma City Motel 6. "Under the joint employer test, two entities are considered joint employers if they 'share or co-determine those matters

governing the essential terms and conditions of employment.'" *Knitter v. Corvias Military Living, LLC*, 758 F.3d 1214, 1226 (10th Cir. 2014) (quoting *Bristol v. Bd. of Cnty. Comm'rs*, 312 F.3d 1213, 1218 (10th Cir. 2002)). "Most important to control over the terms and conditions of an employment relationship is the right to terminate it under certain circumstances." *Id.* Other significant factors include "day-to-day supervision of employees, including employee discipline" and "control of employee records." *Id.*

Plaintiff's Amended Complaint is devoid of the essential facts necessary to establish a joint employer relationship, as no such facts exist. Here, G6 did not have authority to terminate the Motel 6 Franchisees' employees; did not pay those employees directly; and did not supervise or discipline those employees. *Id.* at 1228 (finding no joint employer relationship existed due to lack of those allegations). Under either the agency or joint employer theory, Plaintiff's indirect liability claim fails.

## VI. Plaintiff's State-law claims are based on theories of liability that do not appear in the Oklahoma human trafficking statute.

Plaintiff contends that the Oklahoma human trafficking statute provides liability against G6 based on vicarious liability for the Motel 6 Franchisees' conduct. *See* Dkt. 181 at 24. Plaintiff's allegations are insufficient to establish a perpetrator liability claim against the Motel 6 Franchisees. For all the same reasons, Plaintiff's state-law claim fails.

However, Plaintiff is also incorrect that the Oklahoma statute permits vicarious liability. Section 748.2(B) provides a civil cause of action against (and implicitly limits liability to) "the person or persons who committed the violation." 21 O.S. § 748.2(B). "The violation" is human trafficking. Plaintiff admits that it does not have any claim against G6

9

as a perpetrator, and the statute does not include any language about "participation in a venture." This Court should dismiss the state-law claims against G6 because they are based on theories of liability that are not allowed under the Oklahoma human trafficking statute.

## VII.  Plaintiff's request for leave is procedurally improper and should not be considered.

Finally, in recognition that the actual allegations of the Amended Complaint are insufficient to sustain claims against G6, Plaintiff includes a request for leave to amend a second time to include information that was already available to her. However, that request is procedurally improper. Local Rule 15.1 states, "A party moving under Fed. R. Civ. P. 15(a)(2) to amend a pleading . . . *must* attach the proposed pleading as an exhibit *to the motion*." LCvR 15.1 (emphasis added); *see Cooper v. Saffle*, 30 F. App'x 865, 866 n.1 (10th Cir. 2002) ("The district court also denied Cooper's request to file an amended complaint because he failed to comply with Local Rule 15.1 . . . ."); *SouthStar Exploration, LLC v. 7C Land & Minerals, Co.*, 2018 WL 8755873, at *5 (W.D. Okla. Mar. 15, 2018) (instructing plaintiff to re-urge separate motion "if it files an Amended Complaint after complying with the requirements of Rule 15(a)(2) and Local Rule 15.1"). Plaintiff's request is not made through a motion but through a short-shift argument in an opposition brief; moreover, Plaintiff fails to attach the proposed Second Amended Complaint. This Court should not consider the request unless and until Plaintiff complies with Local Rule 15.1.

WIGGINS SEWELL


*/s/ Daniel J. Thompson*
Daniel J. Thompson          OBA No. 32129
3100 Oklahoma Tower
210 Park Avenue
Oklahoma City, OK  73102
405/232-1211
405/235-7025 (fax)
dthompson@wigginssewell.com
Attorney for
G6 Hospitality Franchising, LLC

## Certificate of Service

I certify that the foregoing document was filed electronically on December 23, 2025, and has been served on all counsel who have consented to electronic service.

*/s/ Daniel J. Thompson*
Daniel J. Thompson