# Exhibit 13

*1056560926*

IN THE DISTRICT COURT OF OKLAHOMA COUNTY
STATE OF OKLAHOMA

| | |
|---|---|
| THE CITY OF OKLAHOMA CITY, Plaintiff, | ) Case No. **CV-2023-1094** |
| vs. | ) |
| PLAZA HOTELS, LLC, d.b.a THE PLAZA INN, MICHAEL WILEY and STEVE KETTER, Defendants. | ) |

FILED IN DISTRICT COURT
OKLAHOMA COUNTY

SEP 25 2023

RICK WARREN
COURT CLERK
37

SECOND MOTION FOR PARTIAL SUMMARY ADJUDICATION

Plaintiff, the City of Oklahoma City ("City"), hereby moves the Court to grant partial judgment it its favor and against the defendants, summarily determining based on the uncontroverted evidence that the defendant owners of the real property and business enterprise involved in this proceeding (hereinafter referred to as the "Plaza Inn"), have failed to comply with the City's directives concerning the need to abate the nuisance on the property, in two critical respects: first, the private armed security personnel deployment responsive to the nuisance declaration has been inadequate; and, second, the security surveillance system installed in response to the nuisance declaration has also been inadequate. This motion is based entirely on evidence developed after the filing of this action for injunctive relief.

The City previously filed on September 6, 2023, a Motion for Partial Summary Adjudication, addressed to the facts demonstrating that the Plaza Inn

is a public nuisance, and that unspecified *injunctive relief* should be awarded to abate the nuisance. This motion starts where the first motion ended.

## STATEMENT OF UNCONTROVERTED FACTS

*From the previous motion filed September 6, 2023:*

23. … On April 26, Sergeant Bowen called Mr. Wiley to find out if he had complied with the nuisance notice by hiring 24-hour security. Mr. Wiley said that he only had security on site from 10:00 p.m. to 7:00 a.m. He stated that he had a person living at the motel to take care of security issues. *See* Affidavit of Chris Bowen, ¶ 23.

24. On April 28, 2023, at about 9:00 a.m., Sergeant Bowen visited the Plaza Inn Property and did not locate any security guards. *See* Affidavit of Chris Bowen, ¶ 24.

25. On May 7, 2023, at 1:41 a.m., police dispatch received a 911 call from a man who reported that he had been beaten and robbed by several people who claimed the Plaza Inn Property as their territory. Police arrived to find the victim with a bloody face (OCPD 2023-00323077). The victim was sent to the hospital. Video cameras at the Plaza Inn were not located in the area where the crime took place. *See* Affidavit of Chris Bowen, ¶ 25.

…

27. On May 16, 2023, police were called to the Plaza Inn to investigate an alleged physical assault (OCPD 2023-0034528). Video cameras were not

located in the area where the assault allegedly occurred. *See* Affidavit of Chris Bowen, ¶ 27.

28. On May 18, 2023, Mr. Wiley called Sergeant Bowen to announce that he would be installing new security cameras in accordance with the nuisance notice. He also stated that he had switched security companies and had hired Great Plains Security, which he believed was CLEET certified. *See* Affidavit of Chris Bowen, ¶ 28.

29. On June 3, 2023, at 3:36 a.m., police were called to the Plaza Inn on a report that a customer of an after-hours event had been assaulted by a security guard outside the motel's event room. A group of approximately 50 people were congregated in the parking lot when police arrived. **Several people were identified as security guards but none were licensed or armed. No actual security guards were located until one arrived fifteen minutes after the police.** No video of the alleged assault could be provided by the motel clerk because the security cameras do not show that portion of the Plaza Inn Property (OCPD 2023-0039422). *See* Affidavit of Chris Bowen, ¶ 29.

30. On July 16, 2023, while police were on the street in connection with a traffic collision, a person approached the police officers at about 3:32 a.m. and reported that her brother had been shot at the Plaza Inn. When police officers arrived, they were met by an armed security guard who reported to them that **a gunfight had occurred a half-hour before between security**

**guards working for an after-hours party event and someone attending the party**. Shell casings were located in the parking lot. Nobody had been struck by the bullets. Video of the shootout was provided to police (OCPD 2023-0050735). *See* Affidavit of Chris Bowen, ¶ 30.

