**IN THE UNITED STATES DISTRICT COURT FOR THE`**
**WESTERN DISTRICT OF OKLAHOMA**

| | | |
|---|---|---|
| NANCY R., pseudonymously,<br><br>Plaintiff,<br><br>v.<br><br>PLAZA HOTELS, LLC; STEVE KETTER;<br>MICHAEL A. WILEY; OKC AIRPORT ES, LLC;<br>ESH STRATEGIES FRANCHISE, LLC;<br>NATHA, LLC; JALIYAN HOSPITALITY, INC;<br>SUPER 8 WORLDWIDE, INC;<br>RAJ KRUPA HOTEL, LLC;<br>DAYS INN WORLDWIDE, INC;<br>CHAND & SAAJ HOSPITALITY, INC;<br>RAMADA WORLDWIDE, INC;<br>YASH ENTERPRISES, LLC<br>HOWARD JOHNSON INTERNATIONAL, INC;<br>NOOR HOTEL, LLC; AMBICA, LLC;<br>OM, LLC; INDRA, LLC; AND<br>G6 HOSPITALITY FRANCHISING, LLC,<br><br>Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Case No. CIV-25-462-G |

---

**MOTION TO DISMISS OF DEFENDANT STEVE KETTER**
**AND BRIEF IN SUPPORT**

---

Jessica L. Dark, OBA #31236
W. Riley Nester, OBA #36222
PIERCE COUCH HENDRICKSON
BAYSINGER & GREEN, L.L.P.
1109 N. Francis Ave.
Oklahoma City, OK 73106
PH: (405) 235-1611
FX: (405) 235-2904
jdark@piercecouch.com
rnester@piercecouch.com
*Attorneys for Defendant Steve Ketter*

**November 25, 2026**

# TABLE OF CONTENTS

**TABLE OF AUTHORITIES** .......... ii

**INTRODUCTION** .......... 1

**STANDARD OF REVIEW** .......... 2

**ARGUMENTS AND AUTHORITIES** .......... 3

**I. PLAINTIFF FAILS TO STATE A CLAIM UPON WHICH RELIEF MAY BE GRANTED** .......... 3

**A. The SAC Still Fails to Provide Defendant Ketter Fair Notice of the Claims Against Him** .......... 3

**B. The SAC Fails to State a Claim Against Defendant Ketter Under 18 U.S.C. § 1591(a)(1)** .......... 6

**C. The SAC Fails to State a Claim Against Defendant Ketter Under 18 U.S.C. § 1591(a)(2)** .......... 8

**i. Plaintiff's Ketter-Specific Allegation Remains Conclusory** .......... 10

**ii. The SAC's Allegations of Generalized Crime and Nuisance Enforcement at the Plaza do not Establish the Requisite Knowledge** .......... 12

**D. The SAC Fails to State a Beneficiary Claim Against Defendant Ketter Under 18 U.S.C. § 1595(a)** .......... 15

**E. The SAC Fails to State a Claim Under Oklahoma's Human Trafficking Statutes** .......... 18

**II. PLAINTIFF'S STATE LAW CLAIMS HAVE EXPIRED** .......... 20

**CONCLUSION** .......... 22

**CERTIFICATE OF SERVICE** .......... 23

# TABLE OF AUTHORITIES

Cases Page(s)

*A.B. v. Hilton Worldwide Holdings, Inc.*,
484 F.Supp.3d 921 (D. Or. 2020) .......... 5
*A.B. v. Interstate Mgmt. Co.*,
746 F.Supp.3d 997 (D. Or. 2024) .......... 12, 13, 16, 17
*Ashcroft v. Iqbal*,
556 U.S. 662, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009) .......... 3, 4
*Bell Atlantic Corp. v. Twombly*,
550 U.S. 544 (2007) .......... 2, 3, 4, 5, 7
*Bistline v. Parker*,
918 F.3d 849 (10th Cir. 2019) .......... 9, 10
*Bucco v. W. Iowa Tech Cmty. Coll.*,
555 F.Supp.3d 628 (N.D. Iowa 2021) .......... 5
*Cory v. Allstate Ins.*,
583 F.3d 1240 (10th Cir. 2009) .......... 3
*Doe (L.M.) v. 42 Hotel Raleigh, LLC*,
717 F.Supp.3d 464 (E.D.N.C. 2024) .......... 11, 12, 15, 16, 17
*Escobar v. Mora*,
496 F. App'x. 806 (10th Cir. 2012) .......... 3
*Frey v. Town of Jackson, Wyoming*,
41 F.4th 1223 (10th Cir. 2022) .......... 12, 15
*G.W. v. Northbrook Indus., Inc.*,
739 F.Supp.3d 1243 (N.D. Ga. 2024) .......... 5
*J.L. v. Best Western Int'l, Inc.*,
521 F.Supp.3d 1048 (D. Colo. 2021) .......... 14, 15, 17
*Lusk v. Midland Credit Mgmt., Inc.*,
CIV-24-381-R, 2024 WL 4171355 (W.D. Okla. Sept. 12, 2024) .......... 4
*Pyatt v. Secure Live Media, LLC*,
2022 WL 22883099 (S.D. Fla. 2022) .......... 5
*Ricchio v. McLean*,
853 F.3d 553 (1st Cir. 2017) .......... 9, 10, 17
*S.J. v. Choice Hotels Int'l, Inc.*,
473 F.Supp.3d 147 (E.D.N.Y. 2020) .......... 16

Statutes

18 U.S.C. § 1591 .......... 6, 12
18 U.S.C. § 1591(a) .......... 13, 16
18 U.S.C. § 1591(a)(1) .......... 6, 7
18 U.S.C. § 1591(a)(2) .......... 6, 7, 8, 15
18 U.S.C. § 1595 .......... 1, 15

