**IN THE UNITED STATES DISTRICT COURT FOR THE`**
**WESTERN DISTRICT OF OKLAHOMA**

| | | |
|---|---|---|
| NANCY R., pseudonymously,<br><br>Plaintiff,<br><br>v.<br><br>PLAZA HOTELS, LLC; STEVE KETTER;<br>MICHAEL A. WILEY; OKC AIRPORT ES, LLC;<br>ESH STRATEGIES FRANCHISE, LLC;<br>NATHA, LLC; JALIYAN HOSPITALITY, INC;<br>SUPER 8 WORLDWIDE, INC;<br>RAJ KRUPA HOTEL, LLC;<br>DAYS INN WORLDWIDE, INC;<br>CHAND & SAAJ HOSPITALITY, INC;<br>RAMADA WORLDWIDE, INC;<br>YASH ENTERPRISES, LLC<br>HOWARD JOHNSON INTERNATIONAL, INC;<br>NOOR HOTEL, LLC; AMBICA, LLC;<br>OM, LLC; INDRA, LLC; AND<br>G6 HOSPITALITY FRANCHISING, LLC,<br><br>Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | <br><br><br><br>Case No. CIV-25-462-G |

**MOTION TO DISMISS OF DEFENDANT MICHAEL WILEY**
**AND BRIEF IN SUPPORT**

Jessica L. Dark, OBA #31236
W. Riley Nester, OBA #36222
PIERCE COUCH HENDRICKSON
BAYSINGER & GREEN, L.L.P.
1109 N. Francis Ave.
Oklahoma City, OK 73106
PH: (405) 235-1611
FX: (405) 235-2904
jdark@piercecouch.com
rnester@piercecouch.com
*Attorneys for Defendant Michael Wiley*

**November 25, 2026**

# TABLE OF CONTENTS


**TABLE OF AUTHORITIES** .......... ii

**INTRODUCTION** .......... 1

**STANDARD OF REVIEW** .......... 3

**ARGUMENTS AND AUTHORITIES** .......... 4

**I. PLAINTIFF FAILS TO STATE A CLAIM UPON WHICH RELIEF MAY BE GRANTED** .......... 4

**A. The SAC Still Fails to Provide Defendant Wiley Fair Notice of the Claims Against Him** .......... 4

**B. The SAC Fails to State a Claim Against Defendant Wiley Under 18 U.S.C. § 1591(a)(1)** .......... 5

**C. The SAC Still Fails to State a Claim Against Defendant Wiley Under 18 U.S.C. § 1591(a)(2)** .......... 11

**i. Plaintiff's Wiley-Specific Allegations do not Establish Knowing Participation in a Sex-Trafficking Venture** .......... 13

**ii. The SAC's Allegations of Generalized Crime and Nuisance Enforcement at the Plaza do not Establish the Requisite Knowledge** .......... 15

**D. The SAC Fails to State a Beneficiary Claim Against Defendant Wiley Under 18 U.S.C. § 1595(a)** .......... 18

**E. The SAC Fails to State a Claim Under Oklahoma's Human Trafficking Statutes** .......... 20

**II. PLAINTIFF'S STATE LAW CLAIMS HAVE EXPIRED** .......... 23

**CONCLUSION** .......... 26

**CERTIFICATE OF SERVICE** .......... 27

# TABLE OF AUTHORITIES

Cases Page(s)

*A.B. v. Hilton Worldwide Holdings, Inc.*,
484 F.Supp.3d 921 (D. Or. 2020) .......... 5

*A.B. v. Interstate Mgmt. Co.*,
746 F.Supp.3d 997 (D. Or. 2024) .......... 7, 8, 9, 10, 11, 16, 18, 19

*Ashcroft v. Iqbal*,
556 U.S. 662, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009) .......... 3

*Bell Atlantic Corp. v. Twombly*,
550 U.S. 544 (2007) .......... 3, 4, 6

*Bistline v. Parker*,
918 F.3d 849 (10th Cir. 2019) .......... 12, 13

*Bucco v. W. Iowa Tech Cmty. Coll.*,
555 F.Supp.3d 628 (N.D. Iowa 2021) .......... 5

*Cory v. Allstate Ins.*,
583 F.3d 1240 (10th Cir. 2009) .......... 3

*Doe (L.M.) v. 42 Hotel Raleigh, LLC*,
717 F.Supp.3d 464 (E.D.N.C. 2024) .......... 8, 9, 10, 11, 14, 17, 18, 19

*Escobar v. Mora*,
496 F. App'x. 806 (10th Cir. 2012) .......... 3

*Frey v. Town of Jackson, Wyoming*,
41 F.4th 1223 (10th Cir. 2022) .......... 7, 15, 17

*J.L. v. Best Western Int'l, Inc.*,
521 F.Supp.3d 1048 (D. Colo. 2021) .......... 16, 18, 19

*Pyatt v. Secure Live Media, LLC*,
2022 WL 22883099 (S.D. Fla. 2022) .......... 5

*Ricchio v. McLean*,
853 F.3d 553 (1st Cir. 2017) .......... 11, 12, 13, 14

*S.J. v. Choice Hotels Int'l, Inc.*,
473 F.Supp.3d 147 (E.D.N.Y. 2020) .......... 18

Statutes

18 U.S.C. § 1591 .......... 9
18 U.S.C. § 1591(a) .......... 7, 16, 18, 22
18 U.S.C. § 1591(a)(1) .......... 5, 6, 11, 15
18 U.S.C. § 1591(a)(2) .......... 11, 12, 15, 17
18 U.S.C. § 1595 .......... 1, 18
18 U.S.C. § 1595(a) .......... 11, 12, 18, 19, 20, 22

Rules

Fed. R. Civ. P. 8 .......... 1, 3, 4

Fed. R. Civ. P. 12(b)(6) ........................................................................................ 1

Other Authorities

*More Than "Johns," Less Than Traffickers: In Search of Just and Proportional Sanctions for Buyers of Sex with Trafficking Victims*,
90 N.Y.U. L. Rev. 626 (2015) ........................................................................ 21
OUJI-CR 4-113B ........................................................................................ 21
OUJI-CR 4-113C ........................................................................................ 21

Defendant Michael Wiley ("Defendant" or "Wiley"), hereby respectfully submits this Motion to Dismiss Plaintiff's Second Amended Complaint (Doc. No. 218) pursuant to Fed. R. Civ. P. 8 and 12(b)(6). In support hereof, Defendant submits the following brief in support:

