**IN THE UNITED STATES DISTRICT COURT FOR THE`**
**WESTERN DISTRICT OF OKLAHOMA**

| | | |
|---|---|---|
| NANCY R., pseudonymously,<br><br>Plaintiff,<br><br>v.<br><br>PLAZA HOTELS, LLC; STEVE KETTER;<br>MICHAEL A. WILEY; OKC AIRPORT ES, LLC;<br>ESH STRATEGIES FRANCHISE, LLC;<br>NATHA, LLC; JALIYAN HOSPITALITY, INC;<br>SUPER 8 WORLDWIDE, INC;<br>RAJ KRUPA HOTEL, LLC;<br>DAYS INN WORLDWIDE, INC;<br>CHAND & SAAJ HOSPITALITY, INC;<br>RAMADA WORLDWIDE, INC;<br>YASH ENTERPRISES, LLC<br>HOWARD JOHNSON INTERNATIONAL, INC;<br>NOOR HOTEL, LLC; AMBICA, LLC;<br>OM, LLC; INDRA, LLC; AND<br>G6 HOSPITALITY FRANCHISING, LLC,<br><br>Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Case No. CIV-25-462-G |

---

**MOTION TO DISMISS OF DEFENDANT PLAZA HOTELS LLC**
**AND BRIEF IN SUPPORT**

---

Jessica L. Dark, OBA #31236
W. Riley Nester, OBA #36222
PIERCE COUCH HENDRICKSON
BAYSINGER & GREEN, L.L.P.
1109 N. Francis Ave.
Oklahoma City, OK 73106
PH: (405) 235-1611
FX: (405) 235-2904
jdark@piercecouch.com
rnester@piercecouch.com
*Attorneys for Defendant Plaza Hotels LLC*

**November 25, 2026**

# TABLE OF CONTENTS


**TABLE OF AUTHORITIES** ... iii

**INTRODUCTION** ... 1

**STANDARD OF REVIEW** ... 3

**ARGUMENTS AND AUTHORITIES** ... 4

**I. PLAINTIFF FAILS TO STATE A CLAIM UPON WHICH RELIEF MAY BE GRANTED** ... 4

**A. The SAC Still Fails to Provide the Plaza Fair Notice of the Claims Against It** ... 4

**B. The SAC Still Fails to State a Claim Against the Plaza Under 18 U.S.C. § 1591(a)(1)** ... 6

**i. Defendant Wiley's Alleged Knowledge Does Not Establish the Plaza's** ... 8

**ii. The SAC's Allegations Regarding the Plaza's Staff do not Establish the Requisite Knowledge** ... 10

**iii. Plaintiff does not Plausibly Allege Reckless Disregard** ... 12

**C. The SAC Fails to State a Claim Against the Plaza Under 18 U.S.C. § 1591(a)(2)** ... 13

**i. The Plaza-Specific Allegations do not Establish Knowing Participation in a Sex-Trafficking Venture** ... 15

**ii. The SAC's Allegations of Generalized Crime and Nuisance Enforcement at the Plaza do not Establish the Requisite Knowledge** ... 17

**D. The SAC Fails to State a Beneficiary Claim Against the Plaza Under 18 U.S.C. § 1595(a)** ... 21

**E. The SAC Fails to State a Claim Against the Plaza Under Oklahoma's Human Trafficking Statutes** ... 23

**II. PLAINTIFF'S STATE LAW CLAIMS HAVE EXPIRED** ... 27

**CONCLUSION** ... 29

**CERTIFICATE OF SERVICE** ... 30

# TABLE OF AUTHORITIES


Cases Page(s)

*A.B. v. Hilton Worldwide Holdings, Inc.*,
484 F.Supp.3d 921 (D. Or. 2020) ..... 6

*A.B. v. Interstate Mgmt. Co.*,
746 F.Supp.3d 997 (D. Or. 2024) ..... 9, 11, 13, 18, 21, 23

*A.D. v. Choice Hotels Int'l, Inc.*,
No. 2:22-cv-648-JES-NPM, 2023 WL 3004547 (M.D. Fla. Apr. 19, 2023) ..... 20

*Ashcroft v. Iqbal*,
556 U.S. 662, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009) ..... 3, 6

*Bell Atlantic Corp. v. Twombly*,
550 U.S. 544 (2007) ..... 3, 4, 6

*Bistline v. Parker*,
918 F.3d 849 (10th Cir. 2019) ..... 14, 15

*Bucco v. W. Iowa Tech Cmty. Coll.*,
555 F.Supp.3d 628 (N.D. Iowa 2021) ..... 6

*Cory v. Allstate Ins.*,
583 F.3d 1240 (10th Cir. 2009) ..... 3

*Doe (K.E.C.) v. G6 Hospitality, LLC*,
750 F.Supp.3d 719 (E.D. Tex. 2024) ..... 20

*Doe (L.M.) v. 42 Hotel Raleigh, LLC*,
717 F.Supp.3d 464 (E.D.N.C. 2024) ..... 9, 11, 12, 13, 16, 20, 21, 22, 23

*Escobar v. Mora*,
496 F. App'x. 806 (10th Cir. 2012) ..... 3

*Frey v. Town of Jackson, Wyoming*,
41 F.4th 1223 (10th Cir. 2022) ..... 9, 17, 20

*G.W. v. Northbrook Indus., Inc.*,
739 F.Supp.3d 1243 (N.D. Ga. 2024) ..... 6

*J.L. v. Best Western Int'l, Inc.*,
521 F.Supp.3d 1048 (D. Colo. 2021) ..... 7, 19, 21, 23

*Pyatt v. Secure Live Media, LLC*,
2022 WL 22883099 (S.D. Fla. 2022) ..... 6

*Ricchio v. McLean*,
853 F.3d 553 (1st Cir. 2017) ..... 12, 14, 16

*S.J. v. Choice Hotels Int'l, Inc.*,
473 F.Supp.3d 147 (E.D.N.Y. 2020) ..... 21

Statutes

18 U.S.C. § 1591 ..... 9
18 U.S.C. § 1591(a) ..... 9, 18, 21, 24
18 U.S.C. § 1591(a)(1) ..... 6, 7, 13, 17, 24

18 U.S.C. § 1591(a)(2) ..........13, 14, 17, 20
18 U.S.C. § 1595 ..........1, 21
18 U.S.C. § 1595(a) ..........13, 14, 21, 22, 23, 25

Rules

Fed. R. Civ. P. 8..........1, 3, 4, 6
Fed. R. Civ. P. 12(b)(6) ..........1

Defendant Plaza Hotels ("Defendant or the "Plaza"), hereby respectfully submits this Motion to Dismiss Plaintiff's Second Amended Complaint (Doc. No. 218) pursuant to Fed. R. Civ. P. 8 and 12(b)(6). In support hereof, Defendant submits the following brief:

## INTRODUCTION

Plaintiff filed her Petition on March 19, 2025. (Doc. No. 1-2). The case was removed to this Court on April 23, 2025. (Doc. No. 1). Plaintiff filed her First Amended Complaint ("FAC") on October 17, 2025 (Doc. No. 115), and the Plaza moved to dismiss. (Doc. No. 120). On September 30, 2026, the Court granted the Plaza's motion, along with those of several other defendants, pursuant to Fed. R. Civ. P. 12(b)(6). (Doc. No. 212). The Court found that, "[a]mong other deficiencies, the FAC in many instances fails to distinguish between traffickers and the many Defendants and to specifically allege what each Defendant knew and did, including relating to the trafficking of Plaintiff." (Doc. No. 212, p. 6). The Court granted Plaintiff leave to file a second amended complaint "to provide greater factual specificity." (Doc. No. 212, p. 6).

