**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF OKLAHOMA**

| | | |
|---|---|---|
| NANCY R., pseudonymously,<br><br>Plaintiff,<br>v.<br><br>PLAZA HOTELS, LLC, *et al.*,<br><br><br>Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | No. 5:25-cv-00462-G |

**ESH STRATEGIES FRANCHISE, LLC'S MOTION TO DISMISS PLAINTIFF'S <u>SECOND AMENDED COMPLAINT</u>**

Defendant ESH Strategies Franchise, LLC ("ESH"), pursuant to Fed. R. Civ. P. 12(b)(6), respectfully moves this Court for an order dismissing Plaintiff's Second Amended Complaint ("Sec. Am. Compl.," ECF No. 218), with prejudice, for failure to state a claim. A brief in support is attached hereto.

# TABLE OF CONTENTS


**Page**

INTRODUCTION ... 1

FACTUAL AND PROCEDURAL BACKGROUND ... 2

LEGAL STANDARD ... 6

ARGUMENT ... 7

I. Plaintiff's Second Amended Complaint Is an Impermissible "Shotgun Pleading" that Fails to Comply with Federal Rule of Civil Procedure 8(a)(2). ... 7

II. Plaintiff Fails to State a Plausible Claim Against ESH for Violating the TVPRA, 18 U.S.C. § 1595. ... 9

A. Plaintiff Fails to State a Plausible Claim for Perpetrator Liability. ... 10

B. Plaintiff Fails to State a Plausible Claim for Beneficiary Liability. ... 11

1. Plaintiff fails to allege that ESH or OKC ES participated in a sex-trafficking venture. ... 12

2. Plaintiff fails to plead any facts demonstrating that ESH knew or should have known of sex trafficking by the particular venture in which it allegedly participated. ... 15

C. Plaintiff Fails to State a Plausible Claim for Vicarious Liability. ... 19

III. Plaintiff Fails to State a Plausible Claim Against ESH for Allegedly Violating the Oklahoma Sex Trafficking Act ("OKTA"), 21 O.S. §§ 748, 748.2. ... 20

CONCLUSION ... 21

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*A.D. v. Best Western Int'l, Inc.*,
2023 WL 2955711 (M.D. Fla. Apr. 14, 2023) .................... 12, 13

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) .................... 3, 6, 7, 9

*B.J. v. G6 Hospitality, LLC*,
No. 22-CV-03765-MMC, 2023 WL 6120682 (N.D. Cal. Sept. 18, 2023) .................... 12

*Baker v. City of Loveland*,
686 F. App'x. 619 (10th Cir. 2017) .................... 7

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) .................... 5, 6, 7, 9

*C.K. v. Wyndham Hotels & Resorts, Inc.*,
No. 3:19-CV-1412-J-34MCR, 2020 WL 5523849, at *1 (M.D. Fla. July 7, 2020) .................... 12

*Cory v. Allstate Ins.*,
583 F.3d 1240 (10th Cir. 2009) .................... 6

*Keller v. Danford*,
No. 2:25-CV-595-TS-JCB, 2026 WL 892290, at *2 (D. Utah Mar. 31, 2026) .................... 15, 16

*Danner v. Domino's Pizza, Inc.*,
No. 1:26-CV-00385-KWR-JMR, 2026 WL 3168523 (D.N.M. Oct. 22, 2026) .................... 7

*Doe #1 v. Red Roof Inns, Inc.*,
21 F.4th 714 (11th Cir. 2021) .................... 11, 12

*Doe (C.A.A.) v. Hyatt Corp.*,
No. 3:24-CV-01229-N, 2025 WL 1953857 (N.D. Tex. July 15, 2025) .... 10, 12, 13, 19

*Doe (K.B.) v. G6 Hosp., LLC*,
No. 1:23-CV-2597-TWT, 2023 WL 8650785 (N.D. Ga. Dec. 14, 2023) .................... 17



96217479v3

*Doe (S.C.) v. Sheraton, LLC*,
No. 23CV00451 KG/JMR, 2024 WL 1329422, at *4 (D.N.M. Mar. 28, 2024) ........ 13

*Doe v. Choice Hotels International, Inc.*,
No. 25-C-1274, 2026 WL 3026402 (E.D. Wis. Oct. 8, 2026) ........ 11, 14

*Doe v. Inter-Continental Hotels Group, Inc.*,
2026 WL 2969927 (S.D.N.Y. Oct. 2, 2026) ........ 13, 14

*Ferm v. Cameron*,
No. 4:26-CV-00089-AMA-PK, 2026 WL 2606628 (D. Utah Sept. 3, 2026) ........ 8

*Glenn v. First Nat. Bank in Grand Junction*,
868 F.2d 368 (10th Cir. 1989) ........ 8

*H.G. v. InterCont'l. Hotels Corp.*,
489 F. Supp. 3d 697 (E.D. Mich. 2020) ........ 14, 15

*J.B. v. G6 Hosp. LLC*,
No. 19-cv-07848-HSG, 2020 WL 4901196 (N.D. Cal. Aug. 20, 2020) ........ 12

*J.C. v. Choice Hotels Int'l Inc.*,
No. 20-cv-00155-WHO, 2020 WL 3035794 (N.D. Cal. June 5, 2020) ........ 12

*J.K. v. Ramada Worldwide, Inc.*,
No. 1:23-CV-108-TWT, 2023 WL 5621913 (N.D. Ga. Aug. 30, 2023) ........ 12

*Khalik v. United Air Lines*,
671 F.3d 1188 (10th Cir. 2012) ........ 5

*L.H. v. Marriott Int'l, Inc.*,
No. 21-22894-Civ-Scola, 2022 WL 1619637 (S.D. Fla. May 23, 2022) ........ 12