31. Later that day, July 16, 2023, at 11:14 a.m., police dispatch received a call from the Plaza Inn stating that someone had been shot. Upon arrival police found a man lying on the ground in a pool of blood. **No security guards were working at the time.** Review of surveillance video showed a man walk up to the victim and shoot him after a short discussion (OCPD 2023-0050779). *See* Affidavit of Chris Bowen, ¶ 31.

32. On August 14, 2023, at 4:37 p.m., police dispatch received a call indicating that a person had been shot at the Plaza Inn. Upon arrival police located the victim lying on the ground with a gunshot wound to the leg. **No security guards were present.** Upon review of the video, it was discovered that the victim, a convicted felon, had accidently shot himself (OCPD 2023-0058135). *See* Affidavit of Chris Bowen, ¶ 32.

33. On August 21, 2023, at about 12:40 in the afternoon, police dispatch received a call from a security guard at the Paza Inn reporting that a shooting situation was occurring at the motel. Police arrived and watched security video showing a man in the parking lot shooting randomly in all

directions, striking two people. Several .40 caliber shell casings were located, as well as a .40 caliber firearm. *See* Affidavit of Chris Bowen, ¶ 33. ...

*New evidentiary material:*

37. Police Major Jason B. Samuel is actively supervising the investigation of the Plaza Inn. He issued the directives contained in the nuisance notice that he signed and that was delivered to the defendants on April 12, 2023. See Affidavit of Police Major Jason B. Samuel, ¶¶ 2-4 (attached hereto as Exhibit 21). The nuisance notice he issued is attached to his affidavit.

38. The Notice to Abate Public Nuisance contains two critical directives:

- To have enough armed CLEET Certified security guards to help stop violent acts from occurring inside the courtyard areas and outside in the parking lot by being on the property 24 hours a day and seven days a week.
- To have video cameras installed inside and outside to monitor all areas around the property.

*See* Notice attached to Exhibit 21.

39. Of particular interest to Major Samuel is the absence of armed security personnel on the Plaza Inn property to deter and document criminal behavior on the motel property, and to take custody of criminal offenders on the property. He has determined that the number and scheduling of armed security

personnel has been and continues to be inadequate, and thus does not comply with the directives contained in the nuisance notice issued to the defendants on April 12, 2023. *See* Affidavit of Police Major Jason B. Samuel, ¶¶ 4-5.

40. On September 6, 2023, Police Master Sergeant Chris Bowen visited the Plaza Inn to inspect the capabilities of the surveillance video system. Of particular interest was the capability of the system to provide visual coverage of all outdoor areas of the Plaza Inn property and provide storage of the recorded video. *See* Second Affidavit of Master Sergeant Chris Bowen, ¶ 4 (attached hereto as Exhibit 22).

41. Based on his inspection, Sergeant Bowen has determined that the number and orientation of cameras is inadequate to provide adequate coverage of the premises, and the surveillance system thus does not comply with the directives contained in the nuisance notice that he delivered to the defendants on April 12, 2023. *See* Second Affidavit of Master Sergeant Chris Bowen, ¶ 5.

42. On September 21, 2023, defendant Steve Ketter made the conclusory statement, "That currently the Defendants are in complete compliance with every request made by Plaintiff regarding the subject property." *See* Affidavit of Steve Ketter, attached to the Response to Motion for Partial Summary Adjudication, filed September 21, 2023.

43. However, Steve Ketter's admissions outside the courtroom belie his conclusory (and thus inadmissible) statement. On May 12, 2023, news

reporter Jessie Christopher Smith, working for The Oklahoman, recorded an interview with Steve Ketter, and fairly and accurately reported Mr. Ketter's evidentiary admissions in an article entitled "*OKC filed a lawsuit against Plaza Inn over safety concerns. Now, its owners have responded.*" See Affidavit of Jessie Christopher Smith, ¶¶ 2-3 (attached hereto as Exhibit 23. The article is attached to the affidavit.

44. The following admissions by defendant Ketter demonstrate that Police Major Samuel's conclusions regarding the *inadequacy* of partial private armed security at the Plaza Inn are truly uncontroverted.