18 U.S.C. § 1595(a) .......... 8, 15, 16, 17, 18, 19

Rules

Fed. R. Civ. P. 8 .......... 1, 2
Fed. R. Civ. P. 12(b)(6) .......... 1, 3, 5, 7

Defendant Steve Ketter ("Defendant" or "Ketter"), hereby respectfully submits this Motion to Dismiss Plaintiff's Second Amended Complaint (Doc. No. 218) pursuant to Fed. R. Civ. P. 8 and 12(b)(6). In support hereof, Defendant submits the following brief in support:

## INTRODUCTION

Plaintiff filed her Petition on March 19, 2025. (Doc. No. 1-2). The case was removed to this Court on April 23, 2025. (Doc. No. 1). Plaintiff filed her First Amended Complaint ("FAC") on October 17, 2025 (Doc. No. 115), and Defendant Ketter moved to dismiss. (Doc. No. 119). On September 30, 2026, the Court granted Defendant Ketter's motion, along with those of several other defendants, pursuant to Fed. R. Civ. P. 12(b)(6). (Doc. No. 212). The Court found that, "[a]mong other deficiencies, the FAC in many instances fails to distinguish between traffickers and the many Defendants and to specifically allege what each Defendant knew and did, including relating to the trafficking of Plaintiff." (Doc. No. 212, p. 6). The Court granted Plaintiff leave to file a second amended complaint "to provide greater factual specificity." (Doc. No. 212, p. 6).

Plaintiff filed her Second Amended Complaint ("SAC") on October 28, 2026, again asserting claims under the Trafficking Victims Protection Reauthorization Act ("TVPRA"), 18 U.S.C. § 1595, and Oklahoma human trafficking statutes, 21 O.S. § 748 *et seq*. (Doc. No. 218). Included among the defendants are Plaza Hotels, LLC ("the Plaza") and its two owners, Michael Wiley and Steve Ketter.

Though considerably longer than its predecessor, the SAC does not do what the Court directed as to Defendant Ketter. The sole allegation connecting Ketter to Plaintiff or

her alleged trafficker is carried forward word-for-word from the FAC: that, "[o]n information and belief," Ketter "was aware of the same facts either because Wiley told him or because he encountered Domino during his visits to the Plaza." (*Compare* Doc. No. 218, ¶ 53, *with* Doc. No. 115, ¶ 102 *and* Doc. No. 1-2, ¶ 102). The SAC still does not allege when exactly Plaintiff stayed at the Plaza, that Defendant Ketter ever saw, met, or interacted with Plaintiff, or what Ketter was supposedly told, by whom, or when.

What the SAC adds instead is a lengthy recitation of police calls, municipal nuisance notices, and other criminal activity at the Plaza property dating back to 2018. Those allegations describe, at most, generalized knowledge of crime at a hotel property. They do not plausibly allege that Defendant Ketter knew, recklessly disregarded, or should have known that Domino was using force, fraud, or coercion to cause *this* Plaintiff to engage in commercial sex acts.

Accordingly, the SAC still fails to state a plausible claim against Defendant Ketter under the TVPRA or Oklahoma's human trafficking statutes, and Plaintiff's state law claims remain untimely. As discussed further herein, Defendant Ketter is entitled to dismissal as a matter of law.

## STANDARD OF REVIEW

The *Twombly/Iqbal* pleading standard is well-known by this Court. A complaint must present a facially plausible claim for relief. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). The quality of these factual allegations must create more than speculation about the plaintiff's chances of recovery. *Id.* The United States Supreme Court has further held that, while the pleading standard of Fed. R. Civ. P. 8 does not require detailed factual

allegations, "it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009). If the complaint contains only boilerplate labels and conclusory allegations, dismissal is proper because "conclusory allegations without supporting factual averments are insufficient to state a claim upon which relief can be based." *Escobar v. Mora*, 496 F. App'x. 806, 816 (10th Cir. 2012) (citing *Cory v. Allstate Ins.*, 583 F.3d 1240, 1244 (10th Cir. 2009)).

The Court applied these principles in dismissing the FAC, explaining that "[b]are legal conclusions in a complaint are not entitled to the assumption of truth; 'they must be supported by factual allegations' to state a claim for relief." (Doc. No. 212, p. 6 (quoting *Iqbal*, 556 U.S. at 679)).

## ARGUMENTS AND AUTHORITIES

### I. PLAINTIFF FAILS TO STATE A CLAIM UPON WHICH RELIEF MAY BE GRANTED

#### A. The SAC Still Fails to Provide Defendant Ketter Fair Notice of the Claims Against Him

Even if Plaintiff's Second Amended Complaint nominally alleges claims under the TVPRA or Oklahoma's human trafficking statutes, it nevertheless fails to satisfy the baseline pleading requirements of Rule 8. The Federal Rules demand that a complaint contain enough factual matter to give defendants fair notice of the nature of the claims and the grounds upon which they rest. *Twombly*, 550 U.S. at 555. Dismissal is appropriate where a complaint consists only of "boilerplate labels and conclusory allegations," *Escobar*, 496 F. App'x at 816, or where the factual content fails to nudge the claims "across

the line from conceivable to plausible." *Twombly*, 550 U.S. at 570. "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Iqbal*, 556 U.S. at 678. The burden is on the plaintiff to "frame a complaint with enough factual matter (taken as true) to suggest that he or she is entitled to relief." *Lusk v. Midland Credit Mgmt., Inc.*, CIV-24-381-R, 2024 WL 4171355, at *1 (W.D. Okla. Sept. 12, 2024).