**INTRODUCTION**

Plaintiff filed her Petition on March 19, 2025. (Doc. No. 1-2). The case was removed to this Court on April 23, 2025. (Doc. No. 1). Plaintiff filed her First Amended Complaint ("FAC") on October 17, 2025 (Doc. No. 115), and Defendant Wiley moved to dismiss. (Doc. No. 118). On September 30, 2026, the Court granted Defendant Wiley's motion, along with those of several other defendants, pursuant to Fed. R. Civ. P. 12(b)(6). (Doc. No. 212). The Court found that, "[a]mong other deficiencies, the FAC in many instances fails to distinguish between traffickers and the many Defendants, and to specifically allege what each Defendant knew and did, including relating to the trafficking of Plaintiff." (Doc. No. 212, p. 6). The Court granted Plaintiff leave to file a second amended complaint "to provide greater factual specificity." (Doc. No. 212, p. 6).

Plaintiff filed her Second Amended Complaint ("SAC") on October 28, 2026, again asserting claims under the Trafficking Victims Protection Reauthorization Act ("TVPRA"), 18 U.S.C. § 1595, and Oklahoma human trafficking statutes, 21 O.S. § 748 *et seq.* (Doc. No. 218). Included among the defendants are Plaza Hotels, LLC ("the Plaza") and its two owners, Michael Wiley and Steve Ketter.

Though considerably longer than its predecessor, the SAC does not do what the Court directed as to Defendant Wiley. The only allegation that Wiley knew Plaintiff was

being forced or coerced to engage in commercial sex acts is carried forward word-for-word from Plaintiff's prior pleadings: that "Wiley met Domino and knew that he was Nancy's pimp and was forcing her to engage in commercial sex acts by threatening her with physical abuse and drug withdrawal." (*Compare* Doc. No. 218, ¶ 52, *with* Doc. No. 115, ¶ 102, *and* Doc. No. 1-2, ¶ 102). The SAC still does not allege when exactly Plaintiff stayed at the Plaza, or when, where, or under what circumstances Defendant Wiley supposedly met Domino and learned of any coercion.

The SAC's new allegations regarding Defendant Wiley do not fix the deficiency. They include an unnamed security guard's characterization that Wiley "knew everything," assertions about what Wiley "could not have missed" on the Plaza's security cameras, and allegations regarding Wiley's own dealings with Plaintiff. At most, these establish that Wiley knew Plaintiff engaged in commercial sex. They say nothing about whether he knew, recklessly disregarded, or should have known that Domino was using force, threats, fraud, or coercion to cause her to do so.

What the SAC adds beyond that is a lengthy recitation of police calls, municipal nuisance notices, and other criminal activity at the Plaza property dating back to 2018. Those allegations describe, at most, generalized knowledge of crime at a hotel property. They do not plausibly allege that Defendant Wiley knew, recklessly disregarded, or should have known that Domino was using force, fraud, or coercion to cause *this* Plaintiff to engage in commercial sex acts.

Accordingly, the SAC still fails to state a plausible claim against Defendant Wiley under the TVPRA or Oklahoma's human trafficking statutes, and Plaintiff's state law

claims remain untimely. As discussed further herein, Defendant Wiley is entitled to dismissal as a matter of law.

## STANDARD OF REVIEW

The *Twombly/Iqbal* pleading standard is well-known by this Court. A complaint must present a facially plausible claim for relief. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). The quality of these factual allegations must create more than speculation about the plaintiff's chances of recovery. *Id.* The United States Supreme Court has further held that, while the pleading standard of Fed. R. Civ. P. 8 does not require detailed factual allegations, "it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009). If the complaint contains only boilerplate labels and conclusory allegations, dismissal is proper because "conclusory allegations without supporting factual averments are insufficient to state a claim upon which relief can be based." *Escobar v. Mora*, 496 F. App'x. 806, 816 (10th Cir. 2012) (citing *Cory v. Allstate Ins.*, 583 F.3d 1240, 1244 (10th Cir. 2009)).

The Court applied these principles in dismissing the FAC, explaining that "[b]are legal conclusions in a complaint are not entitled to the assumption of truth; 'they must be supported by factual allegations' to state a claim for relief." (Doc. No. 212, p. 6 (quoting *Iqbal*, 556 U.S. at 679)).

## ARGUMENTS AND AUTHORITIES

### I. PLAINTIFF FAILS TO STATE A CLAIM UPON WHICH RELIEF MAY BE GRANTED

#### A. The SAC Still Fails to Provide Defendant Wiley Fair Notice of the Claims Against Him

Rule 8 requires that a complaint contain enough factual matter to give each defendant fair notice of the claims against him and the grounds upon which they rest. *Twombly*, 550 U.S. at 555. The Court dismissed the FAC in part because it failed "to specifically allege what each Defendant knew and did, including relating to the trafficking of Plaintiff." (Doc. No. 212, p. 6).

Although the SAC adds allegations regarding Defendant Wiley, none of those concerning his alleged dealings with Plaintiff or Domino is tied to any identifiable point in time. The SAC does not identify when exactly Plaintiff stayed at the Plaza, how long she was there, or how many times; it alleges only that she met Domino there "in 2021" and refers to "each of her stays" without dating any of them. (Doc. No. 218, ¶¶ 32, 35-36). The SAC also does not identify when the single alleged sexual encounter between Plaintiff and Defendant Wiley occurred (Doc. No. 218, ¶ 48), or when Plaintiff "[s]ometimes" told Defendant Wiley she had a client coming (Doc. No. 218, ¶ 51). It likewise does not say when, where, or under what circumstances Defendant Wiley supposedly "met Domino" and learned that Domino was forcing Plaintiff to engage in commercial sex acts. (Doc. No. 218, ¶ 52). That last allegation is the only one purporting to attribute knowledge of coercion to Defendant Wiley, and it has appeared word-for-word in each of Plaintiff's three

pleadings. (*Compare* Doc. No. 218, ¶ 52, *with* Doc. No. 115, ¶ 102, *and* Doc. No. 1-2, ¶ 102).