Plaintiff filed her Second Amended Complaint ("SAC") on October 28, 2026, again asserting claims under the Trafficking Victims Protection Reauthorization Act ("TVPRA"), 18 U.S.C. § 1595, and Oklahoma human trafficking statutes, 21 O.S. § 748 *et seq*. (Doc. No. 218). Included among the defendants are Plaza Hotels, LLC ("the Plaza") and its two owners, Michael Wiley and Steve Ketter.

Though considerably longer than its predecessor, the SAC does not do what the Court directed as to the Plaza. As an entity, the Plaza can know and act only through individuals. However, the SAC's Plaza-specific allegations still attribute knowledge and

conduct to unidentified "staff," "management," and "employees" at undated times. The only allegations that anyone at the Plaza knew Plaintiff was being forced or coerced concern its two owners, and both are carried forward word-for-word from Plaintiff's prior pleadings. The first is the bare assertion that Defendant Wiley "met Domino and knew that he was Nancy's pimp and was forcing her to engage in commercial sex acts." The second is the information-and-belief allegation that Defendant Ketter "was aware of the same facts." (*Compare* Doc. No. 218, ¶¶ 52-53, *with* Doc. No. 115, ¶ 102, *and* Doc. No. 1-2, ¶ 102).

The SAC's new Plaza-specific allegations do not fix the deficiency. They include an inference about what the Plaza's front desk staff "would … have witnessed," assertions that the Plaza had "opportunit[ies]" to observe Domino, and allegations regarding Defendant Wiley's alleged personal dealings with Plaintiff. At most, these establish that individuals at the Plaza knew Plaintiff engaged in commercial sex. They say nothing about whether the Plaza knew, recklessly disregarded, or should have known that Domino was using force, threats, fraud, or coercion to cause her to do so.

What the SAC adds beyond that is a lengthy recitation of police calls, municipal nuisance notices, and other criminal activity at the Plaza property dating back to 2018. Those allegations describe, at most, generalized knowledge of crime at a hotel property. They do not plausibly allege that the Plaza knew, recklessly disregarded, or should have known that Domino was using force, fraud, or coercion to cause *this* Plaintiff to engage in commercial sex acts.

Accordingly, the SAC still fails to state a plausible claim against the Plaza under the TVPRA or Oklahoma's human trafficking statutes, and Plaintiff's state law claims remain untimely. As discussed further herein, the Plaza is entitled to dismissal as a matter of law.

## STANDARD OF REVIEW

The *Twombly/Iqbal* pleading standard is well-known by this Court. A complaint must present a facially plausible claim for relief. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). The quality of these factual allegations must create more than speculation about the plaintiff's chances of recovery. *Id.* The United States Supreme Court has further held that, while the pleading standard of Fed. R. Civ. P. 8 does not require detailed factual allegations, "it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009). If the complaint contains only boilerplate labels and conclusory allegations, dismissal is proper because "conclusory allegations without supporting factual averments are insufficient to state a claim upon which relief can be based." *Escobar v. Mora*, 496 F. App'x. 806, 816 (10th Cir. 2012) (citing *Cory v. Allstate Ins.*, 583 F.3d 1240, 1244 (10th Cir. 2009)).

The Court applied these principles in dismissing the FAC, explaining that "[b]are legal conclusions in a complaint are not entitled to the assumption of truth; 'they must be supported by factual allegations' to state a claim for relief." (Doc. No. 212, p. 6 (quoting *Iqbal*, 556 U.S. at 679)).

## ARGUMENTS AND AUTHORITIES

### I. PLAINTIFF FAILS TO STATE A CLAIM UPON WHICH RELIEF MAY BE GRANTED

#### A. The SAC Still Fails to Provide the Plaza Fair Notice of the Claims Against It

Rule 8 requires that a complaint contain enough factual matter to give each defendant fair notice of the claims against it and the grounds upon which they rest. *Twombly*, 550 U.S. at 555. The Court dismissed the FAC in part because it failed "to distinguish between traffickers and the many Defendants and to specifically allege what each Defendant knew and did, including relating to the trafficking of Plaintiff." (Doc. No. 212, p. 6). That direction carries particular weight for the Plaza. As a limited liability company, the Plaza can know and act only through individuals. Fair notice to the Plaza therefore requires that the SAC identify, with some factual specificity, whose knowledge and conduct Plaintiff seeks to attribute to it, and when.

The SAC does not do so. Like its predecessor, it does not identify when Plaintiff stayed at the Plaza, how long she was there, or how many times. It alleges only that she met Domino there "in 2021" and refers to "each of her stays" without dating any of them. (Doc. No. 218, ¶¶ 32, 35-36). The Plaza-specific allegations attribute knowledge and conduct to a shifting group of unidentified actors: the "front desk staff" (Doc. No. 218, ¶¶ 35, 38-39), "[t]he Plaza's management" (Doc. No. 218, ¶ 42), "its staff" (Doc. No. 218, ¶ 44), "some of its clerks and security guards" (Doc. No. 218, ¶ 63), and "the employees and owner of the Plaza" (Doc. No. 218, ¶ 55). The SAC does not identify any of these individuals by name or position. It also does not say when any of them supposedly observed

or did anything. It instead asserts, in boilerplate, that each Defendant acted through its "agents, employees, officers, members, directors, heirs, successors, assigns, principals, trustees, sureties, subrogees, representatives, and insurers." (Doc. No. 218, ¶ 13).

Where the SAC does attribute knowledge or conduct to the Plaza directly, it does so collectively. Plaintiff alleges that "Plaza, Ketter, and Wiley knew and should have known" that the Plaza was a conducive venue for sex trafficking (Doc. No. 218, ¶ 54); that "Plaza, Ketter, and Wiley chose to keep operating it that way" (Doc. No. 218, ¶ 64); and that "Plaza, Ketter, and Wiley did not need Plaintiff to tell them what their rooms were being used for" (Doc. No. 218, ¶ 72). Her claims likewise lump "Plaza, Ketter, Wiley, the Franchisee Defendants, and the Franchisor Defendants" together (Doc. No. 218, ¶¶ 272, 274-275). They allege that "each Defendant 'harbor[ed],' [and] 'provide[d]'" Plaintiff (Doc. No. 218, ¶ 273), and that "Defendants" variously recruited, enticed, provided, obtained, harbored, and benefitted. (Doc. No. 218, ¶¶ 284-285). Some of the SAC's allegations are not tied to any particular hotel at all. (*See, e.g.*, Doc. No. 218, ¶¶ 24-25 (alleging that "[o]n several occasions in each Defendant hotel," unidentified employees "would have been unable to miss signs" of trafficking, and that unidentified "hotel employees chose to ignore the bruises Domino left on Nancy")). As a result, the Plaza cannot discern whether Plaintiff seeks to hold it liable for the conduct of unidentified employees, for its owners' generalized knowledge of crime on the property, or for Defendant Wiley's alleged personal conduct, which is addressed in Argument § I(B), *infra*. This is precisely the type of collective pleading the Court found insufficient.