*Lundstrom v. Choice Hotels Int'l, Inc.*,
No. 21-CV-00619-PAB-SKC, 2021 WL 5579117 (D. Colo. Nov. 30, 2021) ........ 14, 15, 16, 17, 18, 19

*Mouloki v. Epee*,
262 F. Supp. 3d 684 (N.D. Ill. 2017) ........ 11

*Nasious v. Two Unknown B.I.C.E. Agents*,
492 F.3d 1158 (10th Cir. 2007) ........ 6

*Noble v. Weinstein*,
335 F. Supp. 3d 504 (S.D.N.Y. 2018) ........ 12

*R.C. v. Choice Hotels Int'l, Inc.*
No. 5:23-CV-00872, 2024 WL 1443412 (N.D. Ohio Apr. 2, 2024) ........ 19

*Robbins v. Oklahoma ex rel. Okla. Dep't of Human Serv.*,
519 F.3d 1242 (10th Cir. 2008) ........ 6, 7, 8

*Rodriguez v. Nationwide Homes, Inc.*,
756 F. App'x 782 (10th Cir. 2018) ........ 6

*Walker v. Pacific Pride Servs., Inc.*,
341 Fed. Appx. 350 (9th Cir. 2009) ........ 18

**Statutes**

12 O.S. § 95(3) ........ 21

21 O.S. § 748 ........ 20, 21

21 O.S. § 748.2(B) ........ 21

18 U.S.C. § 1591 ........ 9, 10, 12

18 U.S.C. § 1595 ........ 9, 11

**Rules**

Fed. R. Civ. P., Rule 8 ........ 6, 7, 9

Fed. R. Civ. P., Rule 12(b)(6) ........ 5

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF OKLAHOMA**

| | | |
|---|---|---|
| NANCY R., pseudonymously,<br><br>Plaintiff,<br>v.<br><br>PLAZA HOTELS, LLC, *et al.*,<br><br><br>Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | No. 5:25-cv-00462-G |

**ESH STRATEGIES FRANCHISE, LLC'S BRIEF IN SUPPORT OF MOTION TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT**

## INTRODUCTION

This Court recently granted ESH's Motion to Dismiss Plaintiff's First Amended Complaint on the grounds that Plaintiff failed to plead her claims with the requisite specificity. The Court held that Plaintiff's First Amended Complaint, among other deficiencies, failed to "distinguish between traffickers and the many Defendants and to specifically allege what each Defendant knew and did, including relating to the trafficking of Plaintiff." (Order Granting Motion to Dismiss First Amended Complaint ("Order"), ECF No. 212, at 6.)

Plaintiff's Second Amended Complaint fares no better, as it is equally deficient, still lacks the requisite specificity, and fails to distinguish between the traffickers and the many Defendants. In addition, as it relates to ESH, Plaintiff's Second Amended Complaint still fails to plausibly allege that ESH participated in the venture that allegedly trafficked Plaintiff, or to plausibly allege that ESH knew or should have known of the trafficking

venture. ESH, as a franchisor who was not involved in the day-to-day operation of the property and had no presence onsite, is far removed from the alleged wrongdoing in this case, and cannot be held liable directly, indirectly, or vicariously. For these reasons, Plaintiff fails to state a claim against ESH and her claims should be dismissed with prejudice.

## PROCEDURAL BACKGROUND

Plaintiff originally filed suit in this matter in March 2025. (ECF No. 1.) Defendant ESH filed a Motion to Dismiss the Complaint on May 14, 2025. (ECF No. 27.) Plaintiff filed a Consolidated Response to Defendants' Motions to Dismiss and Motion for Leave to Amend on May 28, 2025. (ECF. No 58.) The Court denied Defendants' Motions to Dismiss as moot and granted Plaintiff's Motion to Amend on October 16, 2025. (ECF. No. 114.) Plaintiff filed her First Amended Complaint on October 17, 2025. (ECF. No. 115.) Defendant ESH filed its Motion to Dismiss Plaintiff's FAC on November 7, 2025. (ECF. No. 141.)

On September 30, 2026, this Court granted ESH's (and other defendants') Motions to Dismiss but granted Plaintiff leave to amend. (Order, ECF No. 212.) In granting the Motions, the Court noted that "many of the FAC's allegations regarding the underlying circumstances of a woman being coerced or forced to engage in commercial sex acts at Defendants' hotels lack the specificity that is required to amount to well-pleaded facts." (*Id*. at 6.) The Court further noted that,

> [t]he FAC in many instances fails to distinguish between traffickers and the many Defendants and to specifically allege what each Defendant knew and did, including relating to the trafficking of Plaintiff. Such vague allegations

> do not 'allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.' *Iqbal*, 556 U.S. at 678. Nor do they give each Defendant 'fair notice of what the claim is and the ground upon which it rests.' *Twombly*, 550 U.S. at 555 (omission and internal quotation marks omitted).

(*Id.*) The Court then ordered Plaintiff to file a Second Amended Complaint and "provide greater factual specificity." (*Id.*) Plaintiff filed her Second Amended Complaint on October 28, 2026 (ECF No. 218), but it remains lacking in well-pleaded allegations against ESH.

## **FACTUAL BACKGROUND**

Plaintiff alleges she was trafficked by an individual identified as "Domino" at various hotel properties in Oklahoma City, Oklahoma from early 2021 to the beginning of 2022. (Sec. Am. Compl. ¶ 29.) In seeking to hold the hotel owners, operators, and franchisors civilly liable for her trafficking, Plaintiff claims that "[h]otel staff can, and should, observe and identify" certain indicators of potential commercial sex or human trafficking, and states generally that those indicators were present at every hotel in which Plaintiff stayed. (*Id.* ¶ 30.)