> Ketter said it takes time to "weed out the bad guys and the bad employees" at the motel, but once they are found out, they are fired or removed from the premises. He also said some of the people arrested in criminal activity at the motel aren't always locals and aren't always checked in.
>
> "These aren't always guests at the hotel," Ketter said. "We try to keep them from walking in, but sometimes it's hard. It covers such a vast area, and **that security guard can't be everywhere**."
>
> The way the building is shaped, Ketter said, is **difficult to secure or monitor completely without hiring several guards**, and it's located in a part of town with a history of crime.
>
> "We've thought about tearing some of the wings down, tearing the front down so it's all open. I thought we had been improving, really, but you can't prevent people you don't even know walking in," Ketter said. "That's our problem. It's a really rough area."

*See* Exhibit 23 (emphasis added).

## ARGUMENT

The first motion should establish that the Plaza Inn is a nuisance, and this motion should establish that the defendants have not done nearly enough to abate the nuisance. The fact that serious criminal conduct continues would prove that the nuisance has not abated despite all abatement efforts, and more drastic measures are thus warranted. Moreover, the fact that the defendants never installed adequate surveillance and never hired adequate security (despite claiming otherwise) proves that injunctive relief is necessary to compel adequate abatement measures. The only remaining question is, *What relief will abate the nuisance*?

Oklahoma law supplies the Court with powers equal to this task:

> The district court of the county in which any such nuisance exists or is maintained shall have jurisdiction of any such case and power to adjudge and determine any action brought under the provisions hereof, and where it is adjudged that any such nuisance exists or is maintained and should be abated, such court shall have the power and authority either by and through a commissioner appointed by such court, or otherwise, to cause such nuisance to be abated and to assess all the costs thereof, including the costs of suit, against the property on which such nuisance existed or is maintained, and to declare such costs a judgment against said property and order and direct the sale of said property for the purpose of satisfying said judgment and shall cause the same to be sold and proceeds thereof applied to the payment of the costs of abating any such nuisance.

50 Okla. Stat § 17.

Plaintiff requests the Court to assume jurisdiction over the Defendants and the Plaza Inn Property, and to find as a matter of law that the Plaza Inn

business model is a public nuisance that the Defendants are required to abate, and that defendants will be mandated to contract and hire a specified number of certified and armed security guards at all hours according to a specified schedule and increase surveillance capabilities in a specified manner, to be determined after hearing, and to cease business operations until all such requirements have been satisfied.

Respectfully submitted,

KENNETH JORDAN
Municipal Counselor

Orval Edwin Jones, OBA 10868
Assistant Municipal Counselor
701 Couch Drive
Oklahoma City, OK 73102
Telephone 405-297-2682

Benjamin Rose, OBA 34181
Assistant Municipal Counselor
200 North Walker, Suite 400
Oklahoma City, OK 73102
Telephone 405-297-1301

ATTORNEYS FOR PLAINTIFF
THE CITY OF OKLAHOMA CITY

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing paper was served by hand on September 25, 2023, to counsel for defendants whose office is located at the following address: Doug Carel, Esq., 2200 Shadowlake Drive, Oklahoma City, OK 73159.

IN THE DISTRICT COURT OF OKLAHOMA COUNTY
STATE OF OKLAHOMA

| | |
|---|---|
| THE CITY OF OKLAHOMA CITY, Plaintiff, | ) |
| vs. | ) Case No. CV-2023-1094 |
| PLAZA HOTELS, LLC, d.b.a THE PLAZA INN, MICHAEL WILEY and STEVE KETTER, Defendants. | ) |

STATE OF OKLAHOMA )
) ss.
COUNTY OF OKLAHOMA )

AFFIDAVIT OF POLICE MAJOR JASON B. SAMUEL

Affiant, Jason B. Samuel, states upon penalty of perjury as follows:

1. I am a major in the Oklahoma City Police Department (OCPD) and have been employed by the OCPD since January 9, 1998.

2. I am the OCPD's designee for nuisance abatement of the City Manager for the City of Oklahoma City and the OCPD Chief of Police, reporting to the Deputy Chief for Special Operations.