The Court has already identified the deficiency; the FAC "in many instances fail[ed] to distinguish between traffickers and the many Defendants and to specifically allege what each Defendant knew and did, including relating to the trafficking of Plaintiff." (Doc. No. 212, p. 6). As to Defendant Ketter, the SAC does not cure it. Although Plaintiff separates her allegations by hotel, her allegations connecting Defendant Ketter to Plaintiff remain limited to a single paragraph pled on information and belief. (Doc. No. 218, ¶ 53). The SAC still does not identify when Plaintiff stayed at the Plaza, how long she was there, or how many times; it alleges only that she met Domino at the Plaza "in 2021" and refers to "each of her stays" without dating any of them. (Doc. No. 218, ¶¶ 32, 35-36). The SAC also does not identify when Defendant Ketter visited the Plaza, when he supposedly encountered Domino, or when (or whether) Defendant Wiley told him anything. (Doc. No. 218, ¶ 53).

Where the SAC does purport to attribute knowledge or conduct to Defendant Ketter, it does so collectively. Plaintiff alleges that "Plaza, Ketter, and Wiley knew and should have known" that the Plaza was a conducive venue for sex trafficking (Doc. No. 218, ¶ 54); that "Plaza, Ketter, and Wiley chose to keep operating it that way" (Doc. No. 218, ¶

64); and that "each Defendant 'harbor[ed],' [and] 'provide[d]'" Plaintiff. (Doc. No. 218, ¶ 273). Her claims likewise lump "Plaza, Ketter, Wiley, the Franchisee Defendants, and the Franchisor Defendants" together (Doc. No. 218, ¶¶ 272, 274-275), and allege that "Defendants" variously recruited, enticed, provided, obtained, and harbored Plaintiff. (Doc. No. 218, ¶ 284). Some of the SAC's allegations are not tied to any particular hotel at all. (*See, e.g.*, Doc. No. 218, ¶¶ 24-25 (alleging that "[o]n several occasions in each Defendant hotel," unidentified "hotel employees chose to ignore the bruises Domino left on Nancy")). This is precisely the type of collective pleading the Court found insufficient.

Factual allegations must be sufficient "to raise a right to relief above the speculative level[.]" *Twombly*, 550 U.S. at 555. Plaintiff's allegations as to Defendant Ketter leave Defendant and this Court no choice but to speculate, and they deprive Defendant of the fair notice to which he is entitled under Rule 8. *See G.W. v. Northbrook Indus., Inc.*, 739 F.Supp.3d 1243, 1251 (N.D. Ga. 2024) ("[T]he plaintiff must connect the dots between the defendant's and the trafficker's actions and show how the defendant participated in the venture with the traffickers."); *see also Pyatt v. Secure Live Media, LLC*, 2022 WL 22883099, at *5 (S.D. Fla. 2022) (Plaintiff's "allegations are impermissibly vague and conclusory[,]" including the "general and vague statements that (1) at unspecified dates; (2) unidentified individuals 'coerced' him into having sex with unnamed women[.]"); *A.B. v. Hilton Worldwide Holdings, Inc.*, 484 F.Supp.3d 921, 940-41 (D. Or. 2020) (Victim's "vague allegations" that she stayed at hotels repeatedly and hotel chain operators had some level of notice that victim engaged in commercial sex acts at hotel properties failed to state a claim under the TVPRA); *Bucco v. W. Iowa Tech Cmty. Coll.*, 555 F.Supp.3d 628, 642

(N.D. Iowa 2021) ("Without details as to who did what," the Court "cannot determine whether the allegations are sufficient to state a TVPRA claim against each defendant.").

Because Plaintiff's allegations lack the factual specificity necessary to render them plausible or actionable, her claims should be dismissed.

### B. The SAC Fails to State a Claim Against Defendant Ketter Under 18 U.S.C. § 1591(a)(1)

Plaintiff brings a claim against Defendant Ketter for perpetrator liability under 18 U.S.C. § 1591(a)(1). (Doc. No. 218, ¶¶ 272-273). A perpetrator for the purposes of § 1591(a)(1) is defined as:

> (a) Whoever knowingly—
>
> (1) in or affecting interstate or foreign commerce, or within the special maritime and territorial jurisdiction of the United States, recruits, entices, harbors, transports, provides, obtains, advertises, maintains, patronizes, or solicits by any means a person;
>
> knowing, or, … in reckless disregard of the fact, that means of force, threats of force, fraud, coercion …, or any combination of such means will be used to cause the person to engage in a commercial sex act, … shall be punished as provided in subsection (b).

Thus, in order to state a claim against Defendant Ketter under § 1591(a)(1), Plaintiff must plausibly allege that Ketter knowingly recruited, enticed, harbored, transported, provided, obtained, advertised, maintained, patronized, or solicited her—while knowing or recklessly disregarding that force, threats of force, fraud, or coercion were being used to cause her to engage in commercial sex acts. *Id.* Defendant Ketter's mens rea requirement under § 1591 is addressed in the following argument section related to § 1591(a)(2), as Plaintiff fails to plausibly allege that Ketter engaged in any of the specific trafficking verbs found in § 1591(a)(1).

Plaintiff's *sole* allegation of Defendant Ketter's involvement with Plaintiff or her alleged trafficker is that, "[o]n information and belief, Ketter—the Plaza's other owner—was aware of the same facts" alleged as to Defendant Wiley, "either because Wiley told him or because he encountered Domino during his visits to the Plaza." (Doc. No. 218, ¶ 53). This allegation is carried forward verbatim from the FAC. (*See* Doc. No. 115, ¶ 102). The SAC does not allege that Defendant Ketter ever rented a room to Plaintiff, met or spoke with her, saw her at the Plaza, or had any dealings with Domino.