Without these basic facts, Defendant Wiley is left to speculate as to what conduct he must defend against and when it allegedly occurred. *See Bucco v. W. Iowa Tech Cmty. Coll.*, 555 F.Supp.3d 628, 642 (N.D. Iowa 2021) ("Without details as to who did what," the Court "cannot determine whether the allegations are sufficient to state a TVPRA claim against each defendant."); *Pyatt v. Secure Live Media, LLC*, 2022 WL 22883099, at *5 (S.D. Fla. 2022) (Plaintiff's "allegations are impermissibly vague and conclusory[,]" including the "general and vague statements that (1) at unspecified dates; (2) unidentified individuals 'coerced' him into having sex with unnamed women[.]"); *A.B. v. Hilton Worldwide Holdings, Inc.*, 484 F.Supp.3d 921, 940-41 (D. Or. 2020) (Victim's "vague allegations" that she stayed at hotels repeatedly, and hotel chain operators had some level of notice that victim engaged in commercial sex acts at hotel properties, failed to state a claim under the TVPRA). Because the SAC does not cure the deficiency the Court identified, Plaintiff's claims against Defendant Wiley should be dismissed.

### B. The SAC Fails to State a Claim Against Defendant Wiley Under 18 U.S.C. § 1591(a)(1)

Plaintiff brings a claim against Defendant Wiley for perpetrator liability under 18 U.S.C. § 1591(a)(1). (Doc. No. 218, ¶¶ 272-273). A perpetrator for the purposes of § 1591(a)(1) is defined as:

> (a) Whoever knowingly—
>
> (1) in or affecting interstate or foreign commerce, or within the special maritime and territorial jurisdiction of the United States, recruits, entices,

> harbors, transports, provides, obtains, advertises, maintains, patronizes, or solicits by any means a person;
>
> knowing, or, … in reckless disregard of the fact, that means of force, threats of force, fraud, coercion …, or any combination of such means will be used to cause the person to engage in a commercial sex act, … shall be punished as provided in subsection (b).

Thus, in order to state a claim against Defendant Wiley under § 1591(a)(1), Plaintiff must plausibly allege that Wiley knowingly recruited, enticed, harbored, transported, provided, obtained, advertised, maintained, patronized, or solicited her—while knowing or recklessly disregarding that force, threats of force, fraud, or coercion were being used to cause her to engage in commercial sex acts. *Id.*

As an initial matter, Defendant Wiley denies having "patronized" Plaintiff or committing any of the other trafficking verbs within § 1591(a)(1). However, solely for the purposes of this Motion to Dismiss, Defendant Wiley does not challenge whether Plaintiff adequately pled patronization. Plaintiff's remaining assertion that "each Defendant 'harbor[ed],' [and] 'provide[d]'" her (Doc. No. 218, ¶ 273) is "a formulaic recitation of the elements," *Twombly*, 550 U.S. at 555, and in any event fails for the same lack of the requisite mens rea addressed below.

The SAC's only allegation that Defendant Wiley knew Plaintiff was being *forced and/or coerced* to engage in commercial sex acts is that "Wiley met Domino and knew that he was Nancy's pimp and was forcing her to engage in commercial sex acts by threatening her with physical abuse and drug withdrawal." (Doc. No. 218, ¶ 52). That sentence has appeared word-for-word in each of Plaintiff's three pleadings, and it is a bare conclusion that "states an inference without underlying facts," rendering it "not entitled to the

assumption of truth." *Frey v. Town of Jackson, Wyoming*, 41 F.4th 1223, 1233 (10th Cir. 2022). Despite the Court's direction to "specifically allege what each Defendant knew and did" (Doc. No. 212, p. 6), still, none of the SAC's 287 paragraphs answer: When did Defendant Wiley and Domino purportedly meet? How did they meet? Where? Was Plaintiff present? How does she know that Domino explained to Wiley that he was her pimp and he forced her to engage in commercial sex acts with threats of physical abuse and drug withdrawal? Why would Domino tell that to Wiley?

Plaintiff attempts to shore up ¶ 52 with statements attributed to an unnamed security guard. According to the SAC, the guard told Plaintiff's counsel that Defendant Wiley "knew everything" that happened at the Plaza because he monitored the security cameras. Asked whether Wiley knew that Plaintiff had a pimp, the guard allegedly said that "he knew everything," and that Wiley "would have known Nancy had a pimp on the property." (Doc. No. 218, ¶¶ 46, 52). These are not factual allegations of anything Defendant Wiley saw, heard, or was told. Rather, they are a third party's generalized characterization ("knew everything") and an opinion about what Wiley "would have known." Even crediting them, the guard speaks only to whether Defendant Wiley would have known that Plaintiff had a pimp. Section 1591(a) requires more: knowledge or reckless disregard "that means of force, threats of force, fraud, coercion …, or any combination of such means will be used to cause the person to engage in a commercial sex act." 18 U.S.C. § 1591(a). The guard is not alleged to have said anything about force, threats, fraud, or coercion. Courts have rejected precisely this inference. *See A.B. v. Interstate Mgmt. Co.*, 746 F.Supp.3d 997, 1009-10 n.6 (D. Or. 2024) (rejecting argument that knowledge the plaintiff had a "pimp"

established knowledge of force, fraud, or coercion, because that view "collapses the distinction between general prostitution, in which a 'pimp' may be involved, and commercial sex trafficking in violation of the TVPRA"); *Doe (L.M.) v. 42 Hotel Raleigh, LLC*, 717 F.Supp.3d 464, 470-73 (E.D.N.C. 2024) (allegations that hotel staff knew the trafficker and addressed him by his "pimp name," among others, "perhaps create[d] a plausible inference of constructive knowledge of prostitution, but certainly not of sex trafficking by force or fraud.").

Further, the SAC alleges that Defendant Wiley lived at the Plaza, monitored its security cameras, and "could not have missed" Domino's criminal behavior, Plaintiff's visits to Domino in the courtyard to hand over her earnings, the foot traffic to her room, or the times she met johns in the lobby. (Doc. No. 218, ¶¶ 44-47). Like Plaintiff's allegation that the Plaza's front desk staff "would thus have witnessed" such traffic (Doc. No. 218, ¶ 38), this is an inference about what Wiley might have seen, rather than an allegation that he saw anything. *See Interstate Mgmt.*, 746 F.Supp.3d at 1010 (declining to infer that hotel staff "would have observed" outward signs of trafficking because "to find so would require this Court to speculate, not reasonably infer."). More fundamentally, everything Defendant Wiley allegedly "could not have missed"—"Domino's criminal behavior … Nancy's repeated visits to Domino in the courtyard to hand over her earnings … heavy foot traffic to Nancy's room … the many times she, dressed for sex work, met johns in the lobby" (Doc. No. 218, ¶ 47)—is, at most, an indicator of commercial sex and of a third party's collection of its proceeds. That a third party collects the proceeds of commercial sex is equally consistent with "general prostitution, in which a 'pimp' may be involved."