These are not demands for fraud-level particularity, as Plaintiff has previously suggested. (*See* Doc. No. 165, p. 13). Rule 8 and *Twombly/Iqbal* still require enough factual content to make a claim plausible and to give each defendant fair notice of what conduct is alleged, by whom, and when. *See Bucco v. W. Iowa Tech Cmty. Coll.*, 555 F.Supp.3d 628, 642 (N.D. Iowa 2021) ("Without details as to who did what," the Court "cannot determine whether the allegations are sufficient to state a TVPRA claim against each defendant."); *Pyatt v. Secure Live Media, LLC*, 2022 WL 22883099, at *5 (S.D. Fla. 2022) (Plaintiff's "allegations are impermissibly vague and conclusory[,]" including the "general and vague statements that (1) at unspecified dates; (2) unidentified individuals 'coerced' him into having sex with unnamed women[.]"); *A.B. v. Hilton Worldwide Holdings, Inc.*, 484 F.Supp.3d 921, 940-41 (D. Or. 2020) (Victim's "vague allegations" that she stayed at hotels repeatedly, and hotel chain operators had some level of notice that victim engaged in commercial sex acts at hotel properties, failed to state a claim under the TVPRA); *G.W. v. Northbrook Indus., Inc.*, 739 F.Supp.3d 1243, 1251 (N.D. Ga. 2024) ("[T]he plaintiff must connect the dots between the defendant's and the trafficker's actions and show how the defendant participated in the venture with the traffickers."). Because the SAC still forces the Plaza and the Court to speculate, rather than assess plausibility, the claims against the Plaza should be dismissed.

### B. The SAC Still Fails to State a Claim Against the Plaza Under 18 U.S.C. § 1591(a)(1)

Plaintiff brings a claim against the Plaza for perpetrator liability under 18 U.S.C. § 1591(a)(1). (Doc. No. 218, ¶¶ 272-273). A perpetrator for the purposes of § 1591(a)(1) is defined as:

> (a) Whoever knowingly—
>
> (1) in or affecting interstate or foreign commerce, or within the special maritime and territorial jurisdiction of the United States, recruits, entices, harbors, transports, provides, obtains, advertises, maintains, patronizes, or solicits by any means a person;
>
> knowing, or, … in reckless disregard of the fact, that means of force, threats of force, fraud, coercion …, or any combination of such means will be used to cause the person to engage in a commercial sex act, … shall be punished as provided in subsection (b).

Thus, in order to state a claim against the Plaza under § 1591(a)(1), Plaintiff must plausibly allege that the Plaza knowingly recruited, enticed, harbored, transported, provided, obtained, advertised, maintained, patronized, or solicited her—while knowing or recklessly disregarding that force, threats of force, fraud, or coercion were being used to cause her to engage in commercial sex acts. *Id.* Because the Plaza is an entity, Plaintiff must plausibly allege that individuals whose knowledge is attributable to the Plaza possessed the requisite knowledge or reckless disregard. District courts apply general agency principles to assess whether knowledge of individual actors should be imputed to hotel entities. *See J.L. v. Best Western Int'l, Inc.*, 521 F.Supp.3d 1048, 1064 (D. Colo. 2021).

As an initial matter, the Plaza denies having "harbored" or "provided" Plaintiff, or committing any of the other trafficking verbs within § 1591(a)(1). However, solely for the purposes of this Motion to Dismiss, the Plaza does not challenge whether Plaintiff adequately pled that it harbored or provided her by renting her rooms. The claim nonetheless fails for lack of the requisite mens rea. Plaintiff's allegations regarding the Plaza's knowledge fall into three categories: (1) the alleged knowledge and conduct of

Defendant Wiley; (2) what unidentified Plaza employees allegedly observed, or would have observed; and (3) generalized crime and nuisance enforcement at the property. The third category is addressed in Argument § I(C)(2), *infra*. None establishes that the Plaza knew or recklessly disregarded that force, threats of force, fraud, or coercion were being used to cause Plaintiff to engage in commercial sex acts.

**i. Defendant Wiley's Alleged Knowledge Does Not Establish the Plaza's**

Plaintiff presumably seeks to impute the alleged knowledge of Defendant Wiley to the Plaza.[1] However, much of what the SAC alleges regarding Defendant Wiley concerns his alleged personal conduct, rather than conduct undertaken on the Plaza's behalf. Plaintiff alleges that she had sex with Defendant Wiley in exchange for the promise of a room, which he then did not provide. She further alleges that other women traded sex for rooms with him, and that it was "well known among the many sex workers who frequented the Plaza" (not its staff) that Wiley "liked to trade rooms for sex." (Doc. No. 218, ¶¶ 48-50). Trading the Plaza's rooms for sex would deprive the Plaza of room revenue, not generate it, and on Plaintiff's own account the Plaza received nothing from Wiley's alleged encounter with her. These allegations implicate Defendant Wiley personally, not the Plaza. The only allegation even remotely suggesting that the Plaza benefitted is that Defendant Wiley "[s]ometimes" allowed Plaintiff to pay for her room after meeting with a client. (Doc. No. 218, ¶ 51). Even then, the Plaza is alleged to have received only what it would receive from any guest, payment for a room.

---

[1] For purposes of this Motion to Dismiss, the Plaza addresses Plaintiff's allegations as pled. The Plaza does not argue whether Defendant Wiley was or was not acting within the scope of his employment at any relevant time.

More fundamentally, even if all of Defendant Wiley's alleged knowledge were imputed to the Plaza, the Plaza's knowledge could rise no higher than his. As set forth in Defendant Wiley's Motion to Dismiss, filed contemporaneously herewith, that knowledge does not satisfy § 1591(a). The SAC's only allegation that Defendant Wiley knew Plaintiff was being forced or coerced—that "Wiley met Domino and knew that he was Nancy's pimp and was forcing her to engage in commercial sex acts by threatening her with physical abuse and drug withdrawal"—has appeared word-for-word in each of Plaintiff's three pleadings. It "states an inference without underlying facts" and is therefore not entitled to the assumption of truth. (Doc. No. 218, ¶ 52); *Frey v. Town of Jackson, Wyoming*, 41 F.4th 1223, 1233 (10th Cir. 2022). The unnamed security guard's statement that Wiley "knew everything" and "would have known Nancy had a pimp on the property" (Doc. No. 218, ¶¶ 46, 52) speaks only to whether Wiley would have known of a pimp, not force, threats, fraud, or coercion. *See A.B. v. Interstate Mgmt. Co.*, 746 F.Supp.3d 997, 1009-10 n.6 (D. Or. 2024) (rejecting argument that knowledge the plaintiff had a "pimp" established knowledge of force, fraud, or coercion, because that view "collapses the distinction between general prostitution, in which a 'pimp' may be involved, and commercial sex trafficking in violation of the TVPRA"). And everything Defendant Wiley allegedly "could not have missed" on the security cameras (Doc. No. 218, ¶ 47), along with his alleged dealings with Plaintiff (Doc. No. 218, ¶¶ 48-51), indicates, at most, commercial sex. *See Doe (L.M.) v. 42 Hotel Raleigh, LLC*, 717 F.Supp.3d 464, 472 (E.D.N.C. 2024) ("[K]nowledge of prostitution is not necessarily knowledge of sex trafficking by force or fraud as defined in 18 U.S.C. § 1591."). Nor does Defendant Ketter's alleged knowledge

add anything. The SAC alleges only, "[o]n information and belief," that Ketter "was aware of the same facts" as Wiley. (Doc. No. 218, ¶ 53).