As it relates to ESH, Plaintiff alleges she was trafficked at the Extended Stay America Oklahoma City Airport (which she refers to as "Extended Stay" throughout her Second Amended Complaint) for a 20-day period during an unspecified time from early 2021 to the beginning of 2022. (*Id.* ¶ 81.) Plaintiff makes various conclusory allegations relating to her stay at the Extended Stay hotel, and her interactions with hotel employees while staying there, conjecturing, "[e]mployees at the Extended Stay clearly understood that she was engaging in commercial sex acts." (*Id.* ¶ 102.) Nowhere does she allege that ESH or one of its representatives was actually onsite or interacted with her during her stay.

Nor does she allege that ESH actually employed (i.e., hired and fired) the hotel employees. Instead, Plaintiff acknowledges that the franchisee, OKC Airport ES, LLC "owned and operated the Extended Stay," while ESH was merely the franchisor. (*Id.* ¶¶ 5-6.) Furthermore, Plaintiff alleges that sex trafficking was so common at the Extended Stay that "several traffickers repeatedly patrolled the second and third floor corridors with an AK47-style rifle to guard the women they kept prisoner, to scare off other pimps, and to frighten women trying to operate as 'renegades' into leaving or 'choosing up' with the patrollers." (*Id.* ¶ 104.) But she does not allege that her trafficker was among those reportedly patrolling the second and third floor corridors or that she was one of the women kept prisoner.

Plaintiff makes several allegations regarding reviews left by former patrons discussing, among other things, sex activity, drug use, sanitary conditions, and potential commercial sex. (*Id.* ¶¶ 106-114.) However, Plaintiff does not allege that the reviews relate in any way to her or the venture that trafficked her. Indeed, most of the reviews cited were written *before* Plaintiff was allegedly trafficked at the subject property. (*Id.*) Plaintiff attempts to impute actual or constructive knowledge to ESH through a few conclusory statements and attenuated details. For example, Plaintiff claims that, because ESH was allegedly aware of the multiple, unsubstantiated negative reviews referencing prevalent prostitution and pimping at the Extended Stay before Plaintiff was trafficked there, and because most sex workers are coerced to engaged in commercial sex acts, ESH knew or had constructive knowledge that Plaintiff was being trafficked. (*Id.* ¶¶ 118-121.) This is a thin and attenuated conclusion.

Plaintiff further alleges that "[b]ecause most prostitutes are victims of coercion, and because staff at the 'prostitution-riddled' Extended Stay were more familiar with the sex trade than most, they knew or had constructive knowledge Nancy was being trafficked," and:

> Employees at the Extended Stay also knew that the high prevalence of pimps on their property meant that 'renegades' (i.e. prostitutes working for themselves rather than under the control of a pimp) could not safely operate there due to the risk of being 'knocked' (forcibly recruited) by a pimp. They thus knew or had constructive knowledge Nancy was being trafficked.

(*Id.* ¶¶ 121-22.) While these allegations may speak to the knowledge of the employees at the hotel, they do not speak to ESH's knowledge, since the hotel's employees were not employees of ESH. Alternatively, Plaintiff alleges that through setting brand standards, Defendant ESH should be held liable for the alleged conduct of its Franchisee. (*Id.* ¶ 280).

Plaintiff then details instances of criminal activity at the Extended Stay occurring from 2018 to 2022. (*Id.* ¶¶ 126-133.) The criminal activity alleged consists of various violent and non-violent offenses. (*Id.*) However, Plaintiff does not allege that the criminal activity detailed in these paragraphs involved Plaintiff, "Domino," or the venture that allegedly trafficked her.

While Plaintiff did include additional details about her alleged trafficking in the Second Amended Complaint, the vast majority of the additions relate to hotel employees, not to ESH. (*See* Sec. Am. Compl. ¶¶ 81-137); *see also* (First Amended Complaint ("First Am. Compl.") ¶¶ 107-131). Plaintiff makes no allegation that ESH hired, fired, disciplined or employed the employees at the hotel. Because her allegations against ESH remain

deficient, ESH's Motion to Dismiss Plaintiff's Second Amended Complaint should be granted, and the claims against ESH should be dismissed with prejudice.

## **LEGAL STANDARD**

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a complaint must allege enough factual matter that, taken as true, makes the plaintiff's claim "plausible on its face." *Khalik v. United Air Lines*, 671 F.3d 1188, 1190 (10th Cir. 2012) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible when a plaintiff pleads factual content that permits a court to reasonably infer that the defendant is liable for alleged misconduct. *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009). In other words, "[t]he allegations must be enough that, if assumed to be true, the plaintiff plausibly (not just speculatively) has a claim for relief." *Robbins v. Oklahoma ex rel. Okla. Dep't of Human Serv.*, 519 F.3d 1242, 1247 (10th Cir. 2008).

"[C]onclusory allegations without supporting factual averments are insufficient to state a claim on which relief can be based." *Cory v. Allstate Ins.*, 583 F.3d 1240, 1244 (10th Cir. 2009). A mere "formulaic recitation of the elements of a cause of action" is insufficient to survive a motion to dismiss. *Twombly*, 550 U.S. at 555; *see Iqbal*, 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.").