3. I am actively supervising the investigation of the real property and motel business involved in this proceeding, referred to as the Plaza Inn, located at 3200 South Interstate Highway 35 Service Road, also known as 3200 South Prospect Avenue, in Oklahoma City, Oklahoma. The matters stated in this affidavit are based on my personal knowledge and observations.

EXHIBIT
tabbles
21

4. I issued the directives contained in a nuisance notice that I signed and that was delivered to the defendants on April 12, 2023. Of particular interest to me was the absence of armed security personnel on the Plaza Inn property to deter and document criminal behavior on the motel property, and to take custody of criminal offenders on the property.

5. I have determined that the number and scheduling of armed security personnel has been and continues to be inadequate, and thus does not comply with the directives contained in the nuisance notice that I issued to the defendants on April 12, 2023. The letter dated April 12, 2023, is attached to this affidavit.

Signed under penalty of perjury in compliance with Section 426 of Title 12 of the Oklahoma Statutes in Oklahoma City, Oklahoma County, State of Oklahoma, on the 21 day of September, 2023.

1182

(Signature and Commission Number)

The City of
**OKLAHOMA CITY**
POLICE DEPARTMENT
Wade Gourley
Chief of Police

**April 12, 2023**

[NOTICE TO PERSONS OWNING OR OCCUPYING PROPERTY]

Reference: Notice to Abate Public Nuisance on Real Property located at:
**The Plaza Inn**
**3200 S. I-35 Service Rd**
**Oklahoma City, Ok 73129**

Described as: Section 14 Township 11N Range 3W QTR: NE
UNPLTD PT Block: 000 Lot: 000
BEG 40FT E & 513FT S OF NW/C NE4 TH S132.40FT SLY250.05FT
SE17.95FT E581.49FT N400FT W530FT NW78.54FT S50FT TO BEG
EX A TR BEG 462.78FT S & 42.39FT E OF NW/C NE4 TH SLY ALONG
H/W R/W 450.38FT E1.14FT N267.61FT NLY 160.64FT NW22.55FT TO BEG

Plaza Inn/Kokomos
Plaza Hotels LLC
C/O Michael Wiley
5101 S. Choctaw Ave
El Reno, Ok 73036

To Mr. Michael Wiley:

The City of Oklahoma City has reason to believe the above-described property is being used in such a manner as to be a public nuisance as defined in Oklahoma Statutes, Title 50, Section 1, or Article VI of Chapter 35 of the Oklahoma City Municipal Code, Sections 35-171 through 35-185. The attached summary of incidents is a partial listing of criminal conduct on your property which has caused the public nuisance to exist. County records or other information indicate that you have some interest, legal or possessory, in the above-described property.

The purpose of this letter is to inform you that unless you take prompt action and remedy the nuisance situation within (10) days, the City may take legal action to abate the public nuisance that has arisen due to the manner in which the property is being used. To abate this nuisance, the hotel owners and managers must take the following steps:

- To have enough armed CLEET Certified security guards to help stop violent acts from occurring inside the courtyard areas and outside in the parking lot by being on the property 24 hours a day and seven days a week

21-B

- To have video cameras installed inside and outside to monitor all areas around the property
- Make sure that all video is stored and not erased for at least 10 days from each recording
- Post and enforce No Trespassing Signs all through the property

The City may seek remedies such as injunctive relief, appointment of court commissioners, mandatory abatement, and imposition of abatement liens upon the property. Abatement orders and other injunctive relief can include demolition of buildings, closure of business operations, limitations on types and time periods of allowed activities, and other restrictions, in the discretion of the District Court. In addition, the City may file misdemeanor charges against you for future violations of Oklahoma City Municipal Code, in particular Sections 35-178 and 35-197.

You are encouraged to contact **MSGT. Bowen** with the Oklahoma City Police Department, Nuisance Abatement Office, at 405-297-1187, to discuss this matter.