The SAC's only attempt to attribute a trafficking verb to Defendant Ketter is its collective assertion that "each Defendant 'harbor[ed],' [and] 'provide[d]'" Plaintiff. (Doc. No. 218, ¶ 273). However, "a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. The SAC's allegations regarding municipal nuisance notices and police activity at the Plaza property (Doc. No. 218, ¶¶ 56-80) fail to allege that Defendant Ketter took any action with respect to Plaintiff at all.

Again, Plaintiff's single allegation related to any conduct of Defendant Ketter does not allege that he recruited, enticed, harbored, transported, provided, obtained, advertised, maintained, patronized, or solicited her—only that he must have known that Defendant Wiley had allegedly done so, "either because" Wiley told him or he encountered Domino during his visits to the Plaza. This is clearly insufficient under Fed. R. Civ. P. 12(b)(6) to support liability under § 1591(a)(1), and this claim against Defendant Ketter should therefore be dismissed.

### C. The SAC Fails to State a Claim Against Defendant Ketter Under 18 U.S.C. § 1591(a)(2)

Plaintiff also brings a claim against Defendant Ketter for venture liability under 18 U.S.C. § 1591(a)(2). (Doc. No. 218, ¶ 274). Those subject to venture liability under § 1591(a)(2) are:

> (a) Whoever knowingly—
>
> (2) benefits, financially or by receiving anything of value, from participation in a venture which has engaged in an act described in violation of paragraph (1),
>
> knowing, or, … in reckless disregard of the fact, that means of force, threats of force, fraud, coercion …, or any combination of such means will be used to cause the person to engage in a commercial sex act, … shall be punished as provided in subsection (b).

Thus, in order to state a claim against Defendant Ketter under § 1591(a)(2), Plaintiff must plausibly allege that Ketter knowingly benefitted from his participation in a venture that engaged in sex trafficking, and that he knew or recklessly disregarded that force, threats, fraud, or coercion were being used to cause her to engage in commercial sex acts. *Id.*

As an initial matter, Defendant Ketter denies having benefitted in any way from the events alleged in Plaintiff's Second Amended Complaint. However, solely for the purpose of this Motion to Dismiss, Defendant Ketter does not challenge whether Plaintiff adequately pled the "benefit" element under § 1591(a)(2) or § 1595(a). Instead, Defendant moves directly to addressing the SAC's insufficient allegations regarding participation in a venture and Defendant Ketter's knowledge.

To plausibly establish venture liability under the TVPRA, a plaintiff must allege facts demonstrating active participation in the venture or at least an ongoing, knowing

relationship between the defendant and the trafficker. The Tenth Circuit has adopted reasoning from the First Circuit to clarify that a "venture" under the TVPRA requires facts showing a common undertaking or collaborative involvement. *See Bistline v. Parker*, 918 F.3d 849, 874-75 (10th Cir. 2019) (applying *Ricchio v. McLean*, 853 F.3d 553 (1st Cir. 2017)).

In *Ricchio*, the hotel owners ("Husband and Wife"), had previously collaborated in unspecified "commercial dealings" with the plaintiff's trafficker. *Ricchio*, 853 F.3d at 555. The plaintiff alleged that her trafficker "physically and sexually abused [plaintiff], repeatedly raping her, starving her and drugging her, and leaving her visibly haggard and bruised" at the hotel. *Id.* While the plaintiff was captive at the hotel, the Husband and Wife "enthusiastically expressed [intent to reinstate their commercial dealings] by exchanging high-fives in the motel's parking lot while speaking about 'getting things going again'" under circumstances where the abusive and coercive treatment had already become apparent to the hotel owners. *Id.* Specifically, the Husband and Wife had ignored Plaintiff's plea for help and their employees watched passively as Plaintiff was dragged across the parking lot and kicked by her trafficker during an attempted escape. *Id.* The Wife also visited Plaintiff's room for payment and saw her physical decline. *Id.* Where these facts were alleged, the First Circuit found Plaintiff plausibly stated a claim for venture liability against the Husband and Wife hotel owners. *Id*. at 556.

In *Bistline*, the Tenth Circuit applied the First Circuit's illustration of "venture" to a forced labor fact pattern where members of the Fundamentalist Church of Jesus Christ of Latter-Day Saints ("FLDS") alleged their trafficker's attorney had actual knowledge of the

trafficker's practices with underage girls, was instructed to ignore legal actions and complaints against the trafficker, and made an active effort to evade complaints of trafficking by setting up a specific trust scheme designed expressly for the purpose of facilitating the trafficker's crimes and threatening victims. *Bistline*, 918 F.3d at 874-75. The Tenth Circuit found that the FLDS plaintiffs adequately stated a claim for venture liability because the defendant attorney, like the hotel owners in *Ricchio*, had knowledge "beyond the generic" wrongdoing of the Church, including his receipt of graphic evidence of ceremonial rape of minors and forced manual labor, and then continued to engage in dealings with the trafficker. *Id.* at 875.