*Interstate Mgmt.*, 746 F.Supp.3d at 1009-10 n.6. *None* of it is an indicator of force, threats, fraud, or coercion. *See Doe (L.M.)*, 717 F.Supp.3d at 472 ("[K]nowledge of prostitution is not necessarily knowledge of sex trafficking by force or fraud as defined in 18 U.S.C. § 1591."). The Plaza-specific allegations describe no act of force against Plaintiff at the Plaza, no visible injury observed there, and no threat witnessed by anyone. (*See* Doc. No. 218, ¶¶ 32-55). The only specific allegations of physical abuse of Plaintiff in the SAC concern other hotels (Doc. No. 218, ¶¶ 99-100, 123 (Extended Stay), 243-247 (Howard Johnson)), and Plaintiff's generic assertion that "hotel employees chose to ignore the bruises Domino left on Nancy" is not tied to the Plaza, much less to Defendant Wiley (Doc. No. 218, ¶ 25). The absence of such allegations is telling. *See Doe (L.M.)*, 717 F.Supp.3d at 472 (dismissing where "[c]onspicuously absent" from the complaint were "any allegations that could plausibly produce an inference of trafficking by force or fraud such as, for example, signs of physical abuse, actual assaults by a trafficker on the victim," among others).

Plaintiff's allegations regarding Defendant Wiley's own dealings with her are of the same character. She alleges that on one occasion she had sex with Defendant Wiley in exchange for the promise of a room. She also alleges that other women traded sex for rooms with him, and that he sometimes allowed her to pay for a room after meeting with a client. (Doc. No. 218, ¶¶ 48-51). At most, these allegations suggest that Defendant Wiley knew Plaintiff engaged in commercial sex. They say nothing about force, threats, fraud, or coercion. Indeed, traffickers do not typically advertise their illegal activities, especially to individuals who control or manage hotel premises. Notably, the SAC omits two

acknowledgments from Plaintiff's prior pleading: that "many" victims of sex trafficking "are not obviously victims" (Doc. No. 115, ¶ 23), and that hotels, by their nature, offer anonymous and temporary accommodations that make illegal activity difficult to detect (Doc. No. 115, ¶¶ 51-52). Those realities did not change when Plaintiff removed them from her pleading.

Finally, Plaintiff alleges that in March 2019 a man arrested for breaking into a Plaza room told officers that "Mike" was "aiding in prostitution at the hotel." (Doc. No. 218, ¶ 65). That statement was made roughly two years before Plaintiff alleges she met Domino (Doc. No. 218, ¶ 32), it came from an arrestee with no alleged connection to Plaintiff or Domino, and it concerns prostitution, rather than the use of force, threats, fraud, or coercion against anyone. *Cf. Interstate Mgmt.*, 746 F.Supp.3d at 1010 (even the arrest of the plaintiff and her trafficker at the hotel for promoting prostitution put the hotel on notice only "that general prostitution or commercial sex activity involving these individuals was taking place at the hotel, but not that sex trafficking in violation of the TVPRA was taking place"). It does not plausibly establish what Defendant Wiley knew regarding Plaintiff in 2021. Plaintiff's remaining allegations of generalized crime and nuisance enforcement at the Plaza are addressed in Argument § I(C)(2), *infra*.

These allegations also do not establish reckless disregard; disregarding indications that a guest engages in commercial sex is not disregarding indications that she is being forced or coerced to do so, and the TVPRA does not impose a duty to investigate whether a guest engaged in commercial sex is being coerced. *See Doe (L.M.)*, 717 F.Supp.3d at 473 (rejecting argument that the hotel "should have exercised reasonable diligence to

proactively investigate and prevent possible sex trafficking" because "the TVPRA imposes no such duty") (collecting cases). The contrast with *Ricchio v. McLean*, 853 F.3d 553 (1st Cir. 2017), is instructive. There, the hotel owners saw the plaintiff "visibly haggard and bruised," ignored her plea for help, and watched as her trafficker dragged her across the parking lot and kicked her during an attempted escape. *Id.* at 555. The SAC alleges nothing comparable at the Plaza—no visible injury, no plea for help, and no act of force or threat witnessed by Defendant Wiley or anyone else.

Accordingly, even if Plaintiff has plausibly alleged that Defendant Wiley knew she engaged in commercial sex, she has not plausibly alleged that he knew, or recklessly disregarded, that force, threats of force, fraud, or coercion were being used to cause her to do so. Courts have held that allegations of this kind fail to establish even the constructive knowledge required for beneficiary liability under § 1595(a); *a fortiori*, they cannot establish the knowledge or reckless disregard required for perpetrator liability under § 1591(a)(1). *See Doe (L.M.)*, 717 F.Supp.3d at 473 (because plaintiff failed to plead constructive knowledge, "her perpetrator claim, which requires an even greater degree of knowledge, fails as well"); *Interstate Mgmt.*, 746 F.Supp.3d at 1009-10. Her allegations are therefore insufficient to support liability under § 1591(a)(1), and this claim against Defendant Wiley should be dismissed.

### C. The SAC Still Fails to State a Claim Against Defendant Wiley Under 18 U.S.C. § 1591(a)(2)

Plaintiff also brings a claim against Defendant Wiley for venture liability under 18 U.S.C. § 1591(a)(2). (Doc. No. 218, ¶ 274). Those subject to venture liability under § 1591(a)(2) are:

> (a) Whoever knowingly—
>
> (2) benefits, financially or by receiving anything of value, from participation in a venture which has engaged in an act described in violation of paragraph (1),
>
> knowing, or, … in reckless disregard of the fact, that means of force, threats of force, fraud, coercion …, or any combination of such means will be used to cause the person to engage in a commercial sex act, … shall be punished as provided in subsection (b).