**ii. The SAC's Allegations Regarding the Plaza's Staff do not Establish the Requisite Knowledge**

Plaintiff's staff-specific allegations do not help. Plaintiff alleges that she checked in wearing heels and inadequate clothing, paid with cash, extended her stays day by day, escorted johns from the lobby to her room, requested additional towels, and disposed of condoms in the hotel trash. (Doc. No. 218, ¶¶ 35-37). She then alleges that "[t]he Plaza's front desk staff would thus have witnessed dozens of instances of Nancy escorting a man who had not checked in as a guest through the lobby to her room, followed by that man heading back downstairs, sometimes within a period of 10 minutes." (Doc. No. 218, ¶ 38).

That allegation is notable for its hedge. It is an inference about what Plaza staff "would … have witnessed," not an allegation that anyone witnessed anything. The SAC's corresponding allegation for every other hotel is cast in definite terms: front desk staff "witnessed" the same conduct. (*See* Doc. No. 218, ¶¶ 90, 143, 198, 220, 242). The Plaza paragraph otherwise tracks the Extended Stay paragraph nearly word-for-word. (*Compare* Doc. No. 218, ¶ 38, *with* Doc. No. 218, ¶ 90). However, the Extended Stay allegation rests on specific allegations that the hotel's layout required johns to pass the front desk to reach Plaintiff's room. (Doc. No. 218, ¶¶ 87, 89-90). The SAC contains no comparable allegation regarding the Plaza. Indeed, Plaintiff's prior pleading identified the hotels at which johns "had to walk through the interior lobby and past the front desk to access her room," and the Plaza was not among them. (Doc. No. 115, ¶ 94). And the SAC elsewhere alleges that Plaintiff's activities were "confined to the northeast corner of the hotel, away from the front

entrance," in rooms "toward the back of the hotel." (Doc. No. 218, ¶ 39). An allegation of what staff "would … have witnessed," unsupported by facts showing that they did, asks the Court to speculate. *See Interstate Mgmt.*, 746 F.Supp.3d at 1010 (declining to infer that hotel staff "would have observed" outward signs of trafficking because "to find so would require this Court to speculate, not reasonably infer.").

Similarly, the SAC alleges only that the Plaza had "ample opportunity to observe Domino," and that a security camera pointed at the courtyard gave "its staff dozens of opportunities to witness Domino's criminal activity and his money exchanges with Nancy." (Doc. No. 218, ¶¶ 40, 44). An opportunity to observe is not knowledge; even crediting every one of these allegations, they describe, at most, indicators that Plaintiff engaged in commercial sex and that a third party collected its proceeds. That is equally consistent with "general prostitution, in which a 'pimp' may be involved." *Interstate Mgmt.*, 746 F.Supp.3d at 1009-10 n.6. The same is true of Plaintiff's allegation that front desk staff confined her activities to one corner of the property. (Doc. No. 218, ¶ 39). At most, it suggests staff knew she engaged in commercial sex, not that anyone was forcing her to do so. *See Doe (L.M.)*, 717 F.Supp.3d at 470-73 (allegations that hotel staff knew the trafficker and addressed him by his "pimp name," among others, "perhaps create[d] a plausible inference of constructive knowledge of prostitution, but certainly not of sex trafficking by force or fraud").

What the SAC does *not* allege as to the Plaza is telling. The Plaza-specific allegations describe no act of force against Plaintiff at the Plaza, no visible injury observed there, and no threat witnessed by anyone. (*See* Doc. No. 218, ¶¶ 32-55). The only specific

allegations of physical abuse of Plaintiff in the SAC concern other hotels (Doc. No. 218, ¶¶ 99-100, 123 (Extended Stay), 243-247 (Howard Johnson)). Plaintiff's generic assertion that "hotel employees chose to ignore the bruises Domino left on Nancy" is not tied to the Plaza. (Doc. No. 218, ¶ 25). For other hotels, Plaintiff alleges that employees saw her bruises (Doc. No. 218, ¶¶ 100, 123, 245, 247), witnessed a trafficker's "oppressive conduct in public areas" (Doc. No. 218, ¶ 123), or watched a handler monitor her and collect her money (Doc. No. 218, ¶¶ 153, 160, 205). On that basis, she alleges that those hotels' employees knew or should have known she was being coerced. (Doc. No. 218, ¶¶ 121-123, 159-161, 205, 227, 257). She makes no such allegation regarding the Plaza's staff. *See Doe (L.M.)*, 717 F.Supp.3d at 472 (dismissing where "[c]onspicuously absent" from the complaint were "any allegations that could plausibly produce an inference of trafficking by force or fraud such as, for example, signs of physical abuse, actual assaults by a trafficker on the victim," among others).

**iii. Plaintiff does not Plausibly Allege Reckless Disregard**

For the same reasons, Plaintiff's allegations do not establish reckless disregard. Disregarding indications that a guest engages in commercial sex is not disregarding indications that she is being forced or coerced to do so. And the TVPRA does not impose a duty to investigate whether a guest engaged in commercial sex is being coerced. *See Doe (L.M.)*, 717 F.Supp.3d at 473 (rejecting argument that the hotel "should have exercised reasonable diligence to proactively investigate and prevent possible sex trafficking" because "the TVPRA imposes no such duty") (collecting cases). The contrast with *Ricchio v. McLean*, 853 F.3d 553 (1st Cir. 2017), is instructive. There, the hotel owners saw the

plaintiff "visibly haggard and bruised," ignored her plea for help, and watched as her trafficker dragged her across the parking lot and kicked her during an attempted escape. *Id.* at 555. The SAC alleges nothing comparable at the Plaza: no visible injury, no plea for help, and no act of force or threat witnessed by any Plaza owner or employee.

Accordingly, even if Plaintiff has plausibly alleged that individuals at the Plaza knew she engaged in commercial sex, she has not plausibly alleged that the Plaza knew, or recklessly disregarded, that force, threats of force, fraud, or coercion were being used to cause her to do so. Courts have held that allegations of this kind fail to establish even the constructive knowledge required for beneficiary liability under § 1595(a). *A fortiori*, they cannot establish the knowledge or reckless disregard required for perpetrator liability under § 1591(a)(1). *See Doe (L.M.)*, 717 F.Supp.3d at 473 (because plaintiff failed to plead constructive knowledge, "her perpetrator claim, which requires an even greater degree of knowledge, fails as well"); *Interstate Mgmt.*, 746 F.Supp.3d at 1009-10. Plaintiff's claim against the Plaza under § 1591(a)(1) should therefore be dismissed.