In addition, Federal Rule of Civil Procedure 8 requires a complaint to "explain what each defendant did to [the plaintiff]; when the defendant did it; how the defendant's action harmed him or her; and what specific legal right the plaintiff believes the defendant violated." *Nasious v. Two Unknown B.I.C.E. Agents*, 492 F.3d 1158, 1163 (10th Cir. 2007).

"If a complaint fails to meet these basic pleading requirements, a district court may dismiss the action." *Rodriguez v. Nationwide Homes, Inc.*, 756 F. App'x 782, 785 (10th Cir. 2018). Moreover, the tenth Circuit has repeatedly held that pleadings that lump defendants together in vague or conclusory allegations cannot withstand a motion to dismiss, particularly where the grouped defendants are comprised of different entities that are distinct in character. *See e.g., Robbins*, 519 F.3d at 1250 ("Given the complaint's use of either the collective term 'Defendants' or a list of the defendants named individually but with no distinction as to what acts are attributable to whom, it is impossible for any of these individuals to ascertain what particular . . . acts they are alleged to have committed."); *Baker v. City of Loveland*, 686 F. App'x. 619, 621 (10th Cir. 2017).

## <u>ARGUMENT</u>

### I. Plaintiff's Second Amended Complaint Is an Impermissible "Shotgun Pleading" that Fails to Comply with Federal Rule of Civil Procedure 8(a)(2).

As an initial matter, Plaintiff's Second Amended Complaint, as with her previous complaints, fails to comply with the federal rules governing pleading standards. A proper complaint requires a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). When assessing the sufficiency of a complaint's factual allegations, the Tenth Circuit has noted that the "plausibility" standard in *Twombly* and *Iqbal* applies. *Robbins*, 519 F.3d at 1247.

An impermissible shotgun pleading is "a complaint that assert[s] multiple claims against multiple defendants without specifying which of the defendants are responsible for which acts or omissions, or which of the defendants the claim is brought against." *Danner*

*v. Domino's Pizza, Inc.*, No. 1:26-CV-00385-KWR-JMR, 2026 WL 3168523, at *16 (D.N.M. Oct. 22, 2026) (internal quotations omitted).

In granting Defendants' Motions to Dismiss, this Court noted Plaintiff's failure in many instances to "distinguish between traffickers and the many Defendants and to specifically allege what each Defendant knew and did, including relating to the trafficking of Plaintiff." (Order, ECF No. 212, at 6.) Plaintiff's Second Amended Complaint, a proverbial third bite at the apple, still fails to provide ESH with fair notice of the claims against it, relying on unspecific and conclusory allegations, failing to distinguish what role, if any, ESH played in the alleged trafficking of Plaintiff.

More specifically, Plaintiff's use of "Defendants" collectively is problematic as it makes it impossible for ESH to understand which factual allegations relate specifically to it, considering that the alleged trafficking took place at different times and locations. As the U.S. District Court for the District of Utah explained in ordering a plaintiff to amend their complaint, "[t]he Tenth Circuit has rejected the practice of 'group pleading' where a complaint uses 'Defendants' as a collective term and fails to distinguish what acts are attributable to which defendant." *Ferm v. Cameron*, No. 4:26-CV-00089-AMA-PK, 2026 WL 2606628, at *3 (D. Utah Sept. 3, 2026) (citing *Robbins*, 519 F.3d at 1250). Nonetheless, Plaintiff does just that. For example, she alleges "hotel employees chose to ignore the bruises Domino left on Nancy and his frequent comings and goings—while never staying long or reserving a room—through the hotel lobbies in line of sight from the front desk." (Sec. Am. Compl. ¶ 25). However, Plaintiff does not specify at which of the six hotels this occurred, or which hotel's employees allegedly ignored her bruises.

The Tenth Circuit has long affirmed its disapproval of "shotgun pleadings." *See Glenn v. First Nat. Bank in Grand Junction*, 868 F.2d 368, 371 (10th Cir. 1989) (explaining that the law "recognizes a significant difference between notice pleading and 'shotgun' pleading."). Plaintiff's allegations contained in paragraphs 118-119 attempt to impute knowledge of Plaintiff's trafficking on ESH without explaining how ESH came to possess that knowledge. Plaintiff's conclusory allegations are further weakened given the fact that ESH does not have any employees at the hotel and Plaintiff does not allege that ESH employed anyone at the hotel. Plaintiff has now had three attempts to cure defects in her Complaint. For the third time, Plaintiff has failed to allege specifically how each Defendant participated in her trafficking. Plaintiff's "shotgun approach" to pleading is violative of the standards set forth in *Twombly* and *Iqbal*, Fed. R. Civ. P. 8(a)(2) and this Circuit's clear directive against "shotgun pleading." As such, Plaintiff's claims against ESH should be dismissed on this basis.

## II. Plaintiff Fails to State a Plausible Claim Against ESH for Violating the TVPRA, 18 U.S.C. § 1595.

Congress created a civil remedy for sex trafficking victims under Section 1595(a) of the TVPRA, which allows for civil claims arising from violations of the criminal sex trafficking statute, 18 U.S.C. § 1591. In this case, Plaintiff alleges that ESH trafficked her under Section 1591(a)(1), which addresses direct, perpetrator liability, and Section 1591(a)(2), which addresses beneficiary liability. Plaintiff also claims that ESH is vicariously liable for the acts of its franchisee, OKC ES, under agency or joint employer principles. For the reasons discussed below, each theory of liability fails.

**A. Plaintiff Fails to State a Plausible Claim for Perpetrator Liability.**

Plaintiff's perpetrator liability claim against ESH fails because Plaintiff fails to allege any facts suggesting that ESH directly trafficked her.