Respectfully,

Jason Samuel, Major
Special Operations Division

cc: Orval Edwin Jones
Assistant Municipal Counselor

IN THE DISTRICT COURT OF OKLAHOMA COUNTY
STATE OF OKLAHOMA

| | |
|---|---|
| THE CITY OF OKLAHOMA CITY,<br><br>Plaintiff, | ) |
| vs. | ) Case No. CV-2023-1094 |
| PLAZA HOTELS, LLC, d.b.a THE PLAZA INN, MICHAEL WILEY and STEVE KETTER,<br><br>Defendants. | ) |

STATE OF OKLAHOMA )
) ss.
COUNTY OF OKLAHOMA )

SECOND AFFIDAVIT OF MASTER SERGEANT CHRIS BOWEN

Affiant, Lee Chris Bowen, states upon penalty of perjury as follows:

1. I am a master sergeant in the Oklahoma City Police Department (OCPD), and have been employed by the OCPD since 1998.

2. I am the nuisance coordinator for the OCPD, reporting to the Police Major for Special Projects, who is the designee for nuisance abatement of the City Manager for the City of Oklahoma City and the City's Chief of Police.

3. I am actively investigating the real property and motel business involved in this proceeding, referred to as the Plaza Inn, located at 3200 South Interstate Highway 35 Service Road, also known as 3200 South Prospect Avenue, in Oklahoma City, Oklahoma. The matters stated in this affidavit are based on my personal knowledge and observations.

EXHIBIT
tabbies
22

4. On September 6, 2023, I, along with two other OCPD employees and assistant city attorney Orval Jones, visited the Plaza Inn to inspect the capabilities of the surveillance video system. Of particular interest was the capability of the system to provide visual coverage of all outdoor areas of the Plaza Inn property and provide storage of the recorded video.

5. I have determined that the number and orientation of cameras is inadequate to provide adequate coverage of the premises, and the surveillance system thus does not comply with the directives contained in the nuisance notice that I delivered to the defendants on April 12, 2023.

Signed under penalty of perjury in compliance with Section 426 of Title 12 of the Oklahoma Statutes in Oklahoma City, Oklahoma County, State of Oklahoma, on the 20th day of September, 2023.

Msgt. Chris Barr 1163
(Signature and Commission Number)

IN THE DISTRICT COURT OF OKLAHOMA COUNTY
STATE OF OKLAHOMA

THE CITY OF OKLAHOMA CITY, )
)
Plaintiff, )
)
vs. ) Case No. CV-2023-1094
)
PLAZA HOTELS, LLC, d.b.a THE PLAZA INN, )
MICHAEL WILEY and STEVE KETTER, )
)
Defendants. )

STATE OF OKLAHOMA )
) ss.
COUNTY OF OKLAHOMA )

AFFIDAVIT OF JESSIE CHRISTOPHER SMITH

Jessie Christopher Smith states upon penalty of perjury as follows:

1. I am a reporter for the Oklahoman, a published newspaper, and have been so employed since 2021.

2. In my capacity as a reporter, on May 12, 2023, I recorded an interview of Steve Ketter, and reported the statements that he made to me in an article published by the Oklahoman on May 30, 2023, entitled "OKC filed a lawsuit against Plaza Inn over safety concerns. Now, its owners have responded."

3. The statements of Mr. Ketter that I quoted or paraphrased in that article were reported fairly and accurately.

4. The information in the article was gathered by me in the course of my activities as a professional journalist. This affidavit is submitted in response to a threatened subpoena in the above-referenced action and is not a waiver of any

EXHIBIT
23

applicable privileges or rights, including under the First Amendment, the Oklahoma Constitution, the common law, and Okla. Stat. tit. 12, § 2506.

Signed under penalty of perjury in compliance with Section 426 of Title 12 of the Oklahoma Statutes in Oklahoma City, Oklahoma County, State of Oklahoma, on the 19th day of September, 2023.

Jesse Christopher Smith
(Signature)

THE OKLAHOMAN

CRIME

# OKC filed a lawsuit against Plaza Inn over safety concerns. Now, its owners have responded



**Jessie Christopher Smith**
Oklahoman

Published 5:45 a.m. CT May 30, 2023

EXHIBIT
23-B

In May, the city of Oklahoma City asked a judge to shut down "one of the most dangerous places in Oklahoma County" or force its operators to take steps to make it safer.

But owners say they were already working to address safety concerns.