**i. Plaintiff's Ketter-Specific Allegation Remains Conclusory**

In contrast, Plaintiff's sole allegation of Defendant Ketter's involvement is that, "[o]n information and belief," Ketter "was aware of the same facts" as Defendant Wiley, "either because Wiley told him or because he encountered Domino during his visits to the Plaza." (Doc. No. 218, ¶ 53). However, Plaintiff provides no factual basis or context for how she came to this speculative conclusion. She does not allege what information Wiley supposedly conveyed to Defendant Ketter, when any such conversation occurred, or even if such a conversation actually happened. Plaintiff likewise fails to describe the circumstances of Defendant Ketter's supposed "encounters" with Domino, or how such casual encounters (if they even occurred) would inform Defendant Ketter that trafficking was occurring at the Plaza. Indeed, traffickers do not typically advertise their illegal activities, especially to individuals who control or manage hotel premises. Notably, the SAC omits two acknowledgments from Plaintiff's prior pleading: that "many" victims of

sex trafficking "are not obviously victims" (Doc. No. 115, ¶ 23), and that hotels, by their nature, offer anonymous and temporary accommodations that make illegal activity difficult to detect (Doc. No. 115, ¶¶ 51-52). Those realities did not change when Plaintiff removed them from her pleading, and their omission does not supply the facts the SAC lacks regarding what Defendant Ketter knew.

Further, the Plaza-specific allegations describe no act of force against Plaintiff at the Plaza, no visible injury observed there, and no threat witnessed by anyone—let alone by Defendant Ketter. (*See* Doc. No. 218, ¶¶ 32-55). The only specific allegations of physical abuse of Plaintiff in the SAC concern other hotels. (Doc. No. 218, ¶¶ 99-100, 123 (Extended Stay), 243-247 (Howard Johnson)). Plaintiff's generic assertion that "hotel employees chose to ignore the bruises Domino left on Nancy" (Doc. No. 218, ¶ 25) is not tied to the Plaza, much less to Defendant Ketter. The absence of such allegations is telling. *See Doe (L.M.) v. 42 Hotel Raleigh, LLC*, 717 F.Supp.3d 464, 472 (E.D.N.C. 2024) (dismissing where "[c]onspicuously absent" from the complaint were "any allegations that could plausibly produce an inference of trafficking by force or fraud such as, for example, signs of physical abuse, actual assaults by a trafficker on the victim," among others). Even the unnamed former security guard on whom Plaintiff relies is alleged to have spoken only to what Defendant Wiley knew. (Doc. No. 218, ¶¶ 46, 52).

Instead, Plaintiff alleges that Defendant Wiley exchanged rooms for sex on certain occasions, that it was known among sex workers frequenting the Plaza that Wiley engaged in such conduct, and that Wiley sometimes allowed Plaintiff to pay for her room after meeting with a client. (Doc. No. 218, ¶¶ 48-51). Plaintiff does not allege that Defendant

Ketter had knowledge of these exchanges or that any overt indicators of trafficking activity occurred in his presence or were otherwise known to him. The sole allegation, that Defendant Ketter "was aware" "**either** because Wiley told him or because he encountered Domino[,]" is purely conclusory, lacks factual detail, and thus should not be afforded the presumption of truth. *Frey v. Town of Jackson, Wyoming*, 41 F.4th 1223, 1233 (10th Cir. 2022) ("An allegation is conclusory if it states an inference without underlying facts or if it lacks any factual enhancement. Conclusory allegations are not entitled to the assumption of truth."). Likewise, the allegations that Defendant Wiley exchanged rooms for sex on certain occasions and that it was known *among sex workers frequenting the Plaza* that Wiley engaged in such conduct provide no indication that Defendant Ketter had knowledge of these activities or that they would reasonably alert him to the presence of trafficking. And even had Defendant Ketter known of them, these allegations indicate, at most, commercial sex—not force, threats, fraud, or coercion. *See Doe (L.M.)*, 717 F.Supp.3d at 472 ("[K]nowledge of prostitution is not necessarily knowledge of sex trafficking by force or fraud as defined in 18 U.S.C. § 1591."); *A.B. v. Interstate Mgmt. Co.*, 746 F.Supp.3d 997, 1009-10 n.6 (D. Or. 2024) (rejecting argument that knowledge the plaintiff had a "pimp" established knowledge of force, fraud, or coercion, because that view "collapses the distinction between general prostitution, in which a 'pimp' may be involved, and commercial sex trafficking in violation of the TVPRA").

#### ii. The SAC's Allegations of Generalized Crime and Nuisance Enforcement at the Plaza do not Establish the Requisite Knowledge

Plaintiff devotes much of the SAC to the history of criminal activity at the Plaza property. She alleges that the Oklahoma City Police Department logged thousands of calls

for service at the Plaza between 2019 and 2022 (Doc. No. 218, ¶¶ 56-71); that, in October 2018, juvenile offenders were arrested for trafficking juvenile victims in a Plaza room (Doc. No. 218, ¶ 72); that, later that month, an OCPD nuisance coordinator met with Defendants Wiley and Ketter and the City issued a Notice to Abate Public Nuisance (Doc. No. 218, ¶¶ 73-74); that the City sent additional nuisance notices between October 2018 and April 2023 and cited Wiley and Ketter under its nuisance abatement ordinance after violent incidents in 2019 (Doc. No. 218, ¶¶ 75-77); and that the City ultimately sued in 2023, resulting in a consent decree and the property's sale and demolition. (Doc. No. 218, ¶¶ 78-80). These allegations do not cure the deficiencies discussed above, for several reasons.