Thus, in order to state a claim against Defendant Wiley under § 1591(a)(2), Plaintiff must plausibly allege that Wiley knowingly benefitted from his participation in a venture that engaged in sex trafficking, and that he knew or recklessly disregarded that force, threats, fraud, or coercion were being used to cause her to engage in commercial sex acts. *Id.*

As an initial matter, Defendant Wiley denies having benefitted in any way from the events alleged in Plaintiff's Second Amended Complaint. However, solely for the purpose of this Motion to Dismiss, Defendant Wiley does not challenge whether Plaintiff adequately pled the "benefit" element under § 1591(a)(2) or § 1595(a). Instead, Defendant moves directly to addressing the SAC's insufficient allegations regarding participation in a venture and Defendant Wiley's knowledge.

To plausibly establish venture liability under the TVPRA, a plaintiff must allege facts demonstrating active participation in the venture or at least an ongoing, knowing relationship between the defendant and the trafficker. The Tenth Circuit has adopted reasoning from the First Circuit to clarify that a "venture" under the TVPRA requires facts showing a common undertaking or collaborative involvement. *See Bistline v. Parker*, 918 F.3d 849, 874-75 (10th Cir. 2019) (applying *Ricchio*, 853 F.3d 553).

In *Ricchio*, the hotel owners had previously collaborated in "commercial dealings" with the plaintiff's trafficker. *Ricchio*, 853 F.3d at 555. While the plaintiff was held at their motel, after her abuse had become apparent to them, they were alleged to have exchanged high-fives with the trafficker in the motel's parking lot while speaking about "getting things going again." *Id.* In *Bistline*, the defendant attorney received graphic evidence of the trafficker's ceremonial rape of minors and forced labor, yet continued his dealings with the trafficker, including by setting up a trust scheme designed to facilitate the trafficker's crimes. *Bistline*, 918 F.3d at 874-75. In both cases, the defendant had knowledge "beyond the generic" wrongdoing alleged and continued to deal with the trafficker anyway. *Id.* at 875.

**i. Plaintiff's Wiley-Specific Allegations do not Establish Knowing Participation in a Sex-Trafficking Venture**

Plaintiff's attempt to connect Defendant Wiley to a venture with Domino rests on three allegations: that Domino resided at the Plaza for several months during 2021 and 2022 (Doc. No. 218, ¶ 40); that "[t]he Plaza's management, particularly co-owner Michael Wiley, approved of" an arrangement in which "the highest-ranking criminal present at any given time controlled the courtyard and conducted his business there" (Doc. No. 218, ¶ 42); and the assertion that "the employees and owner of the Plaza" formed "a business relationship with Nancy's trafficker." (Doc. No. 218, ¶ 55).

None plausibly alleges a common undertaking with Domino undertaken with knowledge that he was using force, threats, fraud, or coercion to cause Plaintiff to engage in commercial sex.

*First*, Domino's residence at the Plaza alleges, at most, that he rented rooms there. The SAC does not allege who rented rooms to Domino, on what terms, or that Defendant Wiley had any dealings with him in connection with those rentals. Even allegations that a hotel continued renting rooms to a known trafficker after observing warning signs do not establish the requisite knowledge. *See Doe (L.M.)*, 717 F.Supp.3d at 466, 470-73 (dismissing TVPRA claims although the hotel allegedly "continued to rent rooms to L.M.'s trafficker after observing these 'apparent warning signs'").

*Second*, the courtyard arrangement alleged in ¶ 42 was not an arrangement with Domino. As pled, it extended to whichever criminal was "highest-ranking," whatever that may mean, and "present at any given time." (Doc. No. 218, ¶ 42). The only benefit the SAC attributes to the arrangement is that "the criminal holding court helped keep the other criminals on the property in line." (Doc. No. 218, ¶ 42). The SAC alleges that Domino conducted drug deals in the courtyard and that Plaintiff handed him her earnings there (Doc. No. 218, ¶ 43). As explained above, those allegations indicate commercial sex, not force, threats, fraud, or coercion. *See supra*, Argument § I(B). Nothing in ¶ 42 alleges that Defendant Wiley knew of, approved, or benefitted from any coercion of Plaintiff. A generalized tolerance of whichever criminal controlled the courtyard, even accepted as true, is a far cry from the *Ricchio* owners' plans with the trafficker himself to get "things going again" while his victim's abuse was more than apparent to them, including ignoring the plaintiff's explicit plea for help and their employees' observation of the plaintiff being dragged across the parking lot and kicked by her trafficker during an attempted escape. *Ricchio*, 853 F.3d at 555.

*Third*, the assertion that "the employees and owner of the Plaza" formed "a business relationship with Nancy's trafficker" (Doc. No. 218, ¶ 55) does not identify which owner, the nature of the relationship, or when. It "states an inference without underlying facts" and is therefore not entitled to the assumption of truth. *Frey*, 41 F.4th at 1233.

Finally, whatever the nature of the alleged venture, § 1591(a)(2) requires the same knowledge or reckless disregard of force, threats, fraud, or coercion as § 1591(a)(1). For the reasons set forth in Argument § I(B), *supra*, Plaintiff's Wiley-specific allegations do not satisfy that requirement.

**ii. The SAC's Allegations of Generalized Crime and Nuisance Enforcement at the Plaza do not Establish the Requisite Knowledge**

Plaintiff devotes much of the SAC to the history of criminal activity at the Plaza property. She alleges that the Oklahoma City Police Department logged thousands of calls for service at the Plaza between 2019 and 2022 (Doc. No. 218, ¶¶ 56-71); that, in October 2018, juvenile offenders were arrested for trafficking juvenile victims in a Plaza room (Doc. No. 218, ¶ 72); that, later that month, an OCPD nuisance coordinator met with Defendants Wiley and Ketter and the City issued a Notice to Abate Public Nuisance (Doc. No. 218, ¶¶ 73-74); that the City sent additional nuisance notices between October 2018 and April 2023 and cited Wiley and Ketter under its nuisance abatement ordinance after violent incidents in 2019 (Doc. No. 218, ¶¶ 75-77); and that the City ultimately sued in 2023, resulting in a consent decree and the property's sale and demolition. (Doc. No. 218, ¶¶ 78-80). These allegations do not cure the deficiencies discussed above, for several reasons.