**C. The SAC Fails to State a Claim Against the Plaza Under 18 U.S.C. § 1591(a)(2)**

Plaintiff also brings a claim against the Plaza for venture liability under 18 U.S.C. § 1591(a)(2). (Doc. No. 218, ¶ 274). Those subject to venture liability under § 1591(a)(2) are:

> (a) Whoever knowingly—
>
> (2) benefits, financially or by receiving anything of value, from participation in a venture which has engaged in an act described in violation of paragraph (1),

> knowing, or, … in reckless disregard of the fact, that means of force, threats of force, fraud, coercion …, or any combination of such means will be used to cause the person to engage in a commercial sex act, … shall be punished as provided in subsection (b).

Thus, in order to state a claim against the Plaza under § 1591(a)(2), Plaintiff must plausibly allege three things: the Plaza knowingly benefitted; the benefit came from its participation in a venture that engaged in sex trafficking; and the Plaza knew or recklessly disregarded that force, threats, fraud, or coercion were being used to cause her to engage in commercial sex acts. *Id.*

As an initial matter, the Plaza denies having benefitted in any way from the events alleged in Plaintiff's Second Amended Complaint. However, solely for the purpose of this Motion to Dismiss, the Plaza does not challenge whether Plaintiff adequately pled the "benefit" element under § 1591(a)(2) or § 1595(a). Instead, the Plaza moves directly to the SAC's insufficient allegations regarding participation in a venture and the Plaza's knowledge.

To plausibly establish venture liability under the TVPRA, a plaintiff must allege facts demonstrating active participation in the venture or at least an ongoing, knowing relationship between the defendant and the trafficker. The Tenth Circuit has adopted reasoning from the First Circuit to clarify that a "venture" under the TVPRA requires facts showing a common undertaking or collaborative involvement. *See Bistline v. Parker*, 918 F.3d 849, 874-75 (10th Cir. 2019) (applying *Ricchio*, 853 F.3d 553).

In *Ricchio*, the hotel owners had previously collaborated in "commercial dealings" with the plaintiff's trafficker. *Ricchio*, 853 F.3d at 555. While the plaintiff was held at their motel, after her abuse had become apparent to them, they were alleged to have exchanged

high-fives with the trafficker in the motel's parking lot while speaking about "getting things going again." *Id.* In *Bistline*, the defendant attorney received graphic evidence of the trafficker's ceremonial rape of minors and forced labor, yet continued his dealings with the trafficker, including by setting up a trust scheme designed to facilitate the trafficker's crimes. *Bistline*, 918 F.3d at 874-75. In both cases, the defendant had knowledge "beyond the generic" wrongdoing alleged and continued to deal with the trafficker anyway. *Id.* at 875.

**i. The Plaza-Specific Allegations do not Establish Knowing Participation in a Sex-Trafficking Venture**

Plaintiff's attempt to connect the Plaza to a venture with Domino rests on four sets of allegations: (1) that Domino resided at the Plaza for several months during 2021 and 2022 (Doc. No. 218, ¶ 40); (2) that "[t]he Plaza's management, particularly co-owner Michael Wiley, approved of" an arrangement in which "the highest-ranking criminal present at any given time controlled the courtyard and conducted his business there" (Doc. No. 218, ¶ 42); (3) that front desk staff confined Plaintiff's activities to one corner of the property (Doc. No. 218, ¶ 39); and (4) the assertion that "the employees and owner of the Plaza" formed "a business relationship with Nancy's trafficker." (Doc. No. 218, ¶ 55).

None plausibly alleges a common undertaking with Domino, entered into with knowledge that he was using force, threats, fraud, or coercion to cause Plaintiff to engage in commercial sex.

*First*, Domino's residence at the Plaza alleges, at most, that he rented rooms there, as any other guest might. The SAC does not allege on what terms Domino rented rooms, who rented them to him, or that anyone at the Plaza dealt with him in connection with those

rentals other than as a guest. Even allegations that a hotel continued renting rooms to a known trafficker after observing warning signs do not establish the requisite knowledge. *See Doe (L.M.)*, 717 F.Supp.3d at 466, 470-73 (dismissing TVPRA claims although the hotel allegedly "continued to rent rooms to L.M.'s trafficker after observing these 'apparent warning signs'").

*Second*, the courtyard arrangement alleged in ¶ 42 was not an arrangement with Domino. As pled, it extended to whichever criminal was "highest-ranking," whatever that may mean, and "present at any given time." (Doc. No. 218, ¶ 42). The only benefit the SAC attributes to the arrangement is that "the criminal holding court helped keep the other criminals on the property in line." (Doc. No. 218, ¶ 42). The SAC alleges that Domino conducted drug deals in the courtyard and that Plaintiff handed him her earnings there (Doc. No. 218, ¶ 43). As explained above, those allegations indicate commercial sex, not force, threats, fraud, or coercion. *See supra*, Argument § I(B)(2). Nothing in ¶ 42 alleges that anyone at the Plaza knew of, approved, or benefitted from any coercion of Plaintiff. A generalized tolerance of whichever criminal controlled the courtyard, even accepted as true, is a far cry from the *Ricchio* owners' plans with the trafficker himself to get "things going again" while his victim's abuse was more than apparent to them, including ignoring the plaintiff's explicit plea for help and their employees' observation of the plaintiff being dragged across the parking lot and kicked by her trafficker during an attempted escape. *Ricchio*, 853 F.3d at 555.

*Third*, Plaintiff's allegation that front desk staff "made sure that Nancy's activities were confined to the northeast corner of the hotel, away from the front entrance and the

nicer rooms on the property" (Doc. No. 218, ¶ 39) does not allege participation in a venture with Domino either. It does not allege that any employee communicated or dealt with Domino, or that anyone at the Plaza did anything to further his alleged trafficking of Plaintiff. At most, it suggests that staff knew Plaintiff engaged in commercial sex and sought to keep that activity away from the hotel's other guests. It says nothing about force, threats, fraud, or coercion. *See supra*, Argument § I(B)(2).

*Fourth*, the assertion that "the employees and owner of the Plaza" formed "a business relationship with Nancy's trafficker" (Doc. No. 218, ¶ 55) does not identify which employees or owner, the nature of the relationship, or when it was formed. It "states an inference without underlying facts" and is therefore not entitled to the assumption of truth. *Frey*, 41 F.4th at 1233. The same paragraph's reference to "engaging in commercial sex with Nancy" refers to Defendant Wiley's alleged personal conduct, which, as explained above, cannot be attributed to the Plaza and does not establish knowledge of coercion in any event. *See supra*, Argument § I(B)(1).

Finally, whatever the nature of the alleged venture, § 1591(a)(2) requires the same knowledge or reckless disregard of force, threats, fraud, or coercion as § 1591(a)(1). For the reasons set forth in Argument § I(B), *supra*, Plaintiff's Plaza-specific allegations do not satisfy that requirement.

**ii. The SAC's Allegations of Generalized Crime and Nuisance Enforcement at the Plaza do not Establish the Requisite Knowledge**

Plaintiff devotes much of the SAC to the history of the criminal activity at the Plaza property. She alleges that the Oklahoma City Police Department logged thousands of calls for service at the Plaza between 2019 and 2022 (Doc. No. 218, ¶¶ 56-71); that, in October

2018, juvenile offenders were arrested for trafficking juvenile victims in a Plaza room (Doc. No. 218, ¶ 72); that, later that month, an OCPD nuisance coordinator met with Defendants Wiley and Ketter and the City issued a Notice to Abate Public Nuisance (Doc. No. 218, ¶¶ 73-74); that the City sent additional nuisance notices between October 2018 and April 2023 and cited Wiley and Ketter under its nuisance abatement ordinance after violent incidents in 2019 (Doc. No. 218, ¶¶ 75-77); and that the City ultimately sued in 2023, resulting in a consent decree and the property's sale and demolition. (Doc. No. 218, ¶¶ 78-80). These allegations do not cure the deficiencies discussed above, for several reasons.