Under § 1591(a)(1):

> (a) Whoever knowingly—
>
> (1) in or affecting interstate or foreign commerce, or within the special maritime and territorial jurisdiction of the United States, recruits, entices, harbors, transports, provides, obtains, advertises, maintains, patronizes, or solicits by any means a person;
>
> knowing, or, . . . in reckless disregard of the fact, that means of force, threats of force, fraud, coercion . . . , or any combination of such means will be used to cause the person to engage in a commercial sex act, . . . shall be punished as provided in subsection (b).

"A perpetrator liability claim incorporates the elements of a criminal TVPRA violation under section 1591." *Doe (C.A.A.) v. Hyatt Corp.*, No. 3:24-CV-01229-N, 2025 WL 1953857, at *6 (N.D. Tex. July 15, 2025). Further, a violation requires "knowingly" harboring or maintaining a person "*knowing* . . . that means of force, threats of force, fraud, [or] coercion" are being used to cause that person to engage in commercial sex. 18 U.S.C. § 1591(a) (emphasis added). Perpetrator liability requires the highest level of knowledge as to the use of force, fraud, or coercion. *See C.A.A.*, 2025 WL 1953857, at *6.

As explained above, Plaintiff fails to assert any facts, beyond purely conclusory allegations, that ESH harbored or maintained Plaintiff knowing that force, fraud, or coercion, were being used for the purposes of causing Plaintiff to engage in commercial sex. Plaintiff's only hook for imputing knowledge onto ESH are unsubstantiated reviews that mostly occurred before Plaintiff's alleged trafficking and make no mention of Plaintiff

or her alleged trafficking. (*See* Sec. Am. Compl. ¶¶ 118-119.) Such attenuated and unsubstantiated allegations are insufficient to state a claim against ESH. *See Doe v. Choice Hotels Int'l, Inc.*, No. 25-C-1274, 2026 WL 3026402, at *8 (E.D. Wis. Oct. 8, 2026) (explaining that a "Plaintiff must 'connect the dots' between the alleged trafficking and the franchisor" to plausibly allege a perpetrator liability claim).

Plaintiff also fails to allege that ESH has any intent to traffic her. While the TVPRA does not define exactly what it means to "harbor" or "maintain" a victim of sex-trafficking, courts have concluded that there must be some intent to commit the crime or further the criminal enterprise. *See, e.g.*, *Mouloki v. Epee*, 262 F. Supp. 3d 684, 698 (N.D. Ill. 2017) ("[P]roviding lodging to someone for the purpose of obtaining her labor or services against her will constitute 'harboring[,]'" and "a question remains as to whether that was intended to obtain her labor or services.") Plaintiff does not plead any facts to support this element. As such, her perpetrator liability claim against ESH should be dismissed.

**B. Plaintiff Fails to State a Plausible Claim for Beneficiary Liability.**

The TVPRA imposes civil liability on a person who (1) knowingly benefits financially or by receiving anything of value, (2) from participation in a venture, (3) which that person knew or should have known has engaged in a violation of the TVPRA. 18 U.S.C. § 1595(a). Although the Tenth Circuit has not generally analyzed civil liability under the TVPRA against hotel franchisors, the Eleventh Circuit has construed the elements of a Section 1595(a) beneficiary liability claim as follows:

> [T]o state a . . . claim under Section 1595(a), a plaintiff must plausibly allege that the defendant (1) knowingly benefited, (2) from taking part in a common undertaking or enterprise involving risk and potential profit, (3) that

> undertaking or enterprise violated the TVPRA as to the plaintiff, and (4) the defendant had constructive or actual knowledge that the undertaking or enterprise violated the TVPRA *as to the plaintiff*.

*Doe #1 v. Red Roof Inns, Inc.*, 21 F.4th 714, 726 (11th Cir. 2021) (emphasis added). Since *Red Roof* was decided, several District Courts have applied its focus on plaintiff-specific allegations to dismiss TVPRA claims similar to the one brought by Plaintiff here. *See, e.g., C.A.A.*, 2025 WL 1953857, at *3 (dismissing TVPRA claim against hotel franchisor under both direct beneficial and vicarious liability theories); *A.D. v. Best Western Int'l, Inc.*, 2023 WL 2955711 (M.D. Fla. Apr. 14, 2023) (applying *Red Roof* and dismissing TVPRA claim against franchisor); *B.J. v. G6 Hospitality, LLC*, No. 22-CV-03765-MMC, 2023 WL 6120682 (N.D. Cal. Sept. 18, 2023) (same); *J.K. v. Ramada Worldwide, Inc.*, No. 1:23-CV-108-TWT, 2023 WL 5621913 (N.D. Ga. Aug. 30, 2023) (same); *L.H. v. Marriott Int'l, Inc.*, No. 21-22894-Civ-Scola, 2022 WL 1619637 (S.D. Fla. May 23, 2022) (same); *see also C.K. v. Wyndham Hotels & Resorts, Inc.*, No. 3:19-CV-1412-J-34MCR, 2020 WL 5523849, at *1 (M.D. Fla. July 7, 2020); *J.B. v. G6 Hosp. LLC*, No. 19-cv-07848-HSG, 2020 WL 4901196, at *1041 (N.D. Cal. Aug. 20, 2020); *J.C. v. Choice Hotels Int'l Inc.*, 20-cv-00155-WHO, 2020 WL 3035794, at *1 (N.D. Cal. June 5, 2020).

As will be explained below, Plaintiff's theory of liability rests on a single conclusory statement, insufficient to survive a motion to dismiss.