The Plaza Inn, located at 3200 S Interstate 35 Service Road, has become a notorious hotspot for criminal and drug activity in recent years. The troubled motel in southeast Oklahoma City has been called the "fentanyl den" of the city, and was the alleged host to deadly violence, drug dealing and prostitution.

Co-owner Steve Ketter told The Oklahoman that management have improved motel conditions this year, noting they've hired a company to provide 24/7 security coverage and installed more cameras.

“We've changed a lot of things, and we did what they asked,” Ketter said.

"We're trying to get the bad element out of there because it's hurt our rooms," he said. "It's difficult, I know, but we're trying to change the demeanor of the place because it's been that way forever.”

City attorneys, however, claim the owners have repeatedly ignored notifications to comply with city code and to abate public nuisance complaints.

On April 12 the city notified Ketter, 70 and of El Reno, and co-owner Michael Wiley, 63 and of Oklahoma City, that they had 10 days to reduce nuisance violations at the Plaza Inn, according to the lawsuit.

Orders included:

- Maintain enough armed and certified security guards on the property 24/7 "to help stop violent acts from occurring inside the courtyard areas and outside in the parking lot."
- Install video cameras inside and outside to monitor all areas of the property.
- Store and ensure all video is not erased for at least 10 days after each recording.
- Post and enforce "No Trespassing" signs.

## How did Plaza Inn develop its reputation as a criminal hotspot?

A series of recent violent incidents at the motel — including an alleged kidnapping and multiple stabbings and shootings — spurred city management to take steps toward officially filing the suit.

City officials filed a lawsuit that asks a judge to formally declare the Plaza Inn a public nuisance and force the owners to make it safer — or shut it down.

"The Plaza Inn (is) one of the most dangerous places in Oklahoma County for the community and the traveling public, to include extreme violence, drug distribution and prostitution activity," the lawsuit reads.

"Complete closure or mandatory restrictions on use of the property are necessary to maintain the public health, welfare, decency and order, and to protect the community from harm," it states.

A 2022 investigation by The Oklahoman reported at least 626 phone calls for police at the Plaza Inn between July 2021 and July 2022.

Most of those calls involved disturbance complaints, wellbeing checks and traffic stops, according to a review of public records performed by The Oklahoman. But in 2022 alone, at least 10 assaults, two shootings, eight attempted suicides, three stabbings, 13 thefts, four acts of vandalism and 11 overdoses were reported at the Plaza Inn, police records show.

Multiple reports from TV news stations note similarly high numbers of police calls at various times from 2018 through 2022. During an interview with The Oklahoman in August, a police officer who patrolled the area daily called the motel "the fentanyl den of Oklahoma City."

## Plaza Inn owners, law enforcement divided on severity of crime

Ketter said the motel "hadn't had as many issues lately," but the lawsuit alleges the surging pattern of violent crime at The Plaza Inn has not receded this year.

About 4 a.m. on April 4, police responded to a disturbance call at the Plaza Inn from a 19-year-old woman, who told police she had been the victim of a kidnapping.

The woman said she was walking back to her motel room when Kaal DeWayne Williams, 42, grabbed her and dragged her into one of the rooms, according to an affidavit filed April 19.

The victim "alleged Mr. Williams threatened to kill her and to set her on fire while holding a torch to her person," an investigating officer wrote in the affidavit.

Officers tried to establish contact with Williams inside one of the rooms, but his behavior was erratic and uncooperative, police said. Court filings show Williams barricaded himself inside the motel room, threw a chair at officers and damaged a tactical drone that police sent into the room.

After "some gas was introduced," police said a tactical team breached the room and took the man into custody. Williams was booked into the Oklahoma County jail and faces felony charges of malicious injury to property and assault with a dangerous weapon.

**Related:** Standoff ensues at southeast OKC Plaza Inn after report of possible kidnapping Tuesday

In an interview with The Oklahoman, Plaza Inn co-owner Ketter disputed certain facts of the narrative presented in court filings.

"Our cameras were going on that," Ketter said. "She wasn't forced into the room. She checked in and she went knocking on that guy's door, and she was with him for an hour and then he let her back out. The police saw her, and then she told that crazy story. But I don't know what went on inside the room or anything else."