*First*, these allegations establish, at most, that Defendant Ketter was aware that the Plaza property experienced crime. However, knowledge that crime, or even commercial sex, occurs at a property is not knowledge, or reckless disregard, "that means of force, threats of force, fraud, coercion …, or any combination of such means will be used to cause *the person* to engage in a commercial sex act." 18 U.S.C. § 1591(a) (emphasis added). Plaintiff's own allegations recognize the distinction, acknowledging that some commercial sex workers operate as "renegades" outside the control of a pimp. (Doc. No. 218, ¶ 122). As explained above, knowledge of prostitution alone, or even a pimp's involvement in the same, does not itself establish knowledge of force, threats, or coercion. Courts applying the TVPRA have likewise held that such knowledge is insufficient, including where the crime occurred at the very hotel at issue. *See Interstate Mgmt.*, 746 F.Supp.3d at 1004-05, 1010 (police reports of sexual crimes at the hotel and online reviews describing criminal

activity put the operator "on notice of commercial sex activity taking place at the Residence Inn," but not "that sex trafficking in violation of the TVPRA was taking place"); *J.L. v. Best Western Int'l, Inc.*, 521 F.Supp.3d 1048, 1064 (D. Colo. 2021) (allegations that the defendant was on notice of the prevalence of sex trafficking generally at its hotels were "not sufficient to show that [it] should have known about what happened to this plaintiff").

*Second*, the most specific of these allegations concern the October 2018 incident. That incident involved juvenile offenders and juvenile victims who have no alleged connection to Plaintiff or Domino. The nuisance coordinator's resulting warning to Defendants Wiley and Ketter concerned "prostitutes … soliciting at the motel in plain sight" and those juveniles. (Doc. No. 218, ¶¶ 72-73). All of this occurred more than two years before Plaintiff alleges she first met Domino at the Plaza in 2021. (Doc. No. 218, ¶ 32).

*Third*, much of this history post-dates Plaintiff's alleged trafficking and therefore cannot have informed Defendant Ketter's knowledge at the relevant time. The City's October 2022 letter, its 2023 lawsuit, Defendant Ketter's alleged public statement in response to it, the October 2023 consent decree, and the 2024 sale and demolition of the property (Doc. No. 218, ¶¶ 77-80) all occurred after Plaintiff alleges her trafficking by Domino ended. (Doc. No. 218, ¶ 26). And the statement Plaintiff attributes to Defendant Ketter, that the owners were "trying to get the bad element out of there because it's hurt our rooms" (Doc. No. 218, ¶ 78), is the opposite of an allegation that he sought to participate in, or profit from, criminal activity at the property.

*Fourth*, Plaintiff's assertion that "[t]he most logical explanation" for the crime at the Plaza "is that Plaza, Ketter, and Wiley chose to keep operating it that way" (Doc. No. 218, ¶ 64) is not a factual allegation at all. It is speculation, pled collectively, that "states an inference without underlying facts." *Frey*, 41 F.4th at 1233. Continuing to operate a hotel that experiences crime, or failing to adopt security measures the City suggested, is not participation in a sex trafficking venture, and it says nothing about what Defendant Ketter knew regarding Plaintiff. *Cf. Doe (L.M.),* 717 F.Supp.3d at 473 (rejecting contention that hotel "should have exercised reasonable diligence to proactively investigate and prevent possible sex trafficking" because "the TVPRA imposes no such duty").

Accordingly, these allegations do not satisfy the "knowledge or reckless disregard" standard required to state a claim under § 1591(a)(2), and this claim should therefore be dismissed.

**D. The SAC Fails to State a Beneficiary Claim Against Defendant Ketter Under 18 U.S.C. § 1595(a)**

Plaintiff separately alleges that Defendant Ketter is liable as a beneficiary under 18 U.S.C. § 1595. (Doc. No. 218, ¶¶ 275-277). Section 1595(a) permits a civil action against "the perpetrator (or whoever knowingly benefits, or attempts or conspires to benefit, financially or by receiving anything of value from participation in a venture which that person knew or should have known has engaged in an act in violation of this chapter)." 18 U.S.C. § 1595(a). Thus, to state a beneficiary claim, Plaintiff must plausibly allege that Defendant Ketter (1) knowingly benefitted, (2) from participation in a venture, (3) which he knew or should have known engaged in an act in violation of the TVPRA as to Plaintiff. *See J.L.*, 521 F.Supp.3d at 1064.

Defendant Ketter acknowledges that § 1595(a)'s "should have known" language describes a constructive-knowledge standard distinct from the knowledge or reckless-disregard standard of § 1591(a). However, that standard does not relieve Plaintiff of her obligation to plead facts, rather than conclusions, showing both participation in a venture and constructive knowledge that the venture violated the TVPRA as to her. Courts applying the standard require facts showing that the defendant "'should have known' of sex trafficking, not merely that it 'might have been able to guess' about sex trafficking." *Doe (L.M.)*, 717 F.Supp.3d at 470 (citing *S.J. v. Choice Hotels Int'l, Inc.*, 473 F.Supp.3d 147, 153-54 (E.D.N.Y. 2020)). And "it is not enough for a complaint to establish that a defendant hotel operator should have known of prostitution or general commercial sex activity taking place at its property." *Interstate Mgmt.*, 746 F.Supp.3d at 1007.

***Participation in a venture.*** Plaintiff identifies two purported ventures. The first is "the commercial venture known as the Plaza Inn," comprised of the Plaza, Ketter, and Wiley (Doc. No. 218, ¶ 276). Even assuming the Plaza's ownership could constitute a "venture," § 1595(a) still requires facts showing that Defendant Ketter participated in a venture "which that person knew or should have known has engaged in an act in violation of" the TVPRA. 18 U.S.C. § 1595(a). Whatever Plaintiff alleges regarding Defendant Wiley's own conduct, the SAC does not allege that Defendant Ketter recruited, enticed, harbored, provided, patronized, or otherwise engaged in any conduct toward Plaintiff, and it does not allege that he knew of or approved any of Defendant Wiley's alleged dealings with her. (*See* Doc. No. 218, ¶ 53). As discussed throughout this brief, Plaintiff's Ketter-specific allegations do not satisfy § 1595(a)'s knowledge requirement.