*First*, these allegations establish, at most, that Defendant Wiley was aware that the Plaza property experienced crime. However, knowledge that crime, or even commercial sex, occurs at a property is not knowledge, or reckless disregard, "that means of force, threats of force, fraud, coercion …, or any combination of such means will be used to cause *the person* to engage in a commercial sex act." 18 U.S.C. § 1591(a) (emphasis added). Plaintiff's own allegations recognize the distinction, acknowledging that some commercial sex workers operate as "renegades" outside the control of a pimp. (Doc. No. 218, ¶ 122). As explained above, knowledge of prostitution alone, or even a pimp's involvement in the same, does not itself establish knowledge of force, threats, or coercion. Courts applying the TVPRA have likewise held that such knowledge is insufficient, including where the crime occurred at the very hotel at issue. *See Interstate Mgmt.*, 746 F.Supp.3d at 1004-05, 1010 (police reports of sexual crimes at the hotel and online reviews describing criminal activity put the operator "on notice of commercial sex activity taking place at the Residence Inn," but not "that sex trafficking in violation of the TVPRA was taking place"); *J.L. v. Best Western Int'l, Inc.*, 521 F.Supp.3d 1048, 1064 (D. Colo. 2021) (allegations that the defendant was on notice of the prevalence of sex trafficking generally at its hotels were "not sufficient to show that [it] should have known about what happened to this plaintiff").

*Second*, the most specific of these allegations concern the October 2018 incident. That incident involved juvenile offenders and juvenile victims who have no alleged connection to Plaintiff or Domino. The nuisance coordinator's resulting warning to Defendant Wiley concerned "prostitutes … soliciting at the motel in plain sight" and those

juveniles. (Doc. No. 218, ¶¶ 72-73). All of this occurred more than two years before Plaintiff alleges she first met Domino at the Plaza in 2021. (Doc. No. 218, ¶ 32).

*Third*, much of this history post-dates Plaintiff's alleged trafficking and therefore cannot have informed Defendant Wiley's knowledge at the relevant time. The City's October 2022 letter, its 2023 lawsuit, the October 2023 consent decree, and the 2024 sale and demolition of the property (Doc. No. 218, ¶¶ 77-80) all occurred after Plaintiff alleges her trafficking by Domino ended. (Doc. No. 218, ¶ 26). And Defendant Ketter's public statement in response to that lawsuit, that the owners were "trying to get the bad element out of there because it's hurt our rooms" (Doc. No. 218, ¶ 78), is the opposite of an allegation that the owners sought to participate in, or profit from, criminal activity at the property.

*Fourth*, Plaintiff's assertion that "[t]he most logical explanation" for the crime at the Plaza "is that Plaza, Ketter, and Wiley chose to keep operating it that way" (Doc. No. 218, ¶ 64) is not a factual allegation at all. It is speculation, pled collectively, that "states an inference without underlying facts." *Frey*, 41 F.4th at 1233. Continuing to operate a hotel that experiences crime, or failing to adopt security measures the City suggested, is not participation in a sex trafficking venture. *Cf. Doe (L.M.)*, 717 F.Supp.3d at 473 (rejecting contention that hotel "should have exercised reasonable diligence to proactively investigate and prevent possible sex trafficking" because "the TVPRA imposes no such duty").

Accordingly, these allegations do not satisfy the knowledge or reckless disregard standard required to state a claim under § 1591(a)(2), and this claim should therefore be dismissed.

### D. The SAC Fails to State a Beneficiary Claim Against Defendant Wiley Under 18 U.S.C. § 1595(a)

Plaintiff separately alleges that Defendant Wiley is liable as a beneficiary under 18 U.S.C. § 1595. (Doc. No. 218, ¶¶ 275-277). Section 1595(a) permits a civil action against "the perpetrator (or whoever knowingly benefits, or attempts or conspires to benefit, financially or by receiving anything of value from participation in a venture which that person knew or should have known has engaged in an act in violation of this chapter)." 18 U.S.C. § 1595(a). Thus, to state a beneficiary claim, Plaintiff must plausibly allege that Defendant Wiley (1) knowingly benefitted, (2) from participation in a venture, (3) which he knew or should have known engaged in an act in violation of the TVPRA as to Plaintiff. *See J.L.*, 521 F.Supp.3d at 1064.

Defendant Wiley acknowledges that § 1595(a)'s "should have known" language describes a constructive-knowledge standard distinct from the knowledge or reckless-disregard standard of § 1591(a). That standard, however, does not relieve Plaintiff of her obligation to plead facts, rather than conclusions, showing both participation in a venture and constructive knowledge that the venture violated the TVPRA as to her. Courts applying the standard require facts showing that the defendant "'should have known' of sex trafficking, not merely that it 'might have been able to guess' about sex trafficking." *Doe (L.M.)*, 717 F.Supp.3d at 470 (citing *S.J. v. Choice Hotels Int'l, Inc.*, 473 F.Supp.3d 147, 153-54 (E.D.N.Y. 2020)). And "it is not enough for a complaint to establish that a defendant hotel operator should have known of prostitution or general commercial sex activity taking place at its property." *Interstate Mgmt.*, 746 F.Supp.3d at 1007.

***Participation in a venture.*** Plaintiff identifies two purported ventures. The first is "the commercial venture known as the Plaza Inn," comprised of the Plaza, Ketter, and Wiley. (Doc. No. 218, ¶ 276). Even assuming the Plaza's ownership could constitute a "venture," § 1595(a) still requires facts showing that Defendant Wiley participated in a venture "which that person knew or should have known has engaged in an act in violation of" the TVPRA. 18 U.S.C. § 1595(a). That requirement returns the analysis to knowledge, which is addressed below. The second purported venture is with Domino, "in the form of room rentals to Domino." (Doc. No. 218, ¶ 277). As explained above, the SAC does not allege that Defendant Wiley rented rooms to Domino or had any dealings with him in connection with those rentals. And even renting rooms to a trafficker does not establish the requisite knowledge. *See supra*, Argument § I(C)(1); *Doe (L.M.)*, 717 F.Supp.3d at 466, 470-73.