*First*, these allegations establish, at most, that the Plaza was aware that the property experienced crime. However, knowledge that crime, or even commercial sex, occurs at a property is not knowledge, or reckless disregard, "that means of force, threats of force, fraud, coercion …, or any combination of such means will be used to cause *the person* to engage in a commercial sex act." 18 U.S.C. § 1591(a) (emphasis added). Plaintiff's own allegations recognize the distinction, acknowledging that some commercial sex workers operate as "renegades" outside the control of a pimp. (Doc. No. 218, ¶ 122). As explained above, knowledge of prostitution alone, or even a pimp's involvement in the same, does not itself establish knowledge of force, threats, or coercion. Courts applying the TVPRA have likewise held that such knowledge is insufficient, including where the crime occurred at the very hotel at issue. *See Interstate Mgmt.*, 746 F.Supp.3d at 1004-05, 1010 (police reports of sexual crimes at the hotel and online reviews describing criminal activity put the operator "on notice of commercial sex activity taking place at the Residence Inn," but not

"that sex trafficking in violation of the TVPRA was taking place"); *J.L.*, 521 F.Supp.3d at 1064 (allegations that the defendant was on notice of the prevalence of sex trafficking generally at its hotels were "not sufficient to show that [it] should have known about what happened to this plaintiff"). Indeed, some of the incidents Plaintiff recounts came to the police's attention through the Plaza's own staff. (*See* Doc. No. 218, ¶¶ 65, 67). Bringing suspected criminal activity to the attention of law enforcement is not the conduct of a participant in a trafficking venture.

*Second*, the most specific of these allegations concern the October 2018 incident. That incident involved juvenile offenders and juvenile victims who have no alleged connection to Plaintiff or Domino. The nuisance coordinator's resulting warning to the Plaza's owners concerned "prostitutes … soliciting at the motel in plain sight" and those juveniles. (Doc. No. 218, ¶¶ 72-73). All of this occurred more than two years before Plaintiff alleges she first met Domino at the Plaza in 2021. (Doc. No. 218, ¶ 32).

*Third*, much of this history post-dates Plaintiff's alleged trafficking and therefore cannot have informed the Plaza's knowledge at the relevant time. The City's October 2022 letter, its 2023 lawsuit, the October 2023 consent decree, and the 2024 sale and demolition of the property (Doc. No. 218, ¶¶ 77-80) all occurred after Plaintiff alleges her trafficking by Domino ended. (Doc. No. 218, ¶ 26). And Defendant Ketter's public statement in response to that lawsuit, that the owners were "trying to get the bad element out of there because it's hurt our rooms" (Doc. No. 218, ¶ 78), is the opposite of an allegation that the Plaza sought to participate in, or profit from, criminal activity at the property.

*Fourth*, Plaintiff's assertion that "[t]he most logical explanation" for the crime at the Plaza "is that Plaza, Ketter, and Wiley chose to keep operating it that way" (Doc. No. 218, ¶ 64) is not a factual allegation at all. It is speculation, pled collectively, that "states an inference without underlying facts." *Frey*, 41 F.4th at 1233. Continuing to operate a hotel that experiences crime, or failing to adopt security measures the City suggested, is not participation in a sex trafficking venture. *Cf. Doe (L.M.)*, 717 F.Supp.3d at 473 (rejecting contention that hotel "should have exercised reasonable diligence to proactively investigate and prevent possible sex trafficking" because "the TVPRA imposes no such duty"); *Doe (K.E.C.) v. G6 Hospitality, LLC*, 750 F.Supp.3d 719, 734 (E.D. Tex. 2024) ("[A] plaintiff who merely alleges that the franchisor failed to intervene, alert authorities, improve awareness, or prevent sexual exploitation insufficiently alleges direct participation in a venture."). Again, the SAC itself alleges that the Plaza's staff reported criminal activity to police (Doc. No. 218, ¶¶ 65, 67), and that the owners were "trying to get the bad element out of there" (Doc. No. 218, ¶ 78). *See A.D. v. Choice Hotels Int'l, Inc.*, No. 2:22-cv-648-JES-NPM, 2023 WL 3004547, at *4 (M.D. Fla. Apr. 19, 2023) ("The Complaint acknowledges that Defendants opposed sex traffickers, but fault Defendants for taking ineffective steps to curtail the traffickers. This hardly sounds like participating in a venture.").

Accordingly, these allegations do not satisfy the knowledge or reckless disregard standard required to state a claim under § 1591(a)(2), and this claim against the Plaza should therefore be dismissed.

**D. The SAC Fails to State a Beneficiary Claim Against the Plaza Under 18 U.S.C. § 1595(a)**

Plaintiff separately alleges that the Plaza is liable as a beneficiary under 18 U.S.C. § 1595. (Doc. No. 218, ¶¶ 275-277). Section 1595(a) permits a civil action against "the perpetrator (or whoever knowingly benefits, or attempts or conspires to benefit, financially or by receiving anything of value from participation in a venture which that person knew or should have known has engaged in an act in violation of this chapter)." 18 U.S.C. § 1595(a). Thus, to state a beneficiary claim, Plaintiff must plausibly allege that the Plaza (1) knowingly benefitted, (2) from participation in a venture, (3) which it knew or should have known engaged in an act in violation of the TVPRA as to Plaintiff. *See J.L.*, 521 F.Supp.3d at 1064.

The Plaza acknowledges that § 1595(a)'s "should have known" language describes a constructive-knowledge standard distinct from the knowledge or reckless-disregard standard of § 1591(a). However, that standard does not relieve Plaintiff of her obligation to plead facts, rather than conclusions, showing both participation in a venture and constructive knowledge that the venture violated the TVPRA as to her. Courts applying the standard require facts showing that the defendant "'should have known' of sex trafficking, not merely that it 'might have been able to guess' about sex trafficking." *Doe (L.M.)*, 717 F.Supp.3d at 470 (citing *S.J. v. Choice Hotels Int'l, Inc.*, 473 F.Supp.3d 147, 153-54 (E.D.N.Y. 2020)). And "it is not enough for a complaint to establish that a defendant hotel operator should have known of prostitution or general commercial sex activity taking place at its property." *Interstate Mgmt.*, 746 F.Supp.3d at 1007.

***Participation in a venture.*** Plaintiff identifies two purported ventures. The first is "the commercial venture known as the Plaza Inn," comprised of the Plaza, Ketter, and Wiley (Doc. No. 218, ¶ 276). This is simply a description of the Plaza's ownership and operation of its own hotel. If an entity's ordinary operation of its business, together with its own members, were enough to constitute a "venture," every hotel operator would satisfy the participation element by virtue of its own existence. Even assuming the Plaza's ownership could constitute a "venture," § 1595(a) still requires facts showing that the Plaza participated in a venture "which that person knew or should have known has engaged in an act in violation of" the TVPRA. 18 U.S.C. § 1595(a). That requirement returns the analysis to knowledge, which is addressed below.