**1. Plaintiff fails to allege that ESH or OKC ES participated in a sex-trafficking venture.**

Congress defined "participation in a venture" as "knowingly assisting, supporting, or facilitating [sex trafficking]." 18 U.S.C. § 1591(e)(4). Therefore, "liability[] cannot be

established by association alone, [and] Plaintiff must allege specific conduct that furthered the sex trafficking venture." *Noble v. Weinstein*, 335 F. Supp. 3d 504, 524 (S.D.N.Y. 2018). As the U.S. District Court for the District of New Mexico explained, a "[p]laintiff must allege at least a showing of a continuous business relationship between the trafficker and the hotels such that it would appear that the trafficker and the hotels have established a pattern of conduct or could be said to have a tacit agreement." *Doe (S.C.) v. Sheraton, LLC*, No. 23CV00451 KG/JMR, 2024 WL 1329422, at *4 (D.N.M. Mar. 28, 2024). In other words, a plaintiff must allege a hotel's participation in a venture "'beyond its general interest in earning fees by offering [hotel] services." *Doe (O.B.J.) v. Inter-Continental Hotels Group, Inc.*, 2026 WL 2969927, at *5 (S.D.N.Y. Oct. 2, 2026) (holding that hotels did not "participate in a venture" under the TVPRA merely by renting rooms and providing ordinary, nondifferentiated hotel services to a trafficker, as routine commercial transactions conducted solely to earn standard business fees demonstrate neither control over, nor a purpose to promote, the trafficking operation).

Additionally, "[s]imple ineffectiveness [of the hotel or franchisor] at curtailing traffickers is not participation in a venture"; rather "there must be particular facts connecting the venture to the specific plaintiff's trafficking." *C.A.A.*, 2025 WL 1953857, at *4. In that regard, district courts have universally rejected the notion that "participation" can be established by showing that "the franchisor or hotel operator did not fight hard enough to keep . . . traffickers from using their hotel." *A.D. v. Best Western Int'l, Inc.*, 2023 WL 2955711 at *7 (M.D. Fla. April 14, 2023). "This is particularly true of a franchisor, which has no direct contact with its alleged venture partners." *Id.*

Here, Plaintiff fails, again, to allege that ESH took acts in furtherance of the alleged venture and, therefore, fails to state a claim. Plaintiff alleges that "[a]s was her practice she initially rented the room through her own Priceline account or someone else's, using a fake paper temporary Oklahoma ID, and had the room put in her name even if someone else showed their ID to the front staff." (Sec. Amend. Compl. ¶ 83.) Plaintiff's failure to allege her alleged trafficker ever rented a room is insufficient to show participation in a venture. *See Choice Hotels Int'l, Inc.*, 2026 WL 3026402, at *7 (holding that plaintiff's failure to allege plaintiff's trafficker or traffickers ever rented rooms does not show a "direct, prolonged, and supportive contractual relationship with one of those sex traffickers"). Plaintiff further alleges that she or the "johns" conducted all interactions with OKC ES staff regarding her room. (*Id.* at ¶¶ 84-87.) But fatal to Plaintiff's claim is that she does not allege a single instance of an interaction between ESH or OKC ES staff and Plaintiff's trafficker, "Domino," any awareness by ESH of Domino's trafficking activities, or any instance of ESH engaging in any commercial venture engaged in trafficking. *See generally O.B.J.*, 2026 WL 2969927 (S.D.N.Y. Oct. 2, 2026) (dismissing a TVPRA claim against, among others, a hotel franchisor, for Plaintiff's failure to allege some connection or association by the hotel and the trafficker that "could show or at least plausibly suggest that a hotel and a trafficker engaged in a shared enterprise or common undertaking"). Indeed, Plaintiff does not even allege that "Domino" ever rented a room at the Extend Stay. Plaintiff's Second Amended Complaint fails to provide particular facts connecting ESH to the purported venture that allegedly trafficked Plaintiff.

Other than the vague and conclusory allegation in Paragraphs 272 and 275 of the Second Amended Complaint that "through their acts and omissions described above," all nineteen named Defendants "benefit[ed] financially from Plaintiff's sex trafficking due to their participation in a venture," there is no reference to or description of the "common undertaking or enterprise" or "venture" in which ESH allegedly participated. Plaintiff simply has not sufficiently alleged that ESH participated in a sex-trafficking venture, and her claim fails.

**2. Plaintiff fails to plead any facts demonstrating that ESH knew or should have known of sex trafficking by the particular venture in which it allegedly participated.**

Plaintiff's TVPRA claim also "fails because she has not sufficiently alleged the third element of that claim—the element that focuses on [ESH's] knowledge of alleged sex trafficking." *Lundstrom*, 2021 WL at *6 (citing *H.G. v. InterCont'l. Hotels Corp.*, 489 F. Supp. 3d 697, 704 (E.D. Mich. 2020)). "To satisfy that element, a plaintiff must plead facts showing that the defendant knew or should have known of sex trafficking by the particular venture in which the defendant allegedly participated." *H.G.*, 489 F. Supp. 3d at 704. "Indeed, the plain language of the financial beneficiary prong clearly links the required knowledge to the venture in which the defendant purportedly participated." *Id.*

In *Lundstrom*, the U.S. District Court for the District of Colorado granted a defendant hotel franchisor's motion to dismiss the plaintiff's TVPRA claim because the plaintiff failed to sufficiently plead facts plausibly showing that the defendant franchisor had actual or constructive knowledge of her specific trafficking. *Lundstrom*, 2021 WL 5579117, at *8. The *Lundstrom* court noted that the plaintiff failed to allege that she alerted

hotel staff of her need for help or that "she was being forced to engage in commercial sex activity, as opposed to engaging in commercial sex activity by choice." *Id*. In dismissing the plaintiff's claim against the franchisor, the *Lundstrom* court determined that the franchisor's knowledge about the prevalence of sex trafficking occurring at its hotels, generally, was not sufficient to establish beneficiary liability under the TVPRA. *Id*. Rather, to survive dismissal of the TVPRA claim, the plaintiff needed to plausibly allege facts sufficient to show defendant's knowledge of the venture that trafficked her. *Id*.