Ketter said Wiley recorded his own video of the surveillance footage "because he thought that it might be a problem some time."

Follow-up attempts by The Oklahoman to obtain the alleged surveillance video from the Plaza Inn owners and additional comment were unsuccessful.

## Lawsuit cites spike in shootings, stabbings and machete incident as cause for public nuisance designation

Additional troubles at the Plaza Inn followed in mid-April, with reports of a slew of violent crimes during a two-day span.

On April 10, police officers said they found a victim hiding in a closet at the motel after a shooter approached a room on the first floor and opened fire.

Later that evening, officers responded to reports of another shooting at the Plaza Inn, but were unable to locate any victims or suspects.

Police released video showing a fight involving several men in front of a motel room, as well as a white pickup leaving the scene.

"We do believe that it's possible that someone was shot during this altercation, as a pool of blood and also shell casings were found there at the scene," Sgt. Jennifer Wardlow, with Oklahoma City Crime Stoppers, said in late April. "We haven't had anyone come forward with information — nothing regarding either a possible suspect or a victim who might have been involved in this incident."

KOCO-TV reported a stabbing occurred at the motel about two hours later, but the circumstances of another stabbing early the next morning drew widespread attention.

About 1:45 a.m. on April 11, a man in the lobby told responding officers another middle-age man had attacked him with a machete after a confrontation over a domestic situation.

The man, whose left arm had been sliced during the confrontation, identified his attacker with the nickname Goldie. Other motel guests told investigators that Goldie was their "play uncle" who "comes to their room from time," according to a police report.

A security guard at the neighboring Best Way Inn told The Oklahoman he also had to fend off a man wielding a machete last summer.

Ketter downplayed the April 11 stabbing when The Oklahoman asked him about it.

"The guy with the machete wasn't out there throwing the machete around, trying to behead people or decapitate no arms or nothing like that," Ketter said. "It was a family squabble and evidently it went outside the room and someone got their hand cut. So, some of this is domestic stuff."

Other violent incidents cited by the lawsuit included various shootings at the motel in 2022, such as a brutal robbery assault in July and another surprise assault in March where the victim was shot in the face.

**More:** Two arrested in deadly assault at southeast Oklahoma City motel

## Owners considering selling motel if city dissatisfaction continues

Ketter told The Oklahoman he has been in contact with the city's nuisance abatement agents, and said he and Wiley have hired newer employees who have been helpful in trying to change operations at the motel.

"We've really tried," Ketter said. "We've changed check-in procedures. Everyone is supposed to be in their room at 9 o'clock. They've got to write down anybody who's going to be in that room, and if there's more than one, they've got to pay for it. They can't have more than two visitors, so that avoids the problems. And they've got to be responsible for them, and we make them sign a paper."

Ketter said it takes time to "weed out the bad guys and the bad employees" at the motel, but once they are found out, they are fired or removed from the premises. He also said some of the people arrested in criminal activity at the motel aren't always locals and aren't always checked in.

"These aren't always guests at the hotel," Ketter said. "We try to keep them from walking in, but sometimes it's hard. It covers such a vast area, and that security guard can't be everywhere."

The way the building is shaped, Ketter said, is difficult to secure or monitor completely without hiring several guards, and it's located in a part of town with a history of crime.

"We've thought about tearing some of the wings down, tearing the front down so it's all open. I thought we'd been improving, really, but you can't prevent people you don't even know walking in," Ketter said. "That's our problem. It's really a rough area."

The lawsuit said Ketter and Wiley must hire more guards, install more video cameras, and add more fencing in order to significantly lessen the crimes at the property. Otherwise, the city will pursue other options to rectify the situation, including possible property liens, closure of the motel or demolition of the building, according to the lawsuit.

**More:** OKC asks judge to shut down Plaza Inn or order owners to fix criminal nuisance

City attorneys also warned the owners that misdemeanor charges might be filed against them if code violations continued.

And if that happens, Ketter said, they may just sell the motel.

"I wouldn't know what else to do, except try to sell it," Ketter said.

Officials with the city and the police department declined to speak with The Oklahoman about the suit.

"We're just going to let that lawsuit speak for itself," Oklahoma City police Sgt. Gary Knight said.