The second purported venture is between the Plaza Defendants and Domino, "in the form of room rentals to Domino." (Doc. No. 218, ¶ 277). But, again, the SAC contains no allegation that Defendant Ketter rented a room to Domino, met Domino, transacted with Domino, or had any relationship with him whatsoever—only the speculative assertion that Ketter may have "encountered Domino during his visits to the Plaza." (Doc. No. 218, ¶ 53). And even a hotel's continued rental of rooms to a known trafficker after observing warning signs does not establish the requisite knowledge. *See Doe (L.M.)*, 717 F.Supp.3d at 466, 470-73 (dismissing TVPRA claims although the hotel allegedly "continued to rent rooms to L.M.'s trafficker after observing these 'apparent warning signs'"). Unlike the hotel owners in Ricchio, who had prior "commercial dealings" with the trafficker and were alleged to have discussed "getting things going again" with him, *Ricchio*, 853 F.3d at 555, Defendant Ketter is not alleged to have had any dealings with Domino at all.

***Knowledge.*** The SAC's allegations also fail to establish that Defendant Ketter "should have known" that any venture had trafficked Plaintiff. For the reasons set forth above, Plaintiff's sole Ketter-specific allegation is conclusory, and the history of crime and nuisance enforcement at the Plaza property establishes, at most, generalized knowledge of criminal activity on the property. That is precisely what courts have held insufficient, even under § 1595(a)'s constructive-knowledge standard. *See Interstate Mgmt.*, 746 F.Supp.3d at 1010 (complaint "sufficiently pleads that Defendant was on notice of commercial sex activity taking place at the Residence Inn, but it lacks sufficient facts that Defendant was on notice that sex trafficking in violation of the TVPRA was taking place"); *Doe (L.M.)*, 717 F.Supp.3d at 472-73 (allegations "perhaps create a plausible inference of constructive

knowledge of prostitution, but certainly not of sex trafficking by force or fraud"); *J.L.*, 521 F.Supp.3d at 1064; *see supra*, Argument § I(C)(2).

Accordingly, Plaintiff's beneficiary claim against Defendant Ketter under § 1595(a) should be dismissed.

**E. The SAC Fails to State a Claim Under Oklahoma's Human Trafficking Statutes**

Oklahoma provides a civil claim for relief for human trafficking victims, but only against a defendant who has himself violated the statute. In relevant part, 21 O.S. § 748.2(B) provides that "[a]ny person aggrieved by a violation of subsection B of Section 748 of this title may bring a civil action against the person or persons who committed the violation[.]" Subsection B, in turn, provides: "It shall be unlawful to knowingly engage in human trafficking." 21 O.S. § 748(B). Under 21 O.S. § 748(A)(4), "human trafficking" is defined as "modern-day slavery that includes, but is not limited to, extreme exploitation and the denial of freedom or liberty of an individual for purposes of deriving benefit from that individual's commercial sex act or labor."

Count II asserts two theories. First, Plaintiff alleges that "Defendants" committed human trafficking "by variously recruiting, enticing, providing, obtaining, and in all cases harboring Plaintiff for purposes of engaging Plaintiff in a commercial sex act." (Doc. No. 218, ¶ 284). As relevant here, Oklahoma defines such conduct as "recruiting, enticing, harboring, maintaining, transporting, providing or obtaining, by any means, another person through deception, force, fraud, threat or coercion for purposes of engaging the person in a commercial sex act." 21 O.S. § 748(A)(6)(a). As thoroughly relayed above, the SAC does not allege that Defendant Ketter recruited, enticed, harbored, provided, or obtained

Plaintiff, much less that he did so through deception, force, fraud, threat, or coercion, or that he engaged in the "extreme exploitation" of Plaintiff in any way. *See supra*, Argument § I(B).

Second, Plaintiff alleges that "Defendants" committed human trafficking "by benefitting (in the form of room rentals, fees for towels, condom purchases etc...) from participating in ventures that engaged in acts of trafficking for commercial sex." (Doc. No. 218, ¶ 285). Oklahoma's definition of "human trafficking for commercial sex" does include "benefiting, financially or by receiving anything of value, from participating in a venture that has engaged in an act of trafficking for commercial sex." 21 O.S. § 748(A)(6)(c). However, the similarity to the TVPRA ends there. Under 18 U.S.C. § 1595(a), a defendant who benefits from a venture may be liable if he "knew or should have known" that the venture engaged in trafficking. Oklahoma's statute contains no constructive-knowledge standard. Its civil remedy is limited to violations of § 748(B), which makes it unlawful only "to knowingly engage in human trafficking." 21 O.S. §§ 748(B), 748.2(B). Plaintiff therefore cannot proceed under Oklahoma law on the theory that Defendant Ketter should have known of trafficking at the Plaza.

Accordingly, liability under either of Count II's theories requires **actual knowledge** per § 748(B). As thoroughly relayed above, the SAC does not contain any factual allegation which supports a plausible claim that Defendant Ketter had actual knowledge of any trafficking occurring at the Plaza. *See supra*. An allegation, made "[o]n information and belief," that Defendant Ketter was aware of certain facts "either because" of one thing "or because" of another (Doc. No. 218, ¶ 53) does not plausibly allege actual knowledge of

anything. Independent of Plaintiff’s statute of limitations deficiencies discussed below, her claims against Defendant Ketter under Oklahoma’s human trafficking statutes fail as a matter of law and should be dismissed.