***Knowledge.*** For the reasons set forth in Argument §§ I(B) and I(C), *supra*, the SAC's allegations establish, at most, that Defendant Wiley knew or should have known that Plaintiff engaged in commercial sex at the Plaza, and that the Plaza experienced crime. That is precisely what courts have held insufficient, even under § 1595(a)'s constructive-knowledge standard. *See Interstate Mgmt.*, 746 F.Supp.3d at 1010 (complaint "sufficiently pleads that Defendant was on notice of commercial sex activity taking place at the Residence Inn, but it lacks sufficient facts that Defendant was on notice that sex trafficking in violation of the TVPRA was taking place"); *Doe (L.M.)*, 717 F.Supp.3d at 472-73 (allegations "perhaps create a plausible inference of constructive knowledge of prostitution, but certainly not of sex trafficking by force or fraud"); *J.L.*, 521 F.Supp.3d at

1064 (general knowledge of sex trafficking "not sufficient to show that [the defendant] should have known about what happened to this plaintiff").

Accordingly, Plaintiff's beneficiary claim against Defendant Wiley under § 1595(a) should be dismissed.

**E. The SAC Fails to State a Claim Under Oklahoma's Human Trafficking Statutes**

Oklahoma provides a civil claim for relief for human trafficking victims, but only against a defendant who has himself violated the statute. In relevant part, 21 O.S. § 748.2(B) provides that "[a]ny person aggrieved by a violation of subsection B of Section 748 of this title may bring a civil action against the person or persons who committed the violation[.]" Subsection B, in turn, provides: "It shall be unlawful to knowingly engage in human trafficking." 21 O.S. § 748(B). Under 21 O.S. § 748(A)(4), "human trafficking" is defined as "modern-day slavery that includes, but is not limited to, extreme exploitation and the denial of freedom or liberty of an individual for purposes of deriving benefit from that individual's commercial sex act or labor."

Count II asserts two theories. First, Plaintiff alleges that "Defendants" committed human trafficking "by variously recruiting, enticing, providing, obtaining, and in all cases harboring Plaintiff for purposes of engaging Plaintiff in a commercial sex act." (Doc. No. 218, ¶ 284). As relevant here, Oklahoma defines such conduct as "recruiting, enticing, harboring, maintaining, transporting, providing or obtaining, by any means, another person through deception, force, fraud, threat or coercion for purposes of engaging the person in a commercial sex act." 21 O.S. § 748(A)(6)(a).

Notably, Count II does not allege that Defendant Wiley committed human trafficking by purchasing commercial sex from Plaintiff (*see* Doc. No. 218, ¶ 284), and Oklahoma's statute would not support such a theory. When the victim is a minor, the Legislature defined human trafficking for commercial sex to include "recruiting, enticing, harboring, maintaining, transporting, providing, *purchasing* or obtaining, by any means, a minor for purposes of engaging the minor in a commercial sex act." 21 O.S. § 748(A)(6)(b) (emphasis added). The Legislature omitted "purchasing" from the otherwise identical list of acts in § 748(A)(6)(a). *Compare* 21 O.S. § 748(A)(6)(a), *with* 21 O.S. § 748(A)(6)(b). Oklahoma's uniform jury instructions track that distinction. *Compare* OUJI-CR 4-113B (human trafficking for commercial sex), *with* OUJI-CR 4-113C (human trafficking of a minor for commercial sex); *see also* Heather C. Gregorio, Note, *More Than "Johns," Less Than Traffickers: In Search of Just and Proportional Sanctions for Buyers of Sex with Trafficking Victims*, 90 N.Y.U. L. Rev. 626, 659 n.171 (2015) (observing that Oklahoma's definition of human trafficking for commercial sex includes "purchasing or obtaining" only where the victim is a minor). Accordingly, Plaintiff's allegation that she had sex with Defendant Wiley in exchange for the promise of a room (Doc. No. 218, ¶ 48) does not state a claim under § 748(A)(6)(a).

Plaintiff's collective assertion that Defendants "harbor[ed]" or "provid[ed]" her does not help either. Section 748(A)(6)(a) does not reach every act of harboring or providing a person who engages in commercial sex. It reaches those acts only when accomplished "through deception, force, fraud, threat or coercion." 21 O.S. § 748(A)(6)(a). The contrast with federal law is instructive. Section 1591(a)(1) reaches one who harbors or

provides a person "knowing, or … in reckless disregard of the fact, that means of force, threats of force, fraud, coercion … will be used to cause the person to engage in a commercial sex act." 18 U.S.C. § 1591(a). That language expressly encompasses coercion applied by a third party. Oklahoma's statute instead ties the prohibited means to the act itself. The SAC does not allege that Defendant Wiley deceived, forced, defrauded, threatened, or coerced Plaintiff in any respect. The only coercion it alleges is Domino's. (*See* Doc. No. 218, ¶¶ 18-23, 52). Renting hotel rooms to a paying guest, or permitting her to pay after meeting a client (Doc. No. 218, ¶ 51), is not harboring or providing her "through deception, force, fraud, threat or coercion."

Further, Plaintiff alleges that "Defendants" committed human trafficking "by benefitting (in the form of room rentals, fees for towels, condom purchases etc...) from participating in ventures that engaged in acts of trafficking for commercial sex." (Doc. No. 218, ¶ 285). Oklahoma's definition of "human trafficking for commercial sex" does include "benefiting, financially or by receiving anything of value, from participating in a venture that has engaged in an act of trafficking for commercial sex." 21 O.S. § 748(A)(6)(c). However, the similarity to the TVPRA ends there. Under 18 U.S.C. § 1595(a), a defendant who benefits from a venture may be liable if he "knew or should have known" that the venture engaged in trafficking. Oklahoma's statute contains no constructive-knowledge standard. Its civil remedy is limited to violations of § 748(B), which makes it unlawful only "to knowingly engage in human trafficking." 21 O.S. §§ 748(B), 748.2(B). Plaintiff therefore cannot proceed under Oklahoma law on the theory that Defendant Wiley should have known of trafficking at the Plaza.

Accordingly, liability under either of Count II's theories requires actual knowledge per § 748(B). As set forth above, the SAC's only allegation that Defendant Wiley knew Plaintiff was being forced or coerced is the conclusory allegation carried forward verbatim from Plaintiff's prior pleadings. (Doc. No. 218, ¶ 52). Its remaining allegations establish, at most, that Wiley knew Plaintiff engaged in commercial sex. *See supra*, Argument §§ I(B)-(D). That does not plausibly allege actual knowledge that Plaintiff was being trafficked. Independent of Plaintiff's statute of limitations deficiencies discussed below, her claims against Defendant Wiley under Oklahoma's human trafficking statutes fail as a matter of law and should be dismissed.