The second purported venture is with Domino, "in the form of room rentals to Domino." (Doc. No. 218, ¶ 277). As explained above, the SAC alleges only that Domino rented rooms at the Plaza, as any other guest might. It does not allege on what terms he rented them, who rented them to him, or that anyone at the Plaza dealt with him other than as a guest. And even renting rooms to a trafficker does not establish the requisite knowledge. *See supra*, Argument § I(C)(1); *Doe (L.M.)*, 717 F.Supp.3d at 466, 470-73.

***Knowledge.*** For the reasons set forth in Argument §§ I(B) and I(C), *supra*, the SAC's allegations establish, at most, that individuals at the Plaza knew or should have known that Plaintiff engaged in commercial sex there and that the property experienced crime. Plaintiff's attempt to fill the gap with the assertion that "Plaza, Ketter, and Wiley knew and should have known that the Plaza was a conducive venue for sex trafficking and that sex trafficking regularly occurred on its premises" (Doc. No. 218, ¶ 54) fails for two

reasons. That allegation is a collective legal conclusion, and it speaks only to trafficking generally, not to what the Plaza knew or should have known about Plaintiff. *See J.L.*, 521 F.Supp.3d at 1064 (general knowledge of sex trafficking "not sufficient to show that [the defendant] should have known about what happened to *this* plaintiff") (emphasis added). For each other hotel, Plaintiff alleges facts she contends show employees knew or should have known that she, specifically, was being coerced. (Doc. No. 218, ¶¶ 121-123, 159-161, 205, 227, 257). As to the Plaza, she alleges only an inference about what its front desk staff "would … have witnessed" (Doc. No. 218, ¶ 38), and even that describes commercial sex, not coercion. *See supra*, Argument § I(B)(2).

That is precisely what courts have held insufficient, even under § 1595(a)'s constructive-knowledge standard. *See Interstate Mgmt.*, 746 F.Supp.3d at 1010 (complaint "sufficiently pleads that Defendant was on notice of commercial sex activity taking place at the Residence Inn, but it lacks sufficient facts that Defendant was on notice that sex trafficking in violation of the TVPRA was taking place"); *Doe (L.M.)*, 717 F.Supp.3d at 472-73 (allegations "perhaps create a plausible inference of constructive knowledge of prostitution, but certainly not of sex trafficking by force or fraud"); *J.L.*, 521 F.Supp.3d at 1064.

Accordingly, Plaintiff's beneficiary claim against the Plaza under § 1595(a) should be dismissed.

**E. The SAC Fails to State a Claim Against the Plaza Under Oklahoma's Human Trafficking Statutes**

Oklahoma provides a civil claim for relief for human trafficking victims, but only against a defendant who has itself violated the statute. In relevant part, 21 O.S. § 748.2(B)

provides that "[a]ny person aggrieved by a violation of subsection B of Section 748 of this title may bring a civil action against the person or persons who committed the violation[.]" Subsection B, in turn, provides: "It shall be unlawful to knowingly engage in human trafficking." 21 O.S. § 748(B). Under 21 O.S. § 748(A)(4), "human trafficking" is defined as "modern-day slavery that includes, but is not limited to, extreme exploitation and the denial of freedom or liberty of an individual for purposes of deriving benefit from that individual's commercial sex act or labor."

Count II asserts two theories. First, Plaintiff alleges that "Defendants" committed human trafficking "by variously recruiting, enticing, providing, obtaining, and in all cases harboring Plaintiff for purposes of engaging Plaintiff in a commercial sex act." (Doc. No. 218, ¶ 284). As relevant here, Oklahoma defines such conduct as "recruiting, enticing, harboring, maintaining, transporting, providing or obtaining, by any means, another person through deception, force, fraud, threat or coercion for purposes of engaging the person in a commercial sex act." 21 O.S. § 748(A)(6)(a).

Even assuming the Plaza "harbored" or "provided" Plaintiff by renting her rooms, § 748(A)(6)(a) does not reach every act of harboring or providing a person who engages in commercial sex. It reaches those acts only when accomplished "through deception, force, fraud, threat or coercion." 21 O.S. § 748(A)(6)(a). The contrast with federal law is instructive. Section 1591(a)(1) reaches one who harbors or provides a person "knowing, or … in reckless disregard of the fact, that means of force, threats of force, fraud, coercion … will be used to cause the person to engage in a commercial sex act." 18 U.S.C. § 1591(a). That language expressly encompasses coercion applied by a third party. Oklahoma's

statute instead ties the prohibited means to the act itself. The SAC does not allege that the Plaza, or anyone acting on its behalf, deceived, forced, defrauded, threatened, or coerced Plaintiff in any respect. The only coercion it alleges is Domino's. (*See* Doc. No. 218, ¶¶ 18-23, 52). Renting hotel rooms to a paying guest is not harboring or providing her "through deception, force, fraud, threat or coercion," much less the "extreme exploitation and the denial of freedom or liberty" that characterizes human trafficking under Oklahoma law. 21 O.S. § 748(A)(4), (A)(6)(a).

Plaintiff also cannot proceed against the Plaza on the basis of Defendant Wiley's alleged encounter with her (Doc. No. 218, ¶ 48). As explained above, that allegation concerns Defendant Wiley's alleged personal conduct, not the Plaza's. *See supra*, Argument § I(B)(1). And in any event, Oklahoma's definition of human trafficking for commercial sex involving an adult does not include purchasing. *Compare* 21 O.S. § 748(A)(6)(a), *with* 21 O.S. § 748(A)(6)(b).

Further, Plaintiff alleges that "Defendants" committed human trafficking "by benefitting (in the form of room rentals, fees for towels, condom purchases etc...) from participating in ventures that engaged in acts of trafficking for commercial sex." (Doc. No. 218, ¶ 285). Oklahoma's definition of "human trafficking for commercial sex" does include "benefiting, financially or by receiving anything of value, from participating in a venture that has engaged in an act of trafficking for commercial sex." 21 O.S. § 748(A)(6)(c). However, the similarity to the TVPRA ends there. Under 18 U.S.C. § 1595(a), a defendant who benefits from a venture may be liable if it "knew or should have known" that the venture engaged in trafficking. Oklahoma's statute contains no constructive-knowledge

standard. Its civil remedy is limited to violations of § 748(B), which makes it unlawful only "to knowingly engage in human trafficking." 21 O.S. §§ 748(B), 748.2(B). Plaintiff therefore cannot proceed under Oklahoma law on the theory that the Plaza should have known of trafficking on its property.

Accordingly, liability under either of Count II's theories requires actual knowledge per § 748(B). The Plaza could possess such knowledge only through individuals whose knowledge is attributable to it. *See supra*, Argument § I(B). The SAC's allegations regarding the Plaza's staff describe, at most, what they "would … have witnessed" (Doc. No. 218, ¶ 38). That is an inference about what staff might have seen, which by its nature cannot establish actual knowledge of anything. And even that would show only commercial sex. The SAC's only allegations that anyone at the Plaza actually knew Plaintiff was being forced or coerced are: the conclusory allegation regarding Defendant Wiley, carried forward verbatim from Plaintiff's prior pleadings (Doc. No. 218, ¶ 52); and the information-and-belief allegation that Defendant Ketter "was aware of the same facts" for one of two alternative reasons (Doc. No. 218, ¶ 53).