Similarly, in *Keller v. Danford*, the U.S. District Court for the District of Utah, granted a hotel franchisor's motion to dismiss the plaintiff's TVPRA claim because the plaintiff failed to sufficiently plead facts plausibly showing that the defendant franchisor had actual or constructive knowledge of her specific trafficking. No. 2:25-CV-595-TS-JCB, 2026 WL 892290, at *2 (D. Utah Mar. 31, 2026). In granting dismissal, the *Keller* court noted that even though Plaintiff alleged she exhibited the signs of commercial sex work, such as:

> request[ing] rooms in the back of the property, request[ing] fresh linens, dispos[ing] of used condoms and condom wrappers in the hotel trash bins, us[ing] the hotel wifi to post sex work ads, host[ing] five to ten johns each day, me[eting] the johns in the lobby before bringing them up to her room, and 'transparently dress[ing] for sex work,

these allegations were insufficient to sustain a claim. *Keller*, WL 892290, at *6. Additionally, the Keller court wrote that while allegations of visible injuries, such as bruises, could support a finding of constructive knowledge, "if accompanied by other allegations suggesting that the injuries were caused by a trafficker," where no such allegations were present in the complaint, the plaintiff failed to allege constructive

knowledge. *Id*. Plaintiff's allegation that she told a security guard she had visible bruises as a result of a beating from "her man" was insufficient to provide the defendants with constructive knowledge that her injuries were caused by a trafficker. *Id*.

In this case, Plaintiff's allegations in the Second Amended Complaint are similarly too general and too conclusory to plausibly establish that ESH had any knowledge, actual or constructive, of Plaintiff's alleged trafficking. While Plaintiff does allege that "Domino" left bruises on her face as a result of physical altercations, she does not allege that ESH witnessed the altercation, that she told ESH that "Domino" was responsible for the bruises, or that ESH had reason to know that "Domino" was connected with her alleged trafficking.

Like the plaintiffs in *Lundstrom* and *Keller*, despite Plaintiff alleging that she was constantly visible and interacting with hotel staff during her time at the Extended Stay, she does not allege that she ever informed anyone (including ESH directly) that she needed help, was being held against her will, was being forced to engage in commercial sex, or that she was in any type of danger. Furthermore, Plaintiff does not allege that she or anyone ever contacted law enforcement or any other authorities while she was allegedly being trafficking at the Extended Stay. And as the *Lundstrom* and *Keller* cases establish, without a specific plea for help or specific knowledge of force or coercion, factors that may be indicators of commercial sex occurring generally are insufficient to put a hotel or hotel franchisor on notice of a Plaintiff's specific trafficking.

The Second Amended Complaint is devoid of any allegation linking ESH, in any way, to Plaintiff's alleged trafficker or to the alleged venture that trafficked Plaintiff. While Plaintiff alleges that ESH knew or should have known about commercial sex activities at

the Extended Stay because of the online reviews, courts have held that reviews, which are not even alleged to refer to Plaintiff, are insufficient to establish knowledge or constructive knowledge. *See Doe (K.B.) v. G6 Hosp., LLC*, No. 1:23-CV-2597-TWT, 2023 WL 8650785, at *6 (N.D. Ga. Dec. 14, 2023).

Similarly, Plaintiff's reference in the Second Amended Complaint to a series of boilerplate franchise guidelines in the Franchisor Disclosure Document or Franchise Agreement does not overcome the franchisor's lack of actual or constructive knowledge of Plaintiff's specific alleged trafficking. Indeed, Plaintiff only alleges, on "information and belief," that ESH "exercised its [] rights to access information and to direct the operations of OKC ES's location in full." (Sec. Amend. Compl. ¶ 125.) Plaintiff further alleges, again only on "information and belief," that ESH "had access to at least one Stay Remark recording suspicions that Nancy was being pimped (trafficked) by Domino or his affiliates." (*Id.* ¶ 124(l)(ii).) Plaintiff does not allege, even on information and belief, that ESH ever saw or accessed the Stay Remark, or that the Remark contained sufficient information to put ESH on notice that Plaintiff was being trafficked through the use of force, fraud, or coercion. Simply, the fact that a franchisor implements certain brand standards for its franchisee hotels or has access to certain financial and stay data and reviews, is not sufficient to show that such franchisor has constructive knowledge of specific trafficking. *See Lundstrom*, 2021 WL 5579117, at *9.

Plaintiff has failed, again, to plausibly plead facts sufficient to establish that ESH had knowledge of Plaintiff's specific alleged trafficking. For this, and the other reasons

discussed above, Plaintiff has failed to state a beneficiary liability claim against ESH under the TVRPA.