## II. PLAINTIFF’S STATE LAW CLAIMS HAVE EXPIRED

Oklahoma’s human trafficking statutes provide a civil remedy for the recovery of damages by a private citizen based upon certain criminal conduct. 21 O.S. § 748 et seq. In Oklahoma, an action upon a “liability created by statute other than a forfeiture or penalty” must be brought within three (3) years of the underlying event. 12 O.S. § 95(A)(2). The statute of limitations for claims brought pursuant to 21 O.S. § 748 does not begin to run until the latest of three distinct events: (1) “the victim’s emancipation from the defendant,” (2) “the victim’s twenty-first birthday”; or, (3) “the plaintiff discovers or reasonably should have discovered that he or she was a victim of human trafficking and that the defendant caused, was responsible for or profited from the human trafficking.” 21 O.S. § 748.2(B).

Based upon the facts alleged in the Second Amended Complaint, a reasonable inference may be drawn that Plaintiff’s claims against Defendant Ketter expired before her original Petition was filed on March 19, 2025. Her claims are untimely unless one of the three statutory triggers occurred on or after March 19, 2022.

Plaintiff alleges that, before meeting Domino, she escaped an abusive relationship “as a teenager,” experienced homelessness, was “briefly being incarcerated,” and had rebuilt her life—finding “a fiancé, a job, a home for her children, and her sobriety"—all prior to her fiancé's death in 2020. (Doc. No. 218, ¶¶ 14-15). The year is now 2026. These facts make clear that Plaintiff was well into adulthood by 2020. It is reasonable to infer that

Plaintiff's twenty-fourth (24th) birthday passed prior to the filing of her Petition, eliminating any possibility that the commencement of the limitations period was delayed by her twenty-first birthday.

Further, the SAC establishes that Plaintiff knew or should have known that she was a victim of human trafficking by early 2021, when she met Domino at the Plaza and he began using "threats, physical violence, and intimidation" to force her to engage in commercial sex acts. (Doc. No. 218, ¶¶ 16-18, 32). Should this event mark the commencement of the limitations period under 21 O.S. § 748.2(B), then, even under the most generous reading of the facts, Plaintiff's claims would have expired well before this action was filed.

Finally, the SAC alleges that Domino trafficked Plaintiff "from early 2021 to the beginning of 2022." (Doc. No. 218, ¶ 26). With respect to Defendant Ketter, the SAC still does not allege when any alleged trafficking violation involving Ketter occurred. Plaintiff alleges that she met Domino at the Plaza "in 2021" (Doc. No. 218, ¶ 32) and refers to "each of her stays at the Plaza" without dating any of them. (Doc. No. 218, ¶¶ 35-36). Although Plaintiff alleges that Domino himself stayed at the Plaza "for several months during 2021 and 2022" (Doc. No. 218, ¶ 40), she does not allege that she stayed there, or that Defendant Ketter had any involvement with her, on or after March 19, 2022. To the contrary, the SAC's 2022 allegations place Plaintiff at other hotels: the Motel 6 in "early 2022" (Doc. No. 218, ¶ 138), the Extended Stay in the spring of 2022 (Doc. No. 218, ¶¶ 134, 137), and the Super 8 OKC Airport in August 2022, where she alleges she was trafficked by different individuals altogether. (Doc. No. 218, ¶¶ 188, 193). Moreover, there is no allegation that

Defendant Ketter was aware of any trafficking conduct occurring in 2022. The date of Plaintiff's last check-out from the Plaza therefore marks the latest plausible emancipation with respect to Defendant Ketter, and nothing in the SAC places that date within three years of the Petition's filing.

Plaintiff's assertion that her claim "is timely because it was filed within three years of accrual" (Doc. No. 218, ¶ 287) adds nothing and does not change the analysis; it is a legal conclusion not entitled to the presumption of truth. Plaintiff also should not be permitted to plead shifting, amorphous timelines and then use that ambiguity as both a sword to avoid limitations and a shield to avoid dismissal. On the facts actually alleged, the statute of limitations under 21 O.S. § 748.2(B) expired before Plaintiff filed her Petition on March 19, 2025, and her state law claims against Defendant Ketter should be dismissed.

## CONCLUSION

Plaintiff has now had three opportunities to plead her claims against Defendant Ketter. Despite the Court's direction to "specifically allege what each Defendant knew and did" (Doc. No. 212, p. 6), the Second Amended Complaint repeats, verbatim, the same information-and-belief allegation regarding Defendant Ketter contained in the dismissed First Amended Complaint, supplemented only by allegations of generalized crime at the Plaza property that say nothing about what Ketter knew regarding Plaintiff. The SAC fails to state a claim upon which relief may be granted, and Plaintiff's state law claims are untimely. Accordingly, all claims against Defendant Ketter should be dismissed as a matter of law with prejudice.

Respectfully Submitted,

s/ W. Riley Nester

Jessica L. Dark, OBA #31236
W. Riley Nester, OBA #36222
PIERCE COUCH HENDRICKSON
BAYSINGER & GREEN, L.L.P.
1109 N. Francis Ave.
Oklahoma City, OK 73106
PH: (405) 235-1611
FX: (405) 235-2904
jdark@piercecouch.com
rnester@piercecouch.com
***Attorneys for Defendants***
***Plaza Hotels, LLC, Steve Ketter***
***and Michael Wiley***

**CERTIFICATE OF SERVICE**

I certify that on this 25th day of November, 2026, I electronically transmitted the foregoing document to the Clerk of Court using the ECF System for filing and a transmittal of a Notice of Electronic Filing to all ECF registrants who have entered an appearance in this case.

s/ W. Riley Nester
W. Riley Nester