## II. PLAINTIFF'S STATE LAW CLAIMS HAVE EXPIRED

Oklahoma's human trafficking statutes provide a civil remedy for the recovery of damages by a private citizen based upon certain criminal conduct. 21 O.S. § 748 et seq. In Oklahoma, an action upon a "liability created by statute other than a forfeiture or penalty" must be brought within three (3) years of the underlying event. 12 O.S. § 95(A)(2). The statute of limitations for claims brought pursuant to 21 O.S. § 748 does not begin to run until the latest of three distinct events: (1) "the victim's emancipation from the defendant," (2) "the victim's twenty-first birthday"; or, (3) "the plaintiff discovers or reasonably should have discovered that he or she was a victim of human trafficking and that the defendant caused, was responsible for or profited from the human trafficking." 21 O.S. § 748.2(B).

Based upon the facts alleged in the Second Amended Complaint, a reasonable inference may be drawn that Plaintiff's claims against Defendant Wiley expired before her

original Petition was filed on March 19, 2025. Her claims are untimely unless one of the three statutory triggers occurred on or after March 19, 2022.

Plaintiff alleges that, before meeting Domino, she escaped an abusive relationship "as a teenager," experienced homelessness, was "briefly being incarcerated," and had rebuilt her life—finding "a fiancé, a job, a home for her children, and her sobriety"—all prior to her fiancé's death in 2020. (Doc. No. 218, ¶¶ 14-15). The year is now 2026. These facts make clear that Plaintiff was well into adulthood by 2020. It is reasonable to infer that Plaintiff's twenty-fourth (24th) birthday passed prior to the filing of her Petition, eliminating any possibility that the commencement of the limitations period was delayed by her twenty-first birthday.

Further, the SAC establishes that Plaintiff knew or should have known that she was a victim of human trafficking by early 2021, when she met Domino at the Plaza and he began using "threats, physical violence, and intimidation" to force her to engage in commercial sex acts. (Doc. No. 218, ¶¶ 16-18, 32). This is particularly so as to Defendant Wiley. The SAC's allegations against him rest largely on Plaintiff's own direct dealings with him during her stays at the Plaza: the alleged exchange of sex for the promise of a room, and his allowing her to pay for a room after meeting with a client. (Doc. No. 218, ¶¶ 48, 51). Plaintiff therefore knew, at the time, the facts on which she now claims Defendant Wiley "caused, was responsible for or profited from" her trafficking. 21 O.S. § 748.2(B). Should this mark the commencement of the limitations period under 21 O.S. § 748.2(B), then, even under the most generous reading of the facts, Plaintiff's claims would have expired well before this action was filed.

Finally, the SAC alleges that Domino trafficked Plaintiff "from early 2021 to the beginning of 2022." (Doc. No. 218, ¶ 26). With respect to Defendant Wiley, the SAC still does not allege when any alleged trafficking violation involving him occurred. The single alleged sexual encounter between Plaintiff and Defendant Wiley (Doc. No. 218, ¶ 48), the occasions on which he "[s]ometimes" allowed her to pay after meeting a client (Doc. No. 218, ¶ 51), and his alleged meeting with Domino (Doc. No. 218, ¶ 52) are all undated. Plaintiff alleges that she met Domino at the Plaza "in 2021" (Doc. No. 218, ¶ 32) and refers to "each of her stays at the Plaza" without dating any of them. (Doc. No. 218, ¶¶ 35-36). Although Plaintiff alleges that Domino himself stayed at the Plaza "for several months during 2021 and 2022" (Doc. No. 218, ¶ 40), she does not allege that she stayed there, or that Defendant Wiley had any involvement with her, on or after March 19, 2022. To the contrary, the SAC's 2022 allegations place Plaintiff at other hotels: the Motel 6 in "early 2022" (Doc. No. 218, ¶ 138), the Extended Stay in the spring of 2022 (Doc. No. 218, ¶¶ 134, 137), and the Super 8 OKC Airport in August 2022, where she alleges she was trafficked by different individuals altogether. (Doc. No. 218, ¶¶ 188, 193). The date of Plaintiff's last check-out from the Plaza therefore marks the latest plausible emancipation with respect to Defendant Wiley, and nothing in the SAC places that date within three years of the Petition's filing.

Plaintiff's assertion that her claim "is timely because it was filed within three years of accrual" (Doc. No. 218, ¶ 287) adds nothing and does not change the analysis; it is a legal conclusion not entitled to the presumption of truth. Plaintiff also should not be permitted to plead shifting, amorphous timelines and then use that ambiguity as both a

sword to avoid limitations and a shield to avoid dismissal. On the facts actually alleged, the statute of limitations under 21 O.S. § 748.2(B) expired before Plaintiff filed her Petition on March 19, 2025, and her state law claims against Defendant Wiley should be dismissed.

## CONCLUSION

Plaintiff has now had three opportunities to plead her claims against Defendant Wiley. Despite the Court's direction to "specifically allege what each Defendant knew and did" (Doc. No. 212, p. 6), the Second Amended Complaint repeats, verbatim, the same conclusory allegation regarding Defendant Wiley's knowledge contained in the dismissed First Amended Complaint. It supplements that allegation only with allegations establishing, at most, that Wiley knew Plaintiff engaged in commercial sex and that the Plaza property experienced crime—not that he knew or should have known she was being forced or coerced to do so. The SAC fails to state a claim upon which relief may be granted, and Plaintiff's state law claims are untimely. Accordingly, all claims against Defendant Wiley should be dismissed as a matter of law with prejudice.

Respectfully Submitted,

s/ W. Riley Nester
Jessica L. Dark, OBA #31236
W. Riley Nester, OBA #36222
PIERCE COUCH HENDRICKSON
BAYSINGER & GREEN, L.L.P.
1109 N. Francis Ave.
Oklahoma City, OK 73106
PH: (405) 235-1611
FX: (405) 235-2904
jdark@piercecouch.com
rnester@piercecouch.com
***Attorneys for Defendants***
***Plaza Hotels, LLC, Steve Ketter***
***and Michael Wiley***

**CERTIFICATE OF SERVICE**

I certify that on this 25th day of November, 2026, I electronically transmitted the foregoing document to the Clerk of Court using the ECF System for filing and a transmittal of a Notice of Electronic Filing to all ECF registrants who have entered an appearance in this case.

s/ W. Riley Nester
W. Riley Nester