Neither is entitled to the assumption of truth. *See supra*, Argument § I(B)(1). Plaintiff's collective assertion that "Plaza, Ketter, and Wiley knew and should have known" that sex trafficking occurred on the premises (Doc. No. 218, ¶ 54) is a legal conclusion that, in any event, does not concern this plaintiff. *See supra*, Argument § I(D). The SAC therefore does not contain any factual allegation which supports a plausible claim that the Plaza had actual knowledge that it was benefitting from this plaintiff being forced or coerced by Domino to engage in commercial sex on its premises. Independent of

Plaintiff's statute of limitations deficiencies discussed below, her claims against the Plaza under Oklahoma's human trafficking statutes fail as a matter of law and should be dismissed.

## II. PLAINTIFF'S STATE LAW CLAIMS HAVE EXPIRED

Oklahoma's human trafficking statutes provide a civil remedy for the recovery of damages by a private citizen based upon certain criminal conduct. 21 O.S. § 748 et seq. In Oklahoma, an action upon a "liability created by statute other than a forfeiture or penalty" must be brought within three (3) years of the underlying event. 12 O.S. § 95(A)(2). The statute of limitations for claims brought pursuant to 21 O.S. § 748 does not begin to run until the latest of three distinct events: (1) "the victim's emancipation from the defendant," (2) "the victim's twenty-first birthday"; or, (3) "the plaintiff discovers or reasonably should have discovered that he or she was a victim of human trafficking and that the defendant caused, was responsible for or profited from the human trafficking." 21 O.S. § 748.2(B).

Based upon the facts alleged in the Second Amended Complaint, a reasonable inference may be drawn that Plaintiff's claims against the Plaza expired before her original Petition was filed on March 19, 2025. Her claims are untimely unless one of the three statutory triggers occurred on or after March 19, 2022.

Plaintiff alleges that, before meeting Domino, she escaped an abusive relationship "as a teenager," experienced homelessness, was "briefly being incarcerated," and had rebuilt her life—finding "a fiancé, a job, a home for her children, and her sobriety"—all prior to her fiancé's death in 2020. (Doc. No. 218, ¶¶ 14-15). The year is now 2026. These facts make clear that Plaintiff was well into adulthood by 2020. It is reasonable to infer that

Plaintiff's twenty-fourth (24th) birthday passed prior to the filing of her Petition, eliminating any possibility that the commencement of the limitations period was delayed by her twenty-first birthday.

Further, the SAC establishes that Plaintiff knew or should have known that she was a victim of human trafficking by early 2021, when she met Domino at the Plaza and he began using "threats, physical violence, and intimidation" to force her to engage in commercial sex acts. (Doc. No. 218, ¶¶ 16-18, 32). This is particularly so as to the Plaza. The SAC's allegations against the Plaza rest largely on Plaintiff's own direct dealings with it during her stays: she rented its rooms, extended her stays, and paid at its front desk (Doc. No. 218, ¶¶ 35-36); she was given rooms toward the back of the hotel (Doc. No. 218, ¶ 39); she handed Domino her earnings in its courtyard (Doc. No. 218, ¶ 43); and she dealt directly with its co-owner (Doc. No. 218, ¶¶ 48, 51). The only benefit Plaintiff attributes to the Plaza is the very room revenue she paid it. (*See* Doc. No. 218, ¶¶ 55, 285). Plaintiff therefore knew, at the time, the facts on which she now claims the Plaza "caused, was responsible for or profited from" her trafficking. 21 O.S. § 748.2(B). Should this mark the commencement of the limitations period under 21 O.S. § 748.2(B), then, even under the most generous reading of the facts, Plaintiff's claims would have expired well before this action was filed.

Finally, the SAC alleges that Domino trafficked Plaintiff "from early 2021 to the beginning of 2022." (Doc. No. 218, ¶ 26). With respect to the Plaza, the SAC still does not allege when any alleged trafficking violation involving the Plaza occurred. Plaintiff alleges that she met Domino at the Plaza "in 2021" (Doc. No. 218, ¶ 32) and refers to "each of her

stays at the Plaza" without dating any of them. (Doc. No. 218, ¶¶ 35-36). Although Plaintiff alleges that Domino himself stayed at the Plaza "for several months during 2021 and 2022" (Doc. No. 218, ¶ 40), she does not allege that she stayed there on or after March 19, 2022. To the contrary, the SAC's 2022 allegations place Plaintiff at other hotels: the Motel 6 in "early 2022" (Doc. No. 218, ¶ 138), the Extended Stay in the spring of 2022 (Doc. No. 218, ¶¶ 134, 137), and the Super 8 OKC Airport in August 2022, where she alleges she was trafficked by different individuals altogether. (Doc. No. 218, ¶¶ 188, 193). The date of Plaintiff's last check-out from the Plaza therefore marks the latest plausible emancipation with respect to the Plaza, and nothing in the SAC places that date within three years of the Petition's filing.

Plaintiff's assertion that her claim "is timely because it was filed within three years of accrual" (Doc. No. 218, ¶ 287) adds nothing and does not change the analysis; it is a legal conclusion not entitled to the presumption of truth. Plaintiff also should not be permitted to plead shifting, amorphous timelines and then use that ambiguity as both a sword to avoid limitations and a shield to avoid dismissal. On the facts actually alleged, the statute of limitations under 21 O.S. § 748.2(B) expired before Plaintiff filed her Petition on March 19, 2025, and her state law claims against the Plaza should be dismissed.

## CONCLUSION

Plaintiff has now had three opportunities to plead her claims against the Plaza. Despite the Court's direction to "specifically allege what each Defendant knew and did" (Doc. No. 212, p. 6), the Second Amended Complaint still does not identify whose knowledge or conduct it attributes to the Plaza. The only allegations that anyone at the

Plaza knew Plaintiff was being forced or coerced are the same conclusory allegations regarding its owners contained in the dismissed First Amended Complaint. The SAC supplements those allegations only with allegations establishing, at most, two things: that Plaintiff engaged in commercial sex at the Plaza, and that the property experienced crime. Neither shows that the Plaza knew or should have known she was being forced or coerced to engage in commercial sex. The SAC fails to state a claim upon which relief may be granted, and Plaintiff's state law claims are untimely. Accordingly, all claims against Defendant Plaza Hotels, LLC should be dismissed as a matter of law with prejudice.

Respectfully Submitted,

s/ W. Riley Nester

Jessica L. Dark, OBA #31236
W. Riley Nester, OBA #36222
PIERCE COUCH HENDRICKSON
BAYSINGER & GREEN, L.L.P.
1109 N. Francis Ave.
Oklahoma City, OK 73106
PH: (405) 235-1611
FX: (405) 235-2904
jdark@piercecouch.com
rnester@piercecouch.com
*Attorneys for Defendants*
*Plaza Hotels, LLC, Steve Ketter*
*and Michael Wiley*

**CERTIFICATE OF SERVICE**

I certify that on this 25th day of November, 2026, I electronically transmitted the foregoing document to the Clerk of Court using the ECF System for filing and a transmittal of a Notice of Electronic Filing to all ECF registrants who have entered an appearance in this case:

s/ W. Riley Nester
W. Riley Nester