**C. Plaintiff Fails to State a Plausible Claim for Vicarious Liability.**

Finally, Plaintiff alleges an indirect, or vicarious, beneficiary claim against ESH. (*Id.* ¶ 280.) In order to state a claim for vicarious liability under the TVPRA, "a plaintiff must allege (1) an underlying violation of TVPRA by the defendant's franchisee and (2) that franchisors and their corresponding hotels were in an agency relationship." *C.A.A.*, 2025 WL 1953857, at *7. Typically, liability for torts committed at a franchisee's location are not imputed to a franchisor or licensor under an agency theory. *See, e.g., Walker v. Pacific Pride Servs., Inc.*, 341 Fed. Appx. 350, 351 (9th Cir. 2009) (recognizing that a franchisor must be permitted to retain some control necessary to protect its trademark, trade name, and good will, without the risk of creating an agency relationship); *R.C. v. Choice Hotels Int'l, Inc.*, No. 5:23-CV-00872, 2024 WL 1443412, at *6 (N.D. Ohio Apr. 2, 2024) ("[S]etting standards in an agreement for acceptable service quality does not of itself create a right of control.") (citation omitted).

As explained above, the fact that a franchisor implements certain brand standards for its franchised hotels or has access to certain financial and stay data and reviews, is not sufficient to show that such franchisor has constructive knowledge of specific trafficking. *See Lundstrom*, 2021 WL 5579117, at *9. Plaintiff does not allege that ESH exercised any control beyond the standards set out in the franchise agreement.

Plaintiff's allegations that she exhibited signs of trafficking are also insufficient. In *Lundstrom*, the court dismissed indirect liability claims against the franchisor, explaining:

> Because these allegations are not sufficient for the Court to conclude that the hotels, i.e. defendant's [assumed] agents, knew of plaintiff's trafficking, as opposed to her commercial sex activity, plaintiff necessarily has not stated a claim that defendant could be liable under an actual agency theory.

*Id*. (collecting cases). Here, Plaintiff makes no allegation that the "signs" of her alleged sex trafficking were ever reported to ESH. Without more, Plaintiff's claim fails and must be dismissed.

## III. Plaintiff Fails to State a Plausible Claim Against ESH for Allegedly Violating the Oklahoma Sex Trafficking Act ("OKTA"), 21 O.S. §§ 748, 748.2.

The Oklahoma State Legislature recently enacted 21 O.S. § 748 which, in conjunction with § 748.2, creates a civil cause of action for victims of sex trafficking. 21 O.S. §§ 748, 748.2. Modeled after the TVPRA, section 748 reads, "[i]t shall be unlawful to *knowingly* engage in human trafficking." 21 O.S. § 748(B) (emphasis added). "Human trafficking" is defined as "modern-day slavery that includes, but is not limited to, extreme exploitation and the denial of freedom or liberty of an individual for purposes of deriving benefit from that individual's commercial sex act or labor." 21 O.S. § 748(A)(4). In addition, "[h]uman trafficking for commercial sex" includes "benefiting, financially or by receiving anything of value, from *participation in a venture* that has engaged in an act of trafficking for commercial sex." 21 O.S. § (A)(6)(c) (emphasis added).

To establish a cause of action under the OKTA, Plaintiff must plausibly allege that ESH knowingly participated in a venture that has engaged in an act of trafficking for commercial sex. As discussed at length above, Plaintiff has not plausibly pled either that ESH: (1) participated in a venture of trafficking for commercial sex; or (2) had knowledge of Plaintiff's sex trafficking by the venture in which it allegedly participated.

Additionally, Plaintiff's OKTA claim against ESH is time-barred under the applicable two-year statute of limitations. 12 O.S. § 95(3). Section 748.2 of the statute states that the statute of limitations shall begin to run from the latter of the victim's emancipation from the defendant, the victim's twenty-first birthday, or when the plaintiff reasonably should have discovered she was a victim of trafficking. 21 O.S. § 748.2(B). While Plaintiff is not specific as to the dates she was allegedly trafficked at the Extended Stay, all of Plaintiff's alleged trafficking occurred in late 2021 to early 2022 based on the face of the Second Amended Complaint. Even assuming, *arguendo*, Plaintiff's claims relate back to the filing of her original complaint, Plaintiff's filing of her complaint in March 2025 puts her well outside the statute of limitations. There are no allegations in the Second Amended Complaint to suggest that the statute of limitations was tolled or otherwise commenced at any time other than after her trafficking ended, which is more than two years before the Complaint was filed. Thus, her OKTA claim is time-barred under Oklahoma law.

## CONCLUSION

For the reasons stated above, this Court should grant ESH's Motion to Dismiss and dismiss all claims asserted against ESH with prejudice.

Dated: November 25, 2026

Respectfully submitted,

**Steidley & Neal, P.L.L.C.**

*s/ Charles D. Neal, Jr.*
Charles D. Neal, Jr., OBA #6591
cdn@steidley-neal.com

Jamie A. Rogers, OBA #19927
jar@steidley-neal.com
CityPlex Towers, 53rd Floor
2448 East 81st Street
Tulsa, Oklahoma 74137
(918) 664-4612 telephone
(918) 664-4133 facsimile

**LATHROP GPM LLP**

Maisa J. Frank (DC Bar No. 1001354)
(Pro Hac Vice Application Forthcoming)
Blair T. Page (DC Bar No. 90029281)
(Pro Hac Vice Application Forthcoming)
1015 15th Street N.W., Suite 1050
Washington, D.C. 20005
Telephone: (202) 295-2200
maisa.frank@lathropgpm.com
blair.page@lathropgpm.com

Craig P. Miller (MN Bar #26961X)
(Pro Hac Vice Application Forthcoming)
3100 IDS Center
80 South Eighth Street
Minneapolis, MN 55402
Telephone: (612) 632-3000
craig.miller@lathropgpm.com

**CERTIFICATE OF SERVICE**

I hereby certify that on November 25, 2026, I electronically transmitted the attached document to the Clerk of Court using the Electronic Case Filing System for filing.

*s/ Charles D. Neal, Jr.*
of Steidley & Neal, P.L.